1  SEAN REIS (SBN 184044)
   *sreis@edelson.com*
2  EDELSON MCGUIRE, LLP
   30021 Tomas Street, Suite 300
3  Rancho Santa Margarita, California 92688
   Telephone: (949) 459-2124
4  Facsimile: (949) 459-2123

5
   JAY EDELSON*
6  (jedelson@edelson.com)
   RAFEY S. BALABANIAN*
7  (rbalabanian@edelson.com)
   CHRISTOPHER L. DORE*
8  (cdore@edelson.com)
   EDELSON MCGUIRE LLC
9  350 North LaSalle Street, Suite 1300
   Chicago, Illinois 60654
10 Telephone: (312) 589-6370
11 Fax: (312) 589-6378

12 * *Pro hac vice* Application Forthcoming

13 ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of all others similarly situated, | Case No. 11 2584 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| TWILIO, INC., a Delaware corporation, GROUPME, INC., a Delaware corporation, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

COMPLAINT

## CLASS ACTION COMPLAINT

1. Plaintiff Brian Glauser brings this class action complaint against Defendants Twilio, Inc. and GroupMe, Inc. to stop Defendants' practice of making unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

2. Plaintiff Brian Glauser is a natural person and citizen of the State of Virginia.

3. Defendant Twilio, Inc. is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business located at 548 Market St #14510, San Francisco, California 94104. Twilio does business throughout the United States, including in the State of California and this District.

4. Defendant GroupMe, Inc. is a corporation incorporated and existing under the laws of the state of Delaware with its principal place of business located at 26 W 17th St New York, New York 10011. GroupMe does business throughout the United States, including in the State of California and this District.

### JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

6. Venue is proper in this district under 28 U.S.C. § 1391 (a)(1-2) as Defendant Twilio resides in this District, and additionally proper because both Defendants transact business in this District, including soliciting consumers and entering into contracts with vendors.

COMPLAINT

2

## COMMON ALLEGATIONS OF FACT

### A. Bulk SMS Marketing

7. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

8. Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. A SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

9. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

### B. Defendants Send Text Messages to Consumers Who Do Not Want Them

10. The newest evolution of text message marketing has taken the form of "group messaging" applications, such as Defendant GroupMe's service, in which a single person or entity is able to create a "group" and send text messages to dozens of people at once. Likewise, a group texting service allows all the recipients to respond to all other members of the group with a single message.

11. In or around August 2010, Defendant GroupMe released a service called GroupMe, available on the Internet at GroupMe.com.

12. Defendant GroupMe is marketed as a "group texting" tool, allowing customers to simultaneously send SMS text messages to large groups of people *en masse*, using one common cellular telephone number provided by Defendant Twilio.

COMPLAINT

3

13. Defendant Twilio provides the application program interface, phone numbers, and equipment that facilitates and transmits all text messages sent by GroupMe. Twilio plays an integral role in the delivery, receipt and general transmission of each text message at issue in this case. On information and belief, Twilio monetarily benefits from each text message sent by GroupMe.

14. Using the GroupMe website or mobile application, a customer signs up, creates a "group," and then adds up to twenty-four other individuals to that group by entering their full names and cellular telephone numbers.

15. Defendants do not seek to obtain consent to be part of the group, nor does the group originator need to demonstrate consent, or even agree to gain the consent of the group members.

16. A consumer's participation in the group is opt-out, meaning that a consumer may be added to and kept in the group without authorization.

17. Once all group members receive a message, they too can respond to everyone else in the group an unlimited number of times, creating an ongoing "chat room" effect of nearly constant text messages. Because the messages come from an unknown number, and the group creator can easily input a fake name, the resulting chat room can be a chaotic storm of text messages in which people are both attempting to figure out what the group is, who the creator is, how they were put in the group, and how to stop it.

18. If a group member does not respond, he or she will eventually be removed from the group; however, GroupMe's removal does not occur until a group member has received anywhere from fifteen to thirty messages, including at least four messages directly from GroupMe.

19. The overall result of this software design is that thousands of consumers receive text messages from and through Defendant GroupMe's service that they neither consented to nor wanted.

COMPLAINT

4

### C. Defendants Harvest the Phone Numbers Submitted by Group Creators to Promote the GroupMe Service Through Text Spam

20. Additionally, a group text service opens up an opportunity for the company controlling the flow of messages, in this case Defendants, to send wireless spam to the thousands of phone numbers added by consumers who are creating groups for their own individual use.

21. In conjunction with Defendant Twilio, Defendant GroupMe is able to harvest all phone numbers added by group creators in order to independently send its own text message advertisements promoting its service and mobile application.

22. The moment a consumer creates a GroupMe texting group, but before the group creator actually tries to text anyone in the new group, every member of the group is instantly sent two text messages directly from GroupMe. GroupMe causes and Twilio transmits these text messages to the consumer.

23. These text messages include advertisements of GroupMe's service and mobile application (the "GroupMe Mobile App Text"). The GroupMe Mobile App Text contains a direct link to download the GroupMe mobile application.

24. GroupMe does not disclose the fact that the GroupMe Mobile App Text will be sent to consumers. Thus, the group creator is not informed that the GroupMe Mobile App Text will be sent and cannot control its transmission.

