1  RENU R. GEORGE, CA State Bar No. 259962
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   650 Page Mill Road
3  Palo Alto, CA 94304-1050
   Telephone:  (650) 493-9300
4  Facsimile:   (650) 565-5100
   Email: RGeorge@wsgr.com
5
   TONIA OUELLETTE KLAUSNER, (*Pro hac vice*)
6  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
7  1301 Avenue of the Americas, 40th Floor
   New York, NY  10019-6022
8  Telephone:  (212) 999-5800
   Facsimile:   (212) 999-5899
9  Email: TKlausner@wsgr.com

10 GERARD M. STEGMAIER, (*Pro hac vice*)
   WILSON SONSINI GOODRICH & ROSATI
11 Professional Corporation
   1700 K Street, NW, Fifth Floor
12 Washington, D.C. 20006-3817
   Telephone:  (202) 973-8800
13 Facsimile:   (202) 973-8899
   Email: GStegmaier@wsgr.com
14
   Attorneys for Defendant
15 GROUPME, INC

16
                   UNITED STATES DISTRICT COURT
17
                   NORTHERN DISTRICT OF CALIFORNIA
18
                          OAKLAND DIVISION
19

20 BRIAN GLAUSER, individually and on behalf    )   CASE NO.:  4:11-cv-02584-PJH
   of all others similarly situated,             )
21                                               )   **DEFENDANT GROUPME, INC.'S**
                  Plaintiffs,                     )   **MOTION TO DISMISS, STAY OR**
22                                               )   **TRANSFER**
            v.                                    )
23                                               )   Complaint Filed: May 27, 2011
   TWILIO, INC., a Delaware corporation,          )   Date:          October 12, 2011
24 GROUPME, INC., a Delaware corporation,         )   Time:          9:00 a.m.
                                                  )   Courtroom:    3
25                Defendants.                      )   Judge:         Hon. Phyllis J. Hamilton
                                                  )
26                                               )
                                                  )
27 _____)

28

1

<u>**TABLE OF CONTENTS**</u>

2

<u>Page</u>

3   NOTICE OF MOTION & MOTION TO STAY, DISMISS OR TRANSFER ..............................1

4   STATEMENT OF ISSUES TO BE DECIDED................................................................................1

5   MEMORANDUM OF POINTS & AUTHORITIES .......................................................................1

6   I.      INTRODUCTION...............................................................................................................1

7   II.     BACKGROUND.................................................................................................................3

8           A.      GroupMe ................................................................................................................3

9           B.      The Telephone Consumer Protection Act of 1991 ................................................6

10          C.      This Action ............................................................................................................7

11  III.    ARGUMENT ......................................................................................................................8

12          A.      The Complaint Must be Dismissed Under Rule 12(b)(6) Because It Fails to
                    Allege Facts From Which the Court Can Infer That GroupMe Messages
13                  Plausibly Are Sent Using An Automatic Telephone Dialing System. ....................8

14          B.      The Court Should Dismiss or Stay the Case Pending Determination by the
                    FCC as to Whether the New Technology Employed by Group Text
15                  Messaging Services Violates the TCPA's Prohibition on the Use of
                    Autodialers to Make Calls Without Prior Consent................................................10
16
                    1.      The FCC was entrusted by Congress with comprehensive authority
17                          to determine whether a particular technology violates the TCPA's
                            prohibition on calls using an automatic telephone dialing system
18                          without consent. .......................................................................................12

19                  2.      Whether GroupMe's group texting service utilizes an "automatic
                            telephone dialing system" to make calls without consent is an issue
20                          of first impression that must be decided in this action.............................14

21                  3.      Currently pending before the FCC is a proceeding likely to address
                            the autodialer prohibition in the context of text messaging. ...................15
22
                    4.      Uniform administration of the TCPA requires dismissal or stay of
23                          this action pending resolution of the current FCC proceeding.................18

24          C.      In the Alternative, This Action Should be Transferred to the Eastern District
                    of Virginia pursuant to 28 U.S.C. Section 1404(a). ............................................19
25
                    1.      The action could have been brought in the Eastern District of
26                          Virginia......................................................................................................20

27                  2.      The balance of the convenience factors weighs in favor of transfer to
                            the Eastern District of Virginia. ..............................................................20
28

a.   Plaintiff's choice of forum is entitled to little if any weight. ........ 20

b.   The parties' have no contacts with California pertaining to Plaintiff's claim. .............................................................................. 21

c.   Virginia would be more convenient for the majority of parties and witnesses. .................................................................... 22

d.   It would cost less to litigate in Virginia. ...................................... 23

e.   Availability of compulsory process weighs in favor of transfer............................................................................................ 23

f.   Ease of access to proof weighs in favor of transfer...................... 23

g.   The relative congestion weighs in favor of transfer. .................... 24

3.   The interest of justice weighs in favor of transfer.................................... 24

IV.   CONCLUSION ................................................................................................ 25

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

**CASES**

4

*Alexander v. Franklin Res., Inc.*, No. 06-7121, 2007 WL 518859
    (N.D. Cal. Feb. 14, 2007) ................................................................ 20, 21

5

6

*Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54
    (N.D.N.Y. 1990) .................................................................................... 23

7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................... 8, 9

8

*B&B Hardware, Inc. v. Hargis Indus., Inc.*, No. 06-4871, 2006 WL 4568798
    (C.D. Cal. Nov. 30, 2006) ...................................................................... 24

9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................... 8, 9, 10

10

*Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166 (9th Cir. 2002) ......................... 19

11

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010)............... 11, 12, 18, 19

12

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) ................................................. *passim*

13

*Fabus Corp. v. Asiana Express Corp.*, No. 00-3172, 2001 WL 253185
    (N.D. Cal. Mar. 5, 2001) ...................................................................... 20, 25

14

*Gerin v. Aegon USA, Inc.*, No. 06-5407, 2007 WL 1033472
    (N.D. Cal. Apr. 4, 2007).......................................................................... 19, 24

15

16

*In re Long Distance Telecomm. Litig.*, 831 F.2d 627 (6th Cir. 1987)........................................ 10

17

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) ...................................... 19, 20

18

*Kappelmann v. Delta Air Lines, Inc.*, 539 F.2d 165 (D.C. Cir. 1976) ...................................... 11

19

*Knutson v. Reply!, Inc.*, No. 10-cv-1267, 2011 WL 291076
    (S.D. Cal. Jan. 27, 2011) .......................................................................... 9

20

*Lacey v. Maricopa County*, _F.3d_, 2011 WL 2276198 (9th Cir. June 9, 2011)....................... 8, 10

21

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987)........................................................................ 20

22

*Lyon v. Gila River Indian Community*, 626 F.3d 1059 (9th Cir. 2010), *petition for
    cert. filed*, 80 U.S.L.W 3058 (U.S. Jul. 15, 2011) (No. 10A1077) ................. 11

23

24

*Pac-West Telecomm., Inc. v. MCI Communications Servs., Inc.*, No. 1:10-cv-01051,
    2011 WL 1087195 (E.D. Cal. Mar. 23, 2011) ............................................. 11

25

*PRG–Schultz USA Inc. v. Gottschalks, Inc.*, No. 05-2811, 2005 WL 2649206
    (N.D. Cal Oct. 17, 2005) ................................................................ 19, 20, 22

26

27

28

*Robinson v. Midland Funding, LLC,* No. 10-cv-2261, 2011 WL 1434919
(S.D. Cal. Apr. 13, 2011) ............................................................................ 6

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005) .................................... 20, 21, 23, 24

*Syntek v. Semiconductor Co., Ltd. v. Microchip Tech. Inc.,* 307 F.3d 775
(9th Cir. 2002) ...................................................................................... 10, 11, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................. 6

*Total Telecomms. Servs., Inc. v. Am. Tel. & Tel. Co.,* 919 F. Supp. 472 (D.D.C.),
*aff'd mem.,* 99 F.3d 448 (D.C. Cir. 1996) ........................................... 10, 11

*Unimat, Inc. v. MCI Telecomms. Corp.*, No. 92-5941, 1992 WL 391421
(E.D. Pa. Dec. 16, 1992) ........................................................................... 11

