SEAN P. REIS (SBN 184044)
(sreis@edelson.com)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone:  (949) 459-2124
Facsimile:  (949) 459-2123

JAY EDELSON (Admitted *Pro Hac Vice*)
(jedelson@edelson.com)
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
(rbalabanian@edelson.com)
CHRISTOPHER L. DORE (Admitted *Pro Hac Vice*)
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Attorneys for the Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWILIO, INC., a Delaware corporation, GROUPME, INC., a Delaware corporation,<br><br>Defendants. | Case No. 4:11-cv-02584-PJH<br><br>[Honorable Phyllis J. Hamilton]<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Class Action**<br><br><br>**JURY TRIAL DEMANDED** |

1

**FIRST AMENDED CLASS ACTION COMPLAINT**

2    1.    Plaintiff Brian Glauser ("Plaintiff" or "Glauser") brings this first amended

3 class action complaint against Defendants Twilio, Inc. and GroupMe, Inc. to stop

4 Defendants' practice of making unsolicited text message calls to cellular telephones, and to

5 obtain redress for all persons injured by their conduct.  Plaintiff, for his first amended class

6 action complaint, alleges as follows upon personal knowledge as to himself and his own acts

7 and experiences, and, as to all other matters, upon information and belief, including

8 investigation conducted by his attorneys.

9

**PARTIES**

10    2.    Plaintiff Brian Glauser is a natural person domiciled in the State of Virginia.

11    3.    Defendant Twilio, Inc. is a corporation incorporated and existing under the

12 laws of the State of Delaware with its principal place of business located at 548 Market St

13 #14510, San Francisco, California 94104.  Twilio does business throughout the United

14 States, including in the State of California and this District.

15    4.    Defendant GroupMe, Inc. is a corporation incorporated and existing under the

16 laws of the state of Delaware with its principal place of business located at 26 W 17th St

17 New York, New York 10011.  GroupMe does business throughout the United States,

18 including in the State of California and this District.

19

**JURISDICTION AND VENUE**

20    5.    The Court has subject matter jurisdiction over this action pursuant to 28

21 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state

22 different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of

23 interest and costs, and (c) none of the exceptions under that subsection apply to this action.

24    6.    Venue is proper in this district under 28 U.S.C. § 1391 (a)(1-2) as Defendant

25 Twilio resides in this District, and additionally proper because both Defendants transact

26 business in this District, including soliciting consumers and entering into contracts with

27 vendors.

28

1

## COMMON ALLEGATIONS OF FACT

2

### A.    Bulk SMS Marketing

3      7.      In recent years, marketers who have felt stymied by federal laws limiting

4   solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative

5   technologies through which to send bulk messages cheaply.

6      8.      Bulk text messaging, or SMS marketing, has emerged as a new and direct

7   method of communicating and soliciting consumer business. The term "Short Message

8   Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use

9   their cellular telephones to send and receive short text messages, usually limited to 160

10   characters.  An SMS message is a text message call directed to a wireless device through the

11   use of the telephone number assigned to the device.

12      9.      When an SMS message call is successfully made, the recipient's cell phone

13   rings, alerting him or her that a call is being received.  As cellular telephones are inherently

14   mobile and are frequently carried on their owner's person, calls to cellular telephones,

15   including SMS messages, may be received by the called party virtually anywhere worldwide.

16
### B.    Defendants Make Text Message Calls to Consumers Who Do Not Want
17   Them

18      10.      The newest evolution of text message marketing has taken the form of "group

19   messaging" applications, such as Defendant GroupMe's service, in which a single person or

20   entity is able to create a "group," and then request that Defendants transmit text message

21   calls to dozens of people at once.  Likewise, a group texting service allows all the recipients

22   to respond to all other members of the group with a single message.

23      11.      GroupMe introduced its service through its website, GroupMe.com, in or

24   around August 2010.  GroupMe is marketed as a "group texting" tool, allowing customers to

25   request that GroupMe simultaneously transmit SMS text messages to large groups of people

26   *en masse*, using one common cellular telephone number provided exclusively by Defendant

27   Twilio.

28      12.      To use the GroupMe service, a customer signs up by providing basic

information through the GroupMe website or mobile application, creates a "group" of up to twenty-four individuals, and provides the full names and cellular telephone numbers of each group member to Defendant GroupMe.

