W. Patrick S. Thompson (SBN 160804)
*pthompson@goodwinprocter.com*
Anna Hsia (SBN 234179)
*ahsia@goodwinprocter.com*
Audrey M. Lin (SBN 271671)
*alin@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California  94111
Tel.:  415.733.6000
Fax:  415.677.9041

*Attorneys for Defendants
Twilio, Inc., a Delaware Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWILIO, INC., a Delaware corporation, and GROUPME, INC., a Delaware corporation,<br><br>Defendants. | Case No. CV11-2584 PJH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TWILIO, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:         November 30, 2011<br>Time:        9:00 a.m.<br>Courtroom:  3<br>Judge:       Hon. Phyllis J. Hamilton |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT. ..........................................................................................1

II. SUMMARY OF RELEVANT FACTUAL ALLEGATIONS. ............................................1

III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST TWILIO. ................................2

    A. The Complaint Must Meet Rule 8 Pleading Standards. .....................................2

    B. The Court Should Dismiss the Claims Because Twilio's Role is Akin to That of a Common Carrier and Should Therefore Be Exempt from Liability.................2

    C. The First Amended Complaint Should Be Dismissed with Prejudice..................6

IV. IF THE COURT DECLINES TO DISMISS THE FIRST AMENDED COMPLAINT AGAINST TWILIO, THE COURT SHOULD REFER THE MATTER TO THE FCC UNDER THE DOCTRINE OF PRIMARY JURISDICTION. .............................7

    A. Any Issues Related to Twilio Should Be Referred to the FCC.............................7

    B. The FCC is Considering a Petition Regarding the Precise Issues in this Case. ........................................................................................................10

V. CONCLUSION....................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Albrecht v. Lund*,
   845 F.2d 193 (9th Cir. 1988) .................................................................................................. 6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 2

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) .................................................................................................. 6

*Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
   519 F.3d 666 (7th Cir. 2008) .................................................................................................. 5

*Chodos v. W. Publishing Co.*,
   292 F.3d 992 (9th Cir. 2002) .................................................................................................. 6

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) .............................................................................................. 11

*Davel Commc'ns, Inc. v. Qwest Corp.*,
   460 F.3d 1075 (9th Cir. 2006) ...................................................................................... 7, 8, 11

*Hart v. Comcast of Alameda*,
   No. C 07-6350 PJH, 2008 WL 2610787 (N.D. Cal. June 25, 2008) .................................... 11

*Johnson v. Buckley*,
   356 F.3d 1067 (9th Cir. 2004) ................................................................................................ 6

*Jurin v. Google Inc.*,
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) .................................................................................. 5

*Kemp v. Int'l Business Machines Corp.*,
   No. C-09-4683 MHP, 2010 WL 4698490 (N.D. Cal. Nov. 8, 2010) ................................. 2, 5

*Kopff v. Battaglia*,
   425 F. Supp. 2d 76 (D.D.C. 2006) ......................................................................................... 9

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) .................................................................................................. 6

*Reit v. Yelp!*,
   907 N.Y.S.2d 411 (N.Y. Sup. Ct. 2010) ................................................................................ 5

*Satterfield v. Simon & Schuster, Inc.*
  569 F.3d 946, 952 (9th Cir. 2009) .................................................................................... 9

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ......................................................................................... 6

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
  307 F.3d 775 (9th Cir. 2002) ..................................................................................... 7, 10

*United States v. Dish Network, L.L.C.*,
  No. 09-3073, 2011 WL 475067 (C.D. Ill. Feb. 4, 2011) ................................................. 8

**STATUTES**

47 U.S.C. § 151 ......................................................................................................................... 8

47 U.S.C. § 153 ......................................................................................................................... 3

47 U.S.C. § 227 ......................................................................................................................... 2

47 U.S.C. § 227(b)(2) ................................................................................................................ 8

**OTHER AUTHORITIES**

47 CFR 64.1200(f)(4) ................................................................................................................ 4

137 Cong. Rec. S18317-01, at 1 (1991) ................................................................................... 8

*In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*,
  2 FCC Rcd. 2819 (May 15, 1987) ............................................................................... 3, 5

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
  7 FCC Rcd. 8752 (Oct. 16, 1992) .................................................................................. 3

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
  Docket No. 02-278, FCC 03-153, ¶ 83 (June 26, 2003) ............................................... 8

