1 | Patrick S. Thompson (SBN 160804)
*pthompson@goodwinprocter.com*
2 | Anna Hsia (SBN 234179)
*ahsia@goodwinprocter.com*
3 | Audrey M. Lin (SBN 271671)
*alin@goodwinprocter.com*
4 | **GOODWIN PROCTER LLP**
5 | Three Embarcadero Center, 24th Floor
San Francisco, California 94111
6 | Tel.: 415.733.6000
Fax: 415.677.9041
7 |
8 | *Attorneys for Defendant*
*Twilio, Inc., a Delaware Corporation*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWILIO, INC., a Delaware corporation, GROUPME, INC., a Delaware corporation,<br><br>Defendants. | Case No. CV11-2584 PJH<br><br>**REPLY IN SUPPORT OF TWILIO, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: January 25, 2012<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Judge: Hon. Phyllis J. Hamilton |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST TWILIO .............................. 3

    A. Plaintiff Fails to State a TCPA Violation Because He Alleges that Twilio Functions Like Entities Exempt from the TCPA ...................................................... 3

    B. Plaintiff Fails to Plead Around His Concession That Twilio Functions Like Entities Exempt From the TCPA ............................................................................. 5

        1. Plaintiff Fails to State a TCPA Violation Because He Fails to Allege that Twilio "Made" the Text Message Calls ................................................... 5

        2. Plaintiff Fails to State a TCPA Violation Because He Fails to Allege that Twilio Used Automatic Telephone Dialing Equipment ......................... 6

        3. Plaintiff Fails to State a TCPA Violation Because He Alleges No Facts Sufficient to Support Any Inference That Twilio Had "Actual Notice" of TCPA Violations ......................................................................... 7

    C. The FAC Should be Dismissed With Prejudice ........................................................ 8

III. IF THE COURT DECLINES TO DISMISS THE COMPLAINT, THE COURT SHOULD REFER THE MATTER TO THE FCC .......................................... 8

IV. CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Fed. Power Commission v. Louisiana Power & Light Co.*,
    406 U.S. 621 (1972) ........................................................................................................... 12

*Hart v. Comcast of Alameda*,
    No. C 07-6350 PJH, 2008 WL 2610787 (N.D. Cal. June 25, 2008) ....................................... 12

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) ................................................................................................ 10

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ................................................................................................ 11

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
    307 F.3d 775 (9th Cir. 2002) ................................................................................................ 12

*Texas v. American Blastfax, Inc.*,
    121 F. Supp. 2d 1085 (W.D. Tex. 2000) ................................................................................ 6

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................................. 6

*United States v. Dish Network, L.L.C.*,
    No. 09-3070, 2011 WL 475067 (C.D. Ill. Feb 4, 2011) ........................................................ 11

**STATUTES**

47 U.S.C. § 227(a)(1) ..................................................................................................................... 8

47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................................................... 7

47 U.S.C. § 227(b)(2) ................................................................................................................... 11

**OTHER AUTHORITIES**

*In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*,
    2 FCC Rcd. 2819 (May 15, 1987) ..................................................................................... 7, 9

*Rules and Regulations Implementing the TCPA of 1991*,
    68 F.R. 44144-01, 44165 (July 25, 2003) ........................................................................ 7, 11

## I. INTRODUCTION

Plaintiff asks this Court to expand liability under the Telephone Consumer Protection Act ("TCPA") far beyond its intended scope. Under plaintiff's legal theory, any company involved in any way with transmitting an alleged unsolicited text message would be liable under the TCPA. Plaintiff's theory would find that the carriers, handset makers, intermediate routers, and many more companies were "makers" of a text message if they appear anywhere in the path of a particular text message. Plaintiff cites no case law for this broad theory of liability because there is none.

Plaintiff responded to Twilio's original motion to dismiss by filing the First Amended Complaint ("FAC"). As Twilio observed in its motion to dismiss the FAC, plaintiff did not and cannot cure the deficiencies in his putative class action against Twilio. Given the deficient allegations in the FAC, plaintiff cannot state a claim against Twilio under the TCPA. The Court should find that further amendment would be futile and dismiss the FAC with prejudice because plaintiff already has had two bites at the apple and has been unable to cure the deficiencies in his claims.

