BRYAN A. MERRYMAN (SBN 134357)
J. JONATHAN HAWK (SBN 254350)
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA  90071-2007
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  bmerryman@whitecase.com
Email:  jhawk@whitecase.com

BIJAL V. VAKIL (SBN 192878)
JEREMY OSTRANDER (SBN 233489)
WHITE & CASE LLP
5 Palo Alto Square, 9th Floor
3000 El Camino Real
Palo Alto, CA  94306
Telephone: (650) 213-0300
Facsimile:  (650) 213-8158
Email:  bvakil@whitecase.com
Email:  jostrander@whitecase.com

Attorneys for Defendant
GROUPME, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TWILIO, INC., a Delaware corporation; and GROUPME, INC., a Delaware corporation,<br><br>Defendants. | CASE NO. 4:11-cv-02584-PJH<br><br>**DEFENDANT GROUPME, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT, TO STAY THE ACTION OR TRANSFER VENUE**<br><br>Complaint Filed: May 27, 2011<br>Date:          January 25, 2012<br>Time:          9:00 a.m.<br>Courtroom:    3<br>Judge:         Hon. Phyllis J. Hamilton |

*WHITE & CASE LLP*
*633 W. FIFTH STREET, SUITE 1900*
*LOS ANGELES, CA  90071-2007*

1

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ......................................................................................... 1

II.     ARGUMENT ................................................................................................... 2

     A.     The Amended Complaint Is Insufficiently Pleaded and Must Be Dismissed........ 2

     B.     The Court Should Dismiss or Stay this Action Under the Doctrine of Primary Jurisdiction ................................................................................ 5

           1.     Uniform Administration of the TCPA Requires Dismissal or A Stay of This Action Pending Resolution of the Parallel FCC Proceeding .......... 6

                  a.     The FCC Will Address "Prior Express Consent" .......................... 7

                  b.     The FCC Will Likely Address the Definition of an "Auto-Dialer" ...................................................................................... 8

           2.     The Opposition's Arguments Lack Merit ................................................ 10

                  a.     There Is Not "Ample Guidance" On "Prior Express Consent" ...................................................................................... 10

                  b.     The FCC Can Define "Auto-Dialer" ............................................ 12

     C.     In the Alternative, This Action Should be Transferred to the Eastern District of Virginia Pursuant to 28 U.S.C. Section 1404(a) ................................. 13

           1.     The Jones Factors Weigh In Favor Transfer ............................................ 13

            2.     The Opposition's Arguments Do Not Change The Balance of the Jones Factors ......................................................................................... 14

III.    CONCLUSION ........................................................................................... 15

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Abbas v. Selling Source, LLC*,
  2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ........................................................ 3, 4, 5

*Alexander v. Franklin Res., Inc.*,
  2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ............................................................... 13

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .................................................................................................. 2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 2

*CE Design, Ltd. v. Prism Business Media, Inc.*,
  606 F.3d 443 (7th Cir. 2010) ................................................................................. 11, 12

*Charvat v. EchoStar Sattellite, LLC*,
  630 F.3d 459 (6th Cir. 2010) ........................................................................................ 6

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) ........................................................................ 5, 6, 7, 10

*Covad Communications Co. v. Pacific Bell*,
  1999 WL 33757058 (N.D. Cal. Dec. 14, 1999) .......................................................... 15

*Duffy v. Scott*,
  2008 WL 2168902 (N.D. Cal. May 23, 2008) ............................................................ 15

*Fabus Corp. v. Asiana Express Corp.*,
  2001 WL 253185 (N.D. Cal. Mar. 5, 2001) ............................................................... 13

*Gutierrez v. Barclays Group*,
  2011 WL 579238 (S.D. Cal. Feb. 9, 2011) ................................................................... 8

*Harper v. Poway Unified School Dist.*,
  345 F. Supp. 2d 1096 (S.D. Cal. 2004) ........................................................................ 5

*Jones v. GNC Franchising, Inc.*,
  211 F. 3d 495 (9th Cir. 2000) ..................................................................................... 13

*Kazemi v. Payless Shoesource, Inc.*,
  2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ............................................................... 4

*Kemp v. Int'l Bus. Machines Corp.*,
  2010 WL 4698490 (N.D. Cal. Nov. 8 2010) ................................................................ 2

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

*Knutson v. Reply!, Inc.*,
    2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ................................................................. 2, 4

*Kramer v. Autobytel, Inc.*,
    759 F. Supp. 2d 1165 (N.D. Cal. 2010) ......................................................................... 4

*Leckler v. Cashcall, Inc.*,
    2008 U.S. Dist. LEXIS 97439 (N.D. Cal. Nov. 21, 2008) ....................................... 11, 12

*Leckler v. Cashcall, Inc.*,
    554 F. Supp. 2d 1025 (N.D. Cal. 2008) ....................................................................... 11

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ...................................................................................... 13

*Lozano v. Twentieth Century Fox Corp.*,
    702 F. Supp. 2d 999 (N.D. Ill. 2010) ........................................................................... 5

*Maronyan v. Toyota Sales, U.S.A., Inc.*
    -- F.3d --, 2011 WL 4359907 (9th Cir. Sept. 20, 2011) .............................................. 10

*Nat'l Cable Telecommunications Assoc. v. Brand X Internet Srvcs.*,
    545 U.S. 967 (2005) ................................................................................................... 11

*Natural Defense Council v. Norton*,
    64 ERC 1718, at *14 (E.D. Cal. Jan. 3, 2007) ............................................................. 10

