Sean P. Reis (SBN 184044)
sreis@edelson.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Attorneys for Plaintiff and the putative class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>TWILIO, INC., a Delaware corporation, GROUPME, INC., a Delaware corporation,<br><br>*Defendants.* | Case No. 4:11-cv-2584-PJH<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO LIFT STAY**<br><br>Date: December 4, 2013<br>Time: 9:00 a.m.<br>Judge: Honorable Phyllis J. Hamilton<br>Action filed: May 27, 2011 |

## I. INTRODUCTION

On March 15, 2012, the Court continued the stay of this case under the doctrine of primary jurisdiction pending the FCC's resolution of non-party Club Texting, Inc.'s petition for clarification regarding application of the TCPA's common carrier exemption (the "Club Texting Petition" or "Petition"). Despite the Petition having been pending for four years now with no indication that a ruling is forthcoming, GroupMe and Twilio oppose lifting the stay based on pure speculation that the FCC will issue a ruling in the near future. Incredibly, Defendants' position is that the FCC's delay in taking up the Petition can be attributed to the two-week government shutdown earlier this year and the absence of a permanent FCC chairperson who was willing to tackle "complex" issues over the past six months. To say the least, Defendants' positions are a stretch.

Indeed, that the government shutdown may have set the FCC's business back by a couple of weeks doesn't account for the previous four years it chose not to rule on the Petition, nor does it give any certainty as to when it will rule (if at all). Further, Defendants' attempt to paint acting Chairwoman Clyburn as unwilling to take on "complex" issues like the Club Texting Petition mischaracterizes her tenure as director of the FCC, which by all accounts has been incredibly productive and included in just six months handling numerous complex issues like opening additional wireless spectrum, resolving concerns over technical issues between national wireless carriers, and finalizing a merger between major telecommunications providers. Thus, the idea that a ruling was forthcoming on the Petition but stalled with the Chairwoman isn't credible or fair to her efforts as director of the FCC. Nor have Defendants proffered any evidence to suggest that incoming Chairman Wheeler will take a different approach, let alone that he'll set a new long-term agenda for the FCC by a date certain (as Defendants suggest) and that even if he does, it will include taking up the Club Texting Petition.

All that aside, the doctrine of primary jurisdiction simply does not require that the Court stay these proceedings indefinitely. Instead, the purpose of the doctrine is to give litigants a reasonable opportunity to obtain agency guidance where appropriate, which has unquestionably been satisfied in the nearly two years this case has been stayed pending the FCC's ruling on the

1  Club Texting Petition. Because there is simply no concrete evidence to suggest that the FCC will

2  rule on the Petition anytime soon, if it all, the stay should be lifted and this case should proceed.

3  **II.  ARGUMENT**

4      **A.  The Doctrine of Primary Jurisdiction does not Require an Indefinite Stay and Defendants Offer Nothing Concrete to Suggest that the FCC will Rule on the Club Texting Petition.**

5

6      As an initial matter, Defendants' argument that the doctrine of primary jurisdiction requires

7  that the stay remain in place indefinitely pending (at the least) resolution of the Club Texting

8  Petition is misplaced. (*See* Dkt. 82 at 10:6, 11:1.) Simply put, the doctrine does not contemplate

9  stays of indefinite duration where, as here, an agency has given no indication that it will rule on the

10 issue at hand. *See Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 738 (3d Cir. 1983)

11 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936)); *see also Pimental v. Google, Inc.*, No. C-

12 11-02585-YGR, 2012 WL 1458179, at *5 (N.D. Cal. Apr. 26, 2012). Instead, it merely requires that

13 the courts give litigants a "*reasonable* opportunity" to seek an administrative ruling, which both

14 GroupMe and Twilio have had in this case. *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (emphasis

15 added); *see also Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am.,*

16 *AFL-CIO v. Jewel Tea Co.*, 381 U.S. 676, 686 (1965) (observing that primary jurisdiction is not "a

17 doctrine of futility").

