Mark S. Eisen (SBN 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 92688
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson (*Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (*Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (*Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (*Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the putative class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>GROUPME, INC., a Delaware corporation,<br><br>*Defendant.* | Case No. 4:11-cv-02584-PJH<br><br>**PLAINTIFF'S RULE 56(d) MOTION FOR STAY OF BRIEFING ON OR DENIAL, WITHOUT PREJUDICE, OF GROUPME'S MOTION FOR SUMMARY JUDGMENT** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND RULE 56(d) MOTION

**PLEASE TAKE NOTICE** that on September 3, 2014 at 9:00 a.m., or as soon thereafter as this matter may be heard, Plaintiff Brian Glauser will appear, through counsel, before the Honorable Phyllis J. Hamilton, or any judge sitting in her stead, in Courtroom 3, 3rd Floor at the United States District Courthouse for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California 94612, and then and there move the Court for an Order staying briefing on or denying, without prejudice, GroupMe's Motion for Summary Judgment until third parties Twilio and Bandwidth have supplemented their written responses and document production to Glauser's June 26, 2014 subpoenas.

Plaintiff's motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

**BRIAN GLAUSER**, individually and on behalf of all others similarly situated,

Dated:  July 28, 2014

By:  /s/ Benjamin H. Richman
        One of Plaintiff's Attorneys

Jay Edelson (*Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (*Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (*Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (*Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

I.      Procedural Posture and Glauser's Discovery Efforts with Respect to GroupMe ...... 3

II.     Twilio Reneges on Its Agreement to Produce Information Informally and
        Refuses, at the Direction of GroupMe and Its Attorneys, to Provide
        Substantive Responses to Glauser's Formal Subpoena .......................................... 4

III.    Bandwidth Similarly Had a Change of Heart and Refused to Produce Any
        Information Whatsoever After Hiring GroupMe's Attorneys ................................ 6

ARGUMENT ........................................................................................................... 6

I.      Glauser is Entitled to a Fair Opportunity to Respond to GroupMe's Motion
        and to Obtain the Relevant and Necessary Information to Do So .......................... 6

        A.      Glauser Can Identify Specific and Essential Facts Necessary to
                Adequately Oppose GroupMe's Motion for Summary Judgment ................. 8

        B.      The Requested Information is in Twilio's and Bandwidth's Possession
                and Control ........................................................................................... 10

        C.      Glauser was Diligent in Pursuing Discovery, but was Thwarted by
                GroupMe's Improper Interference with His Efforts ................................ 11

CONCLUSION ...................................................................................................... 13

1

# TABLE OF AUTHORITIES

2

**United States Supreme Court Cases:**

3

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ........................................................... 8

4

*Celetox Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................. 6, 7, 10

5

**United States Circuit Court of Appeals Cases:**

6

*Comm. for First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir. 1992) ................................. 8

7

*DLC Mgmnt. Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998) ....................................... 12

8

*Family Home and Finance Ctr., Inc. v. Federal Home Loan Mortg. Corp.*,
    525 F.3d 822 (9th Cir. 2008) ........................................................... 7, 10

9

*Martinez v. Columbia Sportswear USA Corp.*, 553 F. App'x 760 (9th Cir. 2014) ....................... 7

10

*State of Cal. on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell*,
    138 F.3d 772 (9th Cir. 1998) ........................................................... 7, 10

11

*VISA Inter. Service Ass'n v. Bankcard Holders of Am.*, 748 F.2d 1473 (9th Cir. 1986) ............... 7

12

**United States District Court Cases:**

13

*Adams v. AllianceOne, Inc.*,
    No. 08-cv-248, 2011 WL 2066617 (S.D. Cal. May 25, 2011) ........................................... 12

14

15

*ASUS Computer Int'l v. Round Rock Research, LLC*,
    No. 12-cv-02099, 2013 WL 5545276 (N.D. Cal. Oct. 8, 2013) ........................................... 7

16

*Bess v. Cate*,
    No. 07-cv-1989, 2008 WL 5100203 (E.D. Cal. Nov. 26, 2008) .............................. 12 n.10

17

18

*Fields v. Mobile Messengers Am., Inc.*,
    No. 12-cv-05160, 2013 WL 6774076 (N.D. Cal. Dec. 23, 2013) ....................................... 9

19

*Fox Indus., Inc. v. Gurovich*,
    No. 03-cv-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006) ........................................... 12

20

21

*Gragg v. Orange Cap Co., Inc.*,
    No. 12-cv-0576, 2014 WL 494862 (W.D. Wash. Feb. 7, 2014) ..................................... 10

22

*Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005). ................................................. 12 n.10

