1  BRYAN A. MERRYMAN (SBN 134357)
   bmerryman@whitecase.com
2  J. JONATHAN HAWK (SBN 254350)
   jhawk@whitecase.com
3  WHITE & CASE LLP
   633 W. Fifth Street, Suite 1900
4  Los Angeles, CA  90071-2007
   Telephone:  (213) 620-7700
5  Facsimile:  (213) 452-2329

6  BIJAL V. VAKIL (SBN 192878)
   bvakil@whitecase.com
7  WHITE & CASE LLP
   5 Palo Alto Square, 9th Floor
8  3000 El Camino Real
   Palo Alto, CA  94306
9  Telephone:  (650) 213-0300
   Facsimile:  (650) 213-8158

10
   Attorneys for Defendant
11 GROUPME, INC.

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                   OAKLAND DIVISION

15 BRIAN GLAUSER, individually and on behalf    No. 4:11-cv-02584-PJH
   of a class of similarly situated individuals,
16
                                                 DEFENDANT GROUPME, INC.'S:
17              Plaintiffs,
                                                 (1) MEMORANDUM OF POINTS AND
18        v.                                         AUTHORITIES IN OPPOSITION TO
                                                     PLAINTIFF'S RULE 56(d) MOTION
19 TWILIO, INC., a Delaware corporation; and        FOR STAY OF BRIEFING ON OR
   GROUPME, INC., a Delaware corporation,           DENIAL, WITHOUT PREJUDICE,
20                                                   OF GROUPME'S MOTION FOR
                Defendants.                          SUMMARY JUDGMENT; AND
21
                                                 (2) DECLARATIONS OF MICHAEL B.
22                                                   HAZZARD, J. JONATHAN HAWK
                                                     AND BRYAN A. MERRYMAN
23
                                                 Date:  September 3, 2014
24                                               Time:  9:00 a.m.
                                                 Courtroom: 3
25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF ISSUE ................................................................................. 3

III.  BACKGROUND ............................................................................................... 3

    A.    Procedural History ................................................................................. 3

    B.    GroupMe's Summary Judgment Motion ................................................ 4

    C.    Discovery ............................................................................................... 5

        1.    Plaintiff's Discovery from GroupMe ......................................... 6

        2.    Plaintiff's Informal Discovery Request to Twilio ...................... 7

        3.    Plaintiff's Formal Discovery Requests to Non-Parties .............. 8

IV.   ARGUMENT ..................................................................................................... 9

    A.    The Discovery Period On the Autodialer Issue Is Closed .................... 10

    B.    Plaintiff Did Not Act Diligently In Seeking Autodialer Discovery ..................... 11

        1.    *Hill v. Lincoln Nat'l Life Ins.* ................................................ 12

        2.    Plaintiff Did Not Act Diligently in Seeking Untimely Discovery from Twilio and Bandwidth ................................................................. 13

    C.    Plaintiff Fails to Identify Specific Facts that Would Preclude Summary Judgment ............................................................................................... 16

    D.    Plaintiff's Proposed Discovery Efforts Would Be Futile ..................... 18

        1.    The Technology Used to Route Text Messages to Plaintiff's Cell Phone Cannot Randomly or Sequentially Generate Phone Numbers ................. 18

        2.    Plaintiff's Interpretations of "Autodialer" Lack Merit ............. 20

            a.    FCC Rulings Require an Autodialer Have the Present Capacity to Randomly or Sequentially Generate Phone Numbers ................. 20

            b.    *Sterk v. Path, Inc.* ...................................................... 23

V.    CONCLUSION ............................................................................................... 25

i

LOS ANGELES 1068562 (2K)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1-800-BAR NONE v. Brandow's Fairway Chrysler Jeep,*
    2007 WL 39372  (N.D. Cal. Jan. 4, 2007) ............................................................. 17

*Adams v. AllianceOne, Inc.,*
    2011 WL 2066617 (S.D. Cal. May 25, 2011) ........................................................ 16

*ASUS Computer Int'l v. Round Rock Research, LLC,*
    2013 WL 5545276 (N.D. Cal. Oct. 8, 2013)........................................................... 10

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*
    843 F. Supp. 2d 1018 (N.D. Cal. 2012) ..................................................... 10, 17, 18

*In re Cardtronics ATM Fee Notice Litig.,*
    874 F. Supp. 2d 916 (S.D. Cal. 2012) ................................................................... 12

*Clark v. County of Tulare,*
    755 F. Supp. 2d 1075 (E.D. Cal. Nov. 17, 2010) ............................................. 12, 15

*Crayton v. Rochester Med. Corp.,*
    2010 WL 392341 (E.D. Cal. Jan. 25, 2010)........................................................... 11

*De Los Santos v. Millward Brown, Inc.,*
    2014 WL 2938605 (S.D. Fla. June 30, 2014) .................................................. 19, 20

*DLC Mgmt. Corp. v. Town of Hyde Park,*
    163 F.3d 124 (2d Cir. 1998)................................................................................... 16

*Dominguez v. Yahoo!, Inc.,*
    2014 WL 1096051 (E.D. Pa. Mar. 20, 2014) ................................................... 19, 20

*Dumas v. Bangi, M.D.,*
    2014 WL 3844775 (E.D. Cal. Jan. 23, 2014) ........................................................ 10

*Engles v. Hilti, Inc.,*
    No. 11-cv-491 (N.D. Okl. Dec. 27, 2012).............................................................. 14

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mort. Corp.,*
    525 F.3d 822 (9th Cir. 2008)................................................................................. 10

*Fox Industries, Inc. v. Gurovich,*
    2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006) .......................................................... 16

LOS ANGELES 1068562 (2K)

*Gofron v. Piscel Technologies, Inc.,*
   804 F. Supp. 2d 1030 (N.D. Cal. 2011) ............................................................ 10, 12, 13, 14, 17

*Gragg v. Orange Cab Co., Inc.,*
   2014 U.S. Dist. LEXIS 29052 (W.D. Wash. Feb. 28, 2014) ................................................ 19

*Gragg v. Orange Cab Co., Inc.,*
   2014 WL 494862 (W.D. Wash. Feb. 7, 2014) ......................................................... 19, 20, 25

*Henry v. Regents of the Univ. of Cal.,*
   -- F. Supp. 2d --, 2014 WL 709971 (N.D. Cal. Feb. 24, 2014)........................................ 12, 15

*Hill v. Lincoln Nat'l Life Ins.,*
   2013 WL 9447515 (N.D. Cal. Aug. 28, 2013) ......................................................... 12, 13, 14

*Hunt v. 21st Mort. Corp.,*
   2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) ............................................................ 19, 20

*Morton v. Hall,*
   455 F. Supp. 2d 1066 (C.D. Cal. 2006).......................................................................... 10

*Muench Photography, Inc. v. Pearson Educ., Inc.,*
   No. 12-cv-01927 (N.D. Cal. Aug. 29, 2013).................................................................. 11

*Pfingston v. Ronan Engineering Co.,*
   284 F.3d 999 (9th Cir. 2002)....................................................................................... 12

*Price v. TransUnion LLC,*
   847 F. Supp. 2d 788 (E.D. Pa. 2012) .......................................................................... 16

*Satterfield v. Simon & Schuster, Inc.,*
   569 F.3d 946 (9th Cir. 2009)......................................................................................... 3

*Sterk v. Path, Inc.,*
   2014 WL 2443785 (N.D. Ill. May 30, 2014) ......................................................... 20, 24, 25

*Sullivan v. City of Marysville,*
   2014 WL 2896003 (W.D. Wash. June 26, 2014)........................................................... 10

*Thommeny v. Paramount Pictures Corp.,*
   2011 WL 2899340 (C.D. Cal. July 13, 2011) ............................................................... 12

## **FEDERAL STATUTE**

47 U.S.C. § 227 .................................................................................................................. 1

47 U.S.C. § 227(a) ......................................................................................................... 3, 22

47 U.S.C. § 227(b)(1)(A)(iii) .............................................................................................. 3

iii

# **FEDERAL RULES**

Fed. R. Civ. Proc. 16 ................................................................................ 1

Fed. R. Civ. Proc. 16(b) .......................................................................... 10

Fed. R. Civ. Proc. 30(b)(6) ...................................................................... 13

Fed. R. Civ. Proc. 56(d) ................................................................... passim

Fed. R. Civ. Proc. 56(f) ........................................................................... 12

# **FEDERAL REGULATIONS**

47 C.F.R. 64.1200(a)(7) ........................................................................... 24

47 C.F.R. 64.1200(f)(2) ...................................................................... 19, 21

# **REGULATORY PROCEEDINGS**

*In re Rules and Regulations Implementing the Telephone Consumer Act of 1991*,
    Notice of Proposed Rulemaking, 17 FCC Rcd 17459 (Sept. 18, 2002) ................................ 23

*In re Rules and Regulations Implementing the Telephone Consumer Act of 1991*,
    Report and Order, 18 FCC Rcd 14014 (July 3, 2003) ............................................ 22, 23, 24

*In re Rules and Regulations Implementing the Telephone Consumer Act of 1991*,
    Report and Order, 27 FCC Rcd 1830 (Feb. 15, 2012) ............................................. 23

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of
    1991, Declaratory Ruling*, 27 FCC Rcd. 15391 (Nov. 29, 2012) .......................................... 22

# **LOCAL RULE**

Civil L.R. 37-3 ..................................................................... 10, 11, 14, 15

LOS ANGELES 1068562 (2K)

## I.     **INTRODUCTION**

Plaintiff Brian Glauser ("Plaintiff") neglected to serve discovery on non-parties Twilio, Inc. ("Twilio") and Bandwidth.com, Inc. ("Bandwidth") until June 27, 2014, this Court's deadline to complete discovery regarding the autodialer issue (defined below), when he served them with document subpoenas.  Twilio and Bandwidth served timely objections to the subpoenas, objecting, in part, that the requests were untimely under the Court's scheduling order. Plaintiff now attempts to avoid the lapsed deadline by portraying his untimely subpoenas as previously outstanding discovery requests, and asks the Court for more time to complete that discovery and oppose defendant GroupMe, Inc.'s ("GroupMe") motion for summary judgment ("MSJ").  This Court should deny Plaintiff's motion for several reasons.

