Mark S. Eisen (SBN 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 92688
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the putative class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>GROUPME, INC., a Delaware corporation,<br><br>*Defendant.* | Case No. 4:11-cv-02584-PJH<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF RULE 56(d) MOTION FOR STAY OF BRIEFING ON OR DENIAL, WITHOUT PREJUDICE, OF GROUPME'S MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................. 1

**ARGUMENT** ........................................................................................................................... 3

**I.**   **Plaintiff Diligently Sought Discovery on the Autodialer Issue** ........................................ 4

    A.   Glauser Diligently Sought Discovery from Twilio ......................................................... 4

        i.   *The e-mails between Plaintiff's and Twilio's former counsel demonstrate Twilio's agreement to produce the requested information* .............................. 5

        ii.  *Plaintiff reasonably relied upon Twilio's agreement to produce information informally, until he discovered that Twilio had determined (without informing him) to breach it* .............................................................. 6

        iii. *GroupMe improperly directed Twilio to refuse to provide substantive responses to Plaintiff's subpoena* ..................................................................... 8

        iv.  *Glauser's subpoena to Twilio was timely* ........................................................ 10

    B.   Though Largely Irrelevant Here, Glauser Also Diligently Pursued Discovery ......... 11

**II.**  **Plaintiff Sufficiently Identified Facts that Would Preclude Summary Judgment on the ATDS Issue and his Discovery Efforts Will Not be Futile** ........................................... 13

    A.   Plaintiff has Sufficiently Identified Facts that Would Preclude Summary Judgment ................................................................................................................. 13

    B.   Plaintiff's Discovery Efforts Will Not Be Futile ......................................................... 14

**CONCLUSION** ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Celotex Corp. v. Catrett* 477 U.S. 317 (1986) ........................................................................... 3

**United States Circuit Court of Appeals Cases:**

*Martinez v. Columbia Sportswear USA Corp.*, 553 F. App'x 760 (9th Cir. 2014) ............................ 4

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ..................................... 15

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .......................................... 15 n.20

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 748 F.2d 1472 (9th Cir. 1986) ........................ 10

**United States District Court Cases:**

*ASUS Computer Int'l v. Round Rock Research, LLC*,
    No. 12-cv-02099, 2013 WL 5545276 (N.D. Cal. Oct. 8, 2013) ................................................. 3

*Bess v. Cate*, No. 07-cv-1989, 2008 WL 5100203 (E.D. Cal. Nov. 6, 2008) ..................................... 9

*Blake v. City of Sacramento*,
    No. 12-cv-2061, 2014 WL 880356 (E.D. Cal. Mar. 5, 2014) .......................................... 4, 7, 8

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 843 F. Supp. 2d 1018 (N.D. Cal. 2012) ......... 14

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
    No. 10-cv-861, 2011 WL 221415 (W.D. Wash. Jan. 20, 2011) ................................................. 4

*Cornelius v. Deluca*, No. 10-cv-027, 2011 WL 1114315 (D. Idaho Mar. 25, 2011) .......................... 10

*Daugherty v. Int'l Union*,
    No. 08-cv-00695, 2011 WL 4055722 (M.D. Tenn. Sept. 13, 2011) ........................................ 10

*Eureka Fin. Corp. v. Hartford Acc. And Indem. Co.*, 136 F.R.D. 179 (E.D. Cal. 1991) ...................... 9

*Fields v. Mobile Messengers Am., Inc.*,
    No. 12-cv-05160, 2013 WL 6774076 (N.D. Cal. Dec. 23, 2013) ............................. 14, 15 n.20

*Fox Industries, Inc. v. Gurovich*,
    No. 03-cv-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006) .................................................. 9

*Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065 (N.D. Cal. 2011) ....................................... 4

*Gallagher v. San Diego Unified Port. Dist.*,
    No. 08-cv-0886, 2014 WL 2480584 (S.D. Cal. June 3, 2014) ................................................. 8

*Hill v. Lincoln Nat'l Life Ins.*,
    No. 13-cv-00276, 2013 WL 9447515 (N.D. Cal. Aug. 28, 2013) ....................................... 8 n.11

*Hill v. U.S. Dep't of Justice*, No. 11-cv-0273, 2012 WL 5382837 (D.D.C. Nov. 2, 2012) ........... 3 n.4

*In re Cardtronics ATM Fee Notice Litig.*, 874 F. Supp. 2d 916 (S.D. Cal. 2012) ......................... 3 n.4

*Lardner v. Diversified Consultants Inc.*,
    No. 13-cv-22751, 2014 WL 1778960 (S.D. Fla. May 1, 2014) ............................................. 15

*Legg v. Voice Media Grp., Inc.*,
    No. 16-cv-62044, 2014 WL 2004383 (S.D. Fla. May 16, 2014) ........................................... 15

*Morton v. Hall*, 455 F. Supp. 2d 1066 (C.D. Cal. 2006) ....................................................................... 3

*Olney v. Job.com, Inc.*,
    No. 12-cv-01724, 2014 WL 1747674 (E.D. Cal. May 1, 2014) ................................... 15 n.21

*Price v. TransUnion LLC*, 847 F. Supp. 2d 788 (E.D. Pa. 2012) ...................................................... 9, 10

*Sterk v. Path, Inc.*, No. 13-cv-2330, 2014 WL 2443785 (N.D. Ill. May 30, 2014) ........................... 13

