Mark S. Eisen (SBN 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 92688
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the putative class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of all others similarly situated,<br><br>            *Plaintiff*,<br><br>*v.*<br><br>GROUPME, INC., a Delaware corporation,<br><br>            *Defendant*. | Case No. 4:11-cv-02584-PJH<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

**PLEASE TAKE NOTICE** that Plaintiff Brian Glauser will appear, through counsel, before the Honorable Phyllis J. Hamilton, or any judge sitting in her stead, in Courtroom 3, 3rd Floor at the United States District Courthouse for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California 94612 at the hearing on his motion for class certification, which "will be set once the motion is fully briefed and reviewed by the court[.]" (Dkt. 93.) Then and there, Plaintiff will and hereby does move the Court for an Order certifying the following proposed class of individuals pursuant to Fed. R. Civ. P. 23(a) and (b)(3):

> All persons in the United States and its territories who received a GroupMe Mobile App Text prior to June 20, 2011.

Plaintiff's motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

**BRIAN GLAUSER**, individually and on behalf of all others similarly situated,

Dated: August 29, 2014

By: /s/ Benjamin H. Richman
One of Plaintiff's Attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................... 3

I.     GroupMe's Text Messaging Service ................................................................. 3

II.    Plaintiff Glauser's Experience .......................................................................... 5

III.   The Telephone Consumer Protection Act ......................................................... 6

IV.    The FCC's Order on GroupMe's Petition for Declaratory Ruling ................... 7

ARGUMENT ................................................................................................................. 8

I.     The Standards for Class Certification are Satisfied ......................................... 8

       A.     As an Initial Matter, the Proposed Class is Readily Ascertainable ........... 9

       B.     The Proposed Class Satisfies the Requirements of Rule 23(a) ................ 11

              1.     The Numerosity Requirement is Satisfied ...................................... 11

              2.     The Commonality Requirement is Satisfied ................................... 12

                     a.     Whether an ATDS Was Used to Transmit the GroupMe Mobile
                            App Texts is a Common Question ........................................... 13

                     b.     Whether the Class Members Suffered the Same Injury and Are
                            Entitled to the Same Damages is a Common Question ............ 15

                     c.     Whether GroupMe Obtained Prior Express Consent to Send the
                            GroupMe Mobile App Texts is a Common Question ............... 15

              3.     The Typicality Requirement is Satisfied ........................................ 17

              4.     The Adequacy of Representation Requirement is Satisfied ............ 19

       C.     The Proposed Class Satisfies the Requirements of Rule 23(b) ................ 20

              1.     Common Questions of Law and Fact Predominate ........................ 21

              2.     The Class Action Mechanism is the Superior Method for Adjudicating
                     this Controversy ............................................................................ 22

II.    The Court Should Appoint Glauser's Counsel as Class Counsel ................... 23

CONCLUSION ........................................................................................................... 24

**United States Supreme Court Cases**:

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 2 n.2

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011) ........................... 9, 21

*General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982) ............................................... 18

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ............................................... 6, 19

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010) .................... 9

*Wal-Mart Stores, Inc. v.* Dukes, 131 S. Ct. 2541 (2011) .......................................... *passim*

**United States Circuit Court of Appeals Cases**:

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ................................... 9

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........................................ 9

*Grant v. Capital Mgmt. Services, L.P.*, 449 F. App'x 598 (9th Cir. 2011) ........................ 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................ 17, 20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .................. 2 n.2

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ............................... 21

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) .................. 7, 16

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ................................................................... 1 n.1

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ................................................. 12

*Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014) .................................................. 9

*Rannis v. Recchia*, 380 Fed. App. 646 (9th Cir. 2010) ................................................ 11

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ........................ *passim*

*United Steel, Paper & Forestry, Rubber, Mfg. Energy Allied Indus. & Serv. Workers Int'l
    Union, AFL-CIO, CLC, v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ............... 9, 21

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ............... 21, 22

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ....................... 15

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ............................ 20

**United States District Court Cases**:

*Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ..................... 3, 7, 17

*Ashmus v. Calderon*, 935 F. Supp. 1048 (N.D. Cal. 1996) ................................................... 18

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    --- F.R.D. ----, 2014 WL 3907048 (N.D. Ill. Aug. 11, 2014) .............................. 3, 10-11, 20

*CE Design v. Beaty Const., Inc.*,
    No. 07-cv-3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ........................................ 18

*Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) ........................................... 11

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004) ....................................... 21

*Chapman v. Wagener Equities, Inc.*,
    No. 09-cv-07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ...................................... 9

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ..................... 9

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    No. 07-cv-5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ............................... 11 n.7

*Grannan v. Alliant Law Group, P.C.*,
    No. 10-cv-02803, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ................................... 19

*Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) ....................... 11

*Hester v. Vision Airlines, Inc.*,
    No. 09-cv-00117, 2009 WL 4893185 (D. Nev. Dec. 16, 2009) .................................. 19

*Holloway v. Full Spectrum Lending*,
    No. 06-cv-5975, 2007 WL 7698843 (C.D. Cal. June 26, 2007) ................................. 22

*In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012) ......................... 10

*In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011) .......................................................... 20

*In re Jiffy Lube Inter. Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) ...... 20-21

*Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D. Ill. 2013) ........................................... 16

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) ............................ 11, 15, 18

*Knutson v. Schwan's Home Serv., Inc.*
    No. 12-cv-0964, 2013 WL 3746118 (S.D. Cal. July 15, 2013) .................................. 10

*Kristensen v. Credit Payment Servs. Inc.*,
    --- F. Supp. 2d ----, 2014 WL 1256035 (D. Nev. Mar. 26, 2014) .......................... *passim*

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) ................................ *passim*

*Lo v. Oxnard European Motors, LLC*,
    No. 11-cv-1009, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) .............................. 11, 15

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ................................. 18, 22

*Meyer v. Portfolio Recovery Assocs., LLC,*
    No. 11-cv-1008, 2011 WL 11712610 (S.D. Cal. Sept. 14, 2011) ........................................ 14

*Murray v. GMAC Mortg. Corp.,* 434 F.3d 948 (7th Cir. 2006), ........................................ 22

*Pimental v. Google, Inc., et al.,* No. 11-cv-02585-YGR (N.D. Cal.) ........................................ 2 n.2

*Schwartz v. Upper Deck Co.,* 183 F.R.D. 672 (S.D. Cal. 1999) ........................................ 9

*Sherman v. YahooA Inc.,* --- F. Supp. 2d ----, 2014 WL 369384 (S.D. Cal. Feb. 3, 2014) .............. 13

*Silbaugh v. Viking Magazine Servs.,* 278 F.R.D. 389 (N.D. Ohio 2012) ........................ 16, 21, 22, 23

*Simpson v. Fireman's Fund Ins. Co.,* 231 F.R.D. 391 (N.D. Cal. 2005) ........................................ 17

*Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.,*
    679 F. Supp. 2d 894 (N.D. Ill. 2010) ........................................ 15

*Thomasson v. GC Servs. Ltd. P'ship,* 275 F.R.D. 309 (S.D. Cal. 2011) ........................................ 10

*Wolph v. Acer America Corp.,* 272 F.R.D. 477 (N.D. Cal. Mar. 25, 2011) ................................ 1 n.1

*Xiufang Situ v. Leavitt,* 240 F.R.D. 551 (N.D. Cal. 2007) ........................................ 11