25. The GroupMe Mobile App Text is sent solely to benefit Defendants.

### D. Plaintiff's Experience with Defendants

26. On or about April 23, 2011, Plaintiff's cell phone rang, indicating that a text call was being received.

27. The "from" field of such transmission was identified as 804-742-4986. The phone number 804-742-4986 is owned and/or operated by Defendant Twilio, and provided by Twilio to Defendant GroupMe.

COMPLAINT

28. The body of the first text message read:

> Hi Brian Glauser, it's [group creator].
> Welcome to GroupMe!
> I just added you to "Poker" w/ [group member],
> [group member], [group member], [group member],
> [group member], [group member] & 3 more.
> Text back to join the conversation.

29. This text message was sent directly from Defendants and not initiated or consented to by Plaintiff or the group creator.

30. Almost immediately after receiving the text message alleged above, Plaintiff then received a second message, the GroupMe Mobile App Text, which read:

> GroupMe is a group texting service.
> Standard SMS rates may apply.
> Get the app at http://groupme.com/a to chat for free.
> Reply #exit to quit or #help for more.

31. This text message was sent directly from Defendants for their own benefit and not initiated or consented to by Plaintiff or the group creator.

32. Following these two messages, Plaintiff received a flurry of 7 other text messages from group members, during and after which Plaintiff did not reply or otherwise interact with the texting group.

33. Eventually, Plaintiff received the following message directly from GroupMe:

> Hey, are you there?
> GroupMe is more fun when you participate.
> We'll remove you soon unless you reply
> to the group or text #stay. Reply #exit to leave.

34. Thereafter, Plaintiff again did not reply or otherwise interact with the texting

COMPLAINT

6

group. Plaintiff received at least five more messages from the group, until finally receiving a message from GroupMe stating:

> We haven't heard from you, so we removed you
> from this group to be on the safe side.
> Don't worry though. You can always get back in
> by replying to this text.

35. At no time did Plaintiff consent to the receipt of the text messages alleged above or any other such wireless spam text messages transmitted by and through Defendants. Plaintiff did not consent to or request to be a part of the GroupMe group "Poker" prior to being removed from the group.

36. Accordingly, Plaintiff was added to a group texting service, sent fifteen text messages, and eventually removed from the group, entirely without his input or authorization.

37. By effectuating these unauthorized text message calls, Defendants have caused Plaintiff and members of the Classes actual harm. In the present case, because of the nature of GroupMe's service, a consumer could be subjected to hundreds of text messages before having an opportunity to opt out.

38. In order to redress these injuries, Plaintiff, on behalf of himself and a nationwide class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

39. On behalf of two Classes, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the members of the Classes, together with costs and reasonable attorneys' fees.

**CLASS ACTION ALLEGATIONS**

40. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure

COMPLAINT

7

23(b)(2) and Rule 23(b)(3) on behalf of himself and two Classes defined as follows:

### The Automatic Opt-Out Class

All persons who received one or more text messages from GroupMe who were automatically unsubscribed from a GroupMe group because they never opted-in.

### The GroupMe Mobile App Text Class

All persons who received the GroupMe Mobile App Text, or a substantially similar text from GroupMe, that advertised GroupMe's mobile application.

41. Excluded from both Classes are Defendants, their legal representatives, assigns, and successors, and any entity in which Defendants have a controlling interest. Further excluded are Plaintiff's attorneys. Also excluded is the judge to whom this case is assigned and the judge's immediate family, as well as any person who created a GroupMe group texting group.

42. There are thousands of members of the Classes such that joinder of all members is impracticable.

43. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Classes.

44. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

45. Defendants have acted and failed to act on grounds generally applicable to the

COMPLAINT

8

Plaintiff and the other members of the Classes in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

46. The factual and legal basis of Defendants' liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct of transmitting wireless spam.

47. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

    (a) Does the wireless spam transmitted by Defendants violate 47 U.S.C. § 227?

    (b) Are members of the Classes entitled to treble damages based on the willfulness of Defendants' conduct?

**FIRST CAUSE OF ACTION**

**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiff and both Classes)**

48. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

49. Defendants made unsolicited text calls, including the text messages in paragraphs 28, 30, 33, and 34, to the wireless telephone numbers of all members of the Classes. Each such text message call was made using equipment and software maintained, operated, and/or provided in part by Defendant Twilio, that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential

COMPLAINT

number generator.

50. These text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the Classes to receive such wireless spam.

51. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, the members of the Classes are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

52. Because Defendants had knowledge that Plaintiff and other members of the Classes did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Classes.

WHEREFORE, Plaintiff Brian Glauser, on behalf of himself and the Classes, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Glauser as the representative of the Classes; and appointing his counsel as class counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all wireless spam activities, and otherwise protecting the interest of the Classes;

4. An award of reasonable attorneys' fees and costs; and

5. Such further and other relief the Court deems reasonable and just.

COMPLAINT

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: May 27, 2011

By: _____
Sean P. Reis
EDELSON MCGUIRE LLP
One of the Attorneys for Plaintiff

SEAN REIS (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON*
(jedelson@edelson.com)
RAFEY S. BALABANIAN*
(rbalabanian@edelson.com)
CHRISTOPHER L. DORE*
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

* *Pro hac vice* Application Forthcoming

COMPLAINT

11