*United States v. Gen. Dynamics Corp.,* 828 F.2d 1356 (9th Cir. 1987) ....................... 11

*United States v. W. Pac. R. R. Co.,* 352 U.S. 59 (1956) ............................................. 10

## STATUTES

*Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-243,
105 Stat. 2394 (1991) ......................................................................... *passim*

28 U.S.C. § 1391(b)(2) ................................................................................... 20

28 U.S.C. § 1404(a) ................................................................................ 1, 3, 19

47 U.S.C. § 258(a) ......................................................................................... 11

## RULES

47 C.F.R. § 64.1200(f) ................................................................................. 13

Fed. R. Civ. P. 8(a)(2) .................................................................................... 8

Fed. R. Civ. P. 12(b)(6) .................................................................................. 8

Fed. R. Civ. P. 45(b)(2) ................................................................................ 23

## MISCELLANEOUS

15 Charles Allan Wright, et al., FEDERAL PRACTICE AND PROCEDURE,
JURISDICTION 3d § 3851 (3d ed. 2006) ...................................................... 22

137 Cong. Rec. S18317-01 (1991) .................................................................. 6

137 Cong. Rec. S18784 (1991) ..................................................................... 12

*FCC Public Notice*, 24 FCC Rcd 13635 (CGB 2009) ........................................ 13, 17

H.R. Rep. No. 101-633 (1990) ....................................................................... 6

H.R. Rep. No. 102-317 (1991) ........................................................................... 6

S. Rep. No. 102-178 (1991) ............................................................................. 6

Comments of Sprint Nextel, CG Docket No. 02-278 (filed May 21, 2010) ................................ 16

Comments of the United Parcel Service, Inc. in Response to Global Tel*Link
       Corporations Petition for Declaratory Ruling (filed July 15, 2010) ................................. 17

Comments of Wells Fargo & Co. (filed May 21, 2010) ...................................... 16

Notice of *Ex Parte* Presentation to Marlene Dortch, FCC, from Michele Farquhar,
       Counsel to Encore Capital Group, Inc., May 5, 2011 ............................................. 16

Reply Comments of the Cargo Airline Association, CG Docket No. 02-278 (filed
       June 21, 2010) ................................................................................. 16, 17

Reply Comments of CTIA, CG Docket No. 02-278 (filed June 21, 2010) ................................. 16

Reply Comments of J.P. Morgan Chase & Co., CG Docket No. 27-278 (filed June
       21, 2010) ....................................................................................... 16

Reply Comments of PRA, CG Docket No. 02-278 (filed June 21, 2010) ................................. 16

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
       1991*, 18 FCC Rcd 14014 ............................................................ 13, 14, 18

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
       1991*, 19 FCC Rcd 19215 ....................................................................... 13

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
       1991*, 7 FCC Rcd 8752 (1992) .................................................................. 13

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
       1991*, CG Docket No. 02-278, *Notice of Proposed Rulemaking*, 25 FCC Rcd
       1501 (2010) .................................................................................... 15

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
       1991,* Notice of Proposed Rulemaking and Memorandum Opinion and
       Order, 17 FCC Rcd 17459 (2002) ............................................................. 13

Soundbite Communications Comments, CG Docket No. 02-278
       (filed May 21, 2010) .......................................................................... 15

**NOTICE OF MOTION & MOTION TO STAY, DISMISS OR TRANSFER**

Please take notice that on October 12, 2011 at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Phyllis J. Hamilton, Defendant GroupMe, Inc. ("GroupMe") will and hereby does move to stay or dismiss Plaintiff, Brian Glauser's Complaint.  In the alternative, GroupMe will and hereby does move to transfer the case to the Eastern District of Virginia, Richmond Division.  GroupMe's motion is based on this notice, the accompanying memorandum of points and authorities, the declarations of Tonia Ouellette Klausner ("Klausner Decl.") and Steve Martocci ("Martocci Decl."), accompanying exhibits, the proposed order, the accompanying request for judicial notice, the pleadings, arguments of counsel and any other matters that the Court deems appropriate.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Does the Complaint allege any facts from which it is not just possible, but also plausible that GroupMe makes calls utilizing an "automatic telephone dialing system" as defined by the Telephone Consumer Protection Act, as incorporated in section 227 of the Communications Act of 1934, 47 U.S.C. § 227 (hereinafter collectively the "TCPA")?

2.  Should this case be stayed or dismissed pursuant to the doctrine of primary jurisdiction pending determination by the Federal Communications Commission ("FCC" or the "Commission") as to whether informational text messages sent to cell phone numbers provided by friends and family of the recipient constitute calls made using an automatic telephone dialing system without consent that are prohibited by the TCPA?

3.  In the alternative, should this case be transferred pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses to the Eastern District of Virginia, Richmond Division where the plaintiff and numerous third-party witnesses reside?

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.     INTRODUCTION**

1       By way of this putative class action, Plaintiff Brian Glauser ("Plaintiff"), tries to fit the

2  proverbial square peg into a round hole.  He has sued under the TCPA—a statute designed to

3  eliminate specific telemarketing practices utilizing specific telemarketing equipment, such as

4  robo-calls to randomly generated or sequentially dialed telephone numbers, that Congress found

5  both an invasion of consumer privacy, and a risk to public safety due to such calls interfering

6  with the lines of emergency services.  But the primary defendant in the action—GroupMe—is

7  not a telemarketer.  Rather, GroupMe is a start-up group texting social networking service used

8  by families and friends to easily communicate with each other through group texts to a single

9  phone number assigned to the group.  Far from the unsolicited autodialed telemarketing calls that

10  Congress sought to eliminate, the allegedly unlawful calls here are informational text messages

11  sent to GroupMe users via the wireless phone numbers provided by their friends and families so

12  that they know: how to stop receiving unwanted texts; how to avoid text messaging charges; that

13  they will be removed from a GroupMe group if they do not participate after a certain time; and

14  how to rejoin a group once removed.  Because there is not a single factual allegation in the

15  Complaint from which this Court could reasonably infer that GroupMe plausibly made any call

16  to Plaintiff using the specific telemarketing equipment required for Plaintiff to state a claim

17  under the TCPA, the Complaint must be dismissed for failure to state a claim.

18       Even if the Complaint did state a claim, dismissal or stay would still be warranted under

19  the doctrine of primary jurisdiction.  Plaintiff's claim requires determination of an issue of first

20  impression regarding the application of the TCPA—the interpretation of which has been

21  entrusted by Congress to the Federal Communications Commission ("FCC")—to the new

22  technology utilized by GroupMe and many other new group texting services.  Courts routinely

23  dismiss or stay cases so that the FCC can clarify the meaning of language within its statutory

24  purview in the context of a new technology, a practice that has been endorsed by the Ninth

25  Circuit under analogous circumstances.  *See Clark v. Time Warner Cable*, 523 F.3d 1110 (9th

26  Cir. 2008).  Moreover, currently pending is an open rulemaking proceeding in which the scope of

27  the TCPA's prohibition on the use of an "automatic telephone dialing system" to make

28

1   unsolicited calls in light of technological advances in automated dialing technologies is squarely

2   before the FCC.  The FCC has also been presented with the issue of whether consent to receive

3   informational text messages should be deemed given when a third-party's wireless phone

4   number is provided to a business by its customer with the understanding that such texts would be

5   sent to the third party.  Because the FCC has been uniquely tasked by Congress and possesses the

6   specialized expertise to determine these issues in the first instance, the Court should dismiss the

7   action without prejudice, as was done and affirmed in *Clark*.

8          Finally, if the case proceeds, it should do so in the Eastern District of Virginia, Richmond

9   Division, as the venue most convenient for the majority of the parties and witnesses and in the

10  interests of justice.  Plaintiff, a Virginia resident, could have brought the action there, and

11  appears to have filed in this Court only because of some perceived advantage in this forum.