13.    Group members are not aware that they have been added to a GroupMe texting group before they receive a text message from Defendants.  Defendants do not seek to obtain consent of consumers that are added to a GroupMe texting group.  Instead, GroupMe merely requires the group creator to represent that they have the consent of the individuals they intend to add to a group, which almost never happens.

14.    A consumer's participation in the group is opt-out, meaning that a consumer may be added to and kept in the group without authorization.  Often times, however, a consumer who has been added to a group will continue to receive unauthorized text message calls even after they have attempted to opt out of a group.

15.    Once all group members receive a message, they too can respond to everyone else in the group an unlimited number of times, creating an ongoing "chat room" effect of nearly constant text message calls.  Because the messages come from an unknown number, and the group creator can easily input a fake name, the resulting chat room can be a chaotic storm of text messages in which people are both attempting to figure out what the group is, who the creator is, how they were made a part of the group, and how to stop it.

16.    If a group member does not respond, he or she will eventually be removed from the group; however, GroupMe's removal does not occur until a group member has received anywhere from fifteen to thirty messages, including at least four messages directly from GroupMe.

17.    Defendant Twilio plays an essential role in the delivery, receipt and general transmission of each text message call from GroupMe.  Without the technology, service, and expertise provided by Twilio, GroupMe would be unable to make the text message calls at issue in this case.

18.    In particular, Twilio provides the application program interface, phone

numbers, and equipment that transmits all text messages from GroupMe. As described by Twilio on its website, its "communications platform" allows SMS applications like GroupMe to transmit text messages with little effort and in complete reliance on Twilio's equipment and technology. In consideration of its services, Twilio monetarily benefits from each text message sent by GroupMe.

19.     Unlike common carriers, who have a general obligation to make their services available to the public without regard to the content of material that travels over their network, Twilio selectively enters into private contracts with third parties like GroupMe to transmit SMS text messages. Twilio solicits creators of SMS texting applications to utilize its communications platform, and is likewise able to refuse to transmit content in its sole discretion.

20.     Twilio's technology is specifically designed to transmit mass numbers of text messages from a single phone number or SMS short code. Indeed, Twilio markets its ability to send bulk text message advertisements on behalf of third parties, stating on its website that its service is "Great for applications that need to send marketing SMS messages" in "large volumes."

21.     Once a user creates a GroupMe texting group, Twilio maintains lists and/or databases of the recipient's cell phone numbers that they use to direct GroupMe text messages to those individuals. Twilio is aware that members of GroupMe texting groups have no prior relationship with Twilio or GroupMe.

22.     Twilio is able to monitor the nature and content of text messages that it transmits to cell phone numbers, including text message calls initiated by GroupMe. As a result, Twilio has knowledge of the content of the text message calls that it transmits to members of GroupMe texting groups, including text message calls advertising the GroupMe service and mobile application.

23.     Despite its knowledge of the nature and content of text message calls from GroupMe, Twilio has taken no steps to prevent the transmission of unsolicited text messages

from GroupMe.

24.     Accordingly, Twilio maintains a high degree of involvement in transmitting each text message call from GroupMe.  Moreover, Twilio has actual notice of the content of the text message calls that it transmits from GroupMe, including text message calls advertising GroupMe's service and mobile application.

25.     As a result of Defendants' software and application design, thousands of consumers receive text message calls from and through Defendant GroupMe's service that they neither consented to nor wanted.

**C.     Defendants Harvest the Phone Numbers Submitted by Group Creators to Promote the GroupMe Service Through Text Spam**

26.     Because Defendants have access to the phone numbers of individuals who are involuntarily added to texting groups and control the flow of messages, Defendants are able to transmit wireless spam for their own individual benefit to the thousands of phone numbers added by consumers who are creating GroupMe texting groups.

27.     In conjunction with Defendant Twilio, Defendant GroupMe harvests all phone numbers added by group creators in order to independently transmit its own text message advertisements promoting its service and mobile application.

28.     The moment a consumer creates a GroupMe texting group, but before the group creator actually tries to have GroupMe text anyone in the new group, every member of the group instantly receives two text message calls directly from GroupMe using a telephone number and equipment provided by Twilio.  GroupMe causes and Twilio transmits these text message calls to consumers.

29.     These text message calls include generic advertisements of GroupMe's service and mobile application (the "GroupMe Mobile App Text").  The GroupMe Mobile App Text contains a direct link to download the GroupMe mobile application.