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
  7 FCC Rcd. 8752 (Oct. 16, 1992) .................................................................................. 9

*Petition for Declaratory Ruling Before the Federal Communications Commission, Club Texting, Inc. Petition for Declaratory Ruling that Text Broadcasters are not "Senders" of Text Messages Under § 227(b)(1) of the Telephone Consumer Protection Act*,
  Docket No. 02-278 (Aug. 25, 2009) ............................................................................ 10

*Public Notice, Consumer & Governmental Affairs Bureau Seeks Comment on Club Texting's Petition for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, Docket No. 02-278 (Nov. 9, 2009) .......................................... 10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
68 F.R. 44144-01 (July 25, 2003) ................................................................................ 4, 8, 9

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
19 FCC Rcd. 15927 (Aug. 12, 2004) ..................................................................................... 9

**I.     PRELIMINARY STATEMENT.**

Plaintiff's First Amended Complaint ("FAC") contains the same deficient allegations as his original Complaint and should be dismissed. In both complaints, plaintiff seeks a class action to hold Twilio, Inc. ("Twilio") liable for allegedly sending unsolicited text messages in violation of the Telephone Consumer Protection Act ("TCPA"), alleging only that Twilio provided a service through which its customer sent text messages. Having failed to correct the deficiencies of its original Complaint—and being unable to do so—the FAC should be dismissed with prejudice.

Plaintiff has not and cannot allege a TCPA violation against Twilio. In contrast to the telemarketers and spammers targeted by the TCPA, Twilio merely provides its customers a software platform that allows them to send short message service ("SMS") calls to telephone numbers specifically identified and provided by Twilio's customers. In this intermediary role, Twilio functions like common carriers and fax broadcasters who are exempt from liability under the TCPA. As a general service provider, Twilio may not be liable under the TCPA absent factual allegations that Twilio (1) was heavily involved in controlling the content or recipients of the text messages or (2) actually knew that its service was being used in violation of the TCPA. As was the case with the original Complaint, the FAC contains no such factual allegations, nor could plaintiff make a genuine allegation that Twilio played such a role. For those reasons, the FAC against Twilio should be dismissed with prejudice.

If the Court were to consider maintaining an action against Twilio, the Court should instead refer this matter to the Federal Communications Commission ("FCC") under the doctrine of primary jurisdiction. Congress mandated the FCC to implement rules and regulations governing the TCPA; and the FCC is currently considering a petition in which a Twilio competitor requested a declaration to exempt companies like Twilio from liability under the TCPA. Because the precise issue presented in this case is pending before the FCC, and the FCC would be best-positioned to establish uniform TCPA guidelines, the Court should refer this matter to the FCC if the matter is not dismissed.

**II.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS.**

In the first amended putative class action complaint, plaintiff Brian Glauser alleges that

1

Twilio and GroupMe, Inc. ("GroupMe") violated the TCPA, codified at 47 U.S.C. § 227.  Plaintiff alleges that, in April 2011, he received text messages from a phone number "owned and/or operated" by Twilio and used by GroupMe.  FAC ¶ 32.  Plaintiff alleges receiving multiple text messages inviting him to be part of a "GroupMe group."  FAC ¶¶ 40, 41.

Plaintiff alleges that GroupMe offers a service through which an individual or entity can create a "group" and send text messages to multiple individuals at once.  FAC ¶ 10.  To provide this service, GroupMe acquired a telephone number from Twilio, and through that telephone number, GroupMe sent text messages to plaintiff.  FAC ¶ 11.  Just as in the original Complaint, in the FAC, plaintiff does not allege that Twilio (1) controlled any of the content of the text messages; (2) controlled who should receive any of the text messages; or (3) knew that the text messages sent to plaintiff were unlawful.

## III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST TWILIO.

### A.    The Complaint Must Meet Rule 8 Pleading Standards.

To survive a motion to dismiss, a complaint must state a "plausible" claim for relief.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"; rather the factual allegations must be sufficient to move the claim "across the line from conceivable to plausible."  *Id.* at 1949, 1951 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts dismiss cases that rely on "a formulaic recitation of the elements of a cause of action."

### B.    The Court Should Dismiss the Claims Because Twilio's Role is Akin to That of a Common Carrier and Should Therefore Be Exempt from Liability.