The TCPA restricts the use of automated telephone equipment to make random solicitations using artificial or prerecorded voices. As Twilio observed in its opening brief, neither the Federal Communications Commission ("FCC") nor the courts have held telephone companies or fax broadcasters liable under the TCPA unless a plaintiff alleges the provider had heavy involvement in controlling the content or recipients of a call or fax, and that the provider had actual knowledge that its services were being used for an unlawful purpose. That same reasoning extends to text messages, also known as short message service ("SMS") calls. Plaintiff's opposition fails to address that fundamental point.

Plaintiff's opposition tortures the principle of plain meaning to support the contention that Twilio "makes" the calls in controversy, then offers an extensive analysis of why Twilio is not a common carrier and therefore not subject to any exemption from the TCPA. Plaintiff's arguments miss the point. Plaintiff does not allege that Twilio makes calls in any sense that is different from

telephone providers such as AT&T, Verizon or Sprint. Indeed, plaintiff introduces evidence that Twilio operates as a Voice over Internet Protocol ("VoIP") provider. According to the FCC, such providers simply use a software application, instead of telephone lines, to allow consumers to make voice calls or send text messages. Twilio passes along messages created by its customer's customers (i.e., GroupMe's customers) to recipients who are identified and selected by GroupMe's customers, not Twilio. Plaintiff does not cite any case, regulation or administrative decision holding a common carrier, fax broadcaster, VoIP or other messaging service providers liable under the TCPA where the provider has only transmitted a call or text message created by a third party, and sent to someone identified by that third party.

Plaintiff tries to get around the pleading requirements by claiming that Twilio enters into service contracts with third parties, so it has a greater degree of control. The existence of a contract does not support a plausible inference of actual knowledge. Telephone companies routinely enter contractual service agreements with their customers, large and small. By plaintiff's reasoning, any major telephone service provider that contracts with a business customer would be ascribed actual knowledge and control over the calls and messages transmitted for that business.

Plaintiff also contends that it need only allege the capacity to store telephone numbers to be called using a random or sequential number generator. But that argument is unavailing because plaintiff admits that the numbers are not random. Indeed, plaintiff states in the FAC that individual consumers that subscribe to GroupMe enter the recipient's name and telephone number. Plaintiff also alleges that the subscribers to GroupMe's service identify the intended message recipients and transmits that information to GroupMe, which then transmits it to Twilio. Thus, the numbers are neither random nor sequential. Given these incurable deficiencies, the Court should dismiss the FAC.

If the Court does find that the pleadings are adequate, the matter should be referred to the FCC. Curiously, plaintiff contends that the FCC lacks jurisdiction over Twilio and its transmission of messages. If that were true, then the FCC could not have adopted the implementing regulations that plaintiff claims extends potential liability to Twilio or similar

REPLY IN SUPPORT OF TWILIO, INC.'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT                Case No. CV11-2584 PJH

2

providers under the TCPA in the first place. As set forth in Twilio's motion to dismiss, the FCC is currently considering a petition regarding that precise issue, thus obliging the Court to invoke primary jurisdiction. Nowhere in plaintiff's opposition does he dispute that application of the factors relevant to primary jurisdiction weighs in favor of referring this case to the FCC if this case is not dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST TWILIO

### A. Plaintiff Fails to State a TCPA Violation Because He Alleges that Twilio Functions Like Entities Exempt from the TCPA