*PRG–Schultz USA Inc. v. Gottschalks, Inc.*,
    2005 WL 2649206 (N.D. Cal Oct. 17, 2005) ............................................................... 13

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) .................................................................. 13, 14

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ................................................................................ 11, 12

*Satterfield v. Simon & Schuster, Inc.*,
    2007 WL 1839807 (N.D. Cal. June 26, 2007) ............................................................. 11

*United States v. Dunifer*,
    219 F.3d 1004 (9th Cir. 2000) ..................................................................................... 11

*Wilson v. A.H. Belo Corp.*,
    87 F.3d 393 (9th Cir. 1996) ............................................................................... 7, 11, 12

**FEDERAL STATUTES**

28 U.S.C. § 1404(a) ............................................................................................................ 13

28 U.S.C. § 2342 ............................................................................................................. 7, 11

47 U.S.C. § 227, *et seq.* .................................................................................................. 2, 6

# ADMINISTRATIVE AGENCY MATERIALS

*In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, CG Docket No. 02-278, 7 FCC Rcd 8752 (September 17, 1992) ........................................................................................................... 6, 10

*In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, CG Docket No. 02-278, 18 FCC Rcd 14014 (June 26, 2003) ........................................................................................................... 6, 9, 12

*In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278 (December 28, 2007) .................. 12

*In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, 25 FCC Rcd 1501 (January 20, 2010)....................................................................................... 6, 7

Comments of Wells Fargo & Co., CG Docket No. 02-278 (June 21, 2010) ................................. 8

Reply Comments of JPMorgan Chase & Co., CG Docket No. 02-278 (June 21, 2010) ............... 8

Reply Comments of the United Parcel Service In Response to Global Tel* Link Corporation's Petition for Declaratory Ruling, CG Docket No. 02-278 (July 15, 2010)......... 8

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

LOSANGELES 932530 (2K)                                    GROUPME'S REPLY; 4:11-CV-02584-PJH

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

## I.      **INTRODUCTION**

The Motion shows that the Amended Complaint has not and cannot plead the auto-dialer element of Plaintiff's TCPA claim.[1]  First, the Amended Complaint cannot directly allege GroupMe used an auto-dialer.  The Amended Complaint's well-pleaded allegations refute that Plaintiff's telephone number was randomly generated or sequentially dialed.  Second, the Amended Complaint cannot allege the use of an auto-dialer on information and belief.  Such an allegation is only permissible when supported by well-pleaded allegations that show the relevant text messages were "generic" and "impersonal advertisements" sent by someone who had no reason to contact Plaintiff.  Here, to the contrary, Plaintiff's text messages were social and personalized.  They were not arbitrary and, as such, prevent Plaintiff from making allegations sufficient to support a reasonable inference that GroupMe used a machine with the "capacity" to randomly generate or sequentially dial telephone numbers.

The Motion shows that dismissal or stay of the action is appropriate under the doctrine of primary jurisdiction.  The FCC is the administrative agency charged by Congress with implementing a regulatory scheme to oversee the TCPA, and it is in the midst of a rulemaking proceeding to interpret "prior express consent" and "auto-dialer."  Those largely unregulated issues are central not only to this lawsuit and the FCC's parallel proceeding, but also to other pending TCPA lawsuits, thus implicating the FCC's ability to uniformly administer its TCPA regulatory scheme.  Dismissal or a stay of this action is appropriate to enable the FCC to decide the statutory terms of art without risking an unguided judicial interpretation that may be contrary to whatever the FCC eventually decides.

The Motion also shows that transfer to the United States District Court for the Eastern District of Virginia is appropriate for the convenience of the parties and in the interests of justice.

Nothing in the Opposition changes what is shown in the Motion.  The Opposition incorrectly characterizes the Motion's grounds for dismissal as arguments that have already been rejected by other courts.  In doing so, the Opposition misapplies the legal standards for pleading a

---

[1] The TCPA defines an "auto-dialer" as equipment with the "capacity" to randomly generate or sequentially dial telephone numbers.

1    TCPA claim and for invoking the doctrine of primary jurisdiction.  The Opposition also attempts

2    to support its arguments with authorities that simply do not provide it any support.  In sum, the

3    Opposition's arguments lack merit and the Court should grant the relief requested in the Motion.

4    **II.**     **ARGUMENT**

5           **A.**     **The Amended Complaint Is Insufficiently Pleaded and Must Be Dismissed**

6           The Motion shows that a complaint does not meet Rule 8's pleading requirements unless

7    its well-pleaded factual allegations, taken with matters judicially noticeable, state a claim that is

8    "plausible," as opposed to merely "possible."  Mtn. at 9-11 (*Ashcroft v. Iqbal*, 129 S. Ct. 1937,

9    1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Conclusory allegations

10   or bare recitations of a claim's elements are not well-pleaded and must be disregarded.  *Id.*

11   Likewise, ultimate facts pleaded on information and belief do not satisfy Rule 8 unless they are

12   supported by specific allegations that create a reasonable inference of wrongdoing.  *Id.* (*Kemp v.*

13   *Int'l Bus. Machines Corp.*, 2010 WL 4698490, at *4 (N.D. Cal. Nov. 8 2010)).  If, after

14   disregarding all insufficient allegations, a complaint's well-pleaded factual allegations contradict

15   an essential element of the plaintiff's claim or, at best, render it just as likely the defendant is not

16   liable, then the plaintiff has not shown entitlement to relief and the complaint must be dismissed.

17   *Id.* (*Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 570).