18     GroupMe sought guidance in the form of the FCC's 2010 NPRM, which served as the basis

19 for its motion to stay, noting that Plaintiff's action "squarely presents the Court with the 'prior

20 express consent' and 'auto-dialer' issues already before the FCC in its parallel proceeding pursuant to

21 the 2010 [NPRM]." (Dkt. 51-1 at 18:19–21.) The Court agreed and stayed the case, in part, on that

22 basis. (Dkt. 73.) GroupMe received relief from the FCC within a matter of weeks, when the agency

23 issued a ruling based on the 2010 NPRM in its 2012 Report and Order addressing the issue of prior

24 express consent. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot.*

25 *Act of 1991*, FCC 12-21, CG Dkt. 02-278, *reprinted in* 27 F.C.C.R. 1830, 1831 (2012). While it's

26 true that the FCC didn't address the auto-dialer issue as part of that ruling, that doesn't mean that

27 issue is still ripe for determination. Rather, the FCC simply chose not to take it up. That GroupMe

28

may not be satisfied with the FCC's response is beside the point—it had the opportunity to seek the FCC's guidance and thus, the doctrine's purpose was fulfilled. *See Owner-Operated Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778, 785-86 (8th Cir. 1999) (directing district court to proceed in its discretion where federal agency had declined to exercise jurisdiction over a particular issue); *see also Atchison, Topeka. & Santa Fe. Ry. Co. v. Aircoach Transp. Ass'n.*, 253 F.2d 877, 886 (D.C. Cir. 1958) (noting that district court could "proceed according to its own light" if, for instance, the Interstate Commerce Commission declined to answer particular questions).

With respect to Twilio and the Club Texting Petition—the only basis upon which the stay remains in place—the FCC has given no indication that any action is forthcoming. The Petition has been pending for more than four years now, the time for public comment closed four years ago, and the tenure of two acting chairpersons has come and gone, all without any substantive action whatsoever. Notwithstanding, Defendants take the position—based on nothing but pure speculation—that a ruling is forthcoming in the near future and that "two significant events at the FCC this year"—the two-week government shutdown and the absence of a permanent chairperson—is the reason for the delay. (Dkt. 82 at 11:1–12:13.) Each of those arguments misses its mark.

First, that the government shutdown may have pushed the FCC's routine business back "by approximately two or three weeks" (*id.* at 11:11), doesn't explain the previous four years the Petition has been pending without ruling. Nor does it offer a concrete timeframe in which a ruling can be expected.

Second, Defendants don't offer any certainty by taking shots at Chairwoman Clyburn's tenure at the FCC—trying to paint the picture that she was unwilling to take on "complex" issues like the Club Texting Petition. (*See id.* at 11:23–12:1.) And in any event, that mischaracterizes the Chairwoman's actual record as director, which by all accounts was remarkably productive and included completing such complex initiatives as "launch[ing] two hugely important new blocks of wireless spectrum, fix[ing] a long-running technical problem between AT&T's network and smaller carriers, and close[ing] one of the biggest telecom deals in history." John Eggerton, *Clyburn*

*Praised for Active Acting Chairwomanship*, Nov. 4, 2013, 3:17 PM, Broadcasting & Cable, http://www.broadcastingcable.com/article/496397-Clyburn_Praised_For_Active_Acting_Chairwomanship.php (discussing Clyburn's "extraordinary record of achievement"); *see also* Chris Ziegler, *The Brief, Ridiculously Productive Reign of Chairwoman Mignon Clyburn*, The Verge, Nov. 4, 2013, 1:09 p.m., http://www.theverge.com/2013/11/4/5065070/the-brief-ridiculously-productive-reign-of-fcc-chairwoman-mignon-clyburn; *see also* Brooks Boliek, *Mignon Clyburn's Making Her Mark as Acting Head of FCC*, Politico, Sept. 25, 2013 5:14 a.m., http://www.politico.com/story/2013/09/mignon-clyburn-fcc-97372.html (commenting on Clyburn's commitment "to do more than keep the lights on and the seat warm for [current FCC Chairman] Tom Wheeler"). Again, that record hardly suggests that the Club Texting Petition was in line for a ruling and stalled with Chairwoman Clyburn.

Finally, Defendants offer no evidence to suggest that incoming Chairman Wheeler will, unlike his two predecessors, issue a ruling on the Petition.[1] And, their speculation that he *may* issue his long-term agenda for the agency in the next couple of months and that *if* he does, it *may* include advancing consideration of the Club Texting Petition isn't enough to justify any further delay of these proceedings.[2] *See, e.g., Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 225 (2d Cir. 1995) (holding that potential 2 to 5 year delay in FCC issuing ruling was unacceptable "[s]ince the district court can conclude this matter far more expeditiously….").