23

*Houdini, Inc. v. Gabriel*,
    No. 04-cv-09574, 2005 WL 6070171 (C.D. Cal. Oct. 21, 2005) ........................... 12 n.10

24

25

*Kazemi v. Payless Shoesource Inc.*,
    No. 09-cv-5142, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ..................................... 9 n.7

26

27

28

1

2

*M2 Software, Inc. v. M2 Commc'ns, L.L.C.*, 217 F.R.D. 499 (C.D. Cal. 2003) .................... 12 n.10

*Morton v. Hall*, 455 F. Supp. 2d 1066 (C.D. Cal. 2006) ............................................... 7

*Parrick v. FedEx Ground Package System, Inc.*,
     No. 09-cv-95, 2010 WL 3724825 (D. Mont. Sept. 17, 2010) ................................... 10 n.9

*Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788 (E.D. Pa. 2012) ............................... 11

*Sterk v. Path, Inc.*,
     --- F. Supp. 2d ----, 2014 WL 2443785 (N.D. Ill. May 30, 2014) ........... 1 n.1, 8, 9, 10 n.9

*Thomas v. Cate*, 715 F. Supp. 2d 1012 (E.D. Cal. 2010) ...................................... 12 n.10

3

4

5

6

7

8

**Rules and Statutes:**

47 U.S.C. § 227 ................................................................................................. 1 n.1

Fed. R. Civ. P. 56 .......................................................................................... 6, 7

9

10

**Miscellaneous Authority:**

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
     18 F.C.C.R. 14014 (July 3, 2003) ............................................................. 10 n.8

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
     27 F.C.C.R. 15391 (2012) ...................................................................... 1 n.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This case challenges Defendant GroupMe, Inc.'s ("GroupMe") practice of sending unsolicited text messages promoting its group messaging service to consumers nationwide in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (Dkt. 1.) On April 28, 2014, GroupMe filed its motion for summary judgment (the "Motion" or "Motion for Summary Judgment"), arguing that judgment should be entered in its favor because it did not, as Glauser alleges, use an Automatic Telephone Dialing System ("ATDS")—as that term is defined under the TCPA[1]—to send the messages at issue. In particular, GroupMe argues that the undisputed facts show that the equipment it used to send the messages (i) did not have the *present* capacity (at the time the messages were sent) to randomly or sequentially generate telephone numbers, (ii) did not and could not predictively dial numbers, and (iii) required human intervention to function. (*See generally* Dkt. 107-1.)

Glauser disputes GroupMe's positions in this regard—both factually and legally—and has attempted to explore their factual bases in discovery throughout this case. Particularly relevant here are Glauser's efforts to obtain discovery from third parties Twilio, Inc. ("Twilio") and Bandwidth.com, Inc. ("Bandwidth") (collectively, the "Third Parties") with respect to their involvement in the transmission of the messages, which GroupMe has now actively and improperly thwarted.

With respect to Twilio, as a condition of Glauser's dismissal (without prejudice) of his

---

[1]    The TCPA defines an ATDS as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." *See* 47 U.S.C. § 227(a)(1); *see also Sterk v. Path, Inc.*, --- F. Supp. 2d ----, 2014 WL 2443785, at *3 (N.D. Ill. May 30, 2014). The FCC and courts have further clarified "that an ATDS may include equipment that automatically dials numbers from a stored list without human intervention, even when the equipment lacks the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Sterk*, 2014 WL 2443785, at *3 (collecting cases); *see also In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 15391, 15392 n.5 (2012) ("The [FCC] has emphasized that th[e] definition [of ATDS] covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.") (citation omitted).

claims against it in this matter, Twilio agreed (through its former counsel) to informally produce

certain information relevant to its role in the transmission of the GroupMe messages.

Notwithstanding, Twilio later reneged and demanded that Glauser serve it with a formal third-

party subpoena. When all attempts to persuade Twilio to reconsider its position fell short, on

June 26, 2014, Glauser in fact served a subpoena duces tecum on Twilio pursuant to Federal

Rule of Civil Procedure 45. (*See* Subpoena to Twilio, Inc., attached as Exhibit 2.) Rather than

attempt in good faith to substantively respond, however, Twilio instead retained GroupMe's

attorneys at White & Case LLP, who asserted numerous blanket and unsupported objections on

its behalf and simply refused to provide any substantive responses whatsoever. (*See* Twilio,

Inc.'s Response to Subpoena, attached as Exhibit 3.)