First, the autodialer discovery period closed on June 27, 2014, thus Plaintiff's subpoenas to Twilio and Bandwidth were untimely.  The Court, with input from counsel, set a discovery and briefing schedule for GroupMe's MSJ on whether GroupMe used an "automatic telephone dialing system" ("autodialer"), as the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") defines that term, to send Plaintiff text messages.  On April 28, 2014, supported by declarations from Twilio and Bandwidth, GroupMe filed its MSJ.  The Court's scheduling order gave Plaintiff 60 days from April 28, 2014, to <u>complete</u> discovery on the autodialer issue (June 27, 2014), and 30 more days (July 28, 2014) to file a brief opposing GroupMe's MSJ. Plaintiff's subpoenas served on Twilio and Bandwidth were untimely, and, therefore, did not comply with the Court's deadline to complete autodialer discovery.  Moreover, Plaintiff cannot use Federal Rule of Civil Procedure ("Rule") 56(d), as he attempts by his motion, to reopen the discovery period, and Plaintiff has not moved under Rule 16 to modify the scheduling order.

Second, Plaintiff, who is represented by five attorneys of record, fails to meet his burden under Rule 56(d) to show he has been diligent seeking discovery from Twilio and Bandwidth. Plaintiff has known of Twilio's involvement with GroupMe's transmission of text messages for more than three years, and has known of Bandwidth's involvement since at least April 28, 2014, when GroupMe filed its MSJ.  However, Plaintiff waited until June 20, 2014, one week before the autodialer discovery cutoff, to seek information informally from Twilio.  Twilio declined to

1

provide information informally, denying an agreement existed under which Twilio would provide Plaintiff informal discovery. Indeed, Plaintiff's discussions with Twilio on April 21, 2014, confirmed no agreement existed. Plaintiff then served both Twilio and Bandwidth with document subpoenas on June 27, 2014. Plaintiff never sought to depose Twilio or Bandwidth, and, after receiving their objections but before filing his Rule 56(d) motion on July 28, 2014, did not try to meet and confer with either third party or file a motion to compel compliance with the subpoenas. Under similar facts, courts within this district, including this Court, have held parties did not act diligently, as required under Rule 56(d).

Third, Plaintiff fails to meet his burden under Rule 56(d) to identify specific facts he could obtain through discovery that would preclude summary judgment. Plaintiff fails to identify any facts showing GroupMe used an autodialer or submit any evidence indicating such facts exist. Rather, Plaintiff identifies a number of broad issues about which he would like to ask Twilio and Bandwidth in the hope of finding something to support his case. Cases from within this district demonstrate Plaintiff's showing is insufficient.

Finally, any continuation of the briefing schedule or additional discovery (even if limited to document production by Twilio and/or Bandwidth) would be futile because GroupMe did not use an autodialer. As shown in GroupMe's MSJ, equipment meets the definition of an autodialer only if it can randomly or sequentially generate phone numbers. There is no alternative definition for text messaging technology under the TCPA, and GroupMe's uncontroverted evidence shows GroupMe's technology cannot randomly or sequentially generate phone numbers. Seeking to escape this conclusion, Plaintiff advances two definitions of autodialer that do not include the requirement an autodialer be able to randomly or sequentially generate numbers. Plaintiff's definitions conflict directly with the plain language of the TCPA, Federal Communications Commission ("FCC") regulations implementing the TCPA, FCC rulings, and recent district court orders, including one from within this circuit. Moreover, Plaintiff's reliance on an out of circuit district court opinion is misplaced, as that opinion was wrongly decided based on the same misreading of FCC rulings Plaintiff argues here.

For these reasons, as discussed more fully below, GroupMe respectfully requests the

2

1  Court deny Plaintiff's motion.

2  ## II.    STATEMENT OF ISSUE

3      1.    Whether Plaintiff is entitled to an extension of the briefing schedule or denial of

4  GroupMe's MSJ under Rule 56(d).

5  ## III.    BACKGROUND

6      The TCPA, as interpreted by the Ninth Circuit, prohibits using an autodialer to send an

7  unsolicited text message to a cell phone without obtaining the prior express consent of the called

8  party.  47 U.S.C. § 227(b)(1)(A)(iii); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th

9  Cir. 2009) (interpreting the term "call" in TCPA as including text messages).  The TCPA defines

10 an autodialer as equipment having "the capacity -- (A) to store or produce telephone numbers to

11 be called, <u>using a random or sequential number generator</u>; and (B) to dial such numbers."  47

12 U.S.C. § 227(a) (emphasis added).  Plaintiff's Amended Complaint, the operative complaint,

13 alleges GroupMe and former co-defendant Twilio violated the TCPA by using an autodialer to

14 send Plaintiff unsolicited text messages.  Am. Compl., Dkt. No. 34, ¶ 11 (Sept. 15, 2011).

15     ### A.    Procedural History

16     On March 27, 2014, the Court held a case management conference ("CMC"), at which it

17 lifted the stay in this action entered on January 27, 2012.  Order, Dkt. No. 93 (Jan. 27, 2012);

18 Declaration of Bryan A. Merryman ("Merryman Decl."), ¶¶ 2-3.  The Court stated during the

19 CMC it would, at the request of GroupMe and Twilio, permit them to file an MSJ on whether

20 they used an autodialer to send Plaintiff text messages.  Merryman Decl., ¶ 3.  GroupMe and

21 Twilio asked for 30 days from the date of the CMC (April 28, 2014) to file the MSJ.  *Id.*  Plaintiff,

22 in turn, asked for 60 days from the filing of the MSJ to conduct discovery on the autodialer issue,

23 and an additional 30 days thereafter to file his opposition to the MSJ.  *Id.*

24     The Court entered an order on March 27, 2014, adopting the schedule requested by the

25 parties.  Civ. Mins., Dkt. No. 93 (Mar. 27, 2014).  The Court's Order dated March 27, 2014, states

26 "[t]he motion re: autodialer issue shall be filed within 30 days. . . .  The Court will allow up to 60

27 days to complete discovery and an additional 30 days to file the opposition brief."  *Id.*  The

28 Court's Order further instructs the parties to "meet and confer regarding the amount of discovery

1    needed and submit a stipulation as to the briefing schedule." *Id.*

2    On April 21, 2014, the parties stipulated to the dismissal of Twilio without prejudice.

3    Stipulated Dismissal of Twilio, Inc., Dkt. No. 105 (Apr. 21, 2014). Twilio had been a defendant

4    since Plaintiff filed his complaint more than three years ago. Compl., Dkt. No. 1 (May 27, 2011).

5        **B.    GroupMe's Summary Judgment Motion**

6    GroupMe timely filed its MSJ on April 28, 2014. MSJ, Dkt. No. 107-1 (Apr. 28, 2014).

7    GroupMe's MSJ is supported by declarations from GroupMe's co-founder Steve Martocci,

8    GroupMe's Director of Engineering John Pignata, Twilio's Solutions Architect Ameer Badri, and

9    Bandwidth's Vice President of Voice and Messaging Service Brent Mello. *Id.*

10    GroupMe's MSJ shows it offers a free social messaging service. MSJ at 3-7. On April

11    18, 2011, Mike L. created a group using GroupMe's service. *Id.* at 7-8. On April 23, 2011, Mike

12    L. provided GroupMe with Plaintiff's name and phone number, and added him to the "Poker"

13    group then consisting of eight people. *Id.* By adding Plaintiff to the "Poker" group, Mike L.

14    triggered GroupMe's software application to send Plaintiff a customized message welcoming him

15    to the group, which message also included notifications on how to avoid potential data charges, to

16    exit the group, and not to receive future group messages. *Id.* Plaintiff then received social

17    messages from other group members and informational messages from GroupMe triggered solely

18    in response to specific actions by other group members. *Id.* Plaintiff responded "In" on April 23,

19    2011. *Id.* After he filed this action on May 27, 2011, Plaintiff registered with GroupMe to use its

20    service on June 23, 2011, and remains a member of the "Poker" group. *Id.* at 8.

21    GroupMe's MSJ shows that, to fall within the definition of an autodialer under the

22    TCPA, equipment must have the present capacity, at the time of use, to randomly or sequentially

23    generate phone numbers. MSJ at 10-16. GroupMe's software application cannot, and never has

24    been able to, randomly or sequentially generate phone numbers. *Id.* The software applications

25    provided by Twilio and Bandwidth as part of GroupMe's free social messaging service cannot,

26    and never have been able to, randomly or sequentially generate phone numbers. *Id.*

27    GroupMe's MSJ anticipates Plaintiff would argue it used a "predictive dialer" to send

28    him text messages, although Plaintiff's Amended Complaint fails to so allege. MSJ at 16-17.