**Rules and Statutes:**

Fed. R. Civ. P. 56 ................................................................................................................................ 14

**Miscellaneous Authority:**

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    18 F.C.C.R. 14014 (July 3, 2003) ......................................................................................... 15

Matthew Lynley, *Group texting startup GroupMe raises $10.6M despite being a long way from revenue*, VB News (Jan. 4, 2011, 3:37 PM), http://venturebeat.com/2011/01/04/groupme-funding-seriesb/ .................................................................................................... 1 n.1

**INTRODUCTION**

Plaintiff Brian Glauser ("Plaintiff" or "Glauser") filed his Rule 56(d) Motion for Stay of Briefing on or Denial, Without Prejudice, of Defendant GroupMe Inc.'s ("GroupMe") Motion for Summary Judgment (the "Rule 56(d) Motion" or "Motion") primarily in response to former party-defendant Twilio, Inc.'s ("Twilio") refusal to produce information and documents relevant to his claims,[1] despite (i) its agreement to provide such information in exchange for its dismissal from this case, and (ii) its discovery obligations imposed by the Federal Rules. In response (and rather than address that issue directly), GroupMe simply attacks Glauser and his attorneys for their supposed lack of diligence in this matter as whole, apparently hoping to divert attention from Twilio's improper refusal to produce information to which Glauser is entitled in discovery, as well as its own role in obstructing his attempts to obtain it.

Setting aside GroupMe's *ad hominem* attacks and mischaracterizations of these proceedings,[2] the primary question now before the Court is whether Plaintiff is entitled to obtain discovery from Twilio before he responds to GroupMe's Motion for Summary Judgment. The answer is a resounding "yes." To prevail on his Motion, Glauser (as the moving party) must have established, by declaration, *inter alia*, that the information he requested from Twilio exists and

---

[1] Based on GroupMe's and Twilio's public statements and the documents produced by GroupMe in discovery, it appears there can be no dispute that Twilio was the entity directly involved with GroupMe in the transmission of unauthorized text messages to Glauser. That is, it appears Twilio alone provided GroupMe with the API through which its text messages were sent at the time Glauser received the messages, and GroupMe and third-party Bandwidth.com, Inc. ("Bandwidth") did not begin working together until several months later. (*See* Matthew Lynley, *Group texting startup GroupMe raises $10.6M despite being a long way from revenue*, VB News (Jan. 4, 2011, 3:37 PM), http://venturebeat.com/2011/01/04/groupme-funding-seriesb/; *see also* Declaration of Benjamin H. Richman ("Richman Decl.") ¶ 3, attached as Exhibit 1.) Given that GroupMe's Motion for Summary Judgment is directed only to whether it used an ATDS to send the text messages to Glauser—as it must be, given that no class has yet been certified in this case—the information requested from Bandwidth is admittedly less relevant for purposes of the instant Motion. Nevertheless, and for many of the same reasons (discussed further below), Bandwidth's refusal to produce the requested information and GroupMe's role in securing that refusal are improper and cannot stand as bases to withhold otherwise relevant and discoverable information.

[2] While Plaintiff does not believe that GroupMe's approach here is appropriate nor that many of the issues it raises in its response brief are germane to the Rule 56(d) Motion, he nevertheless feels compelled to correct several of its misstatements and mischaracterizations of the record further below.

would preclude summary judgment, and that he was diligent in attempting to obtain that information. He has done just that. Nevertheless, GroupMe argues that (i) Plaintiff was not actually diligent in pursuing discovery from GroupMe, Twilio, or Bandwidth (Twilio and Bandwidth are referred to collectively as the "Third Parties"), (ii) he failed to specify facts that he sought to discover from the Third Parties that could preclude summary judgment, and (iii) in any event, the requested discovery would be futile because the equipment GroupMe used to send the text messages did not have the capacity to randomly or sequentially generate telephone numbers and thus, doesn't meet the TCPA's definition of an automatic telephone dialing system ("ATDS"). Each of these arguments fails and is taken in turn below.

   First, Plaintiff has been diligent in attempting to obtain relevant discovery. For example, after the Court lifted the stay of this case, Glauser conferred with Twilio (through counsel and at Twilio's request) regarding Twilio's role in the alleged conduct and ultimately, secured Twilio's agreement to informally produce certain information relevant to, *inter alia*, GroupMe's anticipated Motion for Summary Judgment. When Glauser learned that Twilio had determined (without informing him) to renege on that agreement, his attorneys attempted (that same day) to convince Twilio to reconsider, and when it became apparent Twilio would not, he served a formal subpoena for the previously requested information within a matter of days (three, to be exact).[3]

   Glauser has also shown (by way of declaration) that the outstanding discovery requests to Twilio go to the heart of the functionality of the dialing equipment and software used in transmitting the text messages to him and will bear directly on whether summary judgment is appropriate on the autodialer issue. And, his discovery efforts in this regard are not futile (as GroupMe contends) because the FCC and courts in the Ninth Circuit and this District have

---

[3] GroupMe also spends a significant portion of its opposition arguing that Glauser and his counsel have been less than diligent in this case as a general matter. But as explained further below, those arguments seem aimed more at impugning Plaintiff and his counsel than making any relevant substantive point and in any event, find no basis in the record here. (*See* Sections I.A.iv. and I.B., *infra*.)

repeatedly held that dialing equipment need not have the capacity to randomly and sequentially generate telephone numbers at the time of the calls, but instead, need only have the capacity to dial numbers from a stored list to constitute an ATDS. But even if that weren't the case (it is), Plaintiff's subpoena to Twilio requests information that will shed light on the ability of the equipment at issue to randomly or sequentially generate telephone numbers as well.