*Zeisel v. Diamond Foods, Inc.,*
    No. 10-cv-01192, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ........................................ 17, 18

**Statutes & Miscellaneous**:

47 U.S.C. § 227 ........................................ 1, 7, 13, 15

*Comments of Twilio Inc. in Support of GroupMe, Inc. Petition for Declaratory Ruling,*
    CG 02-278 (Aug. 30, 2012) *available at*
    http://apps.fcc.gov/ecfs/document/view?id=7022008778 ........................................ 5

Fed. R. Civ. P. 23 ........................................ *passim*

*GroupMe, Inc.'s Petition for Expedited Declaratory Ruling and Clarification,*
    CG Docket No. CG 02-278 (Mar. 1, 2012) *available at*
    http://apps.fcc.gov/ecfs/document/view?id=7021871907 ........................................ *passim*

*In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.1 Petition for Expedited
    Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer.
    Prot. Act of 1991,* 29 F.C.C.R. 3442 (2014) ........................................ 8, 15, 16

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
    18 F.C.C.R. 14014 (July 3, 2003) ........................................ 7

*June 20, 2011 Terms of Service,* GroupMe,
    https://web.archive.org/web/20110620071334/http://groupme.com/terms ........................ 4, 16

Katherine Rosman, *Brunch Plans Made Easy on the Thumbs*: *GroupMe Offers Group Texting by Cellphone for Parents, Patients, Concertgoers and Other 'Normals'*, The Wall Street Journal (Mar. 2, 2011 12:01 A.M.), http://online.wsj.com/news/articles/SB20001424052748704506004576174 471877254608 ......................................................................................................... 12

Man. for Complex Litig. (4th ed. 2004) ......................................................................... 9

Newberg on Class Actions (5th ed.) ............................................................................... 12

Newberg on Class Actions (4th ed. 2013) .................................................................... 18

*Terms*, GroupMe, https://groupme.com/terms ........................................................ 4 n.3

**INTRODUCTION**

The claims of Plaintiff Brian Glauser ("Glauser") and each member of the proposed class

(the "Class") in this case are based upon Defendant GroupMe, Inc.'s ("GroupMe" or "Defendant")

transmission of the same text message, to each of the several hundred thousand members of the

Class, using the same automatic telephone dialing system ("ATDS"), and under circumstances that

were identical as to each and every Class member. The text message at issue introduced Class

members to GroupMe's group texting service and offered them the opportunity to download its

free mobile application:

GroupMe is a group texting service.
Standard SMS rates may apply.
Get the app at http://groupme.com/a to chat for free.
Reply #exit to quit or #help for more.

(the "GroupMe Mobile App Text"). (*See, e.g.,* Exhibit ("Ex.") 1-B at GM_0000099.)

Plaintiff Glauser is one such individual who received the GroupMe Mobile App Text after

he was added, without his knowledge or consent, to a GroupMe texting group. In response, he

brought the instant action on behalf of himself and a Class of similarly situated individuals seeking

statutory damages and injunctive relief under the Telephone Consumer Protection Act, 47 U.S.C.

§ 227 ("TCPA"). He seeks certification of a class defined as follows:

All persons in the United States and its territories who received a GroupMe
Mobile App Text prior to June 20, 2011.[1]

Class certification is appropriate here because the type, purpose, and execution of each of

the text messages was the same: they were all sent as part of the same text messaging campaign by

the same automatic telephone dialing system ("ATDS") to each of the several hundred thousand

Class members. This conduct not only results in Glauser and all proposed Class members having a

---

[1]      The class definition here has been modified from the definitions pleaded in Plaintiff's First
Amended Complaint, as the evidence collected by Glauser to date supports certification of the
redefined (and frankly narrower) Class sought through this Motion. (*See* Pl.'s Am. Compl., Dkt.
34 ¶ 45.) Altering the class definition is both common and expected in class actions, as discovery
often changes the scope of the putative class. *See, e.g.,* Fed. R. Civ. P. 23(c)(1)(C) (stating that an
order certifying a class "may be altered or amended before final judgment"); *Officers for Justice v.*
*Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 633 (9th Cir. 1982)
("before entry of a final judgment on the merits, a district court's order respecting class status is
not final or irrevocable, but rather, it is inherently tentative."); *Wolph v. Acer America Corp.,* 272
F.R.D. 477, 483 (N.D. Cal. Mar. 25, 2011) (modifying class definition in class certification order).

---

single, common claim under the TCPA, but raises several common legal and factual questions that are capable of resolution on a class-wide basis, including:

> (i) whether GroupMe utilized an automatic telephone dialing system to transmit the GroupMe Mobile App Texts;

> (ii) whether all Class members suffered the same injury and are entitled to the same relief as a result of receiving the GroupMe Mobile App Texts; and,

> (iii) whether GroupMe obtained prior express consent to send the GroupMe Mobile App Texts at issue.

These questions are not only common to all Class members, they also predominate over individualized questions, because their resolution will determine—for the entire Class—whether the elements of their TCPA claims are satisfied and whether GroupMe can invoke its affirmative defense of prior express consent.

The remaining requirements for certification under Rule 23—numerosity, typicality, adequacy of representation, and superiority—are similarly satisfied. The Class includes several hundred thousand individuals (numerosity), Glauser received the exact same text message and has the same interests as the Class members in obtaining relief for GroupMe's violations of the TCPA (typicality), and Glauser and his counsel have—and will continue to—adequately represent the Class throughout the litigation (adequacy). A class action is also the superior method of adjudicating the TCPA claims at issue here because the relatively small amount of relief for each Class member ($500 or $1,500, if trebled) is dwarfed by the high cost of individually litigating the issues presented by GroupMe's conduct. In short, the instant action provides a textbook case for certification—indeed, the growing trend of courts is to certify classes asserting such claims under the TCPA. [2] *See, e.g.*, *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013);

---

[2]      It is noteworthy that District Judge Gonzalez-Rogers certified for settlement purposes a class of individuals with nearly identical claims on nearly identical facts against Google, Inc. and one of its subsidiaries in the case of *Pimental v. Google, Inc., et al.*, No. 11-cv-02585-YGR, Dkt. 97 (N.D. Cal.). Although in that case, certification was for settlement purposes, the Ninth Circuit is clear that a proposed settlement class is nevertheless subject to the same Rule 23 analysis. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Further, it is well-established that a proposed settlement class should not be certified unless such a proposed class could also be certified on an adversarial basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (finding that the requirements for class certification "demand undiluted, even heightened, attention in the settlement context."). Thus, there is precedent in this District that stands for the proposition that certification of Glauser's claim is appropriate.

*Kristensen v. Credit Payment Servs. Inc.*, --- F. Supp. 2d ----, 2014 WL 1256035 (D. Nev. Mar. 26, 2014); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012); *Birchmeier v. Caribbean Cruise Line, Inc.*, --- F.R.D. ----, 2014 WL 3907048 (N.D. Ill. Aug. 11, 2014).

Accordingly, Plaintiff Brian Glauser respectfully requests that the Court grant the instant motion for class certification in its entirety.