12  Each of the convenience factors other than Plaintiff's choice of forum weighs in favor of

13  transfer, and under the circumstances of this action, that choice is entitled to little if any

14  deference.  Thus, if the Court declines to dismiss the Complaint at this time, GroupMe

15  respectfully requests that the Court exercise its discretion and transfer the action to the Eastern

16  District of Virginia, Richmond Division pursuant to 28 U.S.C. § 1404(a).

17  **II.     BACKGROUND**

18          **A.     GroupMe[1]**

19          GroupMe Inc., ("GroupMe") was founded in New York, New York, in June 2010, by

20  Jared Hecht and Steve Martocci, and stemmed from their desire to create a group messaging

21  system that would allow them to better communicate with each other and friends at music

22  festivals.  Martocci Decl. ¶ 4.  Martocci built the initial prototype of GroupMe.  *Id.* ¶ 2.

23  GroupMe is based on a simple idea—create the easiest way for people to start conversations and

24  keep in touch with their families, friends and real life network using private Short Message

25  
_____

26      [1] GroupMe provides this background for purposes of its second and third arguments (primary
    jurisdiction and transfer) only.  Its 12(b)(6) motion is limited to the four corners of the
27  Complaint.

28
    GROUPME INC.'S MOTION TO DISMISS, STAY OR     -3-
    TRANSFER
    CASE NO. 4:11-CV-02584-PJH

Service ("SMS") groups.  In the short time since its inception, GroupMe has been used to develop and communicate between a wide range of SMS groups such as cancer support groups, neighborhood crime watches and student organizations, to name just a few.  *Id.* ¶ 5.

GroupMe works in the following manner.  A user must register for GroupMe by visiting www.groupme.com and type in their name, wireless phone number and email address.  Compl. ¶ 14; Martocci Decl. ¶ 7.  Groups are then created when each group creator manually adds an individual phone number to their group by dialing the digits for each phone number he or she intends to be part of the group.  Compl. ¶ 14.  Messages are sent using the SMS protocol which limits the length of each message to 160 characters.  Martocci Decl. ¶ 10.  As a result, individual communications may be split into more than one text message.  *Id.*  To finish registration, a new user receives a confirmation code and welcome text message via text message that says something like:  "Welcome to GroupMe! Group texting, calling & more.  Your confirmation code is MQZTP.  Msg. & data rates may apply."  Martocci Decl. ¶ 8.  All text messages sent by group members to that group phone number are simultaneously delivered to all group members.  Compl. ¶ 17.  GroupMe has an agreement with Twilio, who provides GroupMe with the group phone numbers.  *Id.* ¶ 13.  Twilio provides connectivity to traditional telephone networks and the Internet through application programming interfaces ("APIs").  Martocci Decl. ¶ 14.  Every GroupMe message is sent via the Internet to Twilio's systems and the Twilio-provisioned phone number.  GroupMe uses Twilio's services to ensure that all group text messages are routed and delivered directly to the correct users.  *Id.*

In order for the service to function properly and to help users to avoid unwanted messages and texting charges, GroupMe explains to group members how to be removed from a group, the availability of the Internet application, and, that if the recipient does not participate in a group to which they were added, they will be removed.  Compl. ¶¶ 18, 34, 36.  Instead of subscribing via text message, users can download the GroupMe Internet and receive push notifications via the Internet on their smart phone rather than through text messages.  Martocci Decl. ¶ 12.  The GroupMe app specifically helps users that would prefer not to receive text

1   messages to still participate in groups but avoid additional service limitations (such as geography

2   or costs) associated with particular SMS plans of their carrier.  *Id*.  In fact, 40% of GroupMe

3   messages are delivered by the app rather than via text message.  *Id*.  GroupMe has never sent any

4   "blast" message to all GroupMe users.  *Id.* ¶ 13.  As it is currently configured, GroupMe's

5   system is not technologically capable of sending "blast" SMS messages to all GroupMe users.

6   *Id*.

7          Telephone numbers that receive communications through GroupMe are added only by

8   group creators or members of an existing group.  Compl. ¶ 14.  Each group is individually

9   created by the individual group creator.  Martocci Decl. ¶ 8.  The sole purpose of GroupMe is to

10  enable individuals to communicate with organically-developed groups *that users create*

11  *themselves.*  For instance, GroupMe is most commonly used to enable family and similar small

12  group communication—indeed, the most common names [on the service] are "Mom" and "Dad."

13  *Id.* ¶ 5.  Yet, GroupMe has far reaching applications beyond friendly communication among

14  families and friends.  For instance, at the end of April, when an outbreak of tornadoes devastated

15  towns in the southern United States region, shutting down power and landlines and congesting

16  data networks, people were able to use GroupMe to check in with family and friends.  *Id.* ¶ 17.

17  Similarly, neighborhood watch groups have utilized GroupMe to communicate emergencies such

18  as home invasions and car thefts that were in progress.  As GroupMe grows the company is

19  adding new features to change the way that individuals communicate with their surrounding

20  communities.  *Id.*

21         GroupMe is not a marketing service or tool.  Indeed, GroupMe has implemented

22  numerous policies and procedures intended to preclude use of the service for marketing

23  purposes.  For example, GroupMe limits the size of each GroupMe group size to 25 members in

24  order to prevent spamming.  Compl. ¶ 14; Martocci Decl. ¶ 18.  It also has rules prohibiting

25  spamming.  And, it limits the number of GroupMe groups that may be created by someone from

26  the same IP address.  Martocci Decl. ¶ 18.

27

28

### B.      The Telephone Consumer Protection Act of 1991

The TCPA became law nearly 20 years before the founding of GroupMe, at the dawn of the Internet, and long before recent innovations in text messaging.  The TCPA amended Title II of the Communications Act of 1934 by adding a new section 227 to address certain telemarketing practices that Congress found to be an invasion of consumer privacy and a risk to public safety.  *See Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-243, 105 Stat. 2394 § 2(5) (1991) (codified at 47 U.S.C. § 227).  The TCPA does not regulate all calls.  Rather, the applicable section of the TCPA applies only where the defendant places a call without prior consent using equipment that constitutes an "automatic telephone dialing system" – meaning equipment that has the capacity to *unilaterally and automatically generate* the called numbers:

(1) The term "automatic telephone dialing system" means equipment which has the capacity—

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.

47 U.S.C. § 227(a)(1).  The TCPA's legislative history reveals Congress's concern that intrusive telemarketing calls might reach unlisted phone numbers, hospitals, or public emergency organizations using randomly or sequentially-generated phone numbers.  *See* Exs. B[2] (137 Cong. Rec. S18317-01 (1991)); C (H.R. Rep. No. 101-633 (1990)); D (S. Rep. No. 102-178, at 2 (1991)); E (H.R. Rep. No. 102-317, at 10 (1991)).[3]  Through the TCPA, Congress thus regulated the use of equipment that could (1) randomly generate possible numbers in any order, or generate possible numbers sequentially, such as 111-1111, 111-1112, 111-1113, and (2) call such numbers.  Thus, calls to wireless telephone numbers do not violate the TCPA unless they are

---

[2] All of the exhibits ("Ex. _") are attached to the Klausner Declaration.

[3] On a motion to dismiss, the Court may consider "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Court may take judicial notice of the proposed rulemaking and comments submitted to the FCC.  *See, e.g., Robinson v. Midland Funding, LLC,* No. 10-cv-2261, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011).

1  made using such an autodialer or an artificial or prerecorded voice.  47 U.S.C. §§ 227(a)(1),

2  227(b)(1)(A)(iii).