30.     The GroupMe Mobile App Text is sent directly by Defendants to every group member, and its transmission is exclusively under the control of Defendants.

**D.      Plaintiff's Experience with Defendants**

31.      On or about April 23, 2011, Plaintiff's cell phone rang, indicating that a text call was being received.

32.      The "from" field of such transmission was identified cryptically as 804-742-4986. The phone number 804-742-4986 is a dedicated telephone number owned and/or operated by Defendant Twilio, and provided by Twilio to Defendant GroupMe, which then transmits text messages *en masse* through devices known as modem banks and/or carrier gateways.

33.      The body of the first text message read:

Hi Brian Glauser, it's [group creator].

Welcome to GroupMe!

I just added you to "Poker" w/ [group member],

[group member], [group member], [group member],

[group member], [group member] & 3 more.

Text back to join the conversation.

34.      This text message call was made directly by Defendants and not initiated or consented to by Plaintiff or the group creator.

35.      Almost immediately after receiving the text message call alleged above, Plaintiff then received a second message, the GroupMe Mobile App Text, which read:

GroupMe is a group texting service.

Standard SMS rates may apply.

Get the app at http://groupme.com/a to chat for free.

Reply #exit to quit or #help for more.

36.      This text message call was made directly by Defendants for their own benefit and not initiated or consented to by Plaintiff or the group creator.

37.      Following these two text message calls, Plaintiff received a flurry of 7 other text message calls from GroupMe at the request of the other group members, during and after

1  which Plaintiff did not reply or otherwise interact with the texting group.

2       38.     Eventually, Plaintiff received the following message directly from GroupMe:

3                         Hey, are you there?

4               GroupMe is more fun when you participate.

5                 We'll remove you soon unless you reply

6               to the group or text #stay. Reply #exit to leave.

7       39.     Thereafter, Plaintiff again did not reply or otherwise interact with the texting

8  group. Plaintiff received at least five more messages from the group, until finally receiving a

9  message from GroupMe stating:

10              We haven't heard from you, so we removed you

11                   from this group to be on the safe side.

12              Don't worry though. You can always get back in

13                        by replying to this text.

14      40.     At no time did Plaintiff consent to the receipt of the text message calls alleged

15  above or any other such wireless spam text messages transmitted by or through Defendants.

16  Plaintiff did not consent to or request to be made a part of the GroupMe group "Poker."

17  Plaintiff had no reason to be in contact with Defendants and did not provide his cell phone

18  number to GroupMe or Twilio.

19      41.     Accordingly, Plaintiff was added to a group texting service, received fifteen

20  text message calls, and eventually was removed from the group, entirely without his input or

21  consent.

22      42.     By effectuating these unauthorized text message calls, Defendants have

23  caused Plaintiff and members of the Classes actual harm.  In the present case, because of the

24  nature of GroupMe's service, a consumer could be subjected to hundreds of text messages

25  before having an opportunity to opt out and sometimes even after they have attempted to opt

26  out.

27      43.     In order to redress these injuries, Plaintiff, on behalf of himself and a

28

1  nationwide class of similarly situated individuals, brings suit under the Telephone Consumer

2  Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited

3  voice and text calls to cell phones.

4       44.    On behalf of two Classes, Plaintiff seeks an injunction requiring Defendants to

5  cease all wireless spam activities and an award of statutory damages to the members of the

6  Classes, together with costs and reasonable attorneys' fees.

7  **CLASS ACTION ALLEGATIONS**

8       45.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure

9  23(b)(2) and Rule 23(b)(3) on behalf of himself and two Classes defined as follows:

10 **The Automatic Opt-Out Class**

11 All persons who received one or more text messages from GroupMe who were

12 automatically unsubscribed from a GroupMe group because they never opted-in.

13 **The GroupMe Mobile App Text Class**

14 All persons who received the GroupMe Mobile App Text, or a substantially

15 similar text message call from GroupMe, that advertised GroupMe's mobile

16 application.

17      46.    The following individuals are excluded from the Classes: (1) any Judge or

18 Magistrate presiding over this action and members of their families; (2) Defendants,

19 Defendants' subsidiaries, parents, successors, predecessors, and any entity in which

20 Defendants or their parents have a controlling interest and their current or former employees,

21 officers and directors; (3) Plaintiffs' attorneys, (4) persons who properly execute and file a

22 timely request for exclusion from the class; (5) the legal representatives, successors or

23 assigns of any such excluded persons; and (6) persons whose claims against Defendants have

24 been fully and finally adjudicated and/or released.