This Court should dismiss the TCPA claim against Twilio with prejudice because plaintiff does not, and cannot, allege a plausible claim.  Similar to the original Complaint, the FAC contains no factual allegations that would subject Twilio to liability under the TCPA.[1]  As alleged

---

[1] The TCPA imposes liability where an entity uses an "automatic telephone dialing system or an artificial or prerecorded voice" to send an unsolicited text message.  47 U.S.C. § 227.  Plaintiff does not allege facts sufficient to give rise to a plausible inference that an automatic telephone dialing system was used.  Conclusory assertions (as set forth in FAC at ¶ 55) based "upon information and belief" do not suffice.  *Kemp v. Int'l Business Machines Corp.*, No. C-09-4683 MHP, 2010 WL 4698490, at *4 (N.D. Cal. Nov. 8, 2010) (absent supporting factual allegations, conclusory assertions "upon information and belief" do not state a claim).

2

in the FAC, Twilio plays an intermediary role akin to a common carrier by carrying messages created by others and routed to recipients identified by others.  As discussed below, the FCC has consistently exempted "common carriers"[2] from liability, absent specific factual circumstances, none of which are alleged here.

     Common carriers include telephone carriers such as AT&T and Verizon, which are entities that enable customers to make telephone calls for a fee.  They also include "fax broadcasters," namely individuals or entities that send facsimiles on behalf of others for a fee.  Under its regulations, the FCC exempts common carriers from liability unless they have a "high degree of involvement" or "actual notice" of the illegal use of their services.  For example, in 1987, the FCC ruled that telephone carriers are immune from liability for illegal use of their services, unless there is a "high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions." *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (May 15, 1987).  Skeptical of how a provider of telephone services could in fact ever be liable for illegal acts committed through those services, the FCC cited a California district court in stating that it would be "unlikely that a telephone common carrier will ever possess sufficient knowledge of an illegal use of its facilities to be held liable therefore under section 223(b)." *Id.* at 2820.

     In 1992, as technology evolved, the FCC extended this common carrier immunity to fax broadcasters, again finding that "[i]n the absence of 'a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions,'" common "carriers who simply provide transmission facilities that are used to transmit others' unsolicited facsimile advertisements may not be held liable." *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8779-80 (Oct. 16, 1992) (quoting 2 FCC Rcd. 2819, 2820 (May 15, 1987)).  The FCC reaffirmed this finding in 2003, reiterating that "if a common carrier is merely providing the network over which a subscriber (a fax broadcaster or other individual,

---

[2] The FCC defines a "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter". 47 U.S.C. § 153.

3

MEMORANDUM ISO TWILIO'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT           Case No. CV11-2584 PJH

business, or entity) sends an unsolicited facsimile message, that common carrier will not be liable for the facsimile." *Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44169 (July 25, 2003). Because the party who actually provides the recipient fax numbers "is in the best position to ensure that recipients have consented to receive the faxes," that party "should be liable for violations of the prohibition." *Id.* at 44169. To clarify any remaining ambiguity, the FCC defined a "facsimile broadcaster" to mean "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." *See* 47 CFR 64.1200(f)(4). Like telephone common carriers, absent a "high degree of involvement" or "actual notice" of any illegal uses, these facsimile broadcasters are immune from liability under the TCPA. The FCC specified that the "high degree of involvement" it contemplated existed in situations where the fax broadcaster (1) controls the recipient lists; and/or (2) controls the content of the advertisements. *See Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01, 44169 (July 25, 2003).

As alleged in the FAC, Twilio operates exactly like telephone common carriers and fax broadcasters. For a fee, Twilio provides a service whereby a customer can send text messages to a specified recipient list. Plaintiff alleges that (1) a GroupMe customer provides the recipient telephone numbers to GroupMe, and (2) Twilio merely transmits text messages developed and sent by others using the GroupMe service. FAC ¶¶ 12, 17. In other words, plaintiff alleges only that Twilio provided the software platform and a telephone number from which these text messages could be transmitted. FAC ¶ 18. By this standard, plaintiff cannot state a claim against Twilio absent allegations that Twilio had a "high degree of involvement" in the text messages or had "actual notice" of the TCPA violations.