Twilio demonstrated in its opening brief that the Court should dismiss the FAC with prejudice because plaintiff alleges that Twilio merely transmits the text messages in controversy. Based on plaintiff's allegations, Twilio functions like telephone common carriers and fax broadcasters—entities that are exempt from the TCPA. In response, plaintiff contends that Twilio does not in fact function like telephone common carriers, because Twilio is a VoIP provider. Plaintiff further seeks judicial notice of a Form 499 printout showing Twilio as a VoIP provider. *See* Plaintiff's Corrected Response in Opposition to Defendant Twilio, Inc.'s Motion to Dismiss the Amended Complaint ("Opposition" or "Opp."), at 11 n.3, Dkt. #65. In doing so, plaintiff succeeds only in demonstrating how Twilio operates identically to telephone common carriers. As defined by the FCC, VoIP is an alternative to a regular telephone line: VoIP "is a technology that allows you to make voice calls using a broadband Internet connection instead of a regular (or analog) phone line."[1] Like telephone common carriers that transmit telephone calls or text messages made by others, Twilio merely transmits text messages created by others. Twilio transmits messages received from GroupMe, and GroupMe's customers make all decisions about what text messages are created and the telephone numbers to which all of these text messages are directed. Just as is the case with companies like Verizon and other providers, Twilio has no TCPA liability for the decisions of its customer's customers (i.e., GroupMe's customers).

---

[1] *See* Federal Communications Commission, Voice-Over-Internet-Protocol, http://transition.fcc.gov/voip/ (last visited Nov. 15, 2011).

REPLY IN SUPPORT OF TWILIO, INC.'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT             Case No. CV11-2584 PJH

3

Plaintiff also argues that Twilio does not function like a common carrier because Twilio does not need to provide emergency dialing services or disability access requirements. Opp. at 23-24. Whether Twilio is in fact a common carrier or obligated to comply with common carrier obligations is irrelevant. The issue here is that plaintiff has not alleged facts sufficient to establish that Twilio does anything more than transmit messages created by third parties and directed to recipients identified by those third parties.

Plaintiff argues in the Opposition that Twilio does not "simply provide transmission facilities that are used to transmit others' unsolicited [text message calls]." Opp. at 11. But there is no substance to this argument. Plaintiff does not allege in the FAC what Twilio supposedly does beyond merely transmitting messages. In particular, plaintiff does not allege that Twilio creates the messages, controls the content of the messages, or identifies the recipients of the text messages in controversy.[2] As such, plaintiff has failed to allege anything in Twilio's transmission of the text messages in controversy that differs from the role played by a telephone service provider in the transmission of SMS.[3]

---

[2] Plaintiff further argues that Twilio "actively solicits advertisers like GroupMe and reviews the content of the text message calls it transmits." Opp. at 11. The claim that Twilio "reviews the content of the text message calls it transmits" was never raised in the FAC and should be disregarded by the Court. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) ("[i]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss") (citations omitted).

[3] Plaintiff's contentions that Twilio does not operate like fax broadcasters similarly fail. Opp. at 12. Twilio does not contend that it is a fax broadcaster. Twilio contends that plaintiff alleges only that Twilio operates exactly like a fax broadcasters, because Twilio controls neither the content nor the recipients of text messages. Just like the fax broadcaster that sends facsimiles on behalf of others for a fee, Twilio sends text messages on behalf of others for a fee. Plaintiff cites to *Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085 (W.D. Tex. 2000), presumably contending that Twilio functions more like the *Blastfax* defendant, where the court denied a motion to dismiss. Opp. at 11. But in *Blastfax*, plaintiff alleged that defendant was "more than a common carrier or service provider" because Blastfax "maintain[ed] and use[d] a database of recipient fax numbers, actively solicit[ed] third party advertisers and presumably review[ed] the content of the fax advertisements it sen[t]." *Id.* at 1089. The facts in that case are not analogous to those alleged in the FAC where plaintiff alleges that the GroupMe user identifies all text message recipients, and that the messages are created by those users and sent to the recipients that they have identified. Nowhere in the FAC does plaintiff allege that Twilio actually reviews the content of any text messages transmitted.

B. **Plaintiff Fails to Plead Around His Concession That Twilio Functions Like Entities Exempt From the TCPA**

Unable to refute the admission that Twilio operates exactly like entities exempt from the TCPA, plaintiff argues that Twilio is liable under the TCPA because (1) Twilio is the "maker" of text message calls; (2) Twilio employed an auto-dialer, capable of randomly dialing recipients; and (3) Twilio had actual notice of illegality. All three contentions fail.