18          The Motion shows that a plaintiff asserting a TCPA claim for the unauthorized

19   transmission of a text message must allege the defendant made the relevant call using an auto-

20   dialer, *i.e.,* a machine with the "capacity" to randomly generate and sequentially dial telephone

21   numbers.  Mtn. at 9-10 (47 U.S.C. § 227(a)(1); *Knutson v. Reply!, Inc.*, 2011 WL 291076, at *1

22   (S.D. Cal. Jan. 27, 2011)).

23          A plaintiff can plead the auto-dialer element in one of two ways.  First, the plaintiff can

24   directly plead facts showing the defendant used a machine to randomly generate or sequentially

25   dial his cellular telephone number.  Mtn. at 10 (*Reply!*, 2011 WL 291076, at *1).  Second, in the

26   alternative, a plaintiff can plead the defendant's use of an auto-dialer on information and belief.

27   *Id.*  Pleading an auto-dialer on information and belief is only permissible, however, when the

28   complaint also asserts specific factual allegations sufficient to allow a reasonable inference that

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

- 2 -

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

1   the machine the defendant used had the "capacity" to randomly generate or sequentially dial

2   telephone numbers.  *Id.*  Courts in this circuit have found such an inference permissible when

3   detailed allegations show the defendant (1) sent the plaintiff impersonal text message

4   advertisements (2) via SMS short code and (3) had no other reason to be in contact with the

5   plaintiff.  *Id.*  Without such detailed factual allegations, a complaint fails to "flesh out the

6   conclusion" that the sender used an auto-dialer and a court cannot make the requisite inference.

7   *Id*; *see Abbas v. Selling Source, LLC*, 2009 WL 4884471, at * 3 (N.D. Ill. Dec. 14, 2009).

8        The Motion shows that Plaintiff has not and cannot plead the auto-dialer element of his

9   claim either directly or on information and belief.  First, the well-pleaded allegations in the

10  Amended Complaint refute any possibility that GroupMe sent the relevant text messages using a

11  machine's random number generation or sequential dialing functions.  Mtn. at 10 (Am. Compl.,

12  ¶¶ 10-13).  The Amended Complaint alleges that the group creators provided GroupMe with the

13  putative class members' telephone numbers, and that GroupMe then used a machine to "send" not

14  more than 24 putative class members text messages "simultaneously," "*en masse*" and "at once."

15  *Id.*  It follows that none of the putative class member's telephone numbers could have been

16  randomly generated by a machine if the group creators provided the numbers to GroupMe.  The

17  group members also could not have been sequentially dialed if GroupMe sent the text messages to

18  everyone "at once."  *Id.*

19       Second, the content of Plaintiff's "Poker" group text message conversation prevents a

20  reasonable inference that GroupMe sent the relevant text messages using a machine with the

21  "capacity" to randomly generate or sequentially dial telephone numbers.  The first text message

22  Plaintiff received contained his name, the names of his ten friends, the "Poker" group name, and a

23  unique ten-digit telephone number for the group.  Mtn. at 10-11 (Am. Compl., ¶¶ 29, 32-39, 56;

24  Declaration of Steve Martocci ("Martocci Decl."), ¶ 28; Request for Judicial Notice ("RJN") at 4-

25  5).  The subsequent messages were either personalized, social messages exchanged among the

26  group, or they told Plaintiff how to stop receiving his "Poker" messages.  *Id.*  Contrary to the

27  conclusory allegations in the Amended Complaint, the "Poker" text message conversation

28  Plaintiff received and participated in was not "impersonal" or a "generic advertisement," and

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

1   GroupMe was not arbitrarily contacting him.  *Id.*  Put simply, Plaintiff's text message

2   conversation lacks the impersonal and random qualities required to reasonably infer that

3   GroupMe used an auto-dialer.  *Id.*

4         The Opposition does not dispute that the Amended Complaint fails to directly allege the

5   auto-dialer element, *i.e.,* that GroupMe randomly generated or sequentially dialed Plaintiff's

6   telephone number.  The Opposition only argues that the Amended Complaint's auto-dialer

7   allegation, made on information and belief, is sufficient to establish that element of Plaintiff's

8   claim.  In doing so, however, the Opposition misapplies the relevant pleading standard.  It ignores

9   the *Reply!* case cited in the Motion and incorrectly argues that it is sufficient for Plaintiff to

10  merely allege the "nature of the text messages received and the method in which those text

11  messages were transmitted."  Opp. at 6.  The Opposition's purported "standard" thus neglects

12  Rule 8's requirement that allegations made on information and belief must permit a **reasonable**

13  inference that GroupMe sent Plaintiff text messages using a machine with the "capacity" to

14  randomly generate or sequentially dial telephone numbers.  *Reply!*, 2011 WL 291076, at *1-2.  As

15  discussed above, such an inference here is patently unreasonable because the full content of the

16  "Poker" group conversation contradicts allegations that the relevant text messages were

17  impersonal or arbitrarily sent to Plaintiff.

18        Further, the authorities cited in the Opposition do not support its purported standard for

19  pleading the auto-dialer element on information and belief.  In fact, most of those authorities

20  support the Motion.  The courts in *Kramer*, *Kazemi* and *Abbas* only permitted the plaintiffs to

21  plead the use of an auto-dialer on information and belief because the factual allegations there

22  allowed a reasonable inference that the relevant text messages were impersonal and arbitrarily

23  sent by the defendants.  *Kazemi v. Payless Shoesource, Inc.,* 2010 WL 963225, at *2 (N.D. Cal.