Ultimately, what should be clear is that the FCC has given no indication that it plans to take up the Club Texting Petition. Accordingly, the stay should be lifted. *See, e.g., Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 206 (5th Cir. 1988) (ordering district court to enter stay and lift it

---

[1] Defendants also go too far when they mischaracterize Plaintiff's supposed "acknowledgment" of "the impact that changing chairpersons can cause on the FCC's agenda." (Dkt. 82 at 12:2–3.) In reality, the footnote Defendants reference in the Parties' July Status Report simply states that GroupMe's own petition to the FCC was placed on the "Items on Circulation" list by former Chairman Genachowski, not Chairwoman Clyburn. (*See* Dkt. 80 at 3 n.2.) As explained above, Plaintiff does not agree with Defendants' suggestion that the changing of chairpersons caused any delay in considering the Club Texting Petition.

[2] Notwithstanding, as Plaintiff proposed in his motion (dkt. 81), if the Court is not inclined to lift the stay now, it should continue it until no later than January 24, 2014.

REPLY IN SUPPORT OF    4    CASE NO. 4:11-CV-02584-PJH
MOTION TO LIFT STAY

if agency ruling was not forthcoming within 180 days); *Roberts v. Chemlawn Corp.*, 716 F. Supp. 364, 368 (N.D. Ill. 1989) (declining to stay proceedings based on potential two-year delay in receiving agency ruling and noting that stays based on primary jurisdiction are typically left in place no longer than nine months, regardless of whether an agency ruling is actually issued).

  **B. GroupMe's Petition to the FCC is not the Basis for the Stay, Nor Should it be.**

  Finally, Defendants' argument that GroupMe's own petition pending before the FCC provides "additional grounds for continuing the stay" also fails. (Dkt. 82 at 1:13; 4:9–28; 12:14–27.) Again, the continued stay has never been based upon the pendency of GroupMe's petition nor anything else but the Club Texting Petition. (*See* Order, Dkt. 76 at 1:20–24). And, Defendants' unsupported belief that the "FCC may have a draft order" on GroupMe's petition prepared smacks of the same uncertainty as their argument regarding the Club Texting Petition. (Dkt. 82 at 12:24–25.)

  Despite Defendants' attempts to distinguish it, the Honorable Yvonne Gonzalez Rogers' Order denying a stay of the *Pimental v. Google, Inc.* matter based on the pendency of the GroupMe petition is directly on point here. (Dkt. 82 at 14:7–12.) *In Pimental*, the defendant Google argued that its group text messaging service "Disco" did not violate the TCPA because it had obtained prior express consent (directly through consumers or indirectly through group creators) and because its technology lacked the capacity to act as an ATDS. 2012 WL 1458179, at *1. In seeking a stay of that case, Google argued that the GroupMe petition would provide additional guidance on the consent and capacity issues. *Id.* In denying that request, Judge Gonzalez Rogers reasoned that (1) interpretation of the terms "consent" and "capacity" fell safely within the discretion of the district court—not "particularly within" the FCC's discretion, and (2) there was no risk of inconsistent rulings between the district court and the FCC given the uncertainty as to *if* and *when* the FCC would rule. *Id.* at *3–5.

  That reasoning should be applied here. Defendants have offered nothing more than speculation that the FCC intends to rule on GroupMe's petition (Dkt. 82 at 12:14–27), and in any event, this Court is itself capable of addressing the consent and capacity issues raised in the

GroupMe petition. Thus, as in *Pimental*, the stay should not be continued based on the pendency of GroupMe's petition either.

## III. CONCLUSION

For the foregoing reasons, Plaintiff Brian Glauser respectfully requests that this Court enter an Order (i) lifting the stay of this matter or, in the alternative, continuing the stay until the earlier of January 24, 2014 or the date the FCC rules upon the Club Texting Petition, and (ii) providing such other and further relief as it deems reasonable and just.

Respectfully submitted,

**BRIAN GLAUSER**, individually and on behalf of all others similarly situated,

Dated: November 15, 2013

By: /s/ Rafey S. Balabanian
     One of Plaintiff's Attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

Sean P. Reis (SBN 184044)
sreis@edelson.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123