       Glauser's subpoena to Bandwidth met a similar fate. (*See* Subpoena to Bandwidth.com,

Inc., attached as Exhibit 4.) That is, despite Bandwidth's in-house compliance department having

contacted Glauser's counsel to discuss the most efficient way for it to produce the information

Glauser sought in his subpoena, (*see* Declaration of Benjamin H. Richman ¶ 13, attached as

Exhibit 1), Bandwidth also ultimately retained GroupMe's attorneys, who asserted the same

blanket objections as Twilio and refused to provide any substantive responses. (*See*

Bandwidth.com, Inc.'s Response to Subpoena, attached as Exhibit 5.)

       Setting aside the fact that GroupMe's and its counsel's interference with Glauser's third-

party discovery efforts is wholly improper (as explained further below), that conduct has also left

Glauser at a serious disadvantage in responding to GroupMe's Motion for Summary Judgment.

Indeed, despite actively attempting to discover the limited information necessary for him to

adequately and timely respond to the Motion, GroupMe has sought to ensure that Glauser

obtained nothing. As a result, Glauser is left with no choice but to request that the Court defer

ruling on or deny, without prejudice, GroupMe's Motion until Twilio and Bandwidth agree to

provide the information necessary for him to adequately oppose the Motion or they are ordered

1    to do so by the Court.[2]

2    **BACKGROUND**

3    **I.      Procedural Posture and Glauser's Discovery Efforts with Respect to GroupMe.**

4           On May 7, 2011, Glauser filed the instant action against GroupMe and Twilio for

5    transmitting unsolicited text messages promoting GroupMe's group text messaging service in

6    violation of the TCPA. (Dkt. 1) Both defendants moved to dismiss or stay the proceedings

7    pending an anticipated ruling from the FCC providing clarification on three issues: (i) the

8    definition of an ATDS under the TCPA, (ii) the requirements for obtaining prior express consent

9    under the TCPA, and (iii) the applicability of the TCPA's "common carrier" exemption to a so-

10   called text message service provider like Twilio. (Dkts. 46, 51.) On January 27, 2012, the Court

11   stayed the case indefinitely pending a ruling from the FCC. (Dkt. 73.)

12          On October 25, 2013, Glauser moved to lift the stay. (Dkt. 81.) The Court initially denied

13   Glauser's motion, but ultimately lifted the stay on March 27, 2014. (Dkts. 88, 93.) That same

14   day, the Court also set a deadline of April 28, 2014 for GroupMe to file its Motion for Summary

15   Judgment on the ATDS issue and instructed Glauser and GroupMe to confer regarding an

16   appropriate discovery and briefing schedule on the Motion—specifically, the Court ordered that

17   discovery on the ATDS issue be completed within sixty days, but made clear that all other class

18   and merits discovery would otherwise proceed immediately. (Dkt. 93.)

19          GroupMe then filed its Motion on April 28th. (Dkt. 107.) In the Motion, GroupMe makes

20   three primary arguments: (i) dialing equipment—like the equipment it utilized in this case—only

21   constitutes an ATDS if it has the "[p]resent [c]apacity at the [t]ime of [u]se to [g]enerate

22   [r]andom or [s]equential [p]hone [n]umbers," (ii) that its and the Third Parties' equipment "ha[s]

23   never been capable of actually generating phone numbers randomly or sequentially," and (iii)

24   that "GroupMe [h]as [n]ot [u]sed a [p]redictive [d]ialer." (Motion at 13–14, 18.)

25   _____

26   [2]       In conjunction with the instant motion, Glauser intends to serve a written request for
     Twilio and Bandwith to supplement their subpoena responses no later than Tuesday, August 5,
27   2014. In the event they refuse, Glauser intends to file a motion seeking an order compelling them
     to do so no later than August 12, 2014.

28

1    Shortly thereafter, Glauser and GroupMe conferred (through counsel) regarding an

2    appropriate discovery and briefing schedule on the Motion and agreed by way of stipulation that

3    the Parties would complete discovery on the ATDS issue by June 27, 2014, that Glauser would

4    oppose GroupMe's Motion for Summary Judgment by July 28, 2014, that GroupMe would

5    depose any expert who submitted a declaration in support of Glauser's opposition no later than

6    August 17, 2014, and that GroupMe would file its reply in support of its Motion by August 18,

7    2014. (Dkt. 108.) They also conferred regarding a timeframe for GroupMe to respond to

8    Glauser's outstanding written discovery requests regarding the ATDS issue. (Richman Decl. ¶¶

9    3-4.) That said, despite agreeing to provide supplemental written responses—GroupMe had

10   previously only asserted blanket objections in response to Glauser's discovery requests—

11   GroupMe would not agree to a date certain when its responsive document production would be

12   completed and instead, stated only that the production would be "rolling." (*Id.* ¶ 4.)