4

1    GroupMe's MSJ shows the FCC's "predictive dialer" rulings under the TCPA do not change the

2    requirement an autodialer "randomly or sequentially generate" numbers, and, in any event, those

3    rulings are specific to voice calls and do not apply to text messaging technology. *Id.* Further,

4    GroupMe's technology does not constitute a "predictive dialer" because its technology can only

5    send text messages in response to specific actions of other group members, *i.e.*, GroupMe's

6    technology requires "human intervention" and cannot send text messages autonomously. *Id.*

7        Plaintiff does not submit any evidence disputing the admissible evidence filed in support

8    of the MSJ.

9        **C.    Discovery**

10       After GroupMe filed its MSJ on April 28, 2014, Plaintiff had 60 days to complete

11   discovery on the autodialer issue. Civ. Mins., Dkt. No. 93. Yet, as of May 5, 2014, Plaintiff had

12   not contacted GroupMe to discuss the amount of discovery he needed, as required by the Court's

13   Order dated March 27, 2014. Declaration of J. Jonathan Hawk ("Hawk Decl."), ¶¶ 4-5.

14   GroupMe's attorney contacted Plaintiff's counsel on May 5, 2014, but only one of Plaintiff's five

15   counsel of record responded, and he was unavailable to meet and confer regarding a discovery

16   plan or briefing schedule until May 12, 2014.[1]  *Id.*, Ex. D.

17       When the parties met and conferred on May 12, 2014, Plaintiff requested the full 60 days

18   to complete autodialer discovery and an additional 30 days to file his opposition to GroupMe's

19   MSJ. Hawk Decl., ¶ 7. Plaintiff's counsel expressly stated he wanted a deadline to complete

20   discovery on the autodialer issue of June 27, 2014. *Id.* GroupMe agreed. *Id.* The parties

21   submitted a stipulated discovery and briefing schedule to the Court on May 15, 2014, setting,

22   among other deadlines, June 27, 2014, as the "Deadline to complete discovery on the autodialer

23   issue raised in GroupMe's summary judgment motion," and July 28, 2014, as Plaintiff's deadline

24   _____

25   [1] All of Plaintiff's attorneys of record listed in this action practice at Edelson PC. Edelson, a self-professed "class
     action super firm," touts its national, plaintiff's side, TCPA class action practice, "with a particular emphasis on

26   technology class actions," including numerous TCPA class actions throughout the country over the past five years.
     *See Pimental v. Google, Inc.*, No. 4:11-cv-02585 (N.D. Cal.), Dkt. No. 84-2, Decl. of Rafey Balabanian, Ex. A, at 7-

27   10 (filed Oct. 5, 2012) ("We have established key precedent under the [TCPA] . . . resulting in multiple eight figure
     settlements in recent years. We have prosecuted over 100 cases involving mobile content, settling numerous

28   nationwide class actions . . . collectively worth over a hundred million dollars.").

1   to file his opposition to GroupMe's MSJ.  Joint Stipulation to Set Briefing Schedule and Order,

2   Dkt. No. 109 (May 16, 2014) (emphasis in original).  The Court adopted the parties' stipulated

3   schedule without modification on May 16, 2014.  *Id.*

### 1.    Plaintiff's Discovery from GroupMe

5       When the parties discussed a discovery and briefing schedule on May 12, 2014, Plaintiff

6   recalled a first request for production of documents and a first set of interrogatories, to which

7   GroupMe served responses in January 2012, shortly before the Court stayed this action.  Hawk

8   Decl., ¶ 8.  Plaintiff asked GroupMe to serve new responses to those discovery requests on an

9   expedited basis because of the deadline of June 27, 2014, to complete autodialer discovery.  *Id.*

10       GroupMe agreed to serve responses on an expedited basis to 23 requests relevant to the

11   autodialer issue.  Hawk Decl., ¶¶ 16-18, Ex. E.  Specifically, the parties agreed (a) to treat

12   Plaintiff's discovery requests as served on May 22, 2014, (b) GroupMe would serve on an

13   expedited basis, by Friday, June 6, 2014, written responses to 23 specific discovery requests, (c)

14   GroupMe would produce documents on a rolling basis, starting on Monday, June 9, 2014, and (d)

15   GroupMe would serve responses to the remainder of Plaintiff's discovery requests within 30 days

16   in accordance with the Federal Rules of Civil Procedure.  *Id.*

17       In reaching an agreement to serve responses to autodialer discovery on an expedited basis,

18   GroupMe did not commit to completing its production of autodialer documents earlier than June

19   27, 2014.  Hawk Decl., ¶ 17.  GroupMe also said some information sought on the autodialer issue,

20   particularly regarding GroupMe's technology, is highly confidential and proprietary, and would

21   potentially include source code.  *Id.*, ¶¶ 10, 17, 22.  GroupMe told Plaintiff's counsel several

22   times it would not produce confidential documents without a protective order, which Plaintiff's

23   counsel acknowledged and never expressed disagreement with GroupMe's position.  *Id.*

24       GroupMe met all deadlines set by the Court and to which the parties agreed.  Hawk Decl.,

25   ¶¶ 20-22, 27-32, 37.  GroupMe served on an expedited basis responses to 23 discovery requests

26   on June 6, 2014, produced documents starting on June 9, 2014, and completed its production of

27   autodialer documents (437 pages, including emails) by June 27, 2014.  *Id.*  GroupMe also served

28   responses to all remaining (non-autodialer) discovery requests on June 27, 2014.  *Id.*

1   Seeking to expedite its production of confidential documents, GroupMe even drafted a

2   stipulated protective order based on a form from the Northern District of California's website, and

3   provided it to Plaintiff for review on June 4, 2014. Hawk Decl., ¶ 19. Plaintiff failed to provide

4   any comments on the draft for almost one week, until June 10, 2014. *Id.*, ¶ 22. Plaintiff then did

5   not respond promptly to GroupMe's inquiries regarding Plaintiff's proposed changes to the draft.

6   *Id.*, ¶¶ 22-24, Exs. F, G. The parties stipulated to the entry of the protective order on June 18,

7   2014, which the Court entered on June 23, 2014. The same day the Court entered the protective

8   order, GroupMe began producing confidential documents, including its source code, system and

9   database architecture, and agreements with Twilio and Bandwidth. *Id.*, ¶¶ 27-28.

10   Plaintiff never asked to depose GroupMe's founders or employees, including Mr.

11   Martocci and Mr. Pignata, who submitted declarations in support of GroupMe's MSJ. Hawk

12   Decl., ¶ 38. Plaintiff never asked to meet and confer with GroupMe regarding its discovery

13   responses or document productions on the autodialer issue. *Id.*, ¶ 37. Plaintiff never, until now,

14   expressed any displeasure with the substance or timing of GroupMe's discovery responses or

15   document productions. *Id.*

16   On June 26, 2014, Plaintiff's counsel contacted GroupMe, acknowledged the deadline of

17   June 27, 2014, to complete autodialer discovery but requested GroupMe stipulate to a four-week

18   extension of that deadline and Plaintiff's corresponding deadline of July 28, 2014, to oppose

19   GroupMe's MSJ. Hawk Decl., ¶ 30. Plaintiff's counsel stated he needed time to serve formal

20   discovery requests on non-party Twilio, but did not mention Bandwidth. *Id.* GroupMe declined

21   to stipulate to a four-week extension. *Id.*, ¶ 32. Plaintiff's counsel inquired whether GroupMe

22   would stipulate to a shorter extension. *Id.*, ¶ 34. GroupMe responded by asking Plaintiff to

23   provide a proposal identifying the length of the requested extension and the discovery he wanted

24   to conduct. *Id.*, Ex. J. Plaintiff never responded. *Id.*

25   ## 2.   Plaintiff's Informal Discovery Request to Twilio

26   Between April 18 and 21, 2014, counsel discussed terms of a stipulation that would

27   dismiss Twilio without prejudice. Declaration of Michael B. Hazzard ("Hazzard Decl."), ¶¶ 2-7.

28   During those email exchanges and phone call, Plaintiff's counsel mentioned the possibility of a

7

1  future request that Twilio provide certain information. *Id.* Plaintiff's counsel discussed, in

2  general terms, the types of information he might request, including, for example, information

3  identifying computer equipment Twilio used to route text messages to Plaintiff's cell phone. *Id.*,

4  ¶ 2, Ex. A. Plaintiff's counsel sent Twilio an email on April 18, 2014, outlining "information that

5  we're interest[ed] in obtaining from Twilio." *Id.* Twilio told Plaintiff's counsel on April 21,

6  2014, however, the information outlined in his email is irrelevant to this case and would be

7  unduly burdensome to collect. *Id.*, ¶¶ 3-4. Twilio did <u>not</u> agree to produce such information. *Id.*,

8  ¶ 6. Twilio told Plaintiff's counsel, at most, Twilio would be subject to third-party discovery

9  under the Federal Rules of Civil Procedure and would work with Plaintiff in good faith in

10  responding to any future formal discovery requests Plaintiff might serve on Twilio in this case.