For these reasons, and as explained in Glauser's opening brief and further below, the Court should defer ruling on or deny, without prejudice, GroupMe's Motion for Summary Judgment and require Twilio (and Bandwidth) to supplement their responses to his subpoenas.

## ARGUMENT

When a party has been unable to make full discovery prior to responding to a motion for summary judgment, Rule 56(d) "allows summary judgment to be denied, or the hearing on the motion to be continued" until the party has been given a full opportunity to do so.[4] *See Celotex Corp. v. Catrett* 477 U.S. 317, 326 (1986). This is especially true when the material needed was already requested through discovery, including requests to third parties. *See Morton v. Hall*, 455 F. Supp. 2d 1066, 1079 (C.D. Cal. 2006) *aff'd*, 599 F.3d 942 (9th Cir. 2010) ("A stay is especially appropriate 'where the material sought is also the subject of outstanding discovery requests"); *see also ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099, 2013 WL 5545276, at *2 (N.D. Cal. Oct. 8, 2013) ("Without addressing the merits of the motion for summary judgment, the Court finds Round Rock has adequately shown through sworn

---

[4] Here, GroupMe filed a reply in support of its Motion for Summary Judgment arguing that summary judgment should be granted because Glauser failed to timely file an opposition. (*See* Dkt. 114.) GroupMe is wrong. Plaintiff filed his Rule 56(d) Motion *in lieu of* and apart from his response to GroupMe's Motion for Summary Judgment because courts have found that the filing of a formal opposition to a motion for summary judgment "negates" the basis for allowing non-movants otherwise necessary discovery pursuant to Rule 56(d). *See Hill v. U.S. Dep't of Justice*, No. 11-cv-0273, 2012 WL 5382837, at *1 (D.D.C. Nov. 2, 2012) ("Since Rule 56(d) presupposes that a 'nonmovant' lacks sufficient facts 'to justify its opposition' to a summary judgment motion, the plaintiff's substantive opposition to the renewed summary judgment motion negates the basis for granting a continuance under Rule 56(d)."); *see also In re Cardtronics ATM Fee Notice Litig.*, 874 F. Supp. 2d 916, 927 (S.D. Cal. 2012) ("Plaintiffs must make a notice of motion under Rule 56(d) for a continuance and for leave to conduct additional discovery; they may not raise a request for relief under Rule 56(d) in an opposition brief.").

declarations that the outstanding discovery Round Rock seeks from ASUS and third parties is essential to oppose summary judgment.") (citation omitted).

Courts consider a number of factors when determining whether a party is entitled to a continuance under Rule 56(d), including, *inter alia,* whether the movant was diligent in its discovery efforts and whether the information sought exists and could preclude summary judgment. *Martinez v. Columbia Sportswear USA Corp.*, 553 F. App'x 760, 761 (9th Cir. 2014) (citations omitted). But in the end, "[c]ourts are reluctant to deny Rule 56(d) requests," *see Blake v. City of Sacramento*, No. 12-cv-2061, 2014 WL 880356 (E.D. Cal. Mar. 5, 2014), and "Rule 56[d] motions should be granted almost as a matter of course unless the moving party has not diligently pursued discovery of evidence." *See Cascade Yams, Inc. v. Knitting Fever, Inc.*, No. 10-cv-861, 2011 WL 221415 (W.D. Wash. Jan. 20, 2011); *see also Blake*, 2014 WL 880356, at *1 (finding that "[t]ypically, 'unless plaintiffs failed to exercise due diligence in conducting discovery, filed an untimely Rule 56(d) request, or failed to explain how additional facts would oppose summary judgment, the request is generally granted with liberality.'") (citing *Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011)).

### I.  Plaintiff Diligently Sought Discovery on the Autodialer Issue.

#### A.  <u>Glauser Diligently Sought Discovery from Twilio</u>.

As an initial matter, Plaintiff has diligently sought to obtain discovery from Twilio related to its involvement in the transmission of the text messages in question, including discovery related to the autodialer issue. Indeed, just weeks after the Court lifted the two-year stay of the action—and more than a month before it entered the briefing and discovery schedule on GroupMe's Motion for Summary Judgment—Plaintiff (through counsel) met and conferred with then-defendant Twilio regarding its requested dismissal from the action *in exchange for* its production of certain information related to, *inter alia*, its involvement in transmitting the text messages and the hardware and software it used to do so. (*See, e.g.,* Dkts. 105; 112-1; 113-1; 113-2.) And, when Plaintiff learned that Twilio had determined to renege on that agreement, he

moved quickly to serve it with a formal subpoena for information. (*See* Dkt. 113-2, Exhibit H at 35-37.)