## **FACTUAL BACKGROUND**

### I.    GroupMe's Text Messaging Service.

GroupMe's text messaging service serves two purposes: First, it allows users to transmit text messages to dozens of other individuals simultaneously. Second, it allows GroupMe to transmit unsolicited text messages to newly added group members (before they consent) in order to promote its texting service and related mobile application. (*See* Dkt. 107-2 ¶ 17; Ex. 1-C at GM_0000088 (████████████████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████).) During the relevant time period (i.e., August 25, 2010 through June 20, 2011) customers could use the GroupMe website or mobile application to create a "texting group" of up to twenty-five individuals, unless individuals received clearance by GroupMe to add more members. (*See* Dkt. 107-2 ¶ 14; Ex. 1-D at GM_0000328 (████████████████ █).) Each group was assigned a particular ten-digit number owned and/or operated by GroupMe's business partner and former party-defendant Twilio, Inc. ("Twilio"). (*See* Dkt. 107-2 ¶ 15); *see also GroupMe, Inc.'s Petition for Expedited Declaratory Ruling and Clarification*, CG Docket No. CG 02-278, at 5 (Mar. 1, 2012) ("GroupMe Petition") *available at* http://apps.fcc.gov/ecfs/document/view?id=7021871907.

To create a group, users had to input the names and cellular telephone numbers of each proposed group member into GroupMe's website or mobile application. (*See* Dkt. 107-2 ¶¶ 12-14; Ex. 1-E at GM_0000117-0000123.) Immediately after a consumer created a GroupMe texting group, but before the group creator or any members texted anyone in the group, each member of the group automatically received the GroupMe Mobile App Text promoting GroupMe's mobile

application and providing a link that consumers could use to download the mobile application. (Dkt. 107-2 ¶¶ 28-29.) GroupMe group creators, however, were not notified that these text messages would be sent, nor did they consent to their transmission. (*Id.* ¶ 30.) That text message, which forms the basis of Glauser's and the Class's claims here, was the same as (or substantially similar to) the following:

> GroupMe is a group texting service.
> Standard SMS rates may apply.
> Get the app at http://groupme.com/a to chat for free.
> Reply #exit to quit or #help for more.

GroupMe Petition at 7 (recognizing that once individuals are added to a GroupMe texting group, they "receive a message from GroupMe instructing them…how to download GroupMe's free application to avoid text messaging charges from their wireless carriers."); (*see also* Dkt. 107-2 ¶ 17; Ex. 1-F at GM_0000398; Ex. 1-C at GM_0000088 ███████████████████ ████████████████████████████████████████████ ██████████████████).) Once this text message was transmitted, the harm was done.

GroupMe did not seek consent to send the GroupMe Mobile App Text, nor did it require that GroupMe group creators obtain it either. In fact, although GroupMe now requires group creators, as part of their acceptance of its terms and conditions, to represent that they have obtained the consent of all individual group members to be contacted through GroupMe's service,[3] during the class period GroupMe had *no policies in place* related to the acquisition of consent. (Dkt. 107-2 ¶ 13); *see also June 20, 2011 Terms of Service*, GroupMe, https://web.archive.org/web/20110620071334/http://groupme.com/terms ("June 20, 2011 Terms")

---

[3]      *See Terms*, GroupMe, https://groupme.com/terms (last visited Aug. 23, 2014) ("Consent to add group members. GroupMe makes it easy for you to add group members to your groups so that you can exchange messages with each other. YOU REPRESENT AND WARRANT TO US THAT EACH PERSON YOU ADD TO A GROUP HAS CONSENTED TO BE ADDED TO THE GROUP AND TO RECEIVE ADMINISTRATIVE MESSAGES FROM GROUPME AND TEXT MESSAGES FROM YOU AND ANYONE ELSE IN THE GROUP. Consent to receive periodic messages from GroupMe. As part of the Service, GroupMe sometimes causes administrative messages to be sent to members of the group. For example, upon adding a new member to a group, such new members will receive a welcome message, instructions on how to stop receiving messages, and information on how to avoid certain charges by downloading the GroupMe app. GroupMe may send other administrative messages as well. BY SIGNING UP FOR THE SERVICE, YOU AGREE TO RECEIVE TEXT MESSAGES FROM GROUPME, AND YOU REPRESENT AND WARRANT THAT EACH PERSON YOU ADD TO A GROUP HAS CONSENTED TO RECEIVE TEXT MESSAGES FROM GROUPME.").

1  (last visited Aug. 29, 2014) (neither the word nor concept of "consent" appears a single time in the

2  terms).

3        Between the text messaging service's launch on August 25, 2010 and June 20, 2011,

4  GroupMe used Twilio to transmit each text message to the group members. (Dkt. 107-2 ¶¶ 15, 17;

5  *see also* Dkt. 107-3 ¶ 5; Ex. 1-G at GM_0000092-0000095;[4] Ex. 1-H at GM_0000176-0000188.)

6  The breakdown of Twilio's and GroupMe's involvement in the messaging service is

7  straightforward: GroupMe provides the messaging interface for group creators and members, (*see,*

8  *e.g.,* Dkt. 107-2 ¶¶ 10-14; Ex. 1-C at GM_0000084-0000091), collects and stores all group

9  member information (e.g., group member names and telephone numbers) in databases maintained

10 on its servers, (*see, e.g.,* Dkt. 107-3 ¶ 7; Ex. 1-I at GM_000134; Ex. 1-J at GM_0000230; Ex. 1-K

11 at GM_0000365), and automatically generates the GroupMe Mobile App Text using pre-

12 programmed language based on the group members' addition to the group. (*See, e.g.,* Dkt. 107-2 ¶

13 17; Dkt. 107-3 ¶ 3; Ex. 1-E at GM_0000117-0000123; Ex. 1-F at GM_0000398; Ex. 1-C at

14 GM_0000088 ████████████████████████████████████████.) GroupMe then sends

15 the text messages and telephone numbers to Twilio's application programming interface ("API"),

16 which transmits them to the group members' wireless carriers and onto the group members

17 themselves. (*See* Dkt. 107-2 ¶ 19; Dkt. 107-3 ¶ 5; Ex. 1-L at GM_00000228; Ex. 1-J at

18 GM_0000230; Ex. 1-M at GM_0000356-0000357; Ex. 1-N at GM_0000366); *see also Comments*

19 *of Twilio Inc. in Support of GroupMe, Inc. Petition for Declaratory Ruling*, CG 02-278 at 10-11

20 (Aug. 30, 2012) ("Twilio Comments")*, available at* http://apps.fcc.gov/ecfs/document/

21 view?id=7022008778 (recognizing that group text messaging applications, like GroupMe, "use[]

22 Twilio's API and other software code to send the SMS to the specific telephone number….").

23 **II.    Plaintiff Glauser's Experience.**

24        Plaintiff Glauser is just one of hundreds of thousands of individuals who immediately

25 received the GroupMe Mobile App Text from GroupMe after being added to a texting group. In

---

26

27 [4]      GroupMe produced its "Addendum to Standard Twilio Terms and Service," but never
   provided its original agreement with Twilio. The Addendum shows that GroupMe and Twilio
28 contracted prior to November 10, 2010, but does not specify the date they originally entered into
   their agreement. (*See* GM_0000092-0000095.)

---

particular, on or around April 23, 2011, Plaintiff was added to the GroupMe group "Poker." (*See* Dkt. 107-2 ¶¶ 30-31; Ex. 1-B at GM_0000099.) Immediately after being added, he began receiving a deluge of text messages, including the GroupMe Mobile App Text. The GroupMe Mobile App Text, like all of the other messages in the "Poker" group, was sent from the telephone number 804-742-4986, which was owned and/or operated by Twilio and provided to GroupMe for use with its texting service. (*See* Dkt. 107-2 ¶ 31; Dkt. 107-3 ¶ 5.)