3  **C.**   **This Action**

4  The Complaint asserts one cause of action for alleged violations of subsection

5  (b)(1)(A)(iii) of the TCPA.  As set forth above, that provision generally makes it unlawful to

6  make any call without prior consent to any wireless phone "using any automatic telephone

7  dialing system or an artificial or prerecorded voice."  47 U.S.C. § 227(b)(1)(A)(iii).[4]

8  The Complaint alleges that Plaintiff received four text messages violating the TCPA: (1)

9  a welcome text indicating that a group creator (presumably Plaintiff's friend) had added Plaintiff

10  to a "Poker" group (Compl. ¶ 28); (2) immediately thereafter a second message explaining how

11  to exit the group and avoid text messaging charges by using the GroupMe Internet app (*id.* ¶ 30);

12  (3) subsequently, in response to Plaintiff's inactivity, a message informing Plaintiff that he

13  would be removed if he did not participate and again explaining how to exit the group

14  immediately (*id.* ¶¶ 32-33); and (4) after Plaintiff again neither participated in the group nor

15  requested immediate removal, a message stating that GroupMe removed him from the group to

16  be on the safe side (*id.* ¶ 34).  Plaintiff complains about the text messages he received from

17  members of the "Poker" group, (Compl. ¶¶ 32, 34-36), but he does not appear to base his claim

18  on those messages.  *See id.* ¶ 49.  Regarding the required use of a random or sequential number

19  generator, the Complaint contains a single conclusory allegation that each of these text messages

20  was made using equipment and software "that, upon information and belief, had the capacity to

21  store or produce telephone numbers to be called, using a random or sequential number

22  generator."  *Id.*

23

24

25  _____

26  [4] While Plaintiff alleges that the TCPA "prohibits unsolicited voice and text calls to cell
phones" without qualification, (Compl. ¶ 38) the subsection at issue—entitled "Restrictions on
use of automated telephone equipment"—makes clear that the TCPA only prohibits calls that are

27  made using such equipment.  47 U.S.C. § 227(b)(1)(A)(iii).

28

1

2

3

## III.   ARGUMENT

### A.   The Complaint Must be Dismissed Under Rule 12(b)(6) Because It Fails to Allege Facts From Which the Court Can Infer That GroupMe Messages Plausibly Are Sent Using An Automatic Telephone Dialing System.

4      A complaint should be dismissed when it "fail[s] to state a claim upon which relief can be

5   granted."  Fed. R. Civ. P. 12(b)(6).  In determining whether a Complaint states a claim under

6   Rule 12(b)(6) and Rule 8's requirement that a complaint set out "a short and plain statement

7   showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), the Supreme Court has

8   articulated a two-step analysis.  *First*, a court must disregard conclusory allegations and bare

9   recitations of the elements of a claim.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

10  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

11  statements, do not suffice."); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("a

12  plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

13  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

14  do").  *Second*, the court must determine whether the well-pleaded factual allegations state a

15  claim that is "plausible," as opposed to merely "possible."  *See Iqbal*, 129 S. Ct. at 1950;

16  *Twomby*, 550 U.S. at 556, 570.  This standard requires factual allegations demonstrating more

17  than a mere possibility that the defendant has acted unlawfully.  *See Iqbal*, 129 S. Ct. at 1949.

18  Where the well-pleaded facts are equally consistent with the defendant's being liable and not

19  liable, then the plaintiff has not shown entitlement to relief and the complaint must be dismissed.

20  *See id.* at 1949-50; *Twombly*, 550 U.S. at 570; *see also Lacey v. Maricopa County*, _F.3d_, 2011

21  WL 2276198, at *14 (9th Cir. June 9, 2011) (affirming dismissal of claim where complaint failed

22  to provide enough factual content to permit reasonable inference of unlawful conduct).

23      The instant Complaint contains the epitome of a "threadbare recital of elements," which

24  is insufficient to state a claim.  *Iqbal,* 129 S. Ct. at 1950.  Specifically, the Complaint does not

25  contain a single factual allegation from which it is "plausible" that GroupMe made calls to

26  Plaintiff using the specific telemarketing equipment required for a claim under the TCPA--

27  "equipment which has the capacity – (A) to store or produce telephone numbers to be called,

28

1   using a random or sequential number generator; and (B) to dial such numbers." *See* 47 U.S.C.

2   § 227(a)(1).  The sole allegation concerning the technology used by GroupMe to facilitate the

3   sending of the informational text messages at issue to plaintiff is that such messages were sent

4   "using equipment and software maintained, operated, and/or provided in part by Defendant

5   Twilio, that, upon information and belief, had the capacity to store or produce telephone numbers

6   to be called, using a random or sequential number generator."  Compl. ¶ 49.  This conclusory

7   assertion merely tracks the first half of the definition of "automatic telephone dialing system"—

8   an element of the claim.  *See* 47 U.S.C. §§ 227(a)(1); 227(b)(1)(A).  Thus, under *Iqbal* and

9   *Twombly*, it must be disregarded.

10       Once the Court disregards the single conclusory allegation in Paragraph 49, there are no

11   well-pleaded factual allegations from which the Court could plausibly infer that text messages

12   sent utilizing GroupMe and delivered via Twilio are sent using such equipment.  While the

13   Complaint makes general references to wireless spam and marketing messages sent in bulk to

14   wireless phones (*see, e.g.*, Compl. ¶¶ 7-8, 10, 20), the factual allegations regarding the actual

15   GroupMe messages received by Plaintiff reflect that they are personal messages, sent to specific

16   users for a specific purpose helpful to that user, and sent only because someone who knows

17   Plaintiff provided his wireless phone number to GroupMe when adding Plaintiff to his "Poker"

18   group.  *See id.* ¶¶ 28, 30, 33, 34.  There is nothing about these messages that suggests they were

19   sent using a random or sequential number generator.  At best, from the Complaint's allegations it

20   is equally possible that the software and equipment used to send GroupMe messages does or

21   does not have "the capacity – (A) to store or produce telephone numbers to be called, using a

22   random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1)

23   Accordingly, Plaintiff's TCPA claim must be dismissed for failure to state a claim.  *Knutson v.*

24   *Reply!, Inc.,* No. 10-cv-1267, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) (dismissing

25   TCPA claim where, after disregarding conclusory assertion, no facts alleged from which court

26   could infer calls were made using automatic telephone dialing system); *see Iqbal*, 129 S. Ct. at

27   1949-50 (where well-pleaded facts are equally consistent with the defendant's being liable and

28

1  not liable, then the plaintiff has not shown entitlement to relief and the complaint must be

2  dismissed); *Twombly*, 550 U.S. at 570; *Lacey*, 2011 WL 2276198, at *14.

3  **B.   The Court Should Dismiss or Stay the Case Pending Determination by the FCC as to Whether the New Technology Employed by Group Text Messaging Services Violates the TCPA's Prohibition on the Use of Autodialers to Make Calls Without Prior Consent.**

4

5

6   Plaintiff's claim raises issues that Congress has committed to the expertise of the FCC.

7  Because they are issues of first impression and implicate the application of the TCPA to a new

8  technology, this Court should dismiss or stay the case until the FCC's guidance can be obtained

9  pursuant to the doctrine of primary jurisdiction.  That doctrine allows courts to dismiss or stay an

10  action pending resolution of an issue within the special competence of an administrative agency.

11  *See, e.g., Clark*, 523 F.3d at 1114; *Syntek v. Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,

12  307 F.3d 775, 780 (9th Cir. 2002).  Courts invoke the doctrine of primary jurisdiction when "an

13  otherwise cognizable claim implicates technical and policy questions that should be addressed in

14  the first instance by the agency with regulatory authority over the relevant industry rather than by

15  the judicial branch."  *Clark,* 523 F.3d at 1114.  While the doctrine should not be applied

16  whenever a court is presented with an issue within an agency's field, it should be invoked where

17  "a claim requires resolution of an issue of first impression, or of a particularly complicated issue

18  that Congress has committed to a regulatory agency."  *Id.* at 1114 (citations omitted).  In doing

19  so, courts are able to "promote uniformity in the regulation of businesses entrusted to such

20  agencies and to obtain the benefit of the expertise and experience of the agencies."  *In re Long*

21  *Distance Telecomm. Litig.,* 831 F.2d 627, 631 (6th Cir. 1987); *see Total Telecomms. Servs., Inc.*

22  *v. Am. Tel. & Tel. Co.,* 919 F. Supp. 472, 478 (D.D.C.) ("The primary jurisdiction doctrine is

23  premised on a desire for uniform outcomes"), *aff'd mem.,* 99 F.3d 448 (D.C. Cir. 1996).

24   The Supreme Court has recognized that "[n]o fixed formula exists for applying the

25  doctrine of primary jurisdiction."  *United States v. W. Pac. R. R. Co.,* 352 U.S. 59, 64 (1956).