25      47.    There are thousands of members of the Classes such that joinder of all

26 members is impracticable.

27      48.    Plaintiff's claims are typical of the claims of all of the other members of the

28

Classes.  Plaintiff and each member of the Classes were affected in substantially the same way by Defendants' unlawful conduct of transmitting wireless spam.

49.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Classes.

50.    Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

51.    Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Classes in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

52.    The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes as a result of the transmission of the wireless spam alleged herein.  Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct of transmitting wireless spam.

53.    There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Classes include but are not limited to the following:

(a)    Does the wireless spam transmitted by Defendants violate 47 U.S.C. § 227?

(b)    Are members of the Classes entitled to treble damages based on the willfulness of Defendants' conduct?

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and both Classes)**

54.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

55.    Defendants made unsolicited text calls, including the text message calls referenced in paragraphs 31 through 42, to the wireless telephone numbers of all members of the Classes.  Each such text message call was made using equipment and software maintained, operated, and/or provided in part by Defendant Twilio, that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

56.    These text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the Classes to receive such wireless spam.  The text message calls included advertisements about GroupMe's service and mobile application that were written in an impersonal and generic manner and came from a phone number assigned solely to transmit such text message calls.

57.    As detailed herein, Defendant Twilio played an essential role in the delivery of each text message call from Defendant GroupMe.  Twilio had knowledge of the nature and content of text message calls from GroupMe and took no steps to prevent the transmission of the unsolicited text message calls.

58.    Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii).  As a result of Defendants' conduct, the members of the Classes are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

59.    Because Defendants had knowledge that Plaintiff and other members of the

1  Classes did not consent to the receipt of the aforementioned wireless spam, the Court should,

2  pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages

3  recoverable by the Plaintiff and the other members of the Classes.

4       WHEREFORE, Plaintiff Brian Glauser, on behalf of himself and the Classes, prays

5  for the following relief:

6      1.   An order certifying this case as a class action on behalf of the Classes

7          as defined above; appointing Plaintiff Glauser as the representative of

8          the Classes; and appointing his counsel as class counsel;

9      2.   An award of actual and statutory damages;

10      3.   An injunction requiring Defendants to cease all wireless spam

11          activities, and otherwise protecting the interest of the Classes;

12      4.   An award of reasonable attorneys' fees and costs; and

13      5.   Such further and other relief the Court deems reasonable and just.

14

15  **JURY DEMAND**

16      Plaintiff requests trial by jury of all claims that can be so tried.

17  Dated: September 15, 2011       Respectfully submitted,

18                        BRIAN GLAUSER, individually and on behalf

19                        of all others similarly situated,

20

21                        By: __/s/ Sean P. Reis_____

                         Sean P. Reis

22                           EDELSON MCGUIRE LLP

                         One of the Attorneys for Plaintiff

23

24  SEAN P. REIS (SBN 184044)

25  (sreis@edelson.com)
  EDELSON MCGUIRE LLP

26  30021 Tomas Street, Suite 300
  Rancho Santa Margarita, California 92688

27  Telephone:  (949) 459-2124
  Facsimile:  (949) 459-2123

28

1   JAY EDELSON (Admitted *Pro Hac Vice*)
    (jedelson@edelson.com)
2   RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
    (rbalabanian@edelson.com)
3   CHRISTOPHER L. DORE (Admitted *Pro Hac Vice*)
    (cdore@edelson.com)
4   EDELSON MCGUIRE LLC
    350 North LaSalle Street, Suite 1300
5   Chicago, Illinois 60654
    Telephone: (312) 589-6370
6   Facsimile: (312) 589-6378

7
    *Attorneys for the Plaintiff* BRIAN GLAUSER
8   and the Putative Classes

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2
3          I, Sean P. Reis, an attorney, certify that on September 15, 2011, I served the above
and foregoing *First Amended Class Action Complaint*, by causing a true and accurate copy
of such paper to be filed with the Court and transmitted to all counsel of record via the
4    CM/ECF electronic filing system.

5

6

7                              By:   /s/ Sean P. Reis
                                    Sean P. Reis
8                                   EDELSON MCGUIRE LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT                                    Case No. 4:11-cv-02584-PJH