Plaintiff fails to allege facts sufficient to establish that Twilio had a "high degree of involvement" in transmission of these text messages. A "high degree of involvement" necessitates pleading that Twilio "controlled" who actually received text messages and/or that Twilio "controlled" the content of those text messages. Here again, plaintiff does neither. Plaintiff cannot plead around these deficiencies because he affirmatively pleads that GroupMe users identify the recipients of text messages (FAC ¶ 12) and GroupMe users and GroupMe control the

4

content of those text messages (FAC ¶¶ 10, 15, 28-29).[3]

Plaintiff similarly fails to plead "actual notice" of illegality. Nowhere in the FAC does plaintiff plead with any plausibility that Twilio actually knew that its service was being used for an illegal purpose. Instead, plaintiff alleges only that "Twilio is able to monitor the nature and content of text messages that it transmits to cell phone numbers." FAC ¶ 22. And based on that ability, plaintiff alleges that Twilio "has actual notice of the content of the text message calls that it transmits from GroupMe." FAC ¶ 24. But the "actual notice" that gives rise to liability must be "actual notice of an illegal use," not merely actual notice based on an ability to "monitor" text messages. *See In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (May 15, 1987). Indeed, if actual notice could be derived from the mere ability to monitor text messages, it would render common carrier and fax broadcaster immunity meaningless, as any plaintiff could allege TCPA violations by alleging that a common carrier "is able to monitor" telephone calls made by others, or that a fax broadcaster "is able to monitor" faxes sent by others. Like the original Complaint, the FAC fails to include any allegations that would give rise to a plausible claim against Twilio. And Twilio submits that plaintiff would have no good faith basis to assert such allegations.[4]

---

[3] Common carrier immunity exists in analogous contexts as well. In *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117 (E.D. Cal. 2010), the court dismissed Lanham Act claims against Google in connection with advertisements on Google. The court found that Google was exempt from liability because Google did not provide the actual content of the allegedly infringing advertisements. *Id.* at 1123. In *Reit v. Yelp!*, 907 N.Y.S.2d 411 (N.Y. Sup. Ct. 2010), the court granted Yelp's motion to dismiss claims alleging violations of the Federal Communications Decency Act based on reviews posted on Yelp. The court held that Yelp was a mere service provider and could not be liable for content provided by others. *Id.* at 413-14. And in *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), the court affirmed judgment on the pleadings where plaintiff alleged that Craigslist violated Federal Housing Administration anti-discrimination rules. The court held that Craigslist could not be liable because it did not "make []or publish any discriminatory advertisement, text message, or conversation," and compared Craigslist to courier services that "do not read the documents inside packages." *Id.* at 668.

[4] For example, plaintiff's allegation that "Twilio maintains lists and/or databases of the recipient's cell phone numbers that they use to direct GroupMe text messages to those individuals" is alleged based on "information and belief." FAC ¶¶ 1, 21. This conclusory assertion is not supported by any factual allegations and should thus be ignored as a matter of law. *Kemp*, 2010 WL 4698490, at *4 (absent supporting factual allegations, conclusory assertions "upon information and belief" do not state a claim). The allegation is otherwise false and Twilio can submit sworn declarations to refute this unsupported allegation. In any event,

5

MEMORANDUM ISO TWILIO'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT                                         Case No. CV11-2584 PJH

## C. The First Amended Complaint Should Be Dismissed with Prejudice.

Where amendment would be futile, the court should deny leave to amend. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010) (affirming district court denial of leave to amend for futility). Courts should consider whether "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (citing *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Where a plaintiff has previously amended a complaint, a court's discretion to deny leave to amend is "particularly broad." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (citing *Chodos v. W. Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002)); *see also Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (when considering whether to deny leave to amend, courts should consider whether plaintiff has previously amended the complaint).

The FAC is plaintiff's second attempt at stating a viable claim against Twilio. Indeed, this Court did not even need to rule on Twilio's original motion to dismiss, because plaintiff chose to amend his complaint instead of opposing the motion. Given that the FAC suffers from the same pleading deficiencies as the original Complaint, dismissal with prejudice is warranted.

In addition, any factual allegations that could cure the deficiencies of the FAC would necessarily be inconsistent with the allegations of the FAC:

- Plaintiff alleges that Twilio was just a "communications platform" for others to transmit text messages (FAC ¶ 18); thus, plaintiff cannot amend the FAC to allege that Twilio operated as more than a software platform through which others can send text messages.

- Plaintiff alleges that GroupMe users controlled the recipients (FAC ¶ 12); thus, plaintiff cannot amend the FAC to allege that Twilio controlled who received text messages.