1. Plaintiff Fails to State a TCPA Violation Because He Fails to Allege that Twilio "Made" the Text Message Calls

To be liable for a TCPA violation, plaintiff must sufficiently allege that Twilio "made" the text message calls at issue. 47 U.S.C. § 227(b)(1)(A)(iii). As set forth in Twilio's motion to dismiss, plaintiff alleged only that Twilio acted as a mere conduit for the transmission of text messages made by others. Memorandum of Points and Authorities in Support of Twilio, Inc.'s Motion to Dismiss First Amended Class Action Complaint ("Mot.") at 3-4, Dkt. #46-1. Plaintiff contends that Twilio "made" the text message calls, urging the Court to adopt the "ordinary and natural meaning" of the word "makes." Opp. at 8. Plaintiff contends that the person or entity who "makes" or "initiates" a text message call is the one who "commences, starts, or introduces" the call. Opp. at 8.

Twilio agrees that the Court should apply the plain language meaning of the TCPA. Using plain language, it is the GroupMe user who makes the call, not Twilio. According to the Opposition, the "maker" of a telephone call is the "person or entity [who] dials the number." Opp. at 9. According to the FAC, the GroupMe user authored the text messages in dispute and sent those text messages to recipients of their own choosing. FAC at ¶¶ 10, 12, Dkt. #34. Thus, it is GroupMe's customer who "commenced, started, or introduced" the call.

Any other reading of the statute would lead to absurd results. Plaintiff argues that, without Twilio, "GroupMe would have no way of making the text messages at issue." Opp. at 9. But text messages cannot be made without telephones, cellular service providers, handsets, or a computer. Under plaintiff's theory, any service provider or equipment manufacturer could be the "maker" of the message. Plaintiff cites no authority for such a broad extension of potential liability under the

TCPA.

### 2. Plaintiff Fails to State a TCPA Violation Because He Fails to Allege that Twilio Used Automatic Telephone Dialing Equipment

Plaintiff does not, and cannot, plead facts sufficient to give rise to a plausible inference that the text messages made here were transmitted through an automatic telephone dialing system ("ATDS"). ATDS has the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator" and to "dial such numbers." 47 U.S.C. § 227(a)(1). Given the allegations in the FAC, there is nothing random about the text messages in question. Plaintiff admits that it is the GroupMe user who identifies "up to twenty-four recipients, and provides the full names and cellular telephone numbers of each proposed [recipient]." FAC ¶ 12. As alleged by plaintiff, Twilio does not choose any recipients, either intentionally or randomly. FAC ¶¶ 12, 17. Those decisions are made by the GroupMe user. Thus, plaintiff cannot claim that Twilio used any "random or sequential number generator" to send unsolicited messages to random groups of people. Indeed, such allegations would contradict the existing factual allegations in the FAC.

Needless to say, none of the cases in the Opposition support liability in the factual circumstances alleged in the FAC. Plaintiff relies on *Kramer v. Autobytel, Inc.*, but in *Kramer*, plaintiff alleged that defendants "used lists of thousands of cellular numbers of consumers acquired from third parties." 759 F. Supp. 2d 1165, 1168 (N.D. Cal. 2010). In *Kazemi v. Payless Shoesource Inc.*, plaintiff alleged receiving "impersonal" text messages sent "en masse." 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010). Likewise, in *Abbas v. Selling Source, LLC*, plaintiff alleged receiving text messages from "an institutional sender without any personalization" and that there was no reason to receive the messages "aside from telemarketing purposes." 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009). Here, in stark contrast, plaintiff alleges that a GroupMe customer sent personalized text messages to no more than twenty-four recipients identified by that GroupMe user. FAC ¶¶ 10, 12.