24  Mar. 16, 2010); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010); *Abbas,*

25  *LLC*, 2009 WL 4884471, at * 3.  The *Abbas* court explained this rationale, stating that "the text of

26  the SMS message [plaintiff] allegedly received clearly suggests that it was from an institutional

27  sender **without any personalization**. . . .  Lastly, there is no indication that [defendant] had any

28  reason to call [plaintiff]'s number aside from telemarketing purposes."  *Abbas*, 2009 WL

- 4 -

4884771, at * 3 (emphasis added).

The Opposition's remaining authority on the issue, *Lozano*, allowed a plaintiff to allege the auto-dialer element of his TCPA claim without also asserting the supporting, detailed factual allegations required above. *Lozano v. Twentieth Century Fox Corp.*, 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010). *Lozano*, however, is a district court case from the Seventh Circuit that applies a pleading standard incompatible with the standard applied in this circuit. *Id.* Its holding should be disregarded. *See Harper v. Poway Unified School Dist.*, 345 F. Supp. 2d 1096, 1104-05 (S.D. Cal. 2004) (district courts in the Ninth Circuit apply Ninth Circuit precedent).

Finally, the Opposition mischaracterizes the Motion's grounds for dismissal as an argument that has been rejected previously, stating "GroupMe contends that dismissal is warranted because it did not *actually* use the features of an ATDS to send the unauthorized text message to Plaintiff." Opp. at 7 (emphasis in original). That is not GroupMe's position. The Motion shows that the Amended Complaint has not and cannot plead GroupMe randomly generated or sequentially dialed telephone numbers. Mtn. at 9-11. The Motion shows that the Amended Complaint has not and cannot support its auto-dialer allegation, made on information and belief, with detailed facts to allow a reasonable inference an auto-dialer was used. *Id.* Indeed, the Motion shows that the Amended Complaint is either devoid of well-pleaded factual allegations supporting the auto-dialer element of Plaintiff's claim or, at best, fails to plausibly allege that element. *Id.*

**B.**   **The Court Should Dismiss or Stay this Action Under the Doctrine of Primary Jurisdiction**

The Motion shows that a court can dismiss or stay an action under the doctrine of primary jurisdiction after determining (1) the litigation presents "a particularly complicated issue that Congress has committed to a regulatory agency," and (2) the regulatory agency, rather than a court, should decide the issue in order to protect the integrity of the applicable regulatory scheme. Mtn. at 11-12 (*Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Dismissal or stay of an action under the primary jurisdiction doctrine is particularly appropriate where the litigation requires resolution of an issue already being "actively consider[ed]" by the agency

White & Case LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA 90071-2007

- 5 -

charged with administering the relevant statute.  Mtn. at 12-13 (*Clark*, 523 F. 3d at 1112-1115).

## 1.   Uniform Administration of the TCPA Requires Dismissal or A Stay of This Action Pending Resolution of the Parallel FCC Proceeding

The Motion shows that Congress charged the FCC with "prescrib[ing] regulations to implement the requirements" of the TCPA, thus giving the FCC comprehensive authority to administer a uniform regulatory scheme for telemarketing.  Mtn. at 14 (47 U.S.C. § 227(b)(2)(C); RJN, Ex. H (2003 Report and Order, ¶ 183); *Charvat v. EchoStar Sattellite, LLC*, 630 F.3d 459 (6th Cir. 2010).  Congress gave the FCC law-making and interpretive authority over the TCPA, and also the "flexibility to consider what rules should apply to future technologies as well as existing" ones.  Mtn. at 13-14 (47 U.S.C. §§ 227(b), (c); *Charvat*, 630 F.3d at 466-67).

The Motion shows that the FCC has implemented a complex regulatory TCPA scheme over the past twenty years in furtherance of its Congressional charge and, most recently, initiated an administrative proceeding to determine an issue central to this case -- what constitutes "prior express consent."  Mtn. at 15 (RJN, Ex. L (2010 Notice of Proposed Rulemaking, ¶¶ 2, 17-20). "Prior express consent" is a defense to a TCPA claim, but the statute does not define the phrase and the FCC has provided limited guidance for interpreting it.  *Id.* (47 U.S.C. § 227(b)(1)(A); RJN, Ex. L (2010 Notice of Proposed Rulemaking, ¶ 17).  The FCC's only interpretation of "prior express consent" relevant to auto-dialing cellular telephones is that a person gives the requisite consent if they "knowingly release their telephone number" without also issuing instructions not to call.  Mtn. at 13-14 (RJN, Ex. G (1992 Report and Order, ¶ 31) and Ex. V (2007 Declaratory Ruling, ¶ 9).

The FCC has never before adopted regulations clarifying: who must obtain "prior express consent" from the called party, in what form that consent must be obtained to call a cellular telephone, or what the consenting party must be told about the consequences of releasing his telephone number.  Mtn. at 15 (RJN, Ex. V (2010 Notice of Proposed Rulemaking, ¶¶ 2, 17-20). Those issues are a blank slate, but the FCC has now acknowledged the need for regulation.  *Id.* Its 2010 Notice of Proposed Rulemaking signals that, in order to promote the uniform application of the TCPA, the FCC has undertaken the administrative process of considering whether "prior

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

- 6 -

express consent" needs to be obtained in a particular form (*i.e.*, written or oral), and whether a party from whom consent is sought needs to be apprised that he will receive a call upon releasing his number. Mtn. at 15-16 (RJN, Ex. L (2010 Notice of Proposed Rulemaking, ¶¶ 17, 19)).