13   On June 6, 2014, GroupMe served its written responses to Glauser's ATDS-related

14   discovery requests and began its document production regarding the same by producing 83 pages

15   of documents that consisted primarily of the terms and conditions related to the GroupMe

16   message service. (*Id.* ¶ 5.) Later, on June 23rd, GroupMe produced 158 pages of additional

17   documents. (*Id.*) On June 27th, it served 197 more pages. (*Id.*) And as recently as July 18th

18   GroupMe made yet another document production of several pages of technical spreadsheets

19   regarding the messages sent to Glauser. (*Id.*) To date, GroupMe has not indicated whether its

20   ATDS production is now complete or remains "rolling" and thus, Glauser is unaware whether he

21   will receive any additional relevant information from GroupMe and if so, when. (*Id.* ¶ 6.)

22   **II.    Twilio Reneges on Its Agreement to Produce Information Informally and Refuses,**

23   **at the Direction of GroupMe and Its Attorneys, to Provide Substantive Responses to Glauser's Formal Subpoena.**

24   Prior to GroupMe filing its Motion, counsel for Glauser and then party-defendant Twilio

25   met and conferred regarding Twilio's role in the alleged conduct at issue. (*Id.* ¶ 7.) As a result of

26   those discussions and their own analysis of the facts then known to them and applicable

27

28

authorities, Glauser and Twilio (through their counsel) reached an agreement for Glauser to dismiss *without prejudice* his claims against Twilio in this matter. (*Id.*) In exchange, Twilio agreed to work in good faith to informally produce certain information relevant to its role in the transmission of the GroupMe messages, which Glauser believed would also be relevant to responding to GroupMe's anticipated Motion and relevant to the merits of his remaining claims more generally. (*Id.*)

Despite the parties' agreement and Glauser having outlined the information he sought to discover in detail via e-mail, Twilio never followed up or produced a single piece of information. (*Id.* ¶ 8.) When Glauser's counsel contacted Twilio's former attorneys at Arent Fox LLP, they simply stated that they were no longer representing Twilio and refused to assist in any way— including explaining where Twilio stood with gathering the requested information at the time their representation concluded—other than to suggest communicating with Twilio's legal department directly. (*Id.*) That too would prove fruitless, however, inasmuch as Twilio's legal department disclaimed any knowledge of the parties' agreed informational exchange and committed only to "respond in good faith" to any formal discovery requests served upon it. (*Id.* ¶ 9.) Glauser was unsuccessful in convincing Twilio to reconsider its position in this regard and thus, on June 26th, served a formal subpoena on Twilio. (*See* Ex. 2.)

Notwithstanding its representation that it would respond in good faith to any formal discovery served by Glauser, Twilio retained GroupMe's attorneys at White & Case LLP, who served on its behalf myriad blanket objections and refused to provide any substantive responses to the subpoena whatsoever. (*Id.* ¶ 10.) Primarily, Twilio and its attorneys contend that Glauser's subpoena was untimely because the period for taking discovery on the ATDS issue had closed. (*Id.*)[3]

---

[3]     Of course, that position doesn't recognize the fact that Twilio intentionally delayed the discovery process by reneging on its agreement to produce information to Glauser on an informal basis and requiring the service of a formal subpoena. It also ignores that Glauser requested that GroupMe agree to a thirty-day extension of the discovery and briefing schedule on the Motion for Summary Judgment in light Twilio's conduct, but that GroupMe took the position that there

### III. Bandwidth Similarly Had a Change of Heart and Refused to Produce Any Information Whatsoever After Hiring GroupMe's Attorneys.

GroupMe erected similar obstacles to Glauser's attempts to obtain information regarding Bandwidth's role in the transmission of the GroupMe text messages. First, despite having identified Bandwidth in its Motion as playing an integral role in the transmission of the messages through its own hardware and software systems, GroupMe produced only limited evidence regarding the capabilities of the equipment Bandwidth used in facilitating the transmission of text messages. (*Id.* ¶ 12.) Having received only limited information from GroupMe regarding Bandwidth and without any confirmation whether GroupMe's production was complete, Glauser was left with no choice but to serve a formal subpoena for documents and information on Bandwidth on June 26th as well. (*Id.* ¶ 13.)