11  *Id.*, ¶¶ 2-7, Exs. A, B. On April 21, 2014, Plaintiff's counsel declined Twilio's request to discuss

12  further the information outlined in his email, and agreed to dismiss Twilio without prejudice. *Id.*

13       Twilio never agreed to produce any materials to Plaintiff informally. Hazzard Decl., ¶ 6.

14  Twilio never agreed to waive its right to be served with a subpoena as a third party and, in

15  response, serve a written response, including objections. *Id.*

16       Plaintiff waited more than two months, until the week before the autodialer discovery

17  deadline, to contact Twilio about obtaining information. Hazzard Decl., ¶¶ 8-9. On June 20,

18  2014, Plaintiff's counsel sent an email to Twilio, purporting "to follow up with respect to Twilio

19  gathering the few pieces of information regarding the *Glauser* matter that we previously

20  discussed." *Id.*, Ex. C. Twilio responded that it needed a formal written discovery request. *Id.*;

21  Hawk Decl., ¶ 29, Ex. H.

22       After Twilio declined to respond to informal requests for information (because it never

23  agreed to do so), Plaintiff's counsel said he would serve a document subpoena and threatened to

24  "re-nam[e] Twilio as a defendant in this case." Hawk Decl., ¶ 29, Ex. H.

25         **3.**     **Plaintiff's Formal Discovery Requests to Non-Parties**

26       Plaintiff did not serve any formal discovery on non-parties until the last day of the

27  autodialer discovery period. Hawk Decl., ¶ 39. On June 26, 2014, at 8:59 p.m., Plaintiff's

28  counsel served GroupMe with notices of document subpoenas to Twilio and Bandwidth. Hawk

8

1   Decl., ¶ 31, Ex. I.  The next day, on June 27, 2014, Plaintiff served separate subpoenas on Twilio

2   and Bandwidth that sought production of nearly identical categories of documents purportedly

3   related to the autodialer issue.  *Id.*, ¶ 33.  Plaintiff had never before sought any information or

4   documents from Bandwidth.  *Id.*, ¶ 39.

5          Plaintiff's subpoenas set July 11, 2014, as the deadline to respond.  Hawk Decl., ¶ 31.  On

6   July 8, 2014, Twilio and Bandwidth served responses, which objected on, among other grounds,

7   that the subpoenas were untimely pursuant to the autodialer discovery deadline in the Court's

8   scheduling order.  *Id.*, ¶ 35.  The untimely subpoenas served on Twilio and Bandwidth constituted

9   Plaintiff's only attempt to conduct formal discovery of non-parties.  *Id.*, ¶ 39; Hazzard Decl., ¶ 8.

10         Plaintiff never asked Twilio or Bandwidth to meet and confer regarding their respective

11  responses to the subpoenas.  Hawk Decl., ¶¶ 35, 39.  Plaintiff never filed a motion to compel

12  further responses from Twilio or Bandwidth.  Plaintiff never moved to modify the scheduling

13  order to extend the deadline of June 27, 2014, to complete autodialer discovery.  Plaintiff also

14  never sought to depose Twilio, Bandwidth, or their respective employees, Mr. Badri or Mr.

15  Mello, who submitted declarations in support of GroupMe's MSJ.  *Id.*

16         On July 28, 2014, Plaintiff filed a Rule 56(d) request for a continuance of the briefing

17  schedule, arguing he was "unfairly prejudiced" because Twilio and Bandwidth did not produce

18  documents.  Mot. at 12.  Plaintiff never discussed his filing with GroupMe.  Hawk Decl., ¶ 40.

19  July 28 was Plaintiff's deadline to file his opposition to GroupMe's MSJ, which he did not file.

20  **IV.   ARGUMENT**

21         A party seeking an extension of an MSJ briefing schedule under Rule 56(d) has the burden

22  to show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further

23  discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary

24  judgment."  *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mort. Corp.*, 525 F.3d 822, 827

25  (9th Cir. 2008).  The moving party must also show it has "diligently pursued its previous discovery

26  opportunities," and "allowing additional discovery would preclude summary judgment."  *Brocade*

27  *Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 843 F. Supp. 2d 1018, 1026-27 (N.D. Cal. 2012).

28         Importantly, "Rule 56(d) does not reopen discovery."  *See Dumas v. Bangi, M.D.*, 2014

1   WL 3844775, at *at 2 (E.D. Cal. Jan. 23, 2014) (emphasis added). It merely "forestalls ruling on a

2   motion for summary judgment in cases where discovery is still open and provides the prospect of

3   defeating summary judgment." *Id.* Where the discovery period has ended, a party seeking more

4   discovery to oppose summary judgment must move for a continuance of the briefing schedule

5   under Rule 56(d) <u>and</u> for modification of the scheduling order under Rule 16(b). *Sullivan v. City*

6   *of Marysville*, 2014 WL 2896003, at *3-4 (W.D. Wash. June 26, 2014); *see Gofron v. Piscel*

7   *Technologies, Inc.*, 804 F. Supp. 2d 1030, 1040 (N.D. Cal. 2011).[2]

8          Here, Plaintiff's motion asks the Court to grant a continuance under Rule 56(d) so he can

9   conduct discovery on the autodialer issue as to non-parties Twilio and Bandwidth. Discovery on

10  the autodialer issue is closed and Plaintiff has not filed a motion to reopen it.

11         Plaintiff also failed to meet his burden necessary to obtain a continuance under Rule

12  56(d). Plaintiff did not act diligently in conducting discovery, did not identify specific facts he

13  needs to oppose the MSJ, and did not show those facts would preclude summary judgment

14  against him. Plaintiff cannot avoid summary judgment and the Court should deny his motion.

15  **A.      The Discovery Period On the Autodialer Issue Is Closed**

16         Plaintiff's request for a Rule 56(d) continuance to conduct discovery hinges on his

17  contention the autodialer discovery period remains open. Mot. at 12 n.7. Plaintiff is incorrect.

18         Plaintiff twice asked for, and agreed to, a deadline of June 27, 2014, to complete

19  autodialer discovery. Merryman Decl., ¶¶ 3-4; Order on Briefing Sched., Dkt. No. 109, at 3

20  ("<u>Deadline to complete discovery on the autodialer issue raised in GroupMe's summary judgment</u>

21  <u>motion, except as noted in item 3 below</u>: June 27, 2014" (emphasis in original)).[3] The Court set

22  that deadline in its Orders dated March 27 and May 16, 2014. *Id.*; Civ. Mins., Dkt. No. 93 (Mar.

23  _____

24  [2] Plaintiff argues a stay of MSJ briefing is appropriate if the party opposing summary judgment is awaiting responses
    to outstanding discovery requests. Mot. at 7 (citing *Morton v. Hall*, 455 F. Supp. 2d 1066, 1079 (C.D. Cal. 2006);

25  *ASUS Computer Int'l v. Round Rock Research, LLC*, 2013 WL 5545276, at *2 (N.D. Cal. Oct. 8, 2013)). That
    principle may apply when the discovery period remains open or a timely motion to compel has been filed, *id.*, but

26  Local Rule 37-3, as well as cases cited above, dictate discovery responses due after the discovery cutoff render the
    discovery requests unenforceable. Civil L.R. 37-3. Untimely discovery requests do not warrant Rule 56(d) relief.

27  [3] The only exception to the deadline of June 27, 2014, to complete discovery on the autodialer issue was for
    GroupMe "to take [the] deposition of anyone, including experts who submit[] a declaration in support of Glauser's

28  opposition to GroupMe's summary judgment motion." Order on Briefing Sched., Dkt. No. 109, at 3.

                                          10

1   27, 2014).  As recently as June 26, 2014, Plaintiff's counsel acknowledged the Court's deadline

2   of June 27, 2014, to complete autodialer discovery when he requested GroupMe stipulate to an

3   extension of that deadline.  Hawk Decl., ¶ 30.

4        Despite these facts, Plaintiff's motion argues June 27, 2014, was not a discovery cutoff.

5   Mot. at 12 n.7.  Plaintiff's conduct belies his argument, and the plain language of the Court's

6   Orders dated March 27 and May 16, 2014, dictates Plaintiff's time to conduct autodialer discovery

7   ended.  Those Court Orders provide Plaintiff "up to 60 days" to complete autodialer discovery, and

8   specify June 27, 2014, was the "Deadline to complete discovery on the autodialer issue."  Order on

9   Briefing Sched., Dkt. No. 109 at 3 (emphasis in original).  Those provisions can only be read as

10  setting an autodialer discovery cutoff of June 27, 2014.  *See* Civil L.R. 37-3 (discovery cutoff is

11  "date by which all responses to written discovery are due . . ."); *Crayton v. Rochester Med. Corp.*,

12  2010 WL 392341, at *2 (E.D. Cal. Jan. 25, 2010) (order "requir[ing] all non-expert discovery be

13  completed" by September 25, 2009 set date as fact discovery cutoff; no merit to argument plaintiff

14  could conduct fact discovery until later date by which "all discovery must be completed").

15       The discovery period has closed as to formal autodialer discovery, including such

16  discovery sought from Twilio and Bandwidth.  *Muench Photography, Inc. v. Pearson Educ., Inc.*,

17  No. 12-cv-01927, Order, Dkt. No. 54 at 1 (N.D. Cal. Aug. 29, 2013) (quashing untimely third

18  party subpoena, noting courts in this district hold "[t]hird-party subpoenas under [Rule] 45 'are

19  subject to the same scheduling orders and deadlines as other forms of discovery'").