> *i.* *The e-mails between Plaintiff's and Twilio's former counsel demonstrate Twilio's agreement to produce the requested information.*

Relying upon an inaccurate account of the discussions between Glauser and Twilio, GroupMe contends that no such discovery agreement ever existed. But the Court need look no further than the e-mails between counsel for Glauser and Twilio to confirm what Twilio agreed to. As Mr. Hazzard—former counsel for Twilio—points out in his declaration, on April 18th, Plaintiff's counsel sent Twilio's attorneys a list of ten specific pieces of information Plaintiff sought to obtain from Twilio *in exchange for* its dismissal from the action. (*See* Dkt. 113-1, Exhibit A at 6-7.) On April 21st, counsel for Plaintiff and Twilio conferred via telephone regarding those requests and Twilio's willingness to produce the requested information. (*See* Dkt. 113-1 ¶ 3.) And, that same day, counsel for Plaintiff followed up the conversation by e-mailing Mr. Hazzard and his colleagues thanking them for their "*agreement to work with us in good faith to gather the information we requested from Twilio last Friday* and to attempt to work through any issues that may arise along the way." (*Id.* at Exhibit B at 20 (emphasis added).) Notably absent from the record is any return-correspondence in which Mr. Hazzard or any of his colleagues corrected counsel's supposed "misunderstanding" that Twilio had agreed to informally produce the information requested.[5]

That's not surprising given that Mr. Hazzard's account of the April 21st conversation is inaccurate in several key respects. First, neither Mr. Hazzard (nor his colleague Mr. Bowser) explained with the level of detail contained in his declaration that Twilio did not maintain any of the requested information in its ordinary course of its business. (Dkt. 113-1 ¶ 3.) Instead, they

---

[5]  Mr. Hazzard attempts to divert attention from the parties' obvious agreement by pointing out that he responded to Plaintiff's counsel's April 18th e-mail outlining the information Plaintiff sought to obtain from Twilio by acknowledging that Twilio would still have discovery obligations as a third party. (Dkt. 113-1 ¶ 2.) Despite that statement, neither Mr. Hazzard nor any of his colleagues ever expressed their view that Twilio would provide the requested information *only* in response to a formal discovery request or their belief that Twilio had not agreed to provide such information informally, until now. (Richman Decl. ¶ 6.)

stated that they were unsure whether Twilio had all of the requested information in its possession and would be able to produce it, and as a result, would need additional time to confer with Twilio regarding the same. (*See* Richman Decl. ¶ 7.) For that reason, Plaintiff's counsel stated that there wasn't a need for a comprehensive discussion of each request *until Mr. Hazzard had a sufficient opportunity to confer with Twilio and confirm whether producing any of the information would be an issue.* (*See* Dkt. 113-1 ¶ 4; Richman Decl. ¶ 7.)[6] They did not, as Mr. Hazzard contends in his declaration, state simply that there was "no need to discuss [the requests.]" (*See* Dkt. 113-1 ¶ 4; Richman Decl. ¶ 7.) Finally, Glauser's attorneys did not request a commitment that Twilio work in good faith to respond to "any future discovery requests[,]" (Dkt. 113-1 ¶ 5), but rather, stated their willingness not to delay the agreed dismissal of Twilio in light of *its agreement to respond in good-faith to Plaintiff's April 18th requests*. (Richman Decl. ¶ 8.) Indeed, an agreement for Twilio to respond in good faith to future, formal discovery requests wouldn't have been necessary because it was always obligated, by virtue of the Federal Rules of Civil Procedure, to respond in good faith to such requests.

       ii.    *Plaintiff reasonably relied upon Twilio's agreement to produce information informally, until he discovered that Twilio had determined (without informing him) to breach it.*

Thereafter, Plaintiff reasonably relied upon Twilio's representations (through counsel) to endeavor in good faith to produce the information he requested and that should any issues arise with that production, to confer (again, in good faith) regarding the same. (*See* Dkt. 113-1, Exhibit B at 20 (confirming Twilio's "agreement to…attempt to work through any issues that may arise along the way.").) However, having not heard from Twilio or its counsel, on June 20th, Plaintiff's counsel reached out to Mr. Hazzard to check on the status of Twilio's anticipated production. (Dkt. 113-1, Exhibit C.)[7] When Mr. Hazzard responded only that he was no longer

---

[6] Again, Plaintiff's counsel's April 21st e-mail thanking Mr. Hazzard and his colleagues for Twilio's "agreement to work with us in good faith to gather the information we requested from Twilio last Friday *and to attempt to work through any issues that may arise along the way*" (Dkt. 113-1, Exhibit B at 20 (emphasis added)), confirms as much.

[7] GroupMe argues that waiting until June 20th to inquire as to the status of Twilio's production was not reasonable or diligent. (*See* Dkt. 113 at 8, 15.) But, in fact, it was consistent

retained as counsel for Twilio, Plaintiff's attorneys—within hours—(i) requested that Mr. Hazzard inform them where Twilio left off in its gathering of responsive documents and information before his representation concluded, and (ii) contacted Twilio's in-house counsel (as Mr. Hazzard suggested) regarding the same. (*See* Richman Decl. ¶ 10; Dkt. 113-1 at 23-25.) Likewise, within minutes of receiving a response from Twilio's in-house counsel requesting that he outline the categories of information Glauser sought to obtain, Plaintiff's counsel forwarded the requests served on April 18th.[8] (Richman Decl. ¶ 10; Dkt. 113-2, Exhibit H at 37-39.)[9] And, when it was clear that Twilio would persist in its refusals to produce the information informally (*see* Dkt. 113-2, Exhibit H at 35-37), just three days later Plaintiff served a formal subpoena to GroupMe's counsel requesting that information. (Richman Decl. ¶ 10.)