Glauser never consented to receive the GroupMe Mobile App Text, never provided GroupMe or Twilio his telephone number, never gave GroupMe or Twilio permission to send him text messages utilizing an automatic telephone dialing system, and never gave the "Poker" group leader consent to receive text messages from or on behalf of GroupMe. (*See* Declaration of Brian Glauser ("Glauser Decl.") ¶ 4, attached as Ex. 2.) Not surprisingly, then, GroupMe has been unable to produce any evidence that Glauser provided his consent to receive the GroupMe Mobile App Text.

### III. The Telephone Consumer Protection Act.

Congress enacted the TCPA to protect consumers after finding that telemarketing calls had become a serious problem, posing a nuisance and invading the privacy of telephone subscribers nationwide. *See Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012) (recognizing that Congress enacted the TCPA to prevent "intrusive nuisance calls" to consumers' telephones that it determined were "invasive of privacy");[5] *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009). To combat the growing threat to privacy caused by automated telemarketing practices, the TCPA prohibits calls[6] made with equipment termed an automatic telephone dialing system ("ATDS"), which Congress defines as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B)

---

[5]     In *Mims*, the Supreme Court discussed some of Congress's findings when it enacted the TCPA, including that "unrestricted marketing can be an intrusive invasion of privacy," that "many consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes" and that "automated or prerecorded telephone calls made to private residences [] were rightly regarded by recipients as an invasion of privacy." 123 S. Ct. at 745 (internal quotations and citations omitted).

[6]     The term "call" applies with equal force to both voice calls and text message calls. *Satterfield*, 569 F.3d at 954.

to dial such numbers." 47 U.S.C. § 227(a)(1). The Federal Communications Commission ("FCC") has clarified that equipment that dials from a list of telephone numbers also constitutes an ATDS—even if it cannot randomly or sequentially generate telephone numbers—because "the basic function of such dialing equipment" is the same: "the *capacity* to dial numbers without human intervention." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) *cert. denied* 133 S. Ct. 2361 (2013) (citing *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14092 (July 3, 2003)). The TCPA grants individuals a private right of action for statutory damages of $500 per offending call or text message, which can be trebled if the violation is found to be willful, along with injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A-C).

To escape such liability, a defendant may assert the affirmative defense that individuals provided "prior express consent" to be contacted. *Grant v. Capital Mgmt. Services, L.P.,* 449 F. App'x 598, 600 n.1 (9th Cir. 2011). But, the defendant bears the burden of establishing consent, *id.*, which must be "clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955.

Though Congress attempted to stop these nuisance calls by enacting the TCPA and providing for statutory damages, they continue to be a growing problem. Given companies' widespread violations and the statute's limited damages, courts routinely certify class actions to remedy text-messaging campaigns that systematically violate the TCPA. *See, e.g., Kristensen,* 2014 WL 1256035 (certifying class that received a single text message sent by or on behalf of the defendant); *Lee*, 289 F.R.D. at 294 (finding that defendant could point to no "question of law or fact that is not suitable for disposition on a class-wide basis" and certifying class of consumers who received text messages sent to generate leads for the defendant's insurance business); *Agne*, 286 F.R.D. at 572 (certifying class "for resolving the claims of consumers who received text message advertisements [calls] sent by or at the instruction of the Defendants"). For the reasons described herein, the Court should do the same in this case.

## IV.    The FCC's Order on GroupMe's Petition for Declaratory Ruling.

On March 27, 2014, the FCC—the agency tasked with promulgating the regulations interpreting and enforcing the TCPA—entered a Declaratory Ruling in response to GroupMe's

Petition for Expedited Declaratory Ruling and Clarification, CG Docket No. 02-278. *See In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.1 Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer. Prot. Act of 1991,* 29 F.C.C.R. 3442 (2014) ("March 2014 Order"). In particular, the FCC ruled upon GroupMe's request for clarification as to whether "consent for certain calls under the TCPA may be given through intermediaries." *Id.* at *2.

In so doing, the FCC held that intermediary consent could be sufficient to avoid liability for otherwise offending calls or text messages under the TCPA, but required that consent must actually be obtained and confirmed that the caller would be held liable if it was not. *Id.* at *3-4. Specifically, the FCC held that in GroupMe's case, group creators could obtain consent from group members because (i) they "already have an established association with the called parties[,]" and (ii) at the time the Petition was submitted, group creators were "*required by GroupMe's terms of service* to have obtained prior express consent from all group members." *Id.* at *3 (emphasis added). If, however, callers like GroupMe do not meet these criteria, they may still be held liable under the TCPA. *Id.* at *4 ("We further remind GroupMe that it remains liable for TCPA violations through both Commission enforcement and the TCPA's private right of action if, in fact, group organizers do not obtain prior express consent as required by the TCPA.").

As explained further below, because (i) the Court is bound by the FCC's March 2014 Order pursuant to the Hobbs Act, 28 U.S.C. § 2342(1), (ii) during the class period, GroupMe's terms did not require that group creators obtain consent from each group member, and (iii) GroupMe has not produced any other evidence of consent, the question of whether GroupMe had prior express consent from the Class members to receive the GroupMe Mobile App Text is a common and predominant one. (*See* Sections I.B.2 and I.C.1, *infra*.)

## ARGUMENT

### I.     The Standards for Class Certification are Satisfied.

Federal Rule of Civil Procedure 23 provides that "[a] class action may be maintained if two conditions are met—the suit must satisfy the criteria set forth in subdivision (a) (*i.e.* numerosity, commonality, typicality, and adequacy of representation), and it must also fit into one

of the three categories described in subdivision (b)." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (quoting *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010)). In the instant case, Glauser seeks certification of the proposed Class under Rule 23(b)(3), which requires that common questions of law or fact predominate and that the class action mechanism is superior to other methods of adjudicating his claim. Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). In analyzing the appropriateness of class certification, courts generally limit their analyses to Rule 23's criteria and only consider the merits to the extent the two issues overlap. *See United Steel, Paper & Forestry, Rubber, Mfg. Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (recognizing that courts only consider the merits of the claims insofar as they overlap with the certification requirements); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Chapman v. Wagener Equities, Inc.*, No. 09-cv-07299, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2014) (refusing to consider the merits of the plaintiff's and class's claims in a TCPA action so as not to "put the cart before the horse[, because] [h]ow many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.") (citing *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014)) (internal quotations omitted).

A.   As an Initial Matter, the Proposed Class is Readily Ascertainable.

Prior to considering the requirements under Rules 23(a) and (b), and though not explicitly required by Rule 23, some courts have suggested that the members of the class must be "clearly ascertainable before a class action may proceed." *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 376 (N.D. Cal. 2010) (collecting cases). This implicit requirement is satisfied as long as "members can be ascertained by reference to objective criteria"—i.e., not when "membership is contingent on the prospective member's state of mind." *Lee*, 289 F.R.D. at 294 (citing *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999)). The goal of the ascertainability requirement is to ensure that class members generally "receive the best notice practicable and have an opportunity to opt out," but it does not require that the plaintiff determine the actual identities of individual class members. *See* Man. for Complex Litig. (4th ed. 2004) § 21.222; *see also*

*Knutson v. Schwan's Home Serv., Inc.* No. 12-cv-0964, 2013 WL 3746118, at *5 (S.D. Cal. July 15, 2013) ("Class certification hinges on whether the identity of the putative class members can be objectively ascertained; the ascertaining of their actual identities is not required.") (citing *Thomasson v. GC Servs. Ltd. P'ship*, 275 F.R.D. 309 (S.D. Cal. 2011)). That said, classes are regularly deemed ascertainable when the class members can be identified from a defendant's own records. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 659 (S.D. Fla. 2012).