26  However, courts in this Circuit traditionally consider four factors in deciding whether to apply

27  the doctrine:

28

1

(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

2

3

4    *Syntek,* 307 F.3d at 781 (affirming application of primary jurisdiction in context of issue of first

5    impression under Copyright Act) (citing *United States v. Gen. Dynamics Corp.,* 828 F.2d 1356

6    (9th Cir. 1987)).  Invocation of the doctrine is especially appropriate where an action presents an

7    issue of first impression regarding the application of a statute to a new technology.  *See Clark*,

8    523 F.3d at 1115 ("[W]e have previously approved of the use of the primary jurisdiction doctrine

9    where it is unclear whether a federal statute applies to a new technology.").  That an agency is

10   already considering matters bearing on the issue further justifies application of the doctrine.  *See*

11   *id.; Lyon v. Gila River Indian Community*, 626 F.3d 1059, 1075-76 (9th Cir. 2010), *petition for*

12   *cert. filed,* 80 U.S.L.W 3058 (U.S. Jul. 15, 2011) (No. 10A1077); *Kappelmann v. Delta Air*

13   *Lines, Inc.*, 539 F.2d 165, 171-72 (D.C. Cir. 1976).

14            The doctrine of primary jurisdiction has been invoked repeatedly by courts when faced

15   with issues requiring construction of statutes administered by the FCC.  *See, e.g., Charvat v.*

16   *EchoStar Satellite, LLC,* 630 F.3d 459 (6th Cir. 2010); *Pac-West Telecomm., Inc. v. MCI*

17   *Communications Servs., Inc.*, No. 1:10-cv-01051, 2011 WL 1087195, at *2 (E.D. Cal. Mar. 23,

18   2011); *Total Telecomm. Services*, 919 F. Supp. at 478; *Unimat, Inc. v. MCI Telecomms. Corp.*,

19   No. 92-5941, 1992 WL 391421, at *2 (E.D. Pa. Dec. 16, 1992).  For example, in *Clark v. Time*

20   *Warner Cable*, 523 F.3d 1110 (9th Cir. 2008), the Ninth Circuit affirmed the district court's

21   dismissal of an action without prejudice based on the FCC's primary jurisdiction over an issue

22   entrusted by Congress to the expertise of the FCC.  Specifically, the complaint alleged that the

23   defendant violated 47 U.S.C. § 258(a), which prohibits the practice in which a

24   telecommunications carrier "slams" or switches a consumer's phone service without consent.

25   *See* 523 F.3d at 1112.  The statute's prohibitions only applied to "telecommunications carriers,"

26   and the defendant was a VoIP provider, thus the court was squarely confronted with the novel

27   issue of whether a VoIP provider—a new technology— met the definition of a

28   "telecommunications carrier" under the statute.  *Id.* at 1112-13.  After setting forth the applicable

1   standard for invocation of the doctrine of primary jurisdiction, the Court concluded that it had

2   been applied properly by the district court.  It explained that the FCC had been entrusted by

3   Congress under the Telecommunications and Communications Acts with comprehensive

4   regulatory authority, and an issue before the court raised a novel question regarding the

5   application of a statute under the authority of the FCC to a new technology.  *Id.* at 1115-16.

6   Additionally, the FCC was actively considering how it would regulate the new VoIP technology

7   at the same time.  *Id.* at 1115.  For all of those reasons, it was appropriate for the district court to

8   dismiss the action without prejudice.  *Id.* at 1115-16.  The same result for the same reasons is

9   warranted here.

10              **1.     The FCC was entrusted by Congress with comprehensive authority to
                      determine whether a particular technology violates the TCPA's
11                    prohibition on calls using an automatic telephone dialing system
                      without consent.**

12              There can be no real dispute that Congress has placed the interpretation and enforcement

13   of the TCPA's automatic telephone dialing system restrictions within the primary jurisdiction of

14   the FCC.  As explained by the Sixth Circuit*:*

15

16              Congress vested the FCC with considerable authority to implement the [TCPA].
                The Act gives the agency power to "prescribe regulations to implement" the
17              legislation, 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2), to exempt calls from the
                requirements of the Act, *id.* §§ 227(b)(2)(B), 227(b)(2)(C), to intervene in suits
18              filed by state attorneys general, *id.* § 227(f)(3), and to enforce the provisions of the
                Act and its accompanying regulations, *see, e.g.,* 22 FCC Rcd 19396 (Nov. 9, 2007);
19              20 FCC Rcd 18272 (Nov. 23, 2005).  In addition to these law-making and law-
                enforcing powers, the FCC has interpretive authority over the . . . Act, *see Chevron,*
20              *USA, Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843-44, 104 S. Ct.
                2778, 81 L. Ed. 2d 694 (1984), and its accompanying regulations, *see Auer v.*
21              *Robbins,* 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) . . . ."

22   *Charvat,* 630 F.3d at 466-67.  Further, the legislative history of the TCPA makes clear that

23   Congress intended to give the FCC "the flexibility to consider what rules should apply to future

24   technologies as well as existing technologies."  Ex. F at 7 (137 Cong. Rec. S18784 (1991)).  It

25   also intended that the FCC "have the flexibility to design different rules for those types of

26   automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy,

27   or for noncommercial calls, consistent with the free speech protections embodied in the First

28

1   Amendment of the Constitution." *Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-

2   243, 105, sec. 2(13)).

3          In accordance with its comprehensive congressional authority under the TCPA, the FCC

4   has been called upon repeatedly to determine the scope of the TCPA and related implementing

5   regulations in light of advancing technology.  The first FCC regulations implementing the

6   autodialer prohibition were written in 1992 and essentially adopted, verbatim, the relevant

7   language of the TCPA.  *See* Ex. G (*Rules and Regulations Implementing the Telephone*

8   *Consumer Protection Act of 1991*, 7 FCC Rcd 8752 (1992)); 47 C.F.R. § 64.1200(f).  Since then,

9   the FCC has reviewed and provided guidance on the application of the TCPA's autodialer

10  prohibition in the context of different technologies.  *See, e.g.,* Ex. H (*Rules and Regulations*

11  *Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd 14014, 14091-94

12  (Report and Order, 2003) (*"2003 TCPA Order"*) (excluding wireless calls from the prohibition if

13  the recipient is not charged for the call)); Ex. I (*Rules and Regulations Implementing the*

14  *Telephone Consumer Protection Act of 1991,* 19 FCC Rcd 19215 (Order, 2004) (exempting from

15  autodialer prohibition wireless numbers recently ported from wireline service)); *see also* Ex. J

16  (*FCC Public Notice*, 24 FCC Rcd 13635 (CGB 2009) (seeking comment on petition for

17  declaratory ruling on treatment of text broadcasters under TCPA)).

18         For example, in the proceeding that resulted in the *2003 TCPA Order*, the FCC asked for

19  comment on the application of the automatic telephone dialing system prohibition to "predictive

20  dialers" and other new technology that "dials numbers automatically, either by producing 10-

21  digit telephone numbers arbitrarily or generating them from a database of existing telephone

22  numbers."  Ex. K at 8 (*Rules and Regulations Implementing the Telephone Consumer Protection*

23  *Act of 1991,* Notice of Proposed Rulemaking and Memorandum Opinion and Order, 17 FCC Rcd

24  17459, 17474 (2002) (*"2002 TCPA NPRM"*)).  Ultimately, the FCC determined that "a

25  predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing

26

27

28

1    equipment' and the intent of Congress." Ex. H at ¶ 133.[5]  Notably, the FCC anticipated the

2    continued need for uniformity and its special role when it acknowledged that:  "We fully expect

3    automated dialing technology to continue to develop."  *Id.* ¶ 132.

4              Despite these proceedings, the FCC has yet to determine whether SMS and text-based

5    services (including group texting services) that are used to send information to a person whose

6    phone number was provided to the service by someone with a relationship with such person,

7    utilize technology that amounts to an autodialer, and otherwise fall within the scope of the

8    TCPA's prohibition on calls made without consent using an automatic telephone dialing system.

9    As described more fully below, currently pending before the FCC is a proceeding likely to

10   address these issues.  These past and present proceedings confirm that Congress entrusted the

11   FCC with primary authority to determine whether new automated dialing technology that utilizes

12   phone numbers provided by persons with a relationship to the recipient of a text message fall

13   within the scope of prohibited non-consensual calls made using an "automatic telephone dialing

14   system" under the TCPA.