- Plaintiff alleges that GroupMe users created the content of the text messages (FAC

---

this allegation does not give rise to a plausible TCPA claim, because plaintiff does not, and cannot, make the crucial allegation that Twilio actually controlled who received text messages.

6

MEMORANDUM ISO TWILIO'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT                              Case No. CV11-2584 PJH

¶¶ 12, 15); thus, plaintiff cannot amend the FAC to allege that Twilio controlled the content of the text messages.

Nor can plaintiff allege that Twilio had "actual notice" of illegality given plaintiff's amendment only suggests that Twilio (like any common carrier) theoretically is "able to monitor" the content of text messages (FAC ¶ 22).

At bottom, plaintiff cannot allege that Twilio had a "high degree of involvement or actual notice of illegal use and failure to take steps to prevent such transmissions." After reviewing Twilio's arguments in the original motion to dismiss, plaintiff tried to cure these deficiencies, but he did not, and cannot, do so. The Court should therefore conclude that amendment would be futile and dismiss the FAC with prejudice.

**IV.  IF THE COURT DECLINES TO DISMISS THE FIRST AMENDED COMPLAINT AGAINST TWILIO, THE COURT SHOULD REFER THE MATTER TO THE FCC UNDER THE DOCTRINE OF PRIMARY JURISDICTION.**

**A.  Any Issues Related to Twilio Should Be Referred to the FCC.**

The FAC does not raise any new issues that this Court is appropriately positioned to address. For that reason, if the Court declines to dismiss the FAC against Twilio, any issues related to Twilio would fall squarely within the purview of the FCC and should be addressed by that agency.

Plaintiff alleges Twilio is liable under the TCPA for providing the software platform that enabled GroupMe to send allegedly unsolicited text messages. *See* FAC ¶¶ 17-18. But the TCPA is silent as to whether software application platform providers that merely provide the platform for text messages are liable under the TCPA, or whether they are exempt as a "common carrier." The FCC is best-positioned to clarify this ambiguity.

Under the doctrine of primary jurisdiction, a court may "determine that the initial decision[-]making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (referring matter to the Register of Copyrights under the primary jurisdiction doctrine). This is especially appropriate in cases that present important "policy concerns or issues requiring uniform resolution." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-89 (9th Cir. 2006). Such

7

a case exists here.  The TCPA involves important policy issues related to protecting the rights of consumers in connection with tools of communication, *e.g.*, telephone, facsimile, and Internet. Congress intended the TCPA to be applied and administered uniformly.  *See Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44155 (July 25, 2003); *see also Report and Order, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, Docket No. 02-278, FCC 03-153, ¶ 83 (June 26, 2003) ("we believe that it was the clear intent of Congress generally to promote a uniform regulatory scheme under which telemarketer would not be subject to multiple, conflicting regulations.") (citing 137 Cong. Rec. S18317-01, at 1 (1991) (remarks of Sen. Pressler) (discussing the TCPA and stating that "[t]he Federal Government needs to act now on uniform legislation to protect consumers.")).

To determine whether it is appropriate to apply the doctrine of primary jurisdiction, courts traditionally evaluate four factors:  "(1) whether the question at issue is one within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent ruling; and (4) whether a prior application to the agency has been made."  *See United States v. Dish Network, L.L.C.*, No. 09-3073, 2011 WL 475067, at *2 (C.D. Ill. Feb. 4, 2011) (citing *Davel Commc'ns*, 460 F.3d at 1086-87).  Applied to the present case, the Court should conclude that the issue presented in the FAC should be referred to the FCC for resolution.  First, the TCPA is an issue within the FCC's particular field of expertise, with Congress specifically tasking the FCC to issue rulings to implement the TCPA.  47 U.S.C. § 227(b)(2) (requiring the FCC to "prescribe regulations to implement" the TCPA); *see also* 47 U.S.C. § 151 (establishing FCC and charging it with task of regulating interstate communications).

Second, plaintiff seeks to impose TCPA liability on a software application platform provider that merely provides transmission facilities used by others to transmit text messages. Whether such an entity enjoys TCPA immunity as a "common carrier" is an issue particularly

1  suited for resolution by the FCC.[5]

2  Third, telephone calls, facsimiles, and the Internet span the entire nation, indeed the entire
3  globe, making the TCPA an issue of national reach and scope.  Were this Court to issue a ruling
4  on the matter, there would be a high risk of conflicting results should the FCC issue a rulemaking.