### 3. Plaintiff Fails to State a TCPA Violation Because He Alleges No Facts Sufficient to Support Any Inference That Twilio Had "Actual Notice" of TCPA Violations

To state a viable TCPA claim, plaintiff must allege facts sufficient to show that Twilio (1) controlled who received text messages; (2) controlled the content of the advertisements; and/or (3) had actual notice of illegality. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8779-80 (Oct. 16, 1992) (quoting 2 FCC Rcd. 2819, 2820 (May 15, 1987)); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01, 44169 (July 25, 2003). Plaintiff entirely ignores the first two prongs, thereby conceding that he cannot plead around allegations that GroupMe users controlled the content and the recipients of the text messages.

Plaintiff argues that he sufficiently alleged "actual notice" because Twilio enters into private contracts with third parties. Plaintiff argues that Twilio is different from telephone common carriers and "is in a far better position to understand how its customers are using it to make text message calls." Opp. at 14. That argument fails for two reasons. First, traditional telephone companies also enter into third party contracts. That does not provide a basis for an inference of actual knowledge. *See In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (May 15, 1987) (recognizing that it would be "unlikely that a telephone common carrier will ever possess sufficient knowledge of an illegal use of its facilities to be held liable therefore under section 223(b)."). Second, plaintiff's attenuated analysis reveals the principal, uncorrectable flaw in the FAC: Nowhere does plaintiff allege that Twilio had actual knowledge that GroupMe was using Twilio's services for illegal purposes.[4] To state a claim, plaintiff must make the direct allegation of "actual notice of an illegal use." *See id.* Considering plaintiff's allegation that GroupMe markets its "group texting" service to allow individual GroupMe users to create groups of up to twenty-four people of their own choosing (FAC ¶¶ 10-12), Twilio could reasonably and

---

[4] Telephone companies, which are generally exempt from the TCPA, enter into contracts with third parties. But plaintiffs would not contend that entering into a private contract would nullify any exemption from TCPA liability granted to telephone companies.

correctly assume that GroupMe was promoting a service that permits friends and relatives to communicate with each other quickly, efficiently and lawfully. Plaintiff does not and cannot make any reasoned argument to support an inference that Twilio had actual knowledge of illicit conduct.

### C. The FAC Should be Dismissed With Prejudice

Plaintiff does not dispute that the Court has broad discretion to dismiss the FAC with prejudice because this is his second attempt at pleading a viable claim. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (where plaintiff has previously amended, the court's discretion to deny leave to amend is "particularly broad") (citation omitted). Plaintiff does not address Twilio's arguments that plaintiff cannot plead around the following deficiencies of the FAC: (1) plaintiff cannot amend the FAC to allege that Twilio operated as anything more than a software platform through which others can send text messages; (2) plaintiff cannot amend the FAC to allege that Twilio controlled who received text messages; (3) plaintiff cannot amend the FAC to allege that Twilio controlled the content of the text messages; and (4) plaintiff cannot amend the FAC to allege that Twilio had "actual notice" of illegality. *See* Mot. at 6-7.

Plaintiff has not and cannot cure the deficiencies of the original complaint he voluntarily amended. Accordingly, the FAC should be dismissed with prejudice.

### III. IF THE COURT DECLINES TO DISMISS THE COMPLAINT, THE COURT SHOULD REFER THE MATTER TO THE FCC

If the Court declines to dismiss the FAC, the Court should refer this matter to the FCC, as the FCC is considering a petition regarding the precise issues of this case. Plaintiff argues that the Court should not invoke primary jurisdiction because the statute does not give the FCC authority to regulate entities like Twilio. Opp. at 16-25. Plaintiff's arguments are unpersuasive for three reasons.

First, plaintiff asserts that the FCC lacks jurisdiction because the statute does not give the FCC authority to regulate entities like Twilio. Opp. at 17. Applying plaintiff's strict constructionist reasoning, the Court should dismiss the claims outright because the plain text of the TCPA does not extend to text messages at all. Text messages are not included in the definition of the term "calls" under the statute, so plaintiff cannot state a claim. 47 U.S.C. § 227.