### a.    The FCC Will Address "Prior Express Consent"

The Motion shows that "prior express consent" is a threshold issue in this case. Mtn. at 19. It is an affirmative defense to a TCPA claim and, if GroupMe can show it obtained consent from Plaintiff and the putative class members, all other issues, including whether an auto-dialer was used, become irrelevant. *Id.* The Motion further shows that "prior express consent" is squarely before the Court. The Amended Complaint acknowledges that the group creators released the group members' telephone numbers to GroupMe and affirmatively represented they obtained consent from the group members before sending them text messages. Mtn. at 18-19 (*Clark*, 523 F.3d at 1114-16 and Am. Compl., ¶¶ 13, 34, 36, 40-41). Such behavior comports with the plain language of the FCC's existing, binding regulations whereby a person gives prior express consent to receive a text message when he knowingly releases his telephone number. Mtn. at 19; *see Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 399-400 (9th Cir. 1996) (district court cannot "disregard" FCC Declaratory Rulings under Administrative Orders Review Act, 28 U.S.C. § 2342). GroupMe obtained prior express consent from Plaintiff and the other putative class members either directly when they signed up for the service or indirectly when they released their telephone numbers to the group creators. *Id.*

Nonetheless, the allegations in the Amended Complaint deny that Plaintiff and the putative class members gave "prior express consent." Mtn. at 18-19 (Am. Compl., ¶¶ 34, 36, 40-41). The Opposition also argues that GroupMe's reading of the plain language of the FCC's interpretation "stretch[es] the concept of express consent to unprecedented and impermissible levels." Opp. at 13. Yet, the Opposition fails to cite authority supporting its position or refuting GroupMe's proffered defense. The only support Plaintiff offers in his Opposition for his position is his own "common sense" and "plain language interpretation of the phrase." *Id.* at 10-13.

The Opposition's lack of supporting authority (discussed in greater detail below) confirms the Motion's showing -- that if the Court does not apply the plain language of the FCC's binding

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

1  regulations, then there is no other authority to guide a determination on whether GroupMe

2  obtained "prior express consent" from group members who provided their telephone numbers to

3  the group creators.  *See e.g.*, *Gutierrez v. Barclays Group*, 2011 WL 579238 (S.D. Cal. Feb. 9,

4  2011) (acknowledging lack of authority on "prior express consent" for calls to cellular telephones

5  other than the FCC rules, and resorting to criminal common law principles for guidance).  The

6  FCC, however, is in the process of providing guidance.

7        In fact, commentators on the FCC's 2010 Notice of Proposed Rulemaking foresee that the

8  agency's eventual rules on the form and content of "prior express consent" will address whether a

9  calling party can obtain consent through an intermediary.  A number of those commentators have

10  urged the FCC to adopt a rule expressly recognizing that a party may have authority to release

11  another's telephone number, thereby consenting on that party's behalf to receive text messages.

12  Mtn. at 16-17 (RJN, Ex. T (UPS Reply Comments)).  Those commentators, like GroupMe, rely

13  on intermediaries to facilitate the operations of their text messaging services because it would

14  otherwise be impossible to obtain consent from each individual who, in fact, consents.  *Id.*

15          **b.**      **The FCC Will Likely Address the Definition of an "Auto-**

16                **Dialer"**

17        The Motion shows that the FCC's current proceeding is likely to adopt regulations

18  clarifying which modern technologies have the requisite "capacity" to be "auto-dialers."  Mtn. at

19  17-18.  In response to its 2010 Notice of Proposed Rulemaking, the FCC received a significant

20  number of Comments expressing concern that the absence of regulatory guidance on the term

21  "capacity" has left open the possibility that many modern consumer electronics, even

22  smartphones, may fit the TCPA's definition of an "auto-dialer."  *Id.* (RJN, Ex. U (Wells Fargo

23  Comments) and Ex. N (JPMorgan Reply Comments)).  The Comments, therefore, ask the FCC to

24  provide some guidance on which modern technologies have the requisite "capacity" of an auto-

25  dialer, consistent with Congressional intent in enacting the TCPA to regulate telemarketing.  *Id.*

26        Thus far, the FCC has not adopted regulations providing broad guidance on what

27  "capacity" means under the TCPA.  The FCC has only applied its telecommunications expertise

28  on a case-by-case basis to assess the "capacity" of certain technologies that are not analogous to

the text messaging technologies implicated here.  Mtn. at 15 (2003 Report and Order, ¶ 165).  The FCC's limited regulation in this area has left the definition of "auto-dialer" unworkable as applied to modern technology, which is illustrated by considering the difficulties that will be faced in trying to apply the plain meaning of "capacity" to GroupMe's service.

GroupMe's technology uses virtual, VoIP ten-digit telephone numbers, enabled to carry both voice and text message traffic over the Internet, to aggregate the telephone numbers of individuals who want to exchange group text messages.  Mtn. at 3-5 (Martocci Decl., ¶¶ 11-13, 15-17).  The group creators provide GroupMe with the individual telephone numbers to aggregate, and the group creator and group users then provide GroupMe their text message contents.  GroupMe interacts with Twilio to route and deliver the user-initiated messages to their destinations through unique ten-digit telephone numbers assigned to each group.  *Id.*  GroupMe's technology, however, does not initiate the transmissions between group users and it does not directly contact the telecommunications providers needed to deliver the group's text messages to cellular telephones.  *Id.*  GroupMe's technology also is not configured to randomly generate or sequentially dial telephone numbers.  Mtn. at 19 (Martocci Decl., ¶¶ 8-9, 14-16).