On June 30th, Glauser's counsel received a telephone call and voicemail from Bandwidth's in-house compliance department requesting that Bandwidth and Glauser meet and confer to discuss in further detail what information Glauser was seeking from Bandwidth and that it could produce. (*Id.* ¶ 13.) The very next day, Glauser's counsel attempted to reach Bandwidth by telephone, but was met with a voicemail box and requested that Bandwidth call back at its convenience. (*Id.*) The next communication Glauser received was Bandwidth's service of a near carbon copy of Twilio's response to his subpoena, also refusing—through GroupMe's attorneys at White & Case LLP—to provide any substantive responses whatsoever. (*Id.*)

### ARGUMENT

### I. Glauser is Entitled to a Fair Opportunity to Respond to GroupMe's Motion and to Obtain the Relevant and Necessary Information to Do So.

Summary judgment is inappropriate when the responding party has not had an adequate opportunity to complete discovery. *See* Fed. R. Civ. P. 56(d); *see also Celetox Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Rule 56(d) "allows summary judgment to be denied, or the hearing on

---

was no reasonable basis for such an extension. (Richman Decl. ¶ 11.) GroupMe's attorneys then followed that with their refusal to produce any information whatsoever on behalf of Twilio.

the motion to be continued, if the non-moving party has not had an opportunity to make *full*

discovery." *Celotex*, 477 U.S. at 326 (emphasis added); *see also* Fed. R. Civ. P. 56(d) ("If a

nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2)

allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

appropriate order."). "A stay is especially appropriate 'where the material sought is also the

subject of outstanding discovery requests,'" *see Morton v. Hall*, 455 F. Supp. 2d 1066, 1079

(C.D. Cal. 2006) *aff'd*, 599 F.3d 942 (9th Cir. 2010) (quoting *VISA Inter. Service Ass'n v.*

*Bankcard Holders of Am.*, 748 F.2d 1473, 1475 (9th Cir. 1986)), including when the outstanding

requests are to third parties. *See ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-

02099, 2013 WL 5545276, at *2 (N.D. Cal. Oct. 8, 2013) ("Without addressing the merits of the

motion for summary judgment, the Court finds Round Rock has adequately shown through

sworn declarations that the outstanding discovery Round Rock seeks from ASUS and third

parties is essential to oppose summary judgment.") (citation omitted).

   To obtain relief under 56(d), the requesting party must file a declaration explaining its

need for further discovery prior to responding to a motion for summary judgment. Fed. R. Civ. P.

56(d). In that declaration, it must (1) provide specific facts that it hopes to obtain through

additional discovery, (2) establish that such facts exist, and (3) show that the facts are necessary

to oppose the motion for summary judgment. *See Family Home and Finance Ctr., Inc. v. Federal*

*Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing *State of Cal. on Behalf of*

*Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). In

determining if the requesting party meets such burdens, district courts consider whether it "had

sufficient opportunity to conduct discovery []; whether the movant was diligent []; whether the

information sought is based on mere speculation []; and whether allowing discovery would

preclude summary judgment." *Martinez v. Columbia Sportswear USA Corp.*, 553 F. App'x 760,

761 (9th Cir. 2014) (internal citations omitted). "[S]ummary judgment [should] be refused where

the nonmoving party has not had the opportunity to discover information that is essential to his opposition," *see Anderson v. Liberty Lobby*, 477 U.S. 242, 250 n.5 (1986), and a Rule 56(d) motion should be "liberally treated" in favor of the requesting party. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).

### A.   Glauser Can Identify Specific and Essential Facts Necessary to Adequately Oppose GroupMe's Motion for Summary Judgment.

Here, the crux of GroupMe's Motion for Summary Judgment is that it did not utilize an ATDS to send the text messages at issue because its equipment did not have the *present* capacity (i.e., at the time the messages were sent) to randomly or sequentially generate and dial telephone numbers. (*See* Dkt. 107-1 at 13–16.) As an initial matter, Glauser disagrees with GroupMe's legal interpretation of the meaning of "ATDS", and contends that the term "capacity" as used by the statute refers instead to equipment that has the capacity (i.e., present or future capability, whether utilized or not) to dial numbers from a stored list. *See Sterk v. Path, Inc.*, --- F. Supp. 2d ----, No. 13-cv-2330, 2014 WL 2443785, at * 3 (N.D. Ill. May 30, 2014) (collecting cases). Nevertheless—and to be absolutely certain that he requested and received full information to respond to GroupMe's Motion—Glauser requested information from GroupMe, Twilio and Bandwidth that (if actually produced) would bear directly on whether the hardware and software each used to transmit the messages at issue (i) stored and automatically dialed telephone numbers and (ii) had the capacity to randomly or sequentially generate and automatically dial those telephone numbers, whether at the time the messages were sent or more generally.