20       **B.    Plaintiff Did Not Act Diligently In Seeking Autodialer Discovery**

21       To meet his burden on a Rule 56(d) motion, Plaintiff must show he "diligently pursued

22  its <u>previous</u> discovery opportunities."  *Gofron*, 804 F. Supp. 2d at 1036 (emphasis in original).

23  As this Court recently noted, the moving party must show it "meaningfully pursue[d]" the

24  discovery it seeks, and explain why the discovery could not have been obtained before the

25  discovery cutoff.  *See Henry v. Regents of the Univ. of Cal.*, -- F. Supp. 2d --, 2014 WL 709971,

26  at *6 n.4 (Judge Hamilton) (N.D. Cal. Feb. 24, 2014) (denying Rule 56(d) request).  If a party has

27  not been diligent, the inquiry should end and he should not be granted relief under Rule 56(d).  *In*

28  *re Cardtronics ATM Fee Notice Litig.*, 874 F. Supp. 2d 916, 927 (S.D. Cal. 2012).

11

LOS ANGELES 1068562 (2K)

1    Courts within this district have denied Rule 56(d) motions, finding parties did <u>not</u>

2    diligently conduct discovery in various circumstances applicable here.  Courts in this district have

3    denied Rule 56(d) requests for extensions of time where a plaintiff failed to conduct discovery in

4    the time allotted by stipulated discovery and briefing deadlines on a summary judgment motion,

5    and where a plaintiff failed to serve discovery requests in sufficient time to receive responses by

6    the discovery cutoff.  *Hill v. Lincoln Nat'l Life Ins.*, 2013 WL 9447515, at *1-2 (N.D. Cal. Aug.

7    28, 2013) (failed to conduct discovery before stipulated deadline); *Gofron*, 804 F. Supp. 2d at 1040

8    (served discovery with responses due after discovery cutoff); *see also In re Cardtronics ATM Fee*

9    *Notice Litig.*, 874 F. Supp. 2d at 927 (same).

10    Courts in other districts within this circuit similarly denied Rule 56(d) requests where a

11    plaintiff made a "tactical decision" to forego formal discovery efforts during the discovery period

12    and, instead, to rely solely on "informal discovery," and where plaintiffs failed to meet and confer

13    or move to compel the production of documents to obtain purportedly essential evidence until after

14    the discovery period ended and after those plaintiffs moved under Rule 56(d).  *Clark v. County of*

15    *Tulare*, 755 F. Supp. 2d 1075, 1100-1101 (E.D. Cal. Nov. 17, 2010) (denying request under Rule

16    56(f), predecessor to Rule 56(d), after summary judgment granted where plaintiff chose to rely on

17    "informal discovery"); *Henry*, 2014 WL 709971, at *6 n.4; *Thommeny v. Paramount Pictures*

18    *Corp.*, 2011 WL 2899340, at *2 (C.D. Cal. July 13, 2011) (plaintiff sought to meet and confer after

19    discovery cutoff); *see also Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir.

20    2002) (plaintiff failed to meet and confer or move to compel during discovery period or before

21    filing Rule 56(f) request ).  *Hill* is illustrative.

22    **1.    *Hill v. Lincoln Nat'l Life Ins.***

23    In *Hill*, the parties jointly proposed a briefing schedule for a "relatively early motion for

24    summary judgment on [an] ERISA preemption" issue.  *Hill*, 2013 WL 9447515, at *1.  The court

25    adopted the briefing schedule in an order dated May 17, 2013, providing plaintiff with

26    approximately three months, until August 27, 2013, to conduct discovery and file an opposition to

27    defendant's anticipated summary judgment motion.  *Id.*  Defendant "timely filed its motion for

28    summary judgment" pursuant to the briefing schedule, but, on August 21, 2013, plaintiff filed a

12

1  Rule 56(d) motion seeking to "extend the briefing schedule and allow [additional time for]

2  discovery." *Id.* Plaintiff claimed she needed to serve document requests and take depositions.

3  *Id.* at *1-2. Defendant opposed the motion. *Id.* at *1.

4         The *Hill* court, in analyzing plaintiff's Rule 56(d) motion, looked at whether plaintiff

5  sufficiently explained discovery she conducted during the discovery period and why she could not

6  obtain discovery she professed to need despite her efforts. *Hill*, 2013 WL 9447515, at *1-2.

7  Plaintiff in *Hill* failed to show she "attempted to, or did, conduct any discovery during three

8  months, even though Plaintiff knew that the Court had set a briefing schedule for a motion for

9  summary judgment on the preemption issue, to which Plaintiff stipulated." *Id.* Plaintiff could not

10  justify her lack of diligence by claiming she did not know the identity of witnesses until

11  defendant filed its summary judgment motion. Plaintiff knew the identity of one witness before

12  receiving the motion, and was not prevented from conducting written discovery and taking Rule

13  30(b)(6) depositions of entities she knew were involved. *Id.* at *2. Plaintiff did not act diligently

14  and the *Hill* court denied her Rule 56(d) motion. *Id.* The same result should apply here.

15         **2.    Plaintiff Did Not Act Diligently in Seeking Untimely Discovery from**

16              **Twilio and Bandwidth**

17         The only discovery Plaintiff identifies as the basis for his Rule 56(d) motion are document

18  subpoenas served on non-parties Twilio and Bandwidth on June 27, 2014, the deadline to

19  complete autodialer discovery. Mot. at 8. Plaintiff does not carry his burden to show he

20  diligently pursued that discovery. *Gofron*, 804 F. Supp. 2d at 1036.

21         As of April 28, 2014, at the latest, Plaintiff knew Twilio and Bandwidth's respective

22  technologies were involved in routing text messages to his cell phone as part of GroupMe's free

23  social messaging service. Compl., Dkt. No. 1 (May 27, 2011); MSJ, Dkt. No. 107-1 (Apr. 28,

24  2014). Yet, Plaintiff failed to serve formal discovery requests before the autodialer discovery

25  cutoff of June 27, 2014, on Twilio or Bandwidth, and he served no discovery on the Twilio and

26  Bandwidth employees who submitted declarations in support of GroupMe's MSJ. Hawk Decl.,

27  ¶¶ 35-39; Hazzard Decl., ¶¶ 8-9. These witnesses clearly possessed information relevant to the

28  autodialer issue as they submitted declarations in support of the MSJ. Yet, Plaintiff's Rule 56(d)

13

1    motion does not explain his delay in serving formal discovery on Twilio and Bandwidth.

2    Plaintiff's motion also does not explain why he waited until June 20, 2014, to request Twilio

3    informally provide information.  Hazzard Decl., ¶¶ 8-9.

4         Plaintiff's service of untimely subpoenas on non-parties without explanation for the delay

5    is, by itself, evidence of his lack of diligence.  *See Gofron*, 804 F. Supp. 2d at 1040 (denying Rule

6    56(d) motion because plaintiffs missed "discovery deadlines and ignored the Court's orders,"

7    failed to submit affidavit explaining the missed deadline, and failed to move "for an extension of

8    the discovery cutoff").  Because Plaintiff served subpoenas on the last day to complete autodialer

9    discovery and called for responses after the autodialer discovery deadline, his document

10    subpoenas to Twilio and Bandwidth were untimely, unenforceable, and the antithesis of diligent

11    discovery efforts.  *See id.*; *Engles v. Hilti, Inc.*, No. 11-cv-491, Order, Dkt. No. 33 at 1-2 (N.D.

12    Okl. Dec. 27, 2012) (quashing untimely third-party subpoena served on the discovery cutoff);

13    Civil L.R. 37-3 (discovery requests calling for responses after discovery cutoff are unenforceable

14    except by order of the court for good cause shown).  It only exacerbates matters for Plaintiff that

15    he failed to comply with discovery deadlines he requested.  *See Hill*, 2013 WL 9447515, at *1-2.

16         Plaintiff's conduct since the discovery cutoff provides further evidence of his lack of

17    diligence.  Plaintiff complains incorrectly that he received "[il]legitimate" objections to his

18    subpoenas from Twilio and Bandwidth on July 8, 2014, three days before their deadline to

19    respond of July 11, 2014.  Mot. at 12.  Plaintiff did nothing to attempt to resolve those objections.

20    Hawk Decl., ¶¶ 35-39.  Plaintiff failed to meet and confer with Twilio or Bandwidth, failed to file

21    a motion to compel, and never filed a motion to reopen discovery.[4]  *See Henry*, 2014 WL 709971,

22    at *6 n.4.  Indeed, Plaintiff also failed to file his Rule 56(d) motion until his deadline to oppose

23    GroupMe's MSJ, although Plaintiff knew as of July 8, 2014 (almost three weeks earlier), that

24    Twilio and Bandwidth served objections to the document subpoenas.

25         Plaintiff did not even act diligently in his efforts to obtain an extension of the discovery

26    _____

27    [4] Plaintiff's motion states he "intends to serve a written request for Twilio and Bandwidth to supplement their subpoena responses no later than Tuesday, August 5, 2014," and, if they refuse, "file a motion seeking an order compelling them to do so no later than August 12, 2014."  Plaintiff has not sent any written request, and motions to

28    compel discovery cannot be filed more than 7 days after the discovery cutoff.  Civil L.R. 37-3; Hawk Decl., ¶¶ 35, 39.