Plaintiff's persistent efforts to obtain the requested information from Twilio is exactly the sort of diligent conduct that courts rely upon in granting Rule 56(d) motions. By way of example, in *Blake v. City of Sacramento*, the plaintiff served written discovery requests that the responding party (in that case, the defendant) either objected to or failed to provide substantive responses for, making further discovery necessary before the court could rule on the defendant's motion for summary judgment. 2014 WL 880358, at *1. Despite the fact that the plaintiff had not moved to compel the requested information, the court granted its motion for relief under Rule 56(d),[10]

---

with Plaintiff's belief that Twilio had agreed to produce the information in good faith, that it agreed to identify any issues that arose along the way, and that its counsel's representations that it may take some time to confer and confirm with Twilio whether the requested information was even available for production. (Richman Decl. ¶ 7.)

[8] Here, the e-mails provided between Glauser's counsel and Twilio's in-house counsel have inaccurate timestamps for emails sent by Plaintiff's counsel, which appear to be due to a difference in time zone.

[9] Twilio's request for Plaintiff to outline the information he sought to obtain for a second time is curious given Mr. Hazzard's representation that he would confer with Twilio regarding the same. (*See* Richman Decl. ¶ 10 n.3.) But, even if Mr. Hazzard hadn't agreed to confer with Twilio (he did), the request is also inconsistent with his statement that he had confirmed with Twilio that certain of the information Plaintiff sought was not kept in the ordinary course of business. (*See* Dkt. 113-1 ¶ 3.) Indeed, if Twilio had confirmed as much, it would stand to reason that it had received and reviewed the requests already.

[10] On this point, GroupMe has now made clear that Twilio (and Bandwidth, for that matter) would not have reconsidered their refusals to produce relevant and discoverable information in response to the subpoenas, regardless of any efforts to meet and confer on the issue. Likewise, the fact that Glauser—like the plaintiff in *Blake*—has not moved to compel doesn't change that

finding that the plaintiff had adequately established that he sought certain facts, that the facts existed, and that the facts were essential to oppose summary judgment. *Id.* at *1-2.[11]

Here, Glauser was considerably more diligent in his discovery efforts. As outlined above, nearly a month before the entry of a discovery and briefing schedule on summary judgment, Plaintiff served written requests for information (albeit informal requests) on Twilio, met and conferred with Twilio (through counsel) regarding those requests, secured an agreement that Twilio would produce the requested information in exchange for dismissal, and confirmed the same in writing. And, when his counsel learned that Twilio had decided to renege on that agreement, he immediately drafted a subpoena for the production of documents and rushed its service.[12] *See also Gallagher v. San Diego Unified Port. Dist.*, No. 08-cv-0886, 2014 WL 2480584, at *2-3 (S.D. Cal. June 3, 2014) (reopening discovery after the plaintiff had more than two years to engage in discovery when the court found one particular standard appropriate over another after the discovery deadline). Accordingly, Plaintiff was diligent in his pursuit of discovery from Twilio.

        iii.    *GroupMe improperly directed Twilio to refuse to provide substantive responses to Plaintiff's subpoena.*

Additionally, Plaintiff's inability to obtain information from Twilio is based, in large part, on GroupMe's obvious direction that Twilio refuse to provide it.[13] GroupMe does not

---

or the fact that he has been otherwise diligent pursuing discovery from Twilio (and Bandwidth). In any event, Plaintiff now (by way of his Rule 56(d) Motion) seeks an Order from the Court requiring Twilio (and Bandwidth) to produce the requested information.
[11] GroupMe's reliance on *Hill v. Lincoln Nat'l Life Ins.*, No. 13-cv-00276, 2013 WL 9447515 (N.D. Cal. Aug. 28, 2013), does not lead to a different result. While the court there declined to grant a 56(d) motion when the parties stipulated to a briefing schedule, it only did so because "there had been no showing that Plaintiff attempted to, or did, conduct any discovery" when it was open. *Id.* at *2. Unlike the plaintiff in *Hill*, Glauser did attempt to obtain discovery, both from Twilio and GroupMe.
[12] Again, any delay in seeking formal discovery from Twilio was based on Plaintiff's and his counsel's reasonable reliance on Twilio's representations that it would produce the requested information informally. While their belief that those representations were made in good faith and that they did not inquire sooner as to the status of Twilio's production is regrettable, it is not (as GroupMe contends) evidence of bad faith or dilatory conduct.
[13] GroupMe's direction to Twilio is obvious inasmuch as Twilio's refusal to substantively respond to the subpoena came only after it retained GroupMe's attorneys at White & Case LLP to represent it with respect to the subpoena, and after Twilio represented that it would respond in

---

REPLY IN SUPPORT OF        8        CASE NO. 4:11-cv-02584-PJH
RULE 56(d) MOTION

dispute that it (or its attorneys) directed Twilio not to substantively respond, but instead, attempts to create a distinction between "refusing to respond" and "refusing to substantively respond" where none exists.