Here, Class membership is straightforward and turns on simple, objective criteria: individuals are Class members if (i) on or before June 20, 2011 (ii) GroupMe sent them a GroupMe Mobile App Text. Thus, the Class definition is based upon GroupMe's standardized conduct and procedures, and Class membership can be determined from documents within GroupMe's possession and control. For instance, GroupMe can identify all cellular phone numbers to which it sent the GroupMe Mobile App Text through its detailed call logs, which record all outbound messages. (*See* Dkt. 107-3 ¶ 7 ("I obtained information regarding the 'Poker group'…and records of Mr. Glauser's use of GroupMe's free social text messaging service from GroupMe's servers, which, in the regular course of GroupMe's business, store and retain data regarding use of GroupMe's service by group creators and members."); *Id.* ¶ 31; Ex. 1-M at GM_0000357 ███████████████████████████████████); Ex. 1-M at GM_0000358 ████████████████████████████).) In fact, GroupMe has such detailed records of every individual to which it sent text messages, that it specifies the date and content of each text message GroupMe sent to each such individual. (*See, e.g.*, Dkt. 107-3 ¶ 31 (███████████████████████████ ████████████); Ex. 1-B at GM_0000099 (same).) Further still, GroupMe could also simply look to its ████████ database, where it stores all telephone numbers added to texting groups, and identify all Class members based on those telephone numbers. (*See* Ex. 1-J at GM_0000230); *see also Kristensen*, 2014 WL 1256035, at *6 (finding TCPA class ascertainable when data from calling lists could identify class members); *Birchmeier,* 2014 WL 3907048, at *6 (finding TCPA

class ascertainable when a list of the telephone numbers called was available to the parties).[7]

Accordingly, the ascertainability requirement is satisfied.

        B.      <u>The Proposed Class Satisfies the Requirements of Rule 23(a).</u>

            *1.*     *The Numerosity Requirement is Satisfied.*

Next, the proposed Class easily satisfies the numerosity requirement, which requires that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the class comprises forty or more members, *Rannis v. Recchia*, 380 Fed. App. 646, 651 (9th Cir. 2010), and classes that number in the thousands "clearly" satisfy the numerosity requirement. *See, e.g., Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009, 2011 WL 6300050, at *2 (S.D. Cal. Dec. 15, 2011) (finding numerosity requirement satisfied in TCPA text message spam case involving 203 class members); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-47 (W.D. Wash. 2007) (finding numerosity requirement satisfied in TCPA junk fax case involving the transmission of 3,000 unsolicited faxes); *Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989). "Plaintiffs do not need to state the exact number of potential class members" to satisfy the numerosity requirement, *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 559 (N.D. Cal. 2007), and when "the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008).

During the class period, each individual added to a GroupMe texting group received the GroupMe Mobile App Text. *See, e.g.,* GroupMe Petition at 7; (*see also* Dkt. 107-2 ¶ 17; Ex. 1-C at GM_0000088; Ex. 1-E at GM_0000117-0000123; Ex. 1-F at GM_0000398.) Though the exact

---

[7]    If that weren't enough to show the ascertainability requirement is satisfied here (it is), the Class members can also adduce their own evidence to prove their membership in the proposed Class by providing phone bills to show they received text messages from GroupMe during the class period. For example, in the notice, the Parties could identify all telephone numbers from which GroupMe sent text messages (which necessarily include the GroupMe Mobile App Text) to individuals within the texting groups. If individuals can show through their phone bills that they received text messages from those numbers (and therefore, from GroupMe), then they can establish that they are members of the proposed Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (finding TCPA class sufficiently identifiable because "[plaintiff] may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to whom the fax was sent."). Thus, the ascertainability requirement is undoubtedly satisfied.

number of proposed Class members at this time is unknown, GroupMe admits that by March 2011—several months prior to the close of the class period—it had "several hundred thousand users." *See* Katherine Rosman, *Brunch Plans Made Easy on the Thumbs*: *GroupMe Offers Group Texting by Cellphone for Parents, Patients, Concertgoers and Other 'Normals',* The Wall Street Journal (Mar. 2, 2011 12:01 A.M.), http://online.wsj.com/news/ articles/SB20001424052748704506004576174471877254608. Thus, there is no question that the numerosity requirement is satisfied here. *See* 1 Newberg on Class Actions § 3:12 (5th ed.) ("Class actions under Rule 23 have involved classes numbering in the hundreds, or thousands . . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

### 2. The Commonality Requirement is Satisfied.

The proposed Class also satisfies the commonality prerequisite, which requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This rule is "construed permissively," *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008), and may be demonstrated when the claims of all class members "depend upon a common contention"—"even a single common question will do." *Dukes*, 131 S. Ct. at 2545, 2556. The common question must be of such a nature that it is capable of class-wide resolution and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 2545. Commonality is consistently found to exist "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra*, 536 F.3d at 978 ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").

Here, Glauser has alleged a single claim for GroupMe's violations of the TCPA. From that claim rise multiple common legal and factual issues, including (i) whether the equipment used to transmit the GroupMe Mobile App Texts constitutes an ATDS, (ii) whether the Class members suffered the same injuries as a result of receiving the unauthorized GroupMe Mobile App Text and are consequently entitled to the same damages—i.e., $500 (or $1,500, if GroupMe's conduct is

found to have been willful), and (iii) whether GroupMe's terms and conditions show that it did not obtain prior express consent from Class members as a matter of law. Because each of these questions will provide answers common to all Class members, the commonality requirement is satisfied. *See Lee*, 289 F.R.D. at 294 (finding that defendants in a similar TCPA action contesting common questions of use of an ATDS and prior express consent were unable to point to any "question of law or fact that [was] not suitable for disposition on a class-wide basis.").

        a.      Whether an ATDS Was Used to Transmit the GroupMe Mobile App Texts is a Common Question.

The first common question capable of class-wide determination is whether the GroupMe Mobile App Texts were sent using an ATDS. Dialing equipment falls within the definition of an ATDS if it "has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers," *see* 47 U.S.C. § 227(a)(1); *Satterfield*, 569 F.3d at 950, if it can dial numbers from a list without human intervention, *see Sherman v. YahooA Inc.*, --- F. Supp. 2d ----, 2014 WL 369384, at *5 (S.D. Cal. Feb. 3, 2014), or if it acts as a predictive dialer. *Id.* (denying motion for reconsideration regarding, *inter alia*, the district court's finding that there was a genuine issue of material fact as to whether an ATDS was used when the equipment *may* have stored and dialed lists of telephone numbers).