15              **2.    Whether GroupMe's group texting service utilizes an "automatic
                        telephone dialing system" to make calls without consent is an issue of
16                      first impression that must be decided in this action.**

17              This action places squarely before the Court the construction of the TCPA's "automated

18   telephone dialing system" prohibition in the context of a new technology.  As explained above,

19   Plaintiff claims that text messages sent using the GroupMe service violate Section

20   227(b)(1)(A)(iii) of the TCPA.  The Complaint alleges that each text message sent to Plaintiff

21   through the GroupMe texting service was made using equipment and software "that, upon

22   information and belief, had the capacity to store or produce telephone numbers to be called,

23   using a random or sequential number generator."  Compl. ¶ 49.  This language tracks the

24   _____

25       [5] In this same order, the FCC considered telemarketing to wireless services including
     wireless phones.  It concluded that SMS messages were "calls" within the meaning of the
26   TCPA's prohibition on non-emergency, non-consensual calls to wireless telephones using an
     autodialer.  But it declined to prohibit live telemarketing calls to cell phones finding that
27   consumers had an easy means of opting out of such calls.  Ex. H ¶ 166.

28

1   definition of "automatic telephone dialing system."  *See* 47 U.S.C. § 227(a)(1).  What this

2   definition means in the context of a group texting service—where individuals provide the service

3   with all wireless phone numbers to be called, group text messages to those numbers are sent

4   simultaneously to all members of the group through an automated process, and group member

5   activity or lack of activity triggers individually directed informational messages from the

6   service—is an issue of first impression that must be decided to resolve Plaintiff's claim.

> ### 3.   Currently pending before the FCC is a proceeding likely to address the autodialer prohibition in the context of text messaging.

7

8           The FCC's efforts to refine the scope of the autodialer prohibition continue to this day.

9   Currently before the FCC is a rulemaking proceeding likely to address the autodialer definition

10  itself and the meaning of consent in relation to informational text messages sent to persons

11  whose wireless phone numbers were provided by their family or friends.  In a Notice of

12  Proposed Rulemaking released in January 2010, the FCC proposed certain changes to its TCPA

13  rules, including imposing an express written consent requirement for certain telemarketing calls,

14  including calls to wireless telephones using an autodialer.  Ex. L (*Rules and Regulations

15  Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, *Notice

16  of Proposed Rulemaking*, 25 FCC Rcd 1501, 1510 (2010)).  As one commenter noted, "[w]hether

17  intended or not, the proposed blanket application of the proposed rule to all calls described in

18  section §227(b)(1)(A) would significantly alter the Commission's current 'prior express consent'

19  requirement applicable to autodialed and prerecorded informational calls to wireless telephones."

20  Ex. M (Soundbite Communications Comments, CG Docket No. 02-278, at 6 (filed May 21,

21  2010)).  This comment further pointed out that the FCC exempts informational messages in

22  connection with autodialed and prerecorded calls to residential lines from the TCPA's

23  restrictions, but the FCC notice had not considered that such an exemption does not currently

24  apply to wireless calls made using an autodialer.  *Id.* at 5-6.

25          In connection with the proceeding, a number of commenters have asked the FCC to

26  refine the definition of automatic telephone dialing system in light of significant advances in

27  automated dialing technology.  For example, J.P. Morgan stated:

28

1

> [T]he Commission should reassess its prior decisions and clarify that an automated dialing technology must actually use a random or sequential number generator to come within the TCPA definition. Thus, loading existing customer telephone numbers onto the equipment without the random or sequential generation and dialing capability activated would not be deemed the use of an autodialer.

2

3

4   Ex. N (Reply Comments of J.P. Morgan Chase & Co., CG Docket No. 27-278, at 5 (filed June

5   21, 2010)).  Wells Fargo similarly commented that the FCC's prior interpretation of the

6   autodialer definition:

7

> [L]eads to the unacceptable result that the definition of "automated telephone dialing system" expands without limits as technology advances.  The "capacity to store or produce telephone number," once a rare functionality, has become commonplace among numerous consumer electronics products, including the ubiquitous smartphone.  Likewise, businesses use devices that feature a broad range of storage and dialing capacities, not all of which might be used in calling campaigns.  If the autodialer restriction is activated by any use of a system with this dormant "capacity," then businesses and ordinary consumers are unwittingly violating this law every day.

8

9

10

11

12   Ex. U (Comments of Wells Fargo & Co., at 20 (filed May 21, 2010)).  The Encore Capital Group

13   similarly has asked for clarification of the definition of "automated telephone dialing system."

14   Ex. O (Notice of *Ex Parte* Presentation to Marlene Dortch, FCC, from Michele Farquhar,

15   Counsel to Encore Capital Group, Inc., May 5, 2011 ("Encore Filing), at 1).

16         Several other commenters have raised the issue of how text messages to wireless devices

17   should be treated under the TCPA.  Ex. P (Reply Comments of CTIA, CG Docket No. 02-278, at

18   2-3 (filed June 21, 2010)); Ex. Q (Comments of Sprint Nextel, CG Docket No. 02-278, at 5-6

19   (filed May 21, 2010)).

20         Moreover, a number of parties have urged the FCC to conform its rules to the underlying

21   purpose of the TCPA – to prevent unwanted telemarketing.  For example, Portfolio Recovery

22   Associates LLC ("PRA") urged the FCC to "modify the language of the proposed rule to clarify

23   that the new prior written consent requirement applies only to 'telemarketing' or 'telephone

24   solicitation' calls."  Ex. R (Reply Comments of PRA, CG Docket No. 02-278, at 2 (filed June 21,

25   2010)); *accord* Ex. O (Encore Filing ).  The Cargo Airline Association requested that the new

26   rule apply only to telemarketing and not cover "commercial calls that do not solicit business."

27   Ex. S (Reply Comments of the Cargo Airline Association, CG Docket No. 02-278, at 2 (filed

28

1    June 21, 2010)); *see also* Ex. J (*FCC Public Notice*, 24 FCC Rcd 13635 (CGB 2009)) (seeking

2    comment on a petition for declaratory ruling filed by Club Texting, Inc. on the treatment of text

3    broadcasters under the TCPA).

4           Finally, United Parcel Service ("UPS") has asked the FCC to allow informational calls

5    and SMS messages that are autodialed when the call recipient has a relationship with the person

6    who provided UPS with the wireless phone number. Ex. T (Comments of the United Parcel

7    Service, Inc. in Response to Global Tel*Link Corporations Petition for Declaratory Ruling, at 1

8    (filed July 15, 2010) ("UPS Comments")). UPS stressed that such a ruling was necessary

9    because the company relies on automated text messages to inform customers and package

10   recipients. According to UPS, "[t]he phone numbers used by UPS for . . . delivery notifications

11   are provided by UPS's customer, the shipper, so that the customer and/or the package recipient

12   will be notified of the delivery. Because package shippers provide the package recipients'

13   shipping addresses and related phone numbers, it would be impossible for UPS to obtain prior

14   written consents from the package recipients." *Id.* at 2. Because there is a relationship between

15   the shipper and the recipient, and the shipper provides the contact information, informational text

16   messages from UPS regarding delivery should be exempted from the prohibitions of the TCPA.

17   *Id.* at 3. The Cargo Airline Association raised similar concerns regarding automated text

18   messages to numbers provided by customers, giving information about scheduled deliveries. Ex.

19   S (CAA Reply Comments at 3 (stating that the Commission should "extend[] the exemption

20   from the ban on pre-recorded calls for nonsolicitation commercial calls to encompass cell phone,

21   as well as residential phone calls")).

22          In light of these comments, it is highly likely that the final FCC Report and Order will

23   address the definition of automatic telephone dialing system and whether the exemption for

24   informational messages that applies to calls to residential lines will be extended to cover calls

25   and text messages to wireless telephones. Although not necessary for the doctrine of primary

26   jurisdiction to apply, the existence of this pending proceeding that is likely to address the exact

27

28

1    provisions and issues before this Court provides further justification for its application to this

2    action. *See, e.g., Clark,* 523 F.3d at 1115-16.