5  Lastly, the FCC has already received a petition from a text message carrier company
6  seeking a declaratory ruling that it is a common carrier and thus not liable under the TCPA, a
7  petition which the FCC has taken under submission.[6]  This petition remains pending and is ripe for
8  FCC rulemaking.  The FCC previously considered similar issues regarding facsimile common
9  carriers and found them to be exempt from liability under the TCPA, provided the carrier had no
10 content control or actual knowledge of illegal activity.  *See In the Matter of Rules and Regulations*
11 *Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8779-80, ¶ 54
12 (Oct. 16, 1992) (quoting 2 FCC Rcd. 2819, 2820 (May 15, 1987)) ("In the absence of 'a high
13 degree of involvement or actual notice of an illegal use and failure to take steps to prevent such
14 transmissions,'" common "carriers who simply provide transmission facilities that are used to
15 transmit others' unsolicited facsimile advertisements may not be held liable [under the TCPA]").
16 Applying the FCC's ruling, courts have exempted facsimile common carriers from TCPA liability.
17 *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 92 (D.D.C. 2006) (stating that fax broadcasters who
18 operate like common carriers are not liable under the TCPA in the absence of involvement in the
19 content or actual notice of illegal activity).

20 Because the FCC has not explicitly ruled upon the question of whether text message
21 platform providers are analogous to facsimile common carriers and should be similarly exempt
22 from liability under the TCPA, this case is appropriate for transfer to the FCC under the doctrine

---

[5] In fact, Plaintiff's entire case arises out of the FCC carrying out its duty to define the scope of the TCPA.  In 2003, the FCC ruled that the TCPA's definition of "call" would include "both voice calls and text calls."  *See Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44165 (July 25, 2003); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd. 15927, 15933 (Aug. 12, 2004).  Deferring to the FCC's rulemaking authority, the Ninth Circuit in *Satterfield v. Simon & Schuster, Inc.* thereafter applied the FCC rulemaking to find that the TCPA covers text messages.  569 F.3d 946, 952 (9th Cir. 2009).

[6] The petition, filed by Club Texting, Inc., is discussed in detail in the next section, Sec. IV.B.

9

of primary jurisdiction. *See Synteck Semiconductor Co.*, 307 F.3d at 782 (holding that application of the primary jurisdiction doctrine is appropriate where the "case requires the resolution of an issue within the jurisdiction of an administrative body exercising statutory and comprehensive regulatory authority over a national activity that requires expertise and uniformity in administration.").

**B.     The FCC is Considering a Petition Regarding the Precise Issues in this Case.**

The exact issue presented in this case—whether a text message service provider is a common carrier and exempt from liability under the TCPA—is already under submission before the FCC. On August 25, 2009, Club Texting, Inc. ("Club Texting") filed a petition to the FCC seeking a declaratory ruling "that, consistent with the treatment of fax broadcasters, text broadcasters are not 'senders' of text messages under [the TCPA]." *See Petition for Declaratory Ruling Before the Federal Communications Commission, Club Texting, Inc. Petition for Declaratory Ruling that Text Broadcasters are not "Senders" of Text Messages Under § 227(b)(1) of the Telephone Consumer Protection Act*, Docket No. 02-278, at 1 (Aug. 25, 2009). Request for Judicial Notice ("RJN"), Ex. 1. Club Texting defined a "text broadcaster" as a person or entity that transmits SMS text messages to mobile telephones on behalf of another person or entity for a fee. *Id.* at 1 n.1. Club Texting reasoned that "[t]ext broadcasters act neither as the sender or recipient of text messages, but rather as an intermediary and conduit operating a platform that enables message delivery," and "[i]n light of the functional equivalence between text broadcasting and fax broadcasting, the [Federal Communications] Commission should clarify that text broadcasters, like fax broadcasters, are not 'senders' of text messages under the TCPA." *Id.* at 1.

In response, the FCC issued a public notice seeking public comments. *See Public Notice, Consumer & Governmental Affairs Bureau Seeks Comment on Club Texting's Petition for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, Docket No. 02-278 (Nov. 9, 2009). RJN, Ex. 2. The petition is currently under submission and the FCC has not yet issued a ruling.