Second, if plaintiff contends that text messages are subject to the TCPA, then his contention that the FCC cannot generally regulate companies that transmit text messages does not make any sense. Plaintiff's entire case arises out of the FCC exercising its mandate to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."). Pursuant to that mandate, the FCC ruled that the TCPA's definition of "call" would include "both voice calls and text calls." *See Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44165 (July 25, 2003). The Ninth Circuit approved of the FCC's authority to interpret and enforce the TCPA when it applied the FCC's finding that the TCPA covers text messages. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). Both congressional mandate and Ninth Circuit law support Twilio's argument that the FCC has the authority to interpret and enforce the TCPA as it relates to text messages. Thus, to the extent plaintiff relies on FCC rulemaking to raise a claim as to text messaging, it cannot simultaneously argue that the FCC cannot regulate companies that transmit text messages or interpret the TCPA to find that a company like Twilio is not liable under the TCPA.

Plaintiff also attacks the merits of the Club Texting petition, which raises the precise issues that are presented by this case. Plaintiff argues that "[t]he FCC cannot exempt Club Texting," and "Club Texting is effectively asking for an exemption under the guise of 'removing uncertainty'" and "Club Texting is actually asking the FCC to supplant the word 'send' for the word 'make'" and "Club Texting falls outside the FCC's rulemaking authority, and thus, the Court need not give it deference." Opp. at 18-20. While plaintiff might disagree with the merits of Club Texting's petition, his argument concedes that the petition raises the same issues presented in this action, and that the FCC is poised to address those issues.

Third, rather than address the four factors that support application of the doctrine of primary jurisdiction,[5] plaintiff argues that he would be prejudiced by a stay or dismissal because

---

[5] The four factors courts generally evaluate to determine whether it is appropriate to apply the doctrine of primary jurisdiction are: "(1) whether the question at issue is one within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly

1 Club Texting's petition to the FCC has been pending for two years and it is unknown when the
2 FCC will issue a rulemaking. Opp. at 24-25. The mere passage of time does not suffice as a legal
3 basis for declining to invoke primary jurisdiction. Nor does the mere passage of time, without
4 more, prejudice plaintiff. As the Supreme Court explained, courts are "obliged to defer" to an
5 agency where the "issue brought before a court is in the process of litigation through procedures
6 originating in the [agency]." *Fed. Power Commission v. Louisiana Power & Light Co.*, 406 U.S.
7 621, 647 (1972). Here, the FCC is already considering the precise issues raised by plaintiff in his
8 FAC through the petition filed by Club Texting. Thus, the Court is obliged to defer to the FCC's
9 exercise of primary jurisdiction. Primary jurisdiction is intended to enable a court to "determine
10 that the initial decision[-]making responsibility should be performed by the relevant agency rather
11 than the courts." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir.
12 2002). Because the issue of whether TCPA liability falls on software platforms created by
13 companies like Twilio is one of first impression pending before the FCC, the matter should be
14 referred to that administrative body.

//
//
//
//
//
//
//
//
//
//

---

within the agency's discretion; (3) whether there exists a substantial danger of inconsistent ruling; and (4) whether a prior application to the agency has been made." *See United States v. Dish Network, L.L.C.*, No. 09-3070, 2011 WL 475067, at *2 (C.D. Ill. Feb 4, 2011) (citing *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006).

REPLY IN SUPPORT OF TWILIO, INC.'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT  Case No. CV11-2584 PJH

## IV. CONCLUSION

For the foregoing reasons, Twilio respectfully requests this Court to grant its motion to dismiss with prejudice the claims alleged against Twilio in plaintiff's FAC. In the alternative, the Court should stay this proceeding and defer to the FCC under the doctrine of primary jurisdiction.

Dated: November 17, 2011

Respectfully submitted,

By: /s/ Patrick S. Thompson
Patrick S. Thompson
*pthompson@goodwinprocter.com*
Anna Hsia
*ahsia@goodwinprocter.com*
Audrey M. Lin
*alin@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.6000
Fax: 415.677.9041

*Attorneys for Defendant*
*Twilio, Inc., a Delaware Corporation*

# **PROOF OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this November 17, 2011.

/s/ Patrick S. Thompson
Patrick S. Thompson