The plain meaning of "capacity" could be interpreted to make all electronic devices capable of being reformatted to perform different functions "auto-dialers."  That interpretation would either make the ubiquitous smartphone an auto-dialer (in which case everyday text messaging behavior would be a TCPA violation), or it would render it nearly impossible for courts to consistently determine which technologies have the requisite "capacity."  For example, would GroupMe's technology, currently not configured to randomly generate or sequentially dial telephone numbers, constitute an auto-dialer if it could be completely reprogrammed to do so?  What if the required adjustment was less significant, such as uploading a pre-programmed software package or activating a dormant function?  Would GroupMe's technology conclusively not be an auto-dialer **only** if it was technologically incapable of being reprogrammed or altered?  Without FCC guidance, courts cannot uniformly determine these "capacity" issues.

In sum, both "prior express consent" and "auto-dialer" are terms of art, and applying them to the facts of this case will raise technical and policy questions about the TCPA's application to

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

1    increasingly prevalent technologies unlike anything that existed twenty years ago.  Not only are

2    there other TCPA lawsuits pending that implicate these same issues, but the FCC has undertaken

3    the administrative process in furtherance of the duties given to it by Congress to maintain uniform

4    application of the TCPA.  Just as in *Clark*, the Court here should dismiss or stay the action to

5    allow the FCC to provide guidance utilizing its expertise.  Mtn. at 20-21.

6                    **2.        The Opposition's Arguments Lack Merit**

7           Plaintiff first opposes the application of the primary jurisdiction doctrine by arguing that

8    the Court is competent to decide the issues already before the FCC.  Opp. at 8-12 ("conventional

9    experience of judges" is one of the four relevant factors).  In making that argument, however, the

10   Opposition does not apply the Ninth Circuit's traditional four factors.  Rather, it relies on Second

11   Circuit law and a dissenting opinion from a Ninth Circuit case where the majority did not even

12   discuss or rule on primary jurisdiction.  Opp. at 8-9 (*Maronyan v. Toyota Sales, U.S.A., Inc.* --

13   F.3d --, 2011 WL 4359907, at * 9 (9th Cir. Sept. 20, 2011)); *Clark*, 523 F.3d at 1114.

14   Respectfully, the undoubted competence of the Court is not invoked in this analysis and the

15   factors advanced by the Opposition are not the law in this circuit.

16          Plaintiff also argues that the primary jurisdiction doctrine cannot be applied if he would be

17   prejudiced by a stay of the action.  Opp. at 16-17.  Plaintiff is unable to cite a Ninth Circuit case

18   to support that proposition, however, and can only cite to a single district court case that pre-dates

19   *Clark*.  *Id.* (*Natural Defense Council v. Norton*, 64 ERC 1718, at *14 (E.D. Cal. Jan. 3, 2007)).

20   Even assuming *arguendo* that prejudice is relevant (which it is not), Plaintiff incorrectly argues

21   that he would be left without recourse in the event of a stay and that GroupMe would "continue to

22   harm consumers."  Opp. at 16-17.  If Plaintiff wants to "protect" himself and other "consumers"

23   against alleged TCPA violations before the conclusion of the FCC's parallel proceeding, he can

24   initiate an enforcement action directly with the agency based on the allegations in this case.  RJN,

25   Ex. G (1992 Report and Order, ¶ 55 (citing 47 U.S.C. §§ 312 and 503(b).  Plaintiff's recourse is

26   **not** limited to a civil action and his bare assertion of "prejudice" does not stand up to scrutiny.

27                    **a.        There Is Not "Ample Guidance" On "Prior Express Consent"**

28          Plaintiff also contends incorrectly that there is "ample guidance" on "prior express

- 10 -

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

1  consent" to guide the Court.  Opp. at 9-11.  To the contrary, "prior express consent" cannot be

2  read according to its "common sense" and "plain language interpretation."  *See Leckler v.*

3  *Cashcall, Inc.*, 2008 U.S. Dist. LEXIS 97439, at *6-7 (N.D. Cal. Nov. 21, 2008).  "Prior express

4  consent" is a statutory term of art and courts reading the phrase according to its "unambiguous,"

5  "discernable, ordinary meaning" have impermissibly run afoul of the FCC's expert interpretation.

6  *See Leckler v. Cashcall, Inc.*, 554 F. Supp. 2d 1025, 1028 (N.D. Cal. 2008).  Notably, even where

7  district courts believe the FCC's interpretation is wrong, those courts must still apply the agency's

8  interpretation.  *Id.*; *see United States v. Dunifer*, 219 F.3d 1004, 1006-07 (9th Cir. 2000) (28

9  U.S.C. § 2342 implements jurisdictional bar to reconsidering whether FCC final order applies to

10  affirmative defenses); *Wilson*, 87 F.3d at 399-400 (9th Cir. 1996); *CE Design, Ltd. v. Prism*

11  *Business Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) (district court cannot "ignore" FCC

12  regulations on the TCPA under 28 U.S.C. § 2342).

13       Relatedly, the *Satterfield* court's reading of "prior express consent" according to Black's

14  Law Dictionary does not support Plaintiff's position that consent must be "clearly and

15  unmistakably stated."  Opp. at 10.  First, the *Satterfield* court never considered the 2007 FCC

16  Declaratory Ruling.[2]  It was never briefed or argued and the Ninth Circuit did not analyze it under

17  *Chevron.  Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009); *Satterfield v.*

18  *Simon & Schuster, Inc.*, 2007 WL 1839807 (N.D. Cal. June 26, 2007).  Moreover, the *Satterfield*

19  court was seemingly unaware of the FCC 2007 Declaratory Ruling and did not foreclose the

20  validity of the FCC's interpretation of "prior express consent" contained therein.  *See Nat'l Cable*

21  *Telecommunications Assoc. v. Brand X Internet Srvcs.*, 545 U.S. 967, 982 (2005) ("a court's prior

22  judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron*

23  deference **only if** the prior court decision holds that its construction follows from the

24  unambiguous terms of the statute and thus leaves no room for agency discretion" (emphasis

25  added)).  As such, the FCC's interpretation of "prior express consent" remains binding on the

26

27  [2] The FCC issued its 2007 Declaratory Ruling in December 2007.  The trial court in *Satterfield*
    entered summary judgment for the defendant in June 2007 and the Ninth Circuit issued its
28  opinion in 2009.