Relevant here, in his subpoenas to Twilio and Bandwidth, Glauser requested documents identifying:

- the exact roles Twilio and Bandwidth played in the transmission of the text messages (Twilio Nos. 1–3, 5; Bandwidth Nos. 1–4);

- all equipment utilized to send the text messages (whether the equipment was used by Twilio or Bandwidth or any third parties with whom they contracted) (Twilio Nos. 6, 10–11; Bandwidth Nos. 9–10);

- all software used to transmit the text messages (Twilio Nos. 12–13, 15; Bandwidth Nos. 11–12, 17);

- which equipment and software stored data such as telephone numbers and pre-programmed text messages and how long that data was stored (Twilio Nos. 10–11, 15; Bandwidth Nos. 9–10, 17);

- the exact coded commands, protocols, and automatic processes utilized to transmit the text messages (Twilio Nos. 7 –9; Bandwidth Nos. 7–8;)

- what actions (automated or otherwise) were required to send the text messages (Twilio Nos. 7–9; Bandwidth Nos. 7–8);

- whether the Third Parties produced or maintained activity logs related to the transmission of text messages (Twilio No. 14; Bandwidth No. 13); and

- what information GroupMe transferred to Twilio with each request to transmit a text message (e.g., telephone numbers, text message content, etc.). (Twilio No. 19.)

All of these requests bear directly on whether the hardware and software utilized to send the text messages constitutes an ATDS, as it will establish whether the equipment (i) required human intervention, (ii) had the ability to automatically dial stored lists of telephone numbers, (iii) could randomly or sequentially generate telephone numbers, and/or (iv) constituted a predictive dialer.[4] *See, e.g., Sterk*, 2014 WL 2443785, at *3–4 (recognizing that equipment can fit within the statute if the numbers are dialed without human intervention from a list, by a random or sequential number generator, or by a predictive dialer). In fact—and contrary to GroupMe's contention—if Glauser can obtain facts sufficient to demonstrate that the equipment used by GroupMe, Twilio, and/or Bandwidth "makes calls from a stored list without human intervention," then he will prevail on the issue outright. *See id.* at *4; *see also Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (holding that equipment could

---

[4]     By way of example, information related to Twilio's and Bandwidth's source code would establish whether their systems reacted to an automated process (e.g., a command or signal from GroupMe) or required a human response to do so. (Richman Decl. ¶ 15). Likewise, information related to the coded commands inputted into their software platforms would establish whether GroupMe sent a separate command to effectuate each and every text message, or sent a command that initiated messages to a list of telephone numbers (which would also be indicative of the use of a traditional ATDS). *See, e.g., Kazemi v. Payless Shoesource Inc.*, No. 09-cv-5142, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) (inferring that text messages were sent using an ATDS when they were, among other things, sent *en masse*). And, although Glauser disagrees that GroupMe's equipment must have been able to randomly or sequentially generate telephone numbers at the time the messages were sent in order to constitute an ATDS, the requested source code underlying Twilio's and Bandwidth's platforms would undoubtedly establish whether they have such a capability. (Richman Decl. ¶ 16.)

1   be an ATDS where it "receives numbers from a computer database…and then dials those

2   numbers without human intervention," even though the equipment could not generate a list of

3   numbers).[5]

4          Thus, Glauser's requests for information related to the equipment used by Twilio and

5   Bandwidth is undoubtedly relevant to whether summary judgment is appropriate on the ATDS

6   issue and because they and GroupMe have stonewalled his efforts to obtain it, Glauser has not

7   had "an adequate opportunity to obtain *full* discovery." *See Celetox,* 477 U.S. at 326 (emphasis

8   added). As such, the Court should either defer ruling on the Motion or deny it without prejudice

9   until Glauser has had the opportunity to complete full discovery. *See Family Home and Finance*

10  *Ctr., Inc.*, 525 F.3d at 827; *see also Gragg v. Orange Cap Co., Inc.*, No. 12-cv-0576, 2014 WL

11  494862, at *4 (W.D. Wash. Feb. 7, 2014), *reconsideration denied* (Feb. 28, 2014) (denying

12  motion for reconsideration of summary judgment ruling when plaintiff knew that the

13  functionality of the defendant's equipment "was the key issue, [but] did not request an

14  opportunity to conduct additional discovery under Fed. R. Civ. P. 56(d).").[6]

15          **B.     The Requested Information is in Twilio's and Bandwidth's Possession and
                      Control.**

16
        In addition to identifying the information necessary to oppose GroupMe's Motion,

17  Glauser can also show that the facts exist and that they are in the Third Parties' possession and

18  control. *See Family Home and Finance Ctr., Inc.*, 525 F.3d at 827; *see also Campbell*, 138 F.3d