1    cutoff.  On June 27, 2014, after GroupMe declined to stipulate to a four-week extension of the

2    autodialer discovery deadline, which Plaintiff sought at the eleventh hour, he asked whether

3    GroupMe would agree to a shorter extension.  Hawk Decl., ¶¶ 32, 34, Ex. J.  GroupMe asked

4    Plaintiff for a proposal, but Plaintiff never responded.  *Id.*

5         Plaintiff, without explaining the foregoing delays, attempts to paint a picture of diligence,

6    arguing Twilio "renege[d] on its agreement to produce information informally," and GroupMe's

7    attorneys "thwarted" third-party discovery efforts.  Mot. at 4-5, 11.  These arguments lack merit.

8         Twilio never agreed to produce any documents to Plaintiff informally.  Hazzard Decl., ¶ 6.

9    Twilio never waived its right to be served properly with a subpoena or to serve written responses,

10   including objections.  *Id.*  The discussions between Plaintiff's counsel and Twilio on April 21,

11   2014, confirmed as much.  *Id.*, ¶ 4.  Twilio never received an actual request from Plaintiff to

12   produce information informally until June 20, 2014, one week before the autodialer discovery

13   cutoff.  *Id.*, ¶¶ 8-9; Mot. at 5.  Plaintiff's argument about a purported "agreement" with Twilio

14   attempts to distract the Court from Plaintiff's delay of over two months, from April 18, 2014,

15   until June 20, 2014, to request informally information from Twilio.  Plaintiff, by his own

16   admission, chose to seek informal discovery from Twilio and to wait until the end of the

17   discovery period to ask for it.  Plaintiff did not act diligently as required under Rule 56(d).  *See*

18   *Clark*, 755 F. Supp. 2d at 1100-1101; *see also Cornwell*, 755 F.3d at 1026-27.

19        Finally, Plaintiff accuses GroupMe's counsel of "thwart[ing]" his discovery efforts by

20   "advi[sing]" Twilio and Bandwidth to "refuse compliance with their obligations to respond in

21   good faith" to Plaintiff's document subpoenas.  Mot. at 11-12.  Plaintiff's accusations lack merit.

22   Twilio and Bandwidth did not "refuse to respond" to Plaintiff's document subpoenas.  Hawk

23   Decl., ¶ 35.  Rather, they served valid objections on the basis, among other grounds, that

24   Plaintiff's document subpoenas were untimely and unenforceable.  *Id.*

25        Plaintiff's authorities are inapposite; neither GroupMe nor its counsel usurped the Court's

26   authority, disobeyed a court order, or failed to locate responsive documents during the discovery

27   period by representing Twilio and Bandwidth in asserting valid objections to Plaintiff's untimely

28   subpoenas.  *Price v. TransUnion LLC*, 847 F. Supp. 2d 788, 794 (E.D. Pa. 2012) (by advising

15

1    third parties to not respond to subpoenas issued by defense counsel, plaintiff's attorney usurped

2    court's authority to determine whether subpoenas were enforceable); *Fox Industries, Inc. v.*

3    *Gurovich*, 2006 WL 2882580, at *8 (E.D.N.Y. Oct. 6, 2006) (same, where defense counsel

4    advised third parties to not respond); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135

5    (2d Cir. 1998) (failed to locate relevant documents requested during discovery); *Adams v.*

6    *AllianceOne, Inc.*, 2011 WL 2066617, at *3-4 (S.D. Cal. May 25, 2011) (disobeyed court order).

7      All Plaintiff did to conduct discovery on the autodialer issue before the June 27, 2014

8    autodialer discovery cutoff, was request GroupMe respond further to discovery requests he served

9    in December 2011. Hawk Decl., ¶ 8. Plaintiff did not contact GroupMe to discuss discovery and

10   briefing issues until May 5, 2014. *Id.*, ¶ 5. Plaintiff did not act diligently in providing comments

11   on the draft protective order. *Id.*, ¶¶ 19, 22-24. Plaintiff did not take a single deposition. *Id.*, ¶¶

12   38-39. Plaintiff did not express displeasure with the substance or timing of GroupMe's expedited

13   discovery responses or document productions. *Id.*, ¶ 37.

14     To the extent Plaintiff blames GroupMe for Plaintiff's own discovery delays, he cannot

15   support that position. At Plaintiff's request, GroupMe agreed to, and did, provide discovery

16   responses fifteen days after Plaintiff served its autodialer discovery requests, and did start

17   producing autodialer documents eighteen days after Plaintiff served those discovery requests.

18   Hawk Decl., ¶¶ 19, 20-22, 27-32, 37. Any delay in Plaintiff's receipt of documents resulted from

19   his attorneys' lack of diligence in providing comments on the draft protective order. *Id.*

20   GroupMe started producing confidential autodialer documents to Plaintiff the same day the Court

21   entered the protective order. *Id.* GroupMe completed its autodialer document production by the

22   autodialer discovery cutoff on June 27, 2014, and produced GroupMe's source code, system and

23   database architecture, and agreements with Twilio and Bandwidth days earlier. *Id.*

24     Plaintiff has failed to establish he acted diligently as required under Rule 56(d).

25   **C.** **Plaintiff Fails to Identify Specific Facts that Would Preclude Summary**

26      **Judgment**

27     To prevail on a Rule 56(d) request, the party seeking the extension must "identify specific

28   facts they seek in discovery that would preclude summary judgment." *Gofron*, 804 F. Supp. 2d at

16

1  1039. "Broad statements" or statements evidencing a "mere hope that further evidence may

2  develop . . . [are] an insufficient basis for a continuance." *Id.* at 1036; *1-800-BAR NONE v.*

3  *Brandow's Fairway Chrysler Jeep*, 2007 WL 39372, at *9-10 (N.D. Cal. Jan. 4, 2007).

4          *Brocade* is illustrative. There, plaintiff moved for summary judgment on defendant's

5  counterclaim, alleging plaintiff's products infringed one of defendant's patents by performing the

6  same functions as the patents, *i.e.*, "practic[ing] either virtual channel connections or a series of

7  control messages." *Brocade Commc'ns Sys., Inc.*, 843 F. Supp. 2d at 1026. Rather than oppose

8  plaintiff's summary judgment motion, defendant moved under Rule 56(d) for more time to

9  conduct discovery on whether plaintiff's products, among other issues, "perform functions other

10  than the IEEE 802.11 communications protocol." *Id.* at 1027.

11          Defendant's Rule 56(d) motion did not identify specific facts in existence that would

12  preclude summary judgment. *Id.* at 1027. Defendant's motion merely argued factual issues may

13  exist, including whether plaintiff's "accused products <u>may</u> perform functions other than IEEE

14  802.11 communications protocol." *Id.* (emphasis added). Defendant did not submit evidence to

15  support its contentions, and failed to identify specific facts suggesting plaintiff's products, in fact,

16  performed infringing functions. *Id.* (defendant argued for discovery into "technical

17  specifications, features, architecture, coding"). Defendant's identification of key issues without

18  more was "hardly the 'specific identification of relevant information' that would merit relief

19  under Rule 56(d)." *Id.* The court denied defendant's Rule 56(d) request. *Id.*

20          Here, as in *Brocade*, the parties dispute whether technology used to route text messages to

21  Plaintiff's cell phone can perform certain functions. MSJ at 3. GroupMe submitted evidence in

22  support of its MSJ showing the technologies, including those provided by Twilio and Bandwidth,

23  lack the ability to perform the requisite functions. *Id.* at 3-9. Plaintiff has failed to provide the

24  Court any evidence to the contrary.

25          Plaintiff's motion merely identifies broad categories of purportedly relevant discovery

26  requests untimely served on Twilio and Bandwidth. Mot. at 8-9. It is clear Plaintiff wants to find

27  through discovery, among other information, the types of hardware and software Twilio and

28  Bandwidth used, the coded commands deployed to route text messages to Plaintiff's cell phone,

17

1    and review Twilio and Bandwidth's source code. *Id.* Plaintiff's motion identifies these

2    categories without stating (1) whether responsive information exists,[5] or, more importantly, (2)

3    whether any facts actually support Plaintiff's claims.

4         The breadth of information Plaintiff identifies as potentially "relevant" and his failure to

5    identify specific facts, as required by Rule 56(d), demonstrate he does not know whether further

6    discovery would establish whether GroupMe used an autodialer. Mot. at 8-9. Plaintiff provides

7    the Court with nothing more than an untimely discovery plan as to where he would look in the

8    hope of finding support for his position. Under Rule 56(d), this is insufficient.

9         **D.    Plaintiff's Proposed Discovery Efforts Would Be Futile**

10        To prevail on a Rule 56(d) motion, the moving party must show that allowing discovery

11   would preclude summary judgment. *Brocade Commc'ns Sys.*, 843 F. Supp. 2d at 1027. Plaintiff

12   must demonstrate the "facts" he identifies in his motion will create a material issue of fact as to

13   whether GroupMe used an autodialer. *See id.* Plaintiff has not met this burden.