In particular, GroupMe relies on *Price v. TransUnion LLC*, 847 F. Supp. 2d 788 (E.D. Pa. 2012), and *Fox Industries, Inc. v. Gurovich*, No. 03-cv-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006), for the proposition that where a third-party "serve[s] *valid* objections on the basis, among other grounds, that Plaintiff's document subpoenas were timely and unenforceable[,]" any direction to do so by a party-defendant is proper. (Dkt. 113 at 15 (emphasis added).) That argument misses its mark for several reasons. First, as described below, Plaintiff's subpoena to produce documents was timely served. (*See* Section I.A.iv., *infra*.) Second, Twilio's objections—i.e., overbreadth, vagueness, ambiguity, burden, relevance and privilege—are not proper bases upon which to withhold relevant discovery inasmuch as they were not supported by the required explanation, specificity or privilege log.[14] *See Bess v. Cate*, No. 07-cv-1989, 2008 WL 5100203, at *4 (E.D. Cal. Nov. 6, 2008) ("Where, as here, the responding party provides a boilerplate or generalized objection, said objections are inadequate and tantamount to not making any objection at all."); *Eureka Fin. Corp. v. Hartford Acc. And Indem. Co.*, 136 F.R.D. 179, 182 (E.D. Cal. 1991) ("Whether a responding party states a general objection to an entire discovery document on the basis of privilege, or generally asserts a privilege objection within an individual discovery response, the resulting 'blanket objection' is decidedly improper. This should no longer be 'news' to a responding party.") (collecting cases).

Thus, the reality is that Twilio's blanket and general objections do not actually "respond" to Plaintiff's subpoena and therefore, did not comply with its discovery obligations under the

---

good faith to any formal request for discovery. On that same point, if Mr. Hazzard's account of the events leading to the subpoena are to be accepted as accurate, then its clear Twilio has stated all along that it would respond in good faith to any subpoena for information—the only thing that has changed is its representation by GroupMe's attorneys.

[14] The lack of specificity in Twilio's objections is even more apparent when they are read in conjunction with Bandwidth's objections. Indeed, the two are near carbon copies of each other and for that reason alone, clearly fail to address the particular circumstances of the requests to each third party.

Federal Rules. And, by advising Twilio to "respond" in that manner, GroupMe (and its attorneys) improperly and effectively quashed it (by raising unsupported, improper objections and failing to substantively respond). *See Price*, 847 F. Supp. 2d at 794 (imposing sanctions on counsel who advised third parties not to respond to discovery requests).

                *iv.*       *Glauser's subpoena to Twilio was timely.*

GroupMe's direction to Twilio was also improper because Plaintiff's subpoena was not, as GroupMe and Twilio contend, untimely. As an initial matter, the subpoena was served to GroupMe's counsel on June 26, 2014 (and rushed for service on June 27th), before the June 27th discovery cutoff on the autodialer issues. And, to the extent that discovery was required to be completed prior to June 27th—including responses (Dkt. 109)—it was delayed only because Twilio improperly ran out the clock on Plaintiff by reneging on its agreement to produce the requested information and choosing not to inform Glauser of its intention to do so. *See Daugherty v. Int'l Union*, No. 08-cv-00695, 2011 WL 4055722, at *2-3 (M.D. Tenn. Sept. 13, 2011) (reopening discovery when plaintiffs did not propound requests for over a year following the lifting of a stay on the action and the defendants provided "'boilerplate objections' and 'conclusory statements' that 'obfuscate[d] the response' to plaintiffs' discovery requests.") (alteration in original); *Cornelius v. Deluca*, No. 10-cv-027, 2011 WL 1114315, at *3-4 (D. Idaho Mar. 25, 2011) (reopening discovery against a defendant who asserted blanket objections and failed to produce a single responsive document); *see also VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 748 F.2d 1472, 1475 (9th Cir. 1986) ("Summary denial is especially inappropriate where the material sought is also the subject of outstanding discovery requests.").

Additionally, while Plaintiff's subpoena seeks information related to the autodialer issues raised in GroupMe's Motion for Summary Judgment, it is not limited to that issue alone. Instead, the information requested also bears on the merits of Plaintiff's *and the class's* claims[15] and is

---

[15] By way of example, information related to the equipment utilized to transmit the text messages (Twilio Nos. 6, 10-11; Bandwidth Nos. 9-10), the software used to transmit them (Twilio Nos. 12-13, 15; Bandwidth Nos. 11-12, 17), the equipment's "ability to store data" and/or telephone numbers (Twilio Nos. 10-11, 15, Bandwidth Nos. 9-10, 17), the "versions of

undoubtedly relevant to whether the action is appropriate for class certification—e.g., whether Twilio's hardware and software (when combined with GroupMe's or alone) used to send messages to the putative class constitutes an ATDS will bear directly on whether Rule 23's requisites to certification have been met and the merits of their TCPA claims.[16] Thus, because class and merits discovery remain open at this time, the subpoenas to Twilio (and Bandwidth) were timely in that respect as well.

*   *   *

In the end, Plaintiff's discovery efforts to date establish that he was not only diligent in seeking information from Twilio, but that (i) Twilio acted in bad faith by unilaterally choosing to breach its agreement to produce that information and (ii) GroupMe improperly advised Twilio to refuse to respond to Glauser's subpoena. Plaintiff should not be penalized for that conduct and therefore, his Rule 56(d) Motion should be granted and Twilio ordered to produce the requested information.

B. <u>Though Largely Irrelevant Here, Glauser Also Diligently Pursued Discovery From GroupMe</u>.

Though largely irrelevant to the issues at hand, GroupMe also attempts to paint Glauser and his attorneys as being less then diligent in pursuing discovery from it as well. Primarily, GroupMe contends:

1. **That Glauser was less than diligent because his counsel required an additional week, until May 12th, to schedule the required meet and confer on a briefing**

---

[the Third Parties'] API [that] were used to send them" (Twilio No. 13; Bandwidth No. 12), and "the process by which GroupMe's systems connect to and communicate" with Twilio, Bandwidth and other third parties (Twilio No. 17) all go directly to whether the same hardware, the same software, and the same version of software were used to transmit the text messages, as well as whether and how the text messages—on a broad scale—were all sent using GroupMe's systems. Of course, if the text messages were sent to all class members using the same equipment and process, then class certification would be appropriate.