Here, Glauser's and the Class's ability to establish GroupMe's use of an ATDS to send the GroupMe Mobile App Texts will rise and fall with generalized proof inasmuch as GroupMe sent all of the text messages using the same proprietary platform, which operated the same way to transmit each of the text messages. Indeed, according to GroupMe's founder, Steve Martocci, the process by which that proprietary platform operated was the same for every GroupMe group and group member, and included:

1.      A group creator registering to use the GroupMe service (either online or through its mobile application) (Dkt. 107-2 ¶ 10);

2.      The group creator's acceptance of the GroupMe terms and conditions (*id.*);

3.      The group creator inputting the names and telephone numbers of the individuals he or she wished to message through GroupMe's website or mobile application (*id.* ¶ 12);

4.      GroupMe's platform then automatically obtaining a ten-digit telephone number from third-party Twilio from which the messages would be sent (*id.* ¶ 15); and

5.      For those group members who were not operating the GroupMe mobile application, GroupMe's software automatically transmitting the GroupMe Mobile App Text to them, the content of which was automatically populated by GroupMe's software as well. (*Id.* ¶ 17.)

The documents produced by GroupMe to date confirm Mr. Martocci's testimony. That is, they show that GroupMe's platform was designed to upload and store in its database, on its servers, the telephone numbers of group members added to texting groups. (Ex. 1-E at GM_0000122; Ex. 1-J at GM_0000230.) They show that once the telephone numbers were inputted, GroupMe's system automatically determined whether an SMS message (as opposed to a prompt in the GroupMe mobile application) would be sent to a particular group member. (Ex. 1-C at GM_0000086, GM_0000088; Ex. 1-E at GM_0000117-GM_0000123; Ex. 1-O at GM_0000142-0000143.) And, they show that the system then automatically populated the content of the GroupMe Mobile App Texts, and passed the content of the messages and telephone numbers to Twilio for transmission— without human intervention. (Ex. 1-C at GM_0000088; Ex. 1-E at GM_0000117-0000123; Ex. 1-J at GM_0000230; Ex. 1-P at GM_0000165-0000169; Ex. 1-M at GM_0000356-GM_0000357; Ex. 1-N at GM_0000366; Ex. 1-F at GM_0000398; *see* Dkt. 107-4 ¶ 4); *see also* Twilio Comments at 10-11.

Accordingly, because GroupMe's dialing system collected all phone numbers, generated all content, and sent all GroupMe Mobile App Texts in the exact same way, whether the equipment constitutes an ATDS is a question that can be determined in "one stroke." *See Dukes*, 131 S. Ct. at 2545; *see also Kristensen*, 2014 WL 1256035, at *8 (finding "whether the equipment used to send the text messages is an ATDS, as defined by statute" is a "common issue that will generate common answers applicable class-wide"); *Lee*, 289 F.R.D. at 293 (finding "whether Defendants transmitted these text messages using an ATDS" to be a common question); *Meyer v. Portfolio Recovery Assocs., LLC*, No. 11-cv-1008, 2011 WL 11712610, at *3 (S.D. Cal. Sept. 14, 2011) (finding commonality satisfied when a common question was, *inter alia*, "whether the relevant capabilities of the…[dialer] constitute an ATDS.").

b.  Whether the Class Members Suffered the Same Injury and Are Entitled to the Same Damages is a Common Question.

Next, whether Glauser and the Class members all suffered the same injury entitling them to the same damages is another common question capable of determination on a class-wide basis. *See, e.g., Dukes,* 131 S. Ct. at 2551. Commonality in this regard is clear here. Indeed, each and every proposed Class member was injured in an identical manner when GroupMe sent them an unsolicited GroupMe Mobile App Text. As a result, they are each entitled to the same statutory injunctive relief and identical damages in the amount of $500 per text message (or $1,500 if GroupMe's conduct is found to have been willful). 47 U.S.C. § 227(b)(3)(A-C). Not surprisingly, courts considering the availability of statutory injunctive relief and damages in the context of TCPA claims have consistently found that individual inquiries into damages are unnecessary and class certification is appropriate. *See, e.g., Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 898-99 (N.D. Ill. 2010); *Kavu, Inc.*, 246 F.R.D. at 649 (finding that certification under both 23(b)(2) and 23(b)(3) was appropriate because the defendant acted uniformly as to all class members and "damages will be (1) nothing, if defendant prevails on its argument that its violations were 'immaterial,' (2) $500 if it does not prevail on that claim, or (3) $1,500 if the Court finds the conduct was willful."); *Lo,* 2011 WL 6300050, at *3 (finding in a TCPA action that "each of the class members is eligible to receive an identical pro-rata share of the settlement fund, suggesting that there is no need for an individualized determination of the share each class member is entitled to.") (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (indicating that "damage calculations alone cannot defeat certification.")).

c.  Whether GroupMe Obtained Prior Express Consent to Send the GroupMe Mobile App Texts is a Common Question.

In addition, whether GroupMe can show that it obtained prior express consent from Class members to receive the GroupMe Mobile App Texts is a common question.

According to GroupMe, it obtained consent to send the GroupMe Mobile App Texts from each of its group creators at the time they created their texting groups. *See* GroupMe Petition at 18-19; *see also* March 2014 Order at *1. Specifically, GroupMe requires that each group creator

agree to its terms and conditions, which now include an affirmative representation that consent to receive text messages has been obtained from all group members. (*Id.*; *see also* Dkt. 107-2 ¶ 10.) And the FCC has endorsed that as the appropriate method for obtaining so-called "intermediary consent." *See* March 2014 Order at *3.

But GroupMe's terms and conditions did not require such affirmative representations from group creators until July 2011, after the proposed class period ended. (*Compare* Ex. 1-Q at GM_0000015-GM_0000019 *with* June 20, 2011 Terms.) Thus, when Glauser and the Class received the GroupMe Mobile App Texts, GroupMe had no mechanism in place to verify that consent had been given and consequently, as a matter of law, no consent was obtained. *See* March 2014 Order at *3 ("Because group organizers already have an established association with the called parties *and are required by GroupMe's terms of service* to have obtained prior express consent from all group members, the TCPA's goals of preventing unwanted calls …as well as of protecting consumer privacy are not negatively impacted.").

GroupMe hasn't otherwise produced any evidence to show that it obtained consent from the Class either, despite Glauser requesting it in discovery. (*See* Ex. 1-R at Group Resp. Rogg. No. 4 (merely stating that it "only facilitates transmission and routing of messages to users…who GroupMe believes gave prior express consent to receive such messages by registering with GroupMe to use its service and/or by giving prior express consent through other group members."); GroupMe Resp. RTP Nos. 18-20 (citing only to terms and conditions and/or transcript of "Poker" group text messages for evidence of consent).) This uniform lack of evidence alone is enough to render the consent question common to the Class as a whole. *See, e.g., Kristensen*, 2014 WL 1256035, at *9 ("The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer") (citing *Meyer*, 707 F.3d 1036; *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 108 (N.D. Ill. 2013); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012)). Indeed, this case is no different than those where TCPA classes have been certified despite the defendant-callers' claims to have obtained consent by purchasing a list of telephone numbers from a marketer, but otherwise failing to provide any proof of the purported consent. *Id*.

For example, in *Kristensen*, the District of Nevada found unpersuasive the testimony of two marketers who claimed that each individual on the lists of telephone numbers to which the messages at issue were sent had consented. *Id.* at *9. In so doing, the court reasoned that (i) the marketers had no personal knowledge of whether consent had been obtained from the proposed class members, (ii) it appeared the marketers had no mechanisms in place to verify consent, and (iii) any purported records that had existed had apparently been destroyed. *Id.* at *9-10. Accordingly, the court held the plaintiff "ha[d] advanced a viable theory of class-wide proof of lack-of-consent[,]" and certified the proposed class. *Id.* at *9.