3               **4.    Uniform administration of the TCPA requires dismissal or stay of this action pending resolution of the current FCC proceeding.**

4

5               When Congress enacted the TCPA, it was concerned about the multiplicity of often

6    inconsistent state telemarketing regulations. *See 2003 TCPA Order,* ¶ 83.  Accordingly,

7    Congress decided to "promote a uniform regulatory scheme under which telemarketers would

8    not be subject to multiple, conflicting regulations." *Id.*  Although GroupMe vehemently disputes

9    that it is in any way a "telemarketer," it recognizes the potential for just the type of inconsistent

10   requirements Congress sought to avoid if Courts are left to determine in the first instance

11   whether group texting technology amounts to an "automatic telephone dialing system."  There

12   are other messaging services similar to GroupMe in the marketplace such as Beluga, Fast Society

13   and Google's Disco.  Martocci Decl. ¶ 6.  And despite their infancy, at least one other group

14   texting service has already been sued under the TCPA, and numerous other actions are pending

15   asserting claims under the TCPA's autodialer prohibition arising out of text messages.  Klausner

16   Decl. ¶ 2.  As noted in *Charvat,* the "the volume of [pending] lawsuits heightens the risk that

17   individuals and companies will be subject to decisions pointing in opposite directions . . . ."  630

18   F.3d at 466.  As in that case, "although a decision by the FCC would not guarantee nationwide

19   uniformity, it would narrow the scope of judicial inquiry to whether the agency reasonably

20   interpreted the statute." *Id.*

21              This is particularly true given the technical nature of the issue presented.  The FCC has

22   expansive experience addressing new technologies to determine whether they are the type of

23   intrusive telemarketing that Congress intended to regulate.  Any attempt at resolving this

24   question without an FCC determination will deprive this court (and the litigants) from obtaining

25   the "benefit of the expertise and experience" of the FCC in an area of its unique expertise and

26   jurisdiction.  *Syntex*, 307 F.3d at 781 (referral to agency appropriate where case involved a

27   complicated issue that Congress had committed to agency).  Resolution of this question by the

28   Court also could be at odds with any determination by the FCC resulting from current

1   proceedings.  Therefore, in the interest of uniformity in administration, and in light of the

2   pending FCC proceeding, the Court should dismiss the action and allow this issue to be decided

3   by the agency responsible for implementing the TCPA.  *See, e.g., Clark,* 523 F.3d at 1115;

4   *Brown v. MCI WorldCom Network Servs., Inc.,* 277 F.3d 1166, 1172 (9th Cir. 2002).

5           In the event the Court has any doubt as to whether the current proceedings will address

6   issues that will require resolution in this action, the Court should refer this matter to the FCC so

7   that the Commission can properly make a determination as to whether GroupMe and Twilio's

8   technology, as configured, and as used together to deliver GroupMe text messages, constitutes an

9   automated telephone dialing system as defined by and in accordance with the purposes of the

10  TCPA.  *See Charvat* 630 F.3d at 467-68 (referring the action to the FCC to determine the

11  definition of "on behalf of").

12          **C.      In the Alternative, This Action Should be Transferred to the Eastern District
                     of Virginia Pursuant to 28 U.S.C. Section 1404(a).**

13

14          If the Court declines to dismiss the action, GroupMe respectfully requests that it exercise

15  its discretion and transfer the action to the Eastern District of Virginia, Richmond Division.  A

16  motion to transfer is governed by Section 1404(a), which provides, "[f]or the convenience of

17  [the] parties and witnesses, in the interest of justice, a district court may transfer any civil action

18  to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The

19  purpose of Section 1404(a) "is to prevent the waste of time, energy and money and to protect

20  litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Gerin v.*

21  *Aegon USA, Inc.*, No. 06-5407, 2007 WL 1033472, at *3 (N.D. Cal. Apr. 4, 2007) (citations

22  omitted).  The decision to transfer venue under Section 1404(a) lies within this court's discretion.

23  *See, e.g., PRG–Schultz USA Inc. v. Gottschalks, Inc.,* No. 05-2811, 2005 WL 2649206,  at *2

24  (N.D. Cal Oct. 17, 2005) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.

25  2000)).

26

27

28

1

### 1.   The action could have been brought in the Eastern District of Virginia.

2      There can be no dispute that Plaintiff could have filed his complaint against GroupMe

3   and Twilio in the Eastern District of Virginia.  A substantial part of the events giving rise to the

4   claim—Plaintiff's receipt of GroupMe text messages—occurred there.  Plaintiff is a resident of

5   Virginia and based on the area code of 804, for his wireless phone number, appears to reside in

6   the Richmond, VA area.  *See* Klausner Decl. ¶¶ 5, 6, 7.  Thus, venue is proper in the Eastern

7   District of Virginia.  28 U.S.C. § 1391(b)(2).  Additionally, both GroupMe and Twilio do

8   business in Virginia.  Twilio's primary servers and GroupMe's servers are located in Virginia,

9   Martocci Decl. ¶¶ 14, 15, and therefore are subject to jurisdiction there in this action.

10

### 2.   The balance of the convenience factors weighs in favor of transfer to the Eastern District of Virginia.

11

12      In determining whether transfer is warranted, Courts in this Circuit weigh multiple

13   factors such as:  plaintiff's choice of forum; the respective parties' contacts with the forum, and

14   such contacts relating to plaintiff's cause of action in the chosen forum; the location of likely

15   witnesses; differences in the costs of litigation in the two forums; the availability of compulsory

16   process to compel attendance of unwilling non-party witnesses; the ease of access to sources of

17   proof; and the relative congestion of the two potential forums.  *See, e.g.*, *Jones*, 211 F.3d at 498-

18   99; *PRG–Schultz*, 2005 WL 2649206, at *2; *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1156

19   (S.D. Cal. 2005).  The balance of these factors weighs decidedly in favor of transfer.

20

### a.   Plaintiff's choice of forum is entitled to little if any weight.

21      "A plaintiff's choice of forum is given 'much less weight' when the plaintiff is not a

22   resident of the chosen forum."  *PRG–Schultz*, 2005 WL 2649206, at *2; *see Fabus Corp. v.

23   Asiana Express Corp.*, No. 00-3172, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001).

24   Additionally, in a putative class action like this, "the named plaintiff's choice of forum is given

25   less weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see Alexander v. Franklin

26   Res., Inc.*, No. 06-7121, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007).  Moreover, "[i]f the

27   operative facts have not occurred within the forum … [the plaintiff's] choice is entitled to only

28   minimal consideration."  *Lou*, 834 F.2d at 739.  Finally, courts will disregard a plaintiff's choice

of forum where such choice appears to be the result of forum-shopping.  *See, e.g., Alexander*, 2007 WL 518859, at *4.

Here, Plaintiff resides in Virginia, Compl. ¶ 2, not California, and is bringing his claim on behalf of a putative class.  Although co-defendant Twilio is headquartered in this forum, the operative facts all took place in Virginia and New York.  Plaintiff was added to a GroupMe group by someone in Virginia, and received text messages sent through the New York-headquartered GroupMe service.   *See* Martocci Decl. ¶ 19; Klausner Decl. ¶¶ 5, 7.  Indeed, the computer servers utilized to deliver the text messages at issue—both Twilio's and GroupMe's—are located in Virginia.  *See* Martocci Decl. ¶¶ 15, 21.  And, given the lack of connection between Plaintiff, his claim, and California, the Court can infer that the choice of this forum was due to some perceived advantage in this forum.  For all of these reasons, Plaintiff's choice of forum should be given little if any weight.