The Club Texting petition squarely addresses whether Twilio may be liable under the TCPA. In such situations, where an agency's pending decision applies to the specific issue

10

presented in the litigation, primary jurisdiction is especially applicable. *See Hart v. Comcast of Alameda*, No. C 07-6350 PJH, 2008 WL 2610787, at *2 (N.D. Cal. June 25, 2008) (holding the FCC had primary jurisdiction because two petitions had been filed on the precise issue before the court, and the FCC has announced it would seek public comment); *Clark v. Time Warner Cable*, 523 F.3d 1110, 1113-14 (9th Cir. 2008) (holding that the FCC had primary jurisdiction over the plaintiff's claim because the Notice of Proposed Rulemaking sought comment on the precise issue addressed before the court); *see also Davel Commc'ns*, 460 F.3d at 1090 ("It is precisely the purpose of the primary jurisdiction doctrine to avoid the possibility of conflicting rulings by courts and agencies concerning issues within the agency's special competence.").

Thus, if the Court does not dismiss the claims against Twilio pursuant to Rule 12(b)(6), the Court should exercise its discretion under the primary jurisdiction doctrine and refer the matter to the FCC because the issue presented in this action satisfies the four factors enumerated in *Davel Communications*, and because the precise issue at hand is already being considered by the FCC.

## V.  CONCLUSION.

For the foregoing reasons, this Court should dismiss all claims against Twilio with prejudice.

Dated:  September 29, 2011

Respectfully submitted,

By: /s/ Patrick S. Thompson
Patrick S. Thompson
*pthompson@goodwinprocter.com*
Anna Hsia
*ahsia@goodwinprocter.com*
Audrey M. Lin
*alin@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California  94111
Tel.:  415.733.6000
Fax:  415.677.9041

*Attorneys for Defendants*
*Twilio, Inc., a Delaware Corporation*

## PROOF OF SERVICE

I, Katharine J. Westfall, declare:

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 901 New York Avenue, NW, Washington, DC 20001.

On September 29, 2011, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons below as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY TWILIO, INC. TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

| | |
|---|---|
| Sean Patrick Reis<br>EDELSON MCGUIRE, LLP<br>30021 Tomas Street, Suite 300<br>Rancho Santa Margarita, CA 92688 | Counsel for Plaintiff *BRIAN GLAUSER*<br>Tel. 949-459-2124<br>Fax. 949-459-2123<br>E-Mail: sreis@edelson.com |
| Christopher L. Dore<br>Jay Edelson<br>Rafey Sarkis Balabanian<br>EDELSON MCGUIRE, LLC<br>350 North LaSalle Street, Suite 1300<br>Chicago, IL 60654 | Counsel for Plaintiff *BRIAN GLAUSER*<br>Tel. 312-589-6370<br>Fax. 312-589-6378<br>E-Mail: cdore@edelson.com<br>E-Mail: jedelson@edelson.com<br>E-Mail: rbalabanian@edelson.com |
| BRYAN A. MERRYMAN<br>WHITE & CASE LLP<br>633 W. Fifth Street, Suite 1900<br>Los Angeles, CA 90071-2007 | Counsel for Defendant *GROUPME, INC*.<br>Tel. 213-620-7700<br>Fax. 213-452-2329<br>E-Mail: bmerryman@whitecase.com |
| J. JONATHAN HAWK<br>WHITE & CASE LLP<br>633 W. Fifth Street, Suite 1900<br>Los Angeles, CA 90071-2007 | Counsel for Defendant *GROUPME, INC*.<br>Tel. 213-620-7700<br>Fax. 213-452-2329<br>E-Mail: jhawk@whitecase.com |
| JEREMY OSTRANDER<br>WHITE & CASE LLP<br>5 Palo Alto Square, 9th Floor<br>Palo Alto, CA 94306 | Counsel for Defendant *GROUPME, INC*.<br>Tel: 650-213-0300<br>Fax: 650-213-8158<br>E-Mail: jostrander@whitecase.com |

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

Case No. CV11-2584 PJH

1   ☑  (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

☐  (EXPRESS MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing Express Mail for mailing. On the same day that Express Mail is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the United States Postal Service for receipt of Express Mail.

☐  (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐  (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐  (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐  (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on September 29, 2011, at Washington, District of Columbia.

    Katharine J. Westfall
    (Type or print name)                   (Signature)

Case No. CV11-2584 PJH