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

1   Court and any contradictory or inconsistent interpretation advanced in the Opposition must be

2   disregarded. *Wilson*, 87 F.3d at 399-400; *CE Design, Ltd.,* 606 F.3d at 448.

3        The *Satterfield* court's holding on "prior express consent" is also factually distinguishable.

4   *Satterfield* applied "prior express consent" pursuant to a contract whereby the plaintiff agreed to

5   receive promotions only from "Nextones or its affiliates and brands." *Satterfield*, 69 F.3d at 948-

6   50. The plaintiff contracted the precise scope of her consent, placing a limitation on who can

7   obtain it to the exclusion of the defendant who sent the relevant text message, Simon & Schuster.

8   *Id.* The FCC's 1992 Report and Order and 2007 Declaratory Ruling do not place any

9   presumptive limitation on who can obtain a called-party's "prior express consent."

10                  **b.    The FCC Can Define "Auto-Dialer"**

11        Plaintiff further argues that the FCC "has no authority to refine the meaning of 'ATDS'

12  because the TCPA itself expressly defines that term." Opp. at 14. That position ignores the fact

13  that the FCC can determine the technical definition of "capacity" just as it has interpreted "prior

14  express consent," and can also determine whether particular technologies fall within the TCPA's

15  definition of "auto-dialer." *See* RJN, Ex. H (2003 Report and Order, ¶ 165). The argument also

16  ignores the fact that any FCC final order interpreting "auto-dialer," whether or not ultimately

17  correct or contrary to the statute's plain language, cannot be challenged in this Court and would

18  be binding in this action. *See Leckler*, 2008 U.S. Dist. LEXIS 97439, at *6-7.

19        Finally, Plaintiff argues that primary jurisdiction should not apply because it is

20  "implausible the FCC will ultimately issue a rule" that is more favorable to GroupMe than the

21  current regulations. Opp. at 13-14. Plaintiff misapprehends the primary jurisdiction doctrine.

22  Speculation, such as whether the FCC could adopt regulations favorable or otherwise to

23  GroupMe's defense, does not determine whether the doctrine applies. Rather, the focus is on the

24  fact that the FCC has exercised the authority vested in it by Congress to initiate a parallel

25  proceeding that will consider novel telecommunications issues central to this case. Those issues

26  have broad implications for the FCC's TCPA regulatory scheme and require the agency's

27  expertise. Therefore, the Court should dismiss or stay this case to allow the administrative

28  agency process to proceed while avoiding the risk of inconsistent rulings. Mtn. at 12-21.

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

**C.** **In the Alternative, This Action Should be Transferred to the Eastern District of Virginia Pursuant to 28 U.S.C. Section 1404(a)**

The Motion shows that a court can exercise its discretion to transfer a case to "any other district or division where it might have been brought" "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." Mtn. at 21-22 (28 U.S.C. § 1404(a); *PRG–Schultz USA Inc. v. Gottschalks, Inc.,* 2005 WL 2649206, at *2 (N.D. Cal Oct. 17, 2005)). To determine whether such a transfer is warranted, a court must first determine whether the action could have been brought in the district to which transfer is sought. Mtn. at 22-23 (*Fabus Corp. v. Asiana Express Corp.*, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001)). If venue would have been proper in that district, the court must then weigh the *Jones* factors identified in the Motion. Mtn. at 22 (*Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498-99 (9th Cir. 2000); *PRG–Schultz,* 2005 WL 2649206, at *2; *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1156 (S.D. Cal. 2005)).

The Motion shows that venue in this case would have been proper in the Eastern District of Virginia. Plaintiff is a Virginia domiciliary and both GroupMe and Twilio maintain operations there, thus subjecting them to personal jurisdiction in that district. Mtn. at 22-23 (Am. Compl., ¶ 2; Martocci Decl., ¶¶ 18, 24-28, 30; RJN at 1, 4-5). The Motion further shows the *Jones* factors weigh in favor of transfer to that district.

### 1. The *Jones* Factors Weigh In Favor Transfer

The Motion shows that Plaintiff's choice of forum should be given little weight, if any. Plaintiff does not allege contacts with California other than suing Twilio, and most, if not all, of the operative facts alleged in the Amended Complaint occurred on the east coast, in either Virginia or New York. Mtn. at 21-22 (*Lou v. Belzberg*, 834 F.2d 730, 739 (1987); *Alexander v. Franklin Res., Inc.*, 2007 WL 518859, at * 3 (N.D. Cal. Feb. 14, 2007); *PRG-Schultz*, 2005 WL 2649206, at * 2; *Fabus Corp*, 2001 WL 253185, at * 1). Specifically, Plaintiff is a Virginia domiciliary and exchanged the relevant text messages in this case with his friends on their Virginia cellular telephones. Mtn. at 22-23 (Am. Compl., ¶ 2; Martocci Decl., ¶¶ 28, 30; RJN at 1, 4-5). Twilio and GroupMe are both Delaware corporations, and GroupMe and its personnel