19

20  _____

21  [5]      Crucially, the FCC has held that excluding from the definition of an ATDS various
    autodialing equipment "simply because it relies on a given set of numbers would lead to an
22  unintended result," and that "the purpose of the requirement that equipment have 'the capacity to
    store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed
23  calls not be circumvented." *In re Rules & Regulations Implementing the Telephone Consumer
    Protection Act of 1991*, 18 F.C.C.R. 14014, 14092 (July 3, 2003).
24  [6]      In the alternative and if Twilio persists in its refusals to substantively respond to
    Glauser's subpoena, Glauser will request that the Court make the inference that Twilio's
25  platform—which was previously found to constitute an ATDS (when combined with other
    equipment similar to that of GroupMe's)—constitutes an ATDS in this case. *See Sterk*, 2014 WL
26  2443785, at *4; *see also Parrick v. FedEx Ground Package System, Inc.*, No. 09-cv-95, 2010
    WL 3724825, at *6 (D. Mont. Sept. 17, 2010) (finding an adverse inference appropriate because
27  the "[d]efendants' failure to produce the discovery ordered by the Court suggests that the
    materials sought contained evidence adverse to the [d]efendants.").

28

at 779. As it relates to Twilio, its former counsel of record at Arent Fox LLP agreed that Twilio

would work in good faith to produce the requested information in return for its dismissal from

the case—the implication being that Twilio actually possessed the information; indeed, it has

never suggested that it doesn't. (Richman Decl. ¶ 18.) As for Bandwidth, its in-house compliance

department indicated that it wished to discuss the information and documents Glauser sought

through the subpoena—again, the implication being that at least some of the information

requested was available for production. (*Id.* ¶ 19.) Even if both Third Parties hadn't expressly

acknowledged that the requested information is in their possession and control (or at least

implied that it is), given that it relates to the capabilities of their own hardware and software

platforms—which they offer to their customers (like GroupMe) on a regular basis—it would be

extremely unlikely that they don't have it or would be unable to produce it.

### C. Glauser was Diligent in Pursuing Discovery, but was Thwarted by GroupMe's Improper Interference with His Efforts.

Finally, there should be no question that Glauser has been diligent in pursuing the

discovery at issue, as explained in *supra* Sections I-III.  Indeed, if not for GroupMe's and its

attorney's apparent advice to the Third Parties to refuse compliance with their obligations to

respond in good faith to Glauser's subpoenas (as well as GroupMe's "rolling" production), he

very likely would have already obtained the information he seeks. Not surprisingly, that sort of

conduct has consistently been held directly contrary to the discovery obligations imposed by the

Federal Rules, generally, and Rule 45, in particular. *See Price v. Trans Union, L.L.C.*, 847 F.

Supp. 2d 788, 794 (E.D. Pa. 2012). As one court aptly put it,

> Nowhere in the Rule is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command.

*Id.* ("Yet, that is exactly what happened here. Mr. Soumilas took it upon himself to limit or

attempt to 'quash' the subpoenas by sending his Advice Letters."). Such violations are usually

clear (as it is here) and as a result, are "sanctionable." *Id.* (imposing sanctions under 28 U.S.C. §

1927, but finding that, in the alternative, it could also impose sanctions under the courts' inherent

1    discretion to control the litigation and discovery process).

2          The holding in *Fox Indus., Inc. v. Gurovich* is particularly instructive on this point. *See*

3    No. 03-cv-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006). There, the defendant's counsel sent

4    letters to several third parties subpoenaed by the plaintiff requesting that they refuse to produce

5    any of the requested documents because the subpoenas were purportedly defective, null and void.

6    *Id.* at  *2. The court ultimately held that "[i]t [was] the court's duty to rule on the validity of

7    subpoenas and to direct the recipients to comply or not comply, not the attorney's," *id.* at *8, and

8    thus sanctioned defense counsel "on the ground[s] of abuse of process, [and] pursuant to the

9    inherent power of the court to manage its affairs." *Id.* at *9 (citing *DLC Mgmt. Corp. v. Town of*

10   *Hyde Park*, 163 F.3d 124, 135 – 36 (2d Cir. 1998)); *see also Adams v. AllianceOne, Inc.*, No. 08-

11   cv-248, 2011 WL 2066617, at *5 (S.D. Cal. May 25, 2011) (citation omitted).