14        **1.    The Technology Used to Route Text Messages to Plaintiff's Cell Phone**

15             **Cannot Randomly or Sequentially Generate Phone Numbers**

16        As shown GroupMe's MSJ, the plain terms of the TCPA and FCC's implementing

17   regulations define "autodialer" as "equipment which has the capacity -- (A) to store or produce

18   numbers to be called, <u>using a random or sequential number generator</u> . . . ." MSJ at 10-13; 47

19   C.F.R. 64.1200(f)(2) (emphasis added). The most recent district court opinion from the Ninth

20   Circuit interpreting "autodialer," and recent district court opinions from the Third and Eleventh

21   Circuits, hold equipment is an autodialer if it has the <u>present</u> capacity to either (a) autonomously

22   generate "random sequences" of ten-digit phone numbers, or (b) autonomously generate

23   sequential sets of ten-digit phone numbers. MSJ at 11-13 (citing *Gragg v. Orange Cab Co., Inc.*,

24   2014 WL 494862, at *2 (W.D. Wash. Feb. 7, 2014), *Gragg v. Orange Cab Co., Inc.*, 2014 U.S.

---

[5] Plaintiff also must establish the facts he seeks exist and are in the possession, custody or control of Twilio and Bandwidth. *Brocade Commc'ns Sys.*, 843 F. Supp. 2d at 1026. Plaintiff fails to meet this burden. Plaintiff merely opines Twilio and Bandwidth have information describing their technologies, not that Twilio and Bandwidth have information supporting Plaintiff's opposition to GroupMe's MSJ. Mot. at 10-14. Further, Plaintiff leaps to the unwarranted inference that Bandwidth has information he wants because Bandwidth placed a called to Plaintiff's counsel upon receiving the document subpoena. *Id.*

18

1   Dist. LEXIS 29052, at *4-6 (W.D. Wash. Feb. 28, 2014), *Dominguez v. Yahoo!, Inc.*, 2014 WL

2   1096051, at *5-6 (E.D. Pa. Mar. 20, 2014), and *Hunt v. 21st Mort. Corp.*, 2013 WL 5230061, at

3   *3-4 (N.D. Ala. Sept. 17, 2013)); *De Los Santos v. Millward Brown, Inc.*, 2014 WL 2938605, at

4   *6 (S.D. Fla. June 30, 2014) (collecting cases in finding "capacity" means "present capacity").

5           Of particular importance, the *Gragg*, *Dominguez* and *Hunt* courts, in reaching their

6   conclusions, rejected arguments advanced by plaintiffs for a broader interpretation of "capacity"

7   to include "potential capacity." *Id.* Those courts reasoned "in today's world, the possibilities of

8   modification and alternation are virtually limitless." Mot. at 13 (citing, *e.g.*, *Hunt*, 2013 WL

9   5230061, at *4). Construing the term "capacity" to mean "potential capacity" could improperly

10  include within the TCPA's regulatory scheme software lacking the actual ability to randomly or

11  sequentially generate phone numbers at present, but that could be altered or reprogrammed in the

12  future as most modern computing systems and cell phones can be reprogrammed. *Id.*

13          GroupMe's MSJ shows the definition of "autodialer" adopted in *Gragg*, *Dominguez* and

14  *Hunt* is proper. MSJ at 13-14. GroupMe submitted ample evidence in support of its MSJ,

15  including declarations from Twilio and Bandwidth, showing the software applications GroupMe,

16  Twilio and Bandwidth used to route text messages to Plaintiff's cell phone cannot, and never

17  have been able to, randomly or sequentially generate phone numbers. *Id.* GroupMe's evidence

18  also shows rewriting those software applications to enable them to randomly or sequentially

19  generate numbers would constitute substantial modifications and alter the core functions of the

20  respective technologies of GroupMe, Twilio and Bandwidth. *Id.*

21          Plaintiff failed to submit any evidence disputing these facts. Plaintiff also failed to submit

22  evidence indicating he can, through discovery, dispute GroupMe's showings. Indeed, no such

23  evidence exists and any further discovery on the autodialer issue would be futile because GroupMe

24  did not use an autodialer as the TCPA defines that term. Plaintiff tries to escape this conclusion

25  and distract from his lack of evidence by disagreeing with the interpretation of "autodialer" set

26  forth in the TCPA and adopted in *Gragg*, *Dominguez* and *Hunt*.

27          Plaintiff's proposes two alternative interpretations, but they lack merit. The autodialer

28  analysis ends if equipment lacks the present capacity to randomly or sequentially generate

                                    19

1  numbers. The uncontroverted evidence shows GroupMe's technology lacks that capacity.

2  **2.      Plaintiff's Interpretations of "Autodialer" Lack Merit**

3  Plaintiff argues GroupMe may have used an autodialer because the software applications

4  used to route Plaintiff text messages could be reprogrammed to enable random or sequential

5  number generation. *See* Mot. at 8. This is the same argument for interpreting "capacity" to mean

6  "potential capacity" rejected in *Gragg, Dominguez, Hunt* and *Millward*. Plaintiff fails to cite any

7  authority supporting his definition of "capacity,"[6] and *Gragg, Dominguez, Hunt* and *Millward*

8  demonstrate his proposed definition is untenable. Mot. at 11-13 n.2 (citations omitted); *see also*

9  *Millward Brown, Inc.*, 2014 WL 2938605, at *6. Discovery into the "potential capacity" of

10  GroupMe's technology would be irrelevant under the TCPA, and, thus, futile.

11  Plaintiff, seeking an alternate definition of "autodialer" that does not require the ability to

12  randomly or sequentially generate phone numbers, also argues incorrectly GroupMe may have

13  used an autodialer if its technology constitutes a "predictive dialer." Mot. at 8. According to

14  Plaintiff, a "predictive dialer" is equipment that, without more, "dials numbers from a stored list."

15  *Id.* Plaintiff's unsupported argument that GroupMe may have used a "predictive dialer" that can

16  "dial[] numbers from a stored list" is a moot point. Plaintiff failed to allege GroupMe used any

17  such equipment in his Amended Complaint. MSJ at 16 (citing Am. Compl., ¶ 55).

18  In any event, Plaintiff's reliance on FCC rulings to advance his "predictive dialer" /

19  "autodialer" definition is misplaced. The FCC never eliminated the requirement that, to be an

20  autodialer, equipment must have the capacity to randomly or sequentially generate phone

21  numbers. To be an autodialer, even equipment that "dials numbers from a stored list" must still

22  have a random or sequential number generation functionality.

23  a.      FCC Rulings Require an Autodialer Have the Present Capacity to

24  Randomly or Sequentially Generate Phone Numbers

25  Plaintiff argues the FCC adopted an alternative definition of "autodialer" for "predictive

26  dialers" that does not include the "random or sequential number generator" requirement. Mot. at

---

[6] Plaintiff cites *Sterk v. Path, Inc.*, 2014 WL 2443785, at *3 (N.D. Ill. May 30, 2014), but *Sterk*, discussed herein, never addresses the "potential capacity" argument.

20

LOS ANGELES 1068562 (2K)

8. The FCC did no such thing.

The FCC has since 1992 included in its regulations implementing the TCPA the random or sequential number generation requirement found in the statute. *See* 47 C.F.R. 64.1200(f)(2). The FCC's regulations do not mention, and never have mentioned, an alternative "autodialer" definition that relies solely on a piece of equipment's ability to dial numbers from a list.

As recently as November 29, 2012, the FCC reiterated that, to be an autodialer, equipment must have the capacity to randomly or sequentially generate phone numbers:

> [u]nder the TCPA, the term 'automatic telephone dialing system' or 'autodialer' is defined as 'equipment which has the capacity to – (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *Id.* § 227(a)(1). The Commission has emphasized that this definition covers any equipment that <u>has</u> the specified <u>capacity to generate numbers</u> and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists. . . .

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling*, 27 FCC Rcd. 15391, 15391, ¶ 2 n.5 (Nov. 29, 2012) (emphasis added) ("2012 Ruling"). Plaintiff's proposed definition of autodialer is incompatible with the FCC's statement -- an autodialer "has the specified <u>capacity to generate numbers</u> and dial . . . regardless of whether the numbers . . . come from calling lists. . . ." *Id.* (emphasis added). The plain language of the FCC's ruling on November 29, 2012, confirms GroupMe's position -- only equipment that "has" (present tense) the "capacity to generate numbers" is an autodialer. *Id.*

Plaintiff's argument as to the type of equipment that can constitute an autodialer stems from his misreading of FCC rulings on "predictive dialers," all of which the FCC issued <u>before</u> its statement above on November 29, 2012. *See, e.g., In re Rules and Regulations Implementing the Telephone Consumer Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14091 ¶¶ 131-133 (July 3, 2003) ("2003 Report and Order"). According to the FCC, a "predictive dialer" is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *Id.*, ¶ 131. In 2003, the FCC ruled predictive dialers could constitute autodialers even though predictive dialers place calls to phone

21

1  numbers on a pre-set list, rather than having the equipment randomly or sequentially generate

2  them. *Id.*, ¶¶ 131-133. The FCC never indicated it was eliminating the statutory requirement that

3  an autodialer "us[e] a random or sequential number generator." 47 U.S.C. § 227(a) (emphasis

4  added). The FCC merely ruled a certain piece of equipment could be an autodialer without

5  actually randomly or sequentially generating numbers it dialed.