[16] Here, while the Court ultimately set particular deadlines for discovery on the autodialer issue (see Dkt. 109), it never limited discovery on class certification. To the contrary, in lifting the stay on the action, the Court stated that "[d]iscovery is open but the parties shall concentrate on class certification and autodialer discovery first." (*See* Dkt. 93.) With class certification discovery closing on Wednesday, August 27, 2014, Plaintiff appropriately requested discovery that would bear on, *inter alia*, commonality and predominance through his requests. (*See id.*)

1  **and discovery schedule for GroupMe's Motion for Summary Judgment.** (*See* Dkt. 113-2 at
2  1-2.) But, GroupMe (not surprisingly) fails to emphasize that Glauser (through counsel) (i)
3  responded within a day to GroupMe's request to meet and confer (*see* Dkt. 113-2 at 17),[17] (ii)
4  prepared and circulated a stipulation regarding the schedule the day after the conference, on May
5  13th, (ii) outlined via e-mail (also on May 13th) each of the discovery requests served on
6  GroupMe two years earlier that he believed were relevant to the autodialer issue, (iii) reviewed
7  and responded to GroupMe's edits to the stipulation within a day of their receipt, (iv) offered to
8  provide GroupMe additional time to reply in support of the Motion so it could take a deposition
9  of any expert Plaintiff put forth in opposition, and (v) the same day as receiving GroupMe's
10 signoff, filed the stipulation. (*See* Richman Decl., Exhibit 1-A.)

11     2.    **Glauser took six days to provide edits to the draft protective order.** (Dkt. 113
12 at 7.) But, GroupMe glosses over the fact that it then took GroupMe six additional days to
13 respond to those revisions. (*See* Richman Decl., Exhibit 1-B.) And in any event, the Parties each
14 thereafter responded to their respective requests for clarification on those edits within a day, and
15 the protective order was ultimately filed and entered prior to the June 27th autodialer discovery
16 cutoff. (*Id*.)

17     3.    **Glauser hasn't sought any additional discovery from GroupMe, including**
18 **depositions.** (Dkt. 113 at 7.) But, GroupMe ignores that the basis for Glauser's Rule 56(d)
19 Motion is not that he seeks additional information from GroupMe, but rather, that Twilio and
20 GroupMe have improperly thwarted his attempts to obtain discovery from Twilio.[18]

21     \*           \*           \*

---

[17] GroupMe points out that Plaintiff's counsel requested the additional week for "personal reasons", seemingly implying that that was not an appropriate basis upon which to request the additional few days to confer. GroupMe does not, however, clarify that the reason Plaintiff's counsel was unable to confer immediately was because he was traveling to prepare for and attend the funeral of a family member. (*See* Dkt. 113-2 at 14.)

[18] The only reason Plaintiff discussed GroupMe's "rolling production" in his Rule 56(d) Motion was because it had not, until the filing of its opposition brief on August 11, 2014, confirmed that it had completed its document production. (Dkt. 113 at 7.)

Glauser's and his attorneys' efforts in these respects—and the fact that GroupMe felt compelled to mischaracterize them in its opposition—should make clear that Glauser has been more than diligent in his pursuit of discovery in this matter, including with respect to GroupMe.

**II.     Plaintiff Sufficiently Identified Facts that Would Preclude Summary Judgment on the ATDS Issue and His Discovery Efforts Will Not be Futile.**

   A.     <u>Plaintiff has Sufficiently Identified Facts that Would Preclude Summary Judgment</u>.

GroupMe next argues that Plaintiff's Rule 56(d) Motion fails because he did not sufficiently identify facts that, if obtained, would preclude summary judgment. That's not true either. Glauser specifically requested information from Twilio (and Bandwidth) that bears directly on whether the equipment used to transmit GroupMe's text messages meets the TCPA's definition of an ATDS.[19] (Dkt. 112 at 8.) By way of example, Plaintiff requested information regarding (i) the hardware and software Twilio (and Bandwidth) utilized to transmit (or "route") the text messages, (ii) whether such hardware and software could store data and how long that data was stored, (iii) the coded commands and automatic processes used to transmit the text messages, and (iv) what information GroupMe transferred to Twilio (and Bandwidth) with each request for transmission of a message. (*Id.* at 8-9.) If produced, this information will establish, *inter alia*, whether the software was coded to randomly or sequentially generate numbers, whether the systems used to send the messages reacted to an automated process or required human intervention to perform, and whether they could store telephone numbers—all of which speak to whether summary judgment would be proper. *See, e.g., Sterk*, 2014 WL 2443785, at *3-4 (recognizing that equipment can fit within the TCPA's definition of an ATDS if the numbers are dialed without human intervention from a list, by a random or sequential number generator, or by a predictive dialer).

---

[19] As explained in Section III.B, *infra*, GroupMe's interpretation of what constitutes an ATDS is incorrect—the equipment used to send the messages at issue need not have the capacity to randomly or sequentially generate telephone numbers. Instead, it is enough that its equipment had the capacity to dial numbers from a list without human intervention, by a random or sequential number generator, or by a predictive dialer. *See Sterk v. Path, Inc.*, No. 13-cv-2330, 2014 WL 2443785, at *3-4 (N.D. Ill. May 30, 2014).