Here, just like in *Kristensen*, GroupMe (i) has no apparent knowledge of consent actually being obtained from Class members, (ii) had no mechanism in place during the class period to verify consent had been obtained, and (iii) can't point to any records ever existing to show that it was. Thus, regardless of the ultimate answer to the question of whether Class members consented to receive the GroupMe Mobile App Texts (they did not), that answer will be common to the Class as a whole. *See, e.g., Agne*, 286 F.R.D. at 567 (finding that when alleged consent was obtained in a uniform way, the issue of consent is common "and the validity of one of [d]efendants' consent defenses can therefore be resolved in one stroke."); *see also Kristensen*, 2014 WL 1256035, at *9 ("[C]ourts should afford greater weight to a plaintiff's theory of class-wide proof of lack-of-consent when that theory is entirely unrebutted by the precise type of evidence which could do it greatest harm—evidence of express consent.").

### 3. The Typicality Requirement is Satisfied.

Glauser also satisfies Rule 23(a)'s typicality prerequisite. To satisfy this requirement, the class representative's claims should be typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). Like commonality, the typicality requirement is satisfied if the plaintiff's claims arise from the same practice or course of conduct that gives rise to the claims of other class members. *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). Typicality, however, does not require that a class representative's claims be identical to all class members' claims, just that they are "reasonably coextensive" with them. *Zeisel v. Diamond Foods, Inc.*, No. 10-cv-01192, 2011 WL 2221113, at *7 (N.D. Cal. June 7, 2011) (citing *Hanlon v. Chrysler Corp.*, 150

F.3d 1011, 1020 (9th Cir. 1998)); *see also* 8 Newberg on Class Actions § 24.25 (4th ed. 2013) (typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members."). Notably, "a finding of commonality will ordinarily support a finding of typicality." *Ashmus v. Calderon*, 935 F. Supp. 1048 (N.D. Cal. 1996); *see General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting how the requirements of commonality and typicality "merge"). In the TCPA context, courts consistently find a plaintiff's claims are typical of the class's when the defendant's practice of sending unsolicited advertisements results in their claims being "based upon the same legal theory, *i.e.* violation of the TCPA." *CE Design v. Beaty Const., Inc.*, No. 07-cv-3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009); *see also Kavu, Inc.*, 246 F.R.D. at 648 (finding the named plaintiff's TCPA claim for receiving unsolicited faxes typical of the class); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) (finding a plaintiff's claim typical of the class's when it "ar[o]se from the same factual basis as that of the class: calls made . . . using auto-dialing equipment" and utilized the same legal theory under the TCPA).

In this case, Glauser's claims are not just "reasonably cextensive with those of absent class members," *see Zeisel*, 2011 WL 2221113, at *7, they are practically identical. First, Glauser and each Class member received the GroupMe Mobile App Text only after (i) they were added to a texting group, (ii) GroupMe collected and stored their telephone numbers, (iii) GroupMe selected pre-programmed language for the content of the GroupMe Mobile App Text, and (iv) GroupMe routed the GroupMe Mobile App Text to them through Twilio's API. (*See, e.g.,* Dkt. 107-2 ¶¶ 12-14,17, 19; Ex. 1-C at GM_0000088; Ex. 1-G at GM_0000092-0000095; Ex. 1-E at GM_0000117-0000123; Ex. 1-F at GM_0000398); *see also* GroupMe Petition at 7 (recognizing that once individuals are added to a GroupMe texting group, they "receive a message from GroupMe instructing them how to stop receiving the text messages and how to download GroupMe's free application to avoid text messaging charges from their wireless carriers.").

Additionally, the GroupMe Mobile App Texts all featured the same, or substantially the same, message: "GroupMe is a group texting service. Standard SMS rates may apply. Get the app at http://groupme.com/a to chat for free. Reply #exit to quit or #help for more." GroupMe Petition

at 7. And finally, as a result of this uniform conduct, the calls violated the privacy rights of Glauser and the proposed Class members providing them the same cause of action under which to bring their claims. *See Mims,* 132 S. Ct. at 744; *see also Satterfield*, 569 F.3d at 954; 47 U.S.C. § 227(b)(3)(A-C). Accordingly, Glauser's claim under the TCPA arises out of the same conduct, resulted in the same injury, and is based on the same legal theory as those of the Class. Nothing more is required, and the typicality requirement of Rule 23 is easily satisfied.

### *4. The Adequacy of Representation Requirement is Satisfied.*

Plaintiff and his counsel also satisfy Rule 23(a)'s final requirement: adequacy of representation. This requirement demands that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Hester v. Vision Airlines, Inc.*, No. 09-cv-00117, 2009 WL 4893185, at *2-3 (D. Nev. Dec. 16, 2009) (quoting *Dukes*, 509 F.3d at 1185.)

Both Plaintiff and his counsel are undoubtedly adequate to represent the proposed Class here. First, Glauser has the same interests as the proposed Class members, and he has no interests antagonistic to the Class. *See Grannan v. Alliant Law Group, P.C.*, No. 10-cv-02803, 2012 WL 216522, at *4 (N.D. Cal. Jan. 24, 2012) (finding no conflict of interest in TCPA class action when all class members were eligible for the same relief under a settlement). That is, he, like every other member of the Class, was sent an unsolicited GroupMe Mobile App Text upon being added to a texting group that he did not consent to receive. As a result of GroupMe's uniform unlawful conduct and the Class members' resulting identical injuries, Glauser and the Class share the same interest in obtaining the same relief for the same violation of their statutory rights and ensuring that GroupMe's conduct does not continue in the future. *See id.*

Glauser's adequacy is not hypothetical. He has and will continue to vigorously prosecute the case. In particular, he has responded to written discovery, provided various documents, engaged in ongoing conversations with his counsel regarding the alleged conduct at issue, and otherwise assisted his attorneys in their prosecution of this case. Additionally, Glauser has a full

understanding of the case and his duties as class representative, and he has committed himself to acting in the Class's best interests at all times. (Glauser Decl. ¶ 8.)

Similarly, Glauser's counsel, Edelson PC, satisfies the adequacy requirement. They have regularly engaged in major complex litigation and have extensive experience prosecuting consumer class actions generally, and TCPA violations in particular. (*See* Edelson PC Firm Resume, Ex. 1-A.) In fact, Edelson has been at the forefront of litigation related to TCPA violations and has obtained several influential opinions concerning the TCPA. (*See id.*) For example, it was co-lead counsel in the seminal case of *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d at 949, in which the Ninth Circuit expressly confirmed that the TCPA applies to text messaging, and it acted as lead counsel in *In re Jiffy Lube Inter. Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260-62 (S.D. Cal. 2012), where the court upheld the constitutionality of the TCPA. Furthermore, the Edelson firm has been appointed as class counsel in *Lee,* 289 F.R.D. 292, *Kristensen,* 2015 WL 1256035, and *Birchmeier,* 2015 WL 3907048, in which the attorneys recently obtained class certification on nearly identical issues. As a result, Glauser's counsel have a wealth of experience in prosecuting class actions of similar size and complexity, and they are more than adequate to represent the proposed Class here.