**b.      The parties' have no contacts with California pertaining to Plaintiff's claim.**

The conduct at issue in this action took place in New York and Virginia.  GroupMe's only office is headquartered in New York, New York.  Martocci Decl. ¶ 19.  Decisions pertaining to GroupMe systems configuration and content were made in New York.  *Id.* ¶ 23.  The underlying computer operations and systems that executed the messages in question occurred on GroupMe and Twilio equipment housed in Virginia.  *Id.* ¶ 21.  Plaintiff and his poker buddies, who were part of the GroupMe "Poker" group, and who sent him unwanted text messages, used wireless phone numbers with the area code of 804 suggesting that they all reside in the Richmond, Virginia area.  Klausner Decl.  ¶¶ 6,7, 9; Compl. ¶ 35.  Plaintiff's Complaint alleges no contacts between himself and California.  Twilio is headquartered there, and GroupMe and Twilio are alleged to do business there, Compl. ¶¶ 2, 3, 4, but there are no allegations of business done by either defendant in California that pertains to the text messages Plaintiff received allegedly in violation of the TCPA.  Thus, these unrelated contacts do not factor into the analysis.  *See, e.g., Saleh*, 361 F. Supp. 2d at 1158 (claims had no material connection with state despite the fact defendant headquartered there where conduct at issue took place elsewhere);

*PRG-Schultz*, 2005 WL 2649206, at *4 (factor weighed in favor of transfer where no allegation that any events giving rise to action took place in district).  Accordingly, given no connection between Plaintiff's claim and the Northern District of California, this factor weighs in favor of transfer.

**c.**   **Virginia would be more convenient for the majority of parties and witnesses.**

In contrast, Virginia has significant contacts with the parties, and would be a significantly more convenient venue for the vast majority of key witnesses.  This factor is of particular significance in considering whether to transfer.  15 Charles Allan Wright, et al., FEDERAL PRACTICE AND PROCEDURE, JURISDICTION 3d § 3851 (3d ed. 2006) ("the most important factor . . . is the convenience of witnesses.   . . .[I]f the forum initially chosen by plaintiff will be most convenient for the witnesses, this is a powerful argument against transferring the case.  [I]f some other forum will serve the convenience of witness better, a motion to transfer . . . [is] likely to be granted").  The key witnesses in this action pertaining to the issue of Plaintiff's consent to be added to GroupMe and receive GroupMe text messages will be the Plaintiff and the other members of the GroupMe "Poker" group to which Plaintiff was added.  Klausner Decl. ¶¶ 6, 7, 9.  These individuals all appear to reside in the Eastern District of Virginia.  *Id.* ¶¶ 5, 6, 7.  The other key witnesses will be the engineers and other people from GroupMe with knowledge of topics such as development and purpose of the GroupMe service; the development and operation of GroupMe's computer system and decisions about any GroupMe informational messages sent to users. *Id.* ¶ 3.  These individuals all are located in the New York tri-state area, which is a short one and half hour flight to the Eastern District of Virginia, but a five and a half to six hour flight to San Francisco.  *Id.* ¶¶ 3, 10.  Given Twilio's role as a mere conduit for transmitting messages, GroupMe anticipates calling only one witness from California-based Twilio.  *Id.* ¶ 4.  Thus, it would be significantly more convenient for all but one witness if the case proceeded in the Eastern District of Virginia.

#### d.      It would cost less to litigate in Virginia.

Furthermore, given the locations of the parties and the key witnesses, it would be far less costly to litigate in Virginia.  As stated previously, Plaintiff and many of the key witnesses are located there, so they would incur no travel expenses if the case is venued there, but would incur significant travel expenses if the case proceeds in this venue.  The key witnesses from GroupMe all reside in or around New York City.  Klausner Decl. ¶ 3.  Given that the Eastern District of Virginia is only a short hour and half flight from New York, GroupMe witnesses could easily fly from New York and back on the same day, and there are several flights offered from New York to Richmond, Virginia starting around $250.  *Id.* ¶ 10 & Ex. A.  However, witnesses traveling to San Francisco would need to stay overnight.  An overnight stay would likely cost from $170 to well over $300, per witness, depending on the location.  *Id.* ¶ 10 & Ex. A.  Additionally, flights from New York to San Francisco are far more expensive and currently run close to $400 per flight.  *Id.*  Since only Twilio, which is likely to have only a single witness, would incur greater expense if the action is transferred, it would cost far less to proceed with this case in Virginia.

#### e.      Availability of compulsory process weighs in favor of transfer.

Because the members of the "Poker" group to which Plaintiff was added are not parties to this action and reside in Virginia, this court does not have subpoena power over them.  Fed. R. Civ. P. 45(b)(2).  Thus, if the case proceeded to trial in this District, GroupMe would be at a severe disadvantage in that it could not compel such witnesses to testify at trial.  *Saleh*, 361 F. Supp. 2d at 1160 ("'While the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor.'") (quoting *Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.,* 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).  Transferring the case to the Eastern District of Virginia would ensure that the parties may invoke the trial court's subpoena power to command the presence of these non-party key witnesses.

#### f.      Ease of access to proof weighs in favor of transfer.

All of GroupMe's documents pertaining to its service and Plaintiff and his "Poker" group are located in either Virginia or New York.  Martocci Decl. ¶ 22.  Additionally, the Twilio and GroupMe servers that transmitted the text messages at issue are located in Virginia.  *Id.* ¶¶ 14,

15, 21. Thus, the location of the vast majority of discovery expected in this case is on the East Coast. Accordingly, ease of access to such proof would be more convenient in the Eastern District of Virginia, than in the Northern District of California. *See, e.g., Saleh*, 361 F. Supp. 2d at 1166 (consideration is convenience of access to proof, not its availability).

### g.     The relative congestion weighs in favor of transfer.

The Eastern District of Virginia is able to bring a civil case to completion in a significantly shorter amount of time than in the Northern District of California. *See* http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2011Mar.pl (11.5 vs. 21.2 months). Additionally, the average civil case load of judges here is greater than that of judges in the Eastern District of Virginia. *See id.* (454 cases per judge v. 312 cases). Thus, this factor also weighs in favor of transfer. *See, e.g., Saleh*, 361 F. Supp. 2d at 1167.

### 3.     The Interest of Justice Weighs In Favor of Transfer.

Discouraging forum shopping by plaintiffs has been recognized by this Court as such an interest to be considered under the interest of justice prong of a transfer analysis. *See Gerin*, 2007 WL 1033472, at *7. It is clear that Plaintiff here filed in the Northern District of California because of some perceived advantage in this forum. Such forum shopping should be discouraged by transferring this action to a venue with a more significant interest in resolving this dispute concerning a Virginia resident and text messages he received via the GroupMe Service, located in New York via servers located in Virginia. *See B&B Hardware, Inc. v. Hargis Indus., Inc.,* No. 06-4871, 2006 WL 4568798, at *6 (C.D. Cal. Nov. 30, 2006) (interest of justice served by transferring case to forum with greater interest in resolution of the action despite plaintiff's residence in transferor forum).

*   *   *

In sum, the only factor weighing in favor of maintaining this case in this district is Plaintiff's forum choice. However, under the circumstances, that choice should be accorded little, if any, weight. Therefore, the Court should exercise its discretion and transfer this action

1   to the Eastern District of Virginia.  *See, e.g., Fabus,* 2001 WL 253185, at *2 (granting motion to

2   transfer where only factor weighing against transfer was plaintiff's choice of forum).

3   **IV.    CONCLUSION**

4           For the foregoing reasons, GroupMe respectfully requests that the Court dismiss the

5   Complaint for failure to state a claim, or dismiss or stay the action pursuant to the doctrine of

6   primary jurisdiction, pending guidance from the FCC.  In the alternative, GroupMe respectfully

7   requests that the Court transfer the action to the Eastern District of Virginia, Richmond Division.

8   Dated:  August 25, 2011                    Respectfully submitted,
9                                              WILSON SONSINI GOODRICH & ROSATI
                                               Professional Corporation
10

11                                             By: /s/ Tonia Ouellette Klausner
12                                                   Tonia Ouellette Klausner

13                                             *Attorneys for Defendant GroupMe, Inc.*

14

15                              <u>**CERTIFICATION**</u>

16          I, Renu R. George, am the ECF User whose identification and password are being used to

17   file the **DEFENDANT GROUPME, INC.'S MOTION TO DISMISS, STAY OR**

18   **TRANSFER**.  In compliance with General Order 45.X.B, I hereby attest that Tonia Ouellette

19   Klausner has concurred in this filing.

20

21   Dated:  August 25, 2011                    Respectfully submitted,
22                                              WILSON SONSINI GOODRICH & ROSATI
                                                Professional Corporation
23

24                                             By: /s/ Renu R. George
25                                                   Renu R. George

26                                             *Attorneys for Defendant GroupMe, Inc.*

27

28