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

1    are located in the tri-state area.  Twilio and GroupMe's respective servers, utilized to transmit

2    the "Poker" group text message conversation, are both located in Virginia.  Mtn. at 23 (Martocci

3    Decl., ¶¶ 18, 24-25).

4           Plaintiff could have filed this lawsuit in his home state of Virginia or potentially in New

5    York.  The relevant events would have happened nearby and most of the key witnesses and

6    evidence would likewise have been easily accessible.  Mtn. at 23-24 (Am. Compl., ¶ 1; RJN at

7    1; Martocci Decl, ¶¶ 22-26; Hawk Decl., ¶¶ 2-6).  Instead, without sufficient explanation,

8    Plaintiff chose to sue on behalf of a putative class in California, where he has minimal contacts.

9    This suggests forum shopping, and Plaintiff's choice of forum should be disregarded or, at best,

10   given minimal consideration.

11          The Motion shows that the remaining *Jones* factors -- the locations of the key witnesses

12   and evidence, the availability of compulsory process, ease of access to proof, and the congestion

13   of the respective districts -- all weigh in favor of transfer.  Most important among these factors,

14   the non-party witnesses, are located in Virginia, where it would be more convenient for them to

15   attend the trial and where they would be subject to compulsory process.  Mtn. at 24 (*Saleh*, 361

16   F. Supp. 2d at 1160).

17          **2.      The Opposition's Arguments Do Not Change The Balance of the *Jones***

18                 **Factors**

19          The Opposition does not dispute the Motion's standard for analyzing a request for transfer

20   under *Jones*.  It does not dispute that Plaintiff's "Poker" text message conversations with the

21   group members occurred using cellular telephones with Virginia telephone numbers.  It does not

22   dispute that Plaintiff's "Poker" group members are likely located in Virginia.  It does not dispute

23   that Plaintiff, himself a Virginia domiciliary, has very minimal contacts with California and could

24   have filed this lawsuit in the Eastern District of Virginia.  Opp. at 20.  Instead, attempting to shift

25   the entire focus of this analysis to Twilio's presence in this district and California's purported

26   interest in adjudicating this dispute irrespective of the fact that most of the evidence and the

27   witnesses are located in New York and Virginia, Plaintiff claims he is not forum shopping and

28   transfer is inappropriate.  Opp. at 19-25.

1    The Opposition's arguments, however, which seek support in large part from cases

2    deciding issues of personal jurisdiction, do not change the fact that Plaintiff has minimal contacts

3    with California and that the bulk of the relevant evidence and witnesses, particularly non-party

4    witnesses, are located on the east coast.  *See e.g.* Opp. at 20 (*Duffy v. Scott*, 2008 WL 2168902, at

5    *5 (N.D. Cal. May 23, 2008); *Covad Communications Co. v. Pacific Bell*, 1999 WL 33757058, at

6    *8 (N.D. Cal. Dec. 14, 1999)).  Most notably, the Opposition glosses over the fact that Plaintiff's

7    "Poker" group members, who are not parties to this case, are in Virginia.  Opp. at 22-23.  Without

8    any explanation, Plaintiff claims that any depositions of those individuals would be "redundant

9    and unnecessary," but as shown in the Motion, those individuals may have information about

10   Plaintiff's "Poker" group that is relevant to this litigation.  *Id.*  GroupMe also may, depending on

11   their testimony, want to subpoena them for trial.  At present, they are beyond the subpoena power

12   of the Court.  Opp. at 22-23.  Many other relevant witnesses, albeit party witnesses, are from the

13   tri-state area and would more easily be able to attend proceedings in Virginia.  *Id.*

14       In sum, Twilio's presence in San Francisco does not tilt the balance of the *Jones* factors

15   against transfer.  The vast majority of the relevant events happened on the east coast, where the

16   evidence and the witnesses are located.  Plaintiff's decision to file in this district should not keep

17   the case here when Plaintiff and his case lack significant contacts with California.

18   **III.    <u>CONCLUSION</u>**

19       For the reasons shown in the Motion and herein, GroupMe respectfully requests that the

20   Court dismiss the Amended Complaint with prejudice for failure to state a claim, dismiss or stay

21   the action pursuant to the doctrine of primary jurisdiction, or, in the alternative, transfer the

22   action to the Eastern District of Virginia, Richmond Division.

23
24   Dated:  November 17, 2011                     WHITE & CASE LLP

25
26                                                By:    /s/ *Bryan A. Merryman*
                                                          Bryan A. Merryman
27                                                        Attorneys for Defendant
                                                          GroupMe, Inc.
28

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

- 15 -

**DECLARATION OF SERVICE**

I, J. Jonathan Hawk, declare as follows:

I am employed in the County of Los Angeles in California. I am over the age of eighteen years and am not a party to this action. My business address is 633 West Fifth Street, Suite 1900, Los Angeles, California, 90071. On November 17, 2011, I served the document titled:

**DEFENDANT GROUPME, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT, TO STAY THE ACTION OR TRANSFER VENUE**

to all named counsel of record via the ECF (Electronic Case Filing) system of the United States District Court for the Northern District of California. All counsel of record are required to be registered e-filers and, as such, are automatically e-served with a copy of the documents upon confirmation of e-filing.

I certify under penalty of perjury under the laws of the state of California and the United States that the foregoing is true and correct.

Dated:  November 17, 2011                                  /s/  J. Jonathan Hawk

                                                            J. Jonathan Hawk

WHITE & CASE LLP
633 W. FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007

- 1 -