12         Like the defendant in *Fox*, GroupMe (through its counsel) has apparently instructed

13   Twilio and Bandwith to refuse to respond to Glauser's properly served subpoenas without any

14   legitimate basis.[7] As a result, Glauser has been unfairly prejudiced and to the extent the Third

15   ---
16   [7]     Although better left to a motion to compel in the event Twilio and Bandwidth refuse to
     provide substantive responses to his subpoenas, it bears noting that each of their objections to
17   Glauser's requests fails. (*See* Exs. 3, 5.) First, any objection based upon the timing of ATDS
     discovery in this matter is misplaced inasmuch as (i) Twilio intentionally delayed the discovery
18   process and ran out the clock on Glauser, and (ii) in any event, the Court ordered that all
     discovery proceed despite the pendency of the Motion and thus Twilio and Bandwidth are
19   obligated to respond to the subpoenas regardless of their subject matter. (*See* Dkt. 93.) Second, it
     is well settled that "General Objections [like those asserted here] are not sufficient to raise any
20   substantial, meaningful or enforceable objections to any particular discovery request." *M2*
     *Software, Inc. v. M2 Commc'ns, L.L.C.*, 217 F.R.D. 499, 501 (C.D. Cal. 2003) (citations omitted).
21   Indeed, such "boilerplate" objections "are inadequate and tantamount to not making any objection
     at all." *Bess v. Cate*, No. 07-cv-1989, 2008 WL 5100203, at *4 (E.D. Cal. Nov. 26, 2008)
22   *adopted*, No. 07-cv-1989, 2009 WL 76843 (E.D. Cal. Jan. 9, 2009) *aff'd*, 422 F. App'x 569 (9th
     Cir. 2011) (internal citations and quotations omitted). Third, Twilio's and Bandwidth's blanket
23   refusals to produce documents based on a attorney-client privilege and other related protections
     are improper inasmuch as they fail to "identify specific information and communications that are
24   privileged and the grounds supporting invocation of the privilege for each allegedly privileged
     piece of evidence[,]" by for example, producing a privilege log. *Green v. Baca*, 226 F.R.D. 624,
25   651 (C.D. Cal. 2005). Fourth, any concern based on the supposed sensitive and confidential
     nature of the information requested by Glauser should be allayed by the Court's entry of the
26   Parties' agreed protective order. (*See* Dkts. 110-111.) Finally, Twilio's and Bandwidth's
     objections based on purported burdens, vagueness and ambiguity fail to provide the required
27   specificity; not to mention that both Third Parties fail to respond to the requests using their own
     understandings of the purported vague and ambiguous language, as they were required to do.

28

---

1  Parties and GroupMe persist in such conduct, he should be entitled to all available remedies.

2  **CONCLUSION**

3  For the foregoing reasons, Plaintiff Brian Glauser respectfully requests that the Court

4  enter an Order (i) staying briefing on or denying, without prejudice, GroupMe's Motion for

5  Summary Judgment until third parties Twilio and Bandwidth have supplemented their responses

6  and document production to his subpoenas, and (ii) providing such other and further relief as the

7  Court deems equitable and just.

8                                    Respectfully Submitted,

9                                    **BRIAN GLAUSER**, individually and on behalf of
10                                   all others similarly situated,

11 Dated:  July 28, 2014            By: /s/ Benjamin H. Richman
12                                       One of Plaintiff's Attorneys

13                                   Jay Edelson (Admitted *Pro Hac Vice*)
                                     jedelson@edelson.com
14                                   Rafey S. Balabanian (Admitted *Pro Hac Vice*)
                                     rbalabanian@edelson.com
15                                   Benjamin H. Richman (Admitted *Pro Hac Vice*)
                                     brichman@edelson.com
16                                   Christopher L. Dore (Admitted *Pro Hac Vice*)
                                     cdore@edelson.com
17                                   EDELSON PC
                                     350 North LaSalle Street, Suite 1300
18                                   Chicago, Illinois 60654
                                     Tel: 312.589.6370
19                                   Fax: 312.589.6378

20                                   Mark S. Eisen (SBN 289009)
                                     meisen@edelson.com
21                                   EDELSON PC
                                     555 West Fifth Street, 31st Floor
22                                   Los Angeles, California 92688
                                     Tel: 213.533.4100
23                                   Fax: 213.947.4251

24  ─────────────────────────────────────────────

25  *See, e.g., Houdini, Inc. v. Gabriel*, No. 04-cv-09574, 2005 WL 6070171, at *3 (C.D. Cal. Oct. 21, 2005) (citation omitted); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010) *order clarified*, No. 05-cv-01198, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010) (citation omitted).

26  Perhaps most telling of its motives, Twilio even objects to certain definitions related to its hardware and software platform that were copied, word-for-word, from its own discovery

27  responses and declarations in other matters.

28