6        In any event, the FCC's predictive dialer rulings do not apply to this case. They do not

7  apply to text messaging technology on their face or by extension. As shown in GroupMe's MSJ,

8  the FCC rulings discussing predictive dialers focus on live "sales agents" making voice calls to

9  consumers. The rulings also focus on the "principal feature of predictive dialing software being a

10  timing function," wherein predictive dialers "predict" when a consumer will answer the phone so

11  a "telemarketer will be available to take the call." 2003 Report and Order, ¶ 131; *In re Rules and*

12  *Regulations Implementing the Telephone Consumer Act of 1991*, Report and Order, 27 FCC Rcd

13  1830, 1834 ¶ 12 n.31 (Feb. 15, 2012) ("2012 Report and Order"). The FCC rulings on their face

14  discuss only voice calls and circumstances unique to making voice calls. *Id.* They do not discuss

15  text messages and, as such, do not bind this Court or apply here.

16        Further, the FCC's rulings on predictive dialers should not be applied to text messages by

17  extension because the policy issues discussed by the FCC that underlie its predictive dialer rulings

18  have nothing to do with text messages. In 2002, the FCC undertook to regulate predictive dialers

19  because the FCC received an increasing number of complaints about predictive dialers initiating

20  phone calls while sales people were busy speaking with other customers and unavailable, thereby

21  resulting in some consumers answering phones and hearing "dead air" while they waited for a

22  salesperson or disconnection. *In re Rules and Regulations Implementing the Telephone Consumer*

23  *Act of 1991*, Notice of Proposed Rulemaking, 17 FCC Rcd 17459, 17465, 174569, 174575 ¶¶ 7,

24  15, 26 n.37 (Sept. 18, 2002) ("2002 NPRM"). According to the FCC, these "abandoned calls" left

25  consumers "feel[ing] harassed or aggravated." 2003 Report and Order, ¶ 147.

26        Determining consumers needed protection from "abandoned" and "dead air" calls

27  uniquely caused by predictive dialers, the FCC in 2003 ruled predictive dialers were autodialers

28  subject to the TCPA's restrictions. 2002 NPRM, ¶¶ 15, 26; 2003 Report and Order, ¶¶ 131-133.

22

1    The FCC further created a regulatory scheme within its TCPA rules for predictive dialers that

2    could only be applicable to voice calls, *i.e.*, implementing rules regulating the frequency with

3    which predictive dialers can acceptably "abandon calls," determining a call is "abandoned" if a

4    salesperson does not engage the consumer within two seconds of the consumer answering his/her

5    phone, and avoiding "dead air" by playing a prerecorded message for consumers if a salesperson is

6    unavailable to take the call.  2003 Report and Order, ¶¶ 146-158; 47 C.F.R. 64.1200(a)(7).

7        Text messages do not involve salespersons making voice calls, technology placing calls at

8    variable rates in an attempt to predict when a salesperson will be available, hang-ups or dead air.

9    The concerns prevalent with predictive dialers that caused the FCC to regulate predictive dialers

10   are <u>not</u> present with text messaging, and the FCC's predictive dialer rulings do not apply here.

11       GroupMe's uncontroverted evidence shows it lacks the capacity to randomly or

12   sequentially generate numbers and, therefore, can under no circumstances constitute an autodialer.

13   There is no point in permitting Plaintiff to conduct discovery as to whether GroupMe's technology

14   "dials numbers from a stored list."

15                              b.    *Sterk v. Path, Inc.*

16       Plaintiff's "predictive dialer" argument also relies on an out of circuit decision from the

17   Northern District of Illinois, *Sterk v. Path, Inc.*  Plaintiff's counsel, Edelson PC, represented

18   plaintiff in *Sterk*, and made the same arguments in *Sterk* regarding the definition of an autodialer

19   as Plaintiff makes here.  *Sterk*, 2014 WL 2443785, at *2-4.  The *Sterk* court agreed with the

20   Edelson firm's arguments, but, in doing so, decided that case incorrectly for three reasons: (1) the

21   court disregarded the requirement an autodialer "us[e] a random or sequential number generator;"

22   (2) it misapplied FCC rulings on predictive dialers to text messaging technology; and (3) it

23   ignored the fact that the text messages in *Sterk* were sent in direct response to human commands

24   to transmit those messages, *i.e.*, "human intervention."  *Id.*

25       First, *Sterk* held unspecified technology provided by Twilio to defendant Path and used by

26   Path in connection with text messaging activities constituted an autodialer because it "dial[ed]

27   numbers from a stored list without human intervention."  *Sterk*, 2014 WL 2443785, at *3-4.  *Sterk*

28   read the "random or sequential number generator" requirement out of the TCPA and FCC

                                      23

regulations and, instead, construed it merely as an "alternative basis" for finding equipment is an autodialer. *Id.* at *4. This interpretation of autodialer is inconsistent with the plain language of the TCPA, FCC regulations, or FCC rulings, particularly the November 29, 2012 FCC statement that an autodialer "has the specified <u>capacity to generate numbers</u> and dial . . . regardless of whether the numbers . . . come from calling lists. . . ." 2012 Ruling, ¶ 2 n.5 (emphasis added).[7]

Second, the *Sterk* court admitted it based its decision on FCC rulings discussing the ability of predictive dialers to "dial[] numbers from a stored list without human intervention." *Sterk*, 2014 WL 2443785, at *4. The *Sterk* court also acknowledged those FCC rulings may not be "controlling" in TCPA cases regarding text messaging technology, but applied those rulings, believing they were "well-reasoned and appropriate to address the well-founded concerns by the FCC as to the threats posed to public welfare and safety by certain telemarketing practices." *Id.* The "concerns by the FCC" underlying its predictive dialer rulings have nothing to do with text messages. Whether text messaging technology presents the same consumer protection policy concerns as "abandoned" and "dead air calls" caused by predictive dialers used in phone calls is best left to the FCC in the first instance. The FCC has not addressed the issue.

Finally, *Sterk* held technology in that case sent text messages without "human intervention." *Sterk*, 2014 WL 2443785, at *4. The *Sterk* opinion, however, makes no mention of the fact Path's technology could only send a text message after a cell phone user "initiated the transmission" by selecting the phone number to which the message would be sent and clicking a button to send the message via text. *Id.*; *Sterk v. Path, Inc.*, No. 13-cv-02230, Path's MSJ, Dkt. No. 75 at 3-4 (Jan. 31, 2014). The *Sterk* court did not explain how user interaction with the technology failed to constitute human intervention. *Sterk* conflicts directly with *Gragg* on this.

Importantly, as in *Gragg*, GroupMe's technology only routes text messages to users of GroupMe's free social messaging service in response to actions taken by other users. MSJ at 17-18. Plaintiff provides no evidence to the contrary. Even to the extent the FCC's predictive dialer

---

[7] *Sterk* construed the November 29, 2012 FCC statement as supporting its conclusion that "random or sequential number generation" is an "alternative basis" for finding equipment constitutes an autodialer. *Sterk's* reading conflicts directly with the plain language of the FCC's statement. *Sterk*, 2014 WL 2443785, at *3-4; 2012 Ruling, ¶ 2 n.5.

1   rulings could apply, GroupMe's need for "human intervention" to route any text messages

2   dictates that its technology is <u>not</u> an autodialer.  *Gragg*, 2014 WL 494862, at *3-4.

3        Notably, Plaintiff states he will, based on *Sterk*, "request that the Court make the inference

4   that Twilio's platform – which was previously found to constitute an ATDS (when combined with

5   equipment similar to GroupMe's) – constitutes an ATDS in this case." Mot. at 10 n.6.  *Sterk* is an

6   entirely different case, is outside the Ninth Circuit, conflicts with several other court decisions

7   including *Gragg* from this Circuit, and there is no evidence (1) technology Twilio provided Path is

8   the same technology Twilio provided GroupMe, or (2) Path's technology is similar to GroupMe's.

9   The protective order entered in *Sterk* prevented parties in that case from publicly filing certain

10  documents and discovery responses describing the technology at issue.  *See Sterk v. Path, Inc.*, No.

11  13-cv-02230, Protective Order, Dkt. No. 51 (Nov. 6, 2013).  Any request for an adverse inference

12  based on heavily redacted public briefs filed in *Sterk* would be inappropriate.

13       Moreover, Twilio was served with a document subpoena in *Sterk*, but served only

14  objections on the Edelson firm and did not produce documents.  Hazzard Decl., ¶ 10.  It is unclear

15  what information Plaintiff seeks here from Twilio that would justify an adverse inference.

16  **V.    CONCLUSION**

17       Plaintiff is not entitled to any relief, especially after failing to send meet and confer letters

18  to Twilio and Bandwidth by August 5, 2014, as his Motion said he would do.  This, in particular,

19  demonstrates Plaintiff does not need additional discovery, and he used the Twilio and Bandwidth

20  subpoenas as a pretext to seek more time. GroupMe respectfully requests the Court deny Plaintiff's

21  Rule 56(d) motion.  If the Court is inclined to grant Plaintiff relief, however, it should be limited to

22  the Twilio and Bandwidth document subpoenas.  Plaintiff purports to have no other "outstanding"

23  discovery, and made no effort to take depositions; discovery should not be reopened entirely.

24  Dated: August 11, 2014                  WHITE & CASE LLP

25                                          By:   /s/ *Bryan A. Merryman*
                                                  Bryan A. Merryman
26

27                                          Attorneys for Defendant
                                            GROUPME, INC.
28