GroupMe's reliance on *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 843 F. Supp. 2d 1018 (N.D. Cal. 2012) does not require a different result. In *Brocade*, the defendant moved under Rule 56(d) for additional time to review discovery for its response to the plaintiff's motion for summary judgment. *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-03428, Dkt. 307 (N.D. Cal. Nov. 8, 2011). In support of its 56(d) motion, the defendant submitted a declaration merely specifying the dates on which it received documents from the plaintiff. *Brocade*, 843 F. Supp. 2d at 1027; *see also Brocade,* Dkt. 308 (N.D. Cal. Nov. 8, 2011). The declaration did not, however, identify what information it expected to discover in the documents or whether that information bore directly on its ability to oppose the plaintiff's motion for summary judgment. *See id.* As a result, the Court denied the 56(d) motion. *Brocade*, 843 F. Supp. 2d at 1027 ("Moreover, A10 has failed to submit affidavits 'specifically identifying … relevant information' that A10 could discover that would prevent summary judgment….").

Here, unlike in *Brocade*, Glauser filed a declaration in accordance with the Federal Rules, explaining (i) the information he specifically requested from Twilio, (ii) that, if produced, the information would preclude GroupMe from prevailing at summary judgment, and (iii) why he was unable to obtain such information. *See* Fed. R. Civ. P. 56(d) (requiring a party to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition…"). Accordingly, Glauser has met his burden and his Motion should be granted.

B.   Plaintiff's Discovery Efforts Will Not Be Futile.

Finally, GroupMe argues that Plaintiff's requested discovery to Twilio (and Bandwidth) would be futile, because he cannot establish that the dialing equipment used to place the calls at issue had "the capacity…to store or produce numbers to be called, using a random or sequential number generator." (Dkt. 113 at 18) (emphasis removed.) That argument also fails.

Dialing equipment need not—as GroupMe suggests—have the capacity to randomly or sequentially generate telephone numbers to constitute an ATDS under the TCPA. *See, e.g., Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160, 2013 WL 6774076, at *3 (N.D. Cal.

Dec. 23, 2013) (recognizing that the issue is whether the equipment can "dial numbers without human intervention" not whether it can randomly or sequentially generate numbers). Rather, the FCC and courts throughout the country have repeatedly held that a dialing system need only have the capacity to automatically dial numbers from a stored list to expose a party to liability under the TCPA. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14092-93 (July 3, 2003) ("2003 FCC Order") (finding that equipment which has "the *capacity* to dial numbers without human intervention" qualifies as an ATDS and is in line with Congressional intent and recognizing that new technology will develop in the midst of an "evol[ving] teleservices industry");[20] *Lardner v. Diversified Consultants Inc.*, No. 13-cv-22751, 2014 WL 1778960, at *5 (S.D. Fla. May 1, 2014) (finding that dialing equipment "qualifies as an ATDS…because it automatically dials telephone numbers from a preprogrammed list"); *Legg v. Voice Media Grp., Inc.*, No. 16-cv-62044, 2014 WL 2004383, at *3 (S.D. Fla. May 16, 2014) (relying on the 2003 FCC Order to find that "an ATDS is defined by 'the capacity to dial numbers without human intervention,' for example by calling numbers in a stored database"). In fact, even the Ninth Circuit has held that to constitute an ATDS, equipment need only have "the *capacity* to dial numbers without human intervention." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) *cert. denied* 133 S. Ct. 2361 (2013) (finding the FCC expanded the definition of an ATDS because "the evolution of the teleservices industry has progressed to the point where using lists of numbers if far more cost effective. The basic function of such equipment, however, has not changed – the *capacity* to dial numbers without human intervention") (emphasis in original).[21]

---

[20] GroupMe's argument that the 2003 FCC Order does not apply here because the FCC considered a "predictive dialer" only as it relates to voice calls lacks merit, because it ignores that the TCPA applies with equal force to both text message calls and voice calls, *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009), and that courts have recognized predictive dialers may be used to send text messages. *See Fields*, 2013 WL 6774076, at *3.

[21] GroupMe's cited authorities are inapposite. They ignore the fact that the FCC has ruled that equipment need only have the capacity to call numbers from a stored list to be an ATDS, *see* 2003 FCC Order, 18 F.C.C.R. at 14092, and that district courts are bound by the FCC's orders under the Hobbs Act. S*ee Olney v. Job.com, Inc.*, No. 12-cv-01724, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014) ("The FCC's interpretations of the TCPA are controlling….").

# CONCLUSION

For the foregoing reasons, Plaintiff Brian Glauser respectfully requests that the Court enter an Order (i) staying briefing on or denying, without prejudice, GroupMe's Motion for Summary Judgment, (ii) requiring Twilio and Bandwidth to supplement their responses and document production to his subpoenas, and (iii) providing such other and further relief as the Court deems reasonable and just.

Respectfully Submitted,

**BRIAN GLAUSER**, individually and on behalf of all others similarly situated,

Dated:  August 18, 2014

By:  /s/ Benjamin H. Richman
One of Plaintiff's Attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Mark S. Eisen (SBN 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 92688
Tel: 213.533.4100
Fax: 213.947.4251