C.     The Proposed Class Satisfies the Requirements of Rule 23(b).

In addition to meeting the prerequisites of Rule 23(a), Glauser must also meet one of the three requirements of Rule 23(b) for class certification. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Glauser seeks to certify the Class under Rule 23(b)(3), which requires that (1) the questions of law and fact common to members of the Class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (citing *Hanlon,* 150 F.3d at 1022)). The same is true when class members will likely choose not to pursue an action based on the small amount of redress available. *See, e.g., Kristensen*, 2014 WL 1256035, at *10 ("The $500 statutory damage amount for each violation [of the TCPA], even if increased to $1,500 for willful violations, is

insufficient to incentivize individual actions."); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004) (stating that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

> 1. *Common Questions of Law and Fact Predominate.*

First, the predominance requirement looks to "whether the proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). When common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . there is clear justification for handling the dispute on a representative rather than an individual basis." *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 589 (9th Cir. 2012). The same is true when the plaintiff advances a generalized theory of liability in its certification motion. *See United Steel*, 593 F.3d at 808-09. The focus of the predominance requirement, though, "begins . . . with the elements of the underlying cause of action," *Erica P. John Fund, Inc.*, 131 S. Ct. at 2184, which, in this case, requires that GroupMe (i) sent the GroupMe Mobile App Texts (ii) using an ATDS. *See* 47 U.S.C. § 227(b)(1)(A)(iii). In TCPA cases like this one, courts regularly find that common questions of law and fact predominate when the plaintiff's claims focus on the defendant's text messaging campaign. *Lee*, 289 F.R.D. 292; *In re Jiffy Lube, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253; *Kristensen*, 2014 WL 1256035; *Silbaugh*, 278 F.R.D. at 393-94.

Throughout this case, Glauser has presented a single, cognizable theory of liability: GroupMe violated the TCPA when it sent the Class unsolicited GroupMe Mobile App Texts. In order to prevail on this claim, Glauser and the Class must establish (i) that GroupMe sent the text messages (which GroupMe doesn't dispute) and (ii) that the dialing equipment used to do so constitutes an ATDS (it does). In so doing, Glauser and the Class will rely upon the same evidence—namely, information related to the physical capabilities of GroupMe's (and Twilio's) dialing equipment and the source code used for their transmission of the messages. And if GroupMe chooses to pursue the affirmative defense of consent, it will nevertheless fall short for all proposed Class members, because GroupMe had no mechanism to obtain consent from

individuals added to GroupMe groups in place prior to July 2011, nor can it produce any other records of consent. *See Kristensen*, 2014 WL 1256035, at *9 ("The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer.").

In the end, there should be no question that common questions of law and fact predominate, as Glauser and the proposed Class will have to prove the same elements of their TCPA claims using the same evidence to obtain the same relief. Not surprisingly, courts throughout the country have consistently reached the same conclusion in certifying classes asserting claims for violations of the TCPA on facts similar to those alleged here. *See Kristensen*, 2014 WL 1256035, at *8-9 (finding the predominance requirement satisfied when the plaintiff alleged the defendants uniformly injured consumers through their unsolicited text messaging campaign); *Silbaugh*, 278 F.R.D. at 393-94 (finding the predominance requirement satisfied when the plaintiff alleged a generalized theory that "a single text message marketing campaign . . . was conducted in the same manner with respect to all class members."); *Malta*, 2013 WL 444619, at *4 (finding the predominance requirement satisfied when "[t]he central inquiry [was] whether Wells Fargo violated the TCPA by making calls to the class members.").

As a result, the predominance requirement is satisfied.

> 2. *The Class Action Mechanism is the Superior Method for Adjudicating this Controversy.*

Finally, the instant class action is superior to any other method available to fairly and efficiently adjudicate Glauser's and the proposed Class members' claims. The superiority requirement's purpose is judicial economy, and it ensures that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175. Class certification is warranted under this requirement where "injury is substantial in the aggregate," *Holloway v. Full Spectrum Lending*, No. 06-cv-5975, 2007 WL 7698843, at *9 (C.D. Cal. June 26, 2007) (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)), and "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin*, 617 F.3d at 1175.

Class certification is warranted here because Glauser and the proposed Class members have identical claims for GroupMe's transmission of the unauthorized GroupMe Mobile App Texts, entitling them to the same statutory relief. *See Silbaugh*, 278 F.R.D. at 390. In addition, given the limited amount of statutory damages—$500 per text message, or $1,500 if trebled—relative to the cost of litigating the claims, most individuals would be unable (or unlikely) to bring their own lawsuits.[8] Thus, a class action is the only way to provide all Class members redress for the invasions of privacy they suffered. Furthermore, it is likely the only way to stop GroupMe from continuing its practice of sending unauthorized text messages, as the financial incentive to continue sending unauthorized text messages is greater than the potential liability for the limited individual claims that may be filed.

But even if individual lawsuits were filed, the consequences would be entirely inefficient, as the parties would have to present the same arguments and provide the same evidence in each case, and courts would have to rule on the same facts and claims time and again. Class certification, on the other hand, would prevent these duplicative proceedings by resolving all the claims in one judgment and it would save time and resources of both the litigants and the courts, while also ensuring consistency in rulings.

Accordingly, a class action is the superior method for adjudicating this controversy, and the Class should be certified under Rule 23(b)(3).

## II. The Court Should Appoint Glauser's Counsel as Class Counsel.

When a court certifies a class under Rule 23, it must also appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Courts consider four factors in making this determination, including counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Here, Glauser's attorneys are undoubtedly qualified and should be appointed Class

---

[8] For example, this case has required Glauser to litigate for years, serve and respond to discovery, and engage in motion practice. To date, Glauser's counsel has expended hundreds of thousands of dollars worth of attorney and staff time prosecuting this action. (Richman Decl. ¶ 3.)

Counsel. In particular, they have diligently investigated and prosecuted this case and have devoted substantial time, energy, and resources to investigating and developing the theory of Glauser's claims and to progressing the litigation. (Richman Decl. ¶ 3.) In addition, and as described in Section I.B.4, *supra*, Glauser's counsel also have extensive experiencing prosecuting TCPA claims and have been appointed class counsel in numerous TCPA actions in state and federal courts throughout the country. (*See* Ex. 1-A (Firm Resume of Edelson PC.)) They have also committed and will continue to commit the time and other resources necessary to adequately represent the Class. (Richman Decl. ¶ 4.) As such, Glauser's counsel, Jay Edelson, Rafey S. Balabanian and Benjamin H. Richman of Edelson PC, should be appointed Class Counsel pursuant to Rule 23(g).[9]

## CONCLUSION

For the foregoing reasons, Plaintiff Brian Glauser respectfully requests that the Court enter an Order (i) granting his Motion for Class Certification in its entirety and (ii) providing such other and further relief as the Court deems reasonable and just.

Respectfully Submitted,

**BRIAN GLAUSER**, individually and on behalf of all others similarly situated,

Dated: August 29, 2014

By: /s/ Benjamin H. Richman
One of Plaintiff's Attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

---

[9] Upon certification of the proposed Class, Glauser will present a notice plan to the Court and provide an explanation of how direct notice that satisfies Due Process can be accomplished.

Mark S. Eisen (SBN 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 92688
Tel: 213.533.4100
Fax: 213.947.4251