1          Pages 1 - 16

2          UNITED STATES DISTRICT COURT

3          NORTHERN DISTRICT OF CALIFORNIA

4          BEFORE THE HONORABLE PHYLLIS J. HAMILTON

5    BRIAN GLAUSER, individually and on )
     behalf of a class of similarly    )
6    situated individuals,             )
                                       )
7         Plaintiffs,                  )   NO. 4:11-cv-02584-PJH
                                       )
8         v.                           )
                                       )   Oakland, California
9    TWILIO, INC., a Delaware          )   Wednesday
     Corporation; and GROUPME, INC.,   )   September 3, 2014
10   a Delaware corporation.           )   9:00 A.M.
                                       )
11        Defendants.                  )
     _____)

12

13              TRANSCRIPT OF PROCEEDINGS

14

15   APPEARANCES:

16   For Plaintiff:

17              EDELSON PC
                350 North LaSalle Street
18              Suite 1300
                Chicago, Illinois 98101
19       BY:   BENJAMIN H. RICHMAN, ESQ.

20

21   For Defendant GroupMe:

22              WHITE & CASE LLP
                633 West Fifth Street
23              Suite 1900
                Los Angeles, California 90071-2007
     BY:   BRYAN A. MERRYMAN, ESQ.

24

25   Reported By:  Kelly Lee Polvi, CA CSR No. 6389, RMR, FCRR

SEPTEMBER 3, 2014                                    9:02 A.M.

## P R O C E E D I N G S

**THE CLERK:**  Calling cv case No. 11-2584, Glauser versus Twilio, et al.

Appearances?

**MR. RICHMAN:**  Good morning, Your Honor, Ben Richman on behalf of the plaintiff.

**THE COURT:**  Good morning.

**MR. MERRYMAN:**  Good morning, Your Honor, Bryan Merryman from White & Case on behalf of defendant GroupMe.

**THE COURT:**  All right.  Good morning.

All right, I've read the papers.  Did you want to say anything else this morning?

**MR. RICHMAN:**  No, Your Honor, unless Your Honor has questions, which we're obviously happy to answer.

**THE COURT:**  Well, I guess my only question is why you didn't take further steps with regard to the discovery sought from Twilio, which is now a third party, since that defendant has been dismissed, why you didn't take steps such as meeting and conferring, filing a motion to compel, et cetera, and now the time for opposing the motion has passed.

**MR. RICHMAN:**  Sure.  Certainly, Your Honor.

So with respect to the meet and confer process, frankly, we originally considered whether we would just oppose the

motion with respect to the ATDS issue without additional
information.  That was based on the fact that in another case,
which I believe GroupMe and Twilio brought up, that we're
prosecuting in the Northern District of Illinois, *Sterk v.
Redbox*, we had had summary judgment denied on the ATDS issue
where Twilio was the API provider and they had similarly not
provided any information in response to a subpoena.

That said, as the time moved on and we got closer to
responding, it was pretty clear that the defendant in that case
was going to seek leave to appeal, which has now been granted,
and that's moving up to the Seventh Circuit.

We thought it's better to come before Your Honor, put the
issue before Your Honor, see whether we could get the
additional information.  If we can get it, then great, we'll be
able to present that to Your Honor rather than find out later
we should have had that information and used it in our
Opposition.

But I'll say, Your Honor, to begin with, the idea that we
haven't been diligent in pursuing that information at all just
doesn't ring true on our end.  The whole purpose of dismissing
Twilio was to get the information from them.

I think the emails are clear, our discussions were clear
with them that we would be getting the information in exchange
for the dismissal.

Now, it was just as surprising to me as anybody else

1    that --

2        THE COURT:  That's not entirely clear, what information

3    you were going to be getting in exchange for the dismissal,

4    given that there was some dispute and there were objections

5    with regards to that list of 10 items.

6        MR. RICHMAN:  Sure.  Well, Your Honor, I'm happy to speak

7    more about those conversations; I attempted to lay it out

8    clearly in my Declaration.

9        But the way the conversation went, was I first sent the

10    list of 10 items, counsel -- then-counsel for Twilio reviewed

11    that, we had a telephone conference as amongst the attorneys.

12    The way the conversation went was, "We're not sure we have all

13    of this information but we will go back to the client, we'll

14    figure out what is available, and we'll let you know if there's

15    any issues."

16        Certainly --

17        THE COURT:  Did you believe that you needed this

18    information to oppose the Motion for Summary Judgment which was

19    filed on April the 28th?

20        MR. RICHMAN:  Yes.

21        THE COURT:  I mean, there's this delay of two months.

22    There's 60 days, essentially, between the filing of the Motion

23    by GroupMe and your service of the Subpoena on Twilio on the

24    day before the deadline.

25        MR. RICHMAN:  Right.

1    **THE COURT:**  The discovery cutoff date.

2    **MR. RICHMAN:**  Certainly.  And --

3    **THE COURT:**  Didn't you realize before the day before that

4    you weren't getting the information that you believed you were

5    entitled to?

6    **MR. RICHMAN:**  Right.  So I guess, Your Honor -- I'm sorry

7    to talk over you.  What I would say to that is when we have an

8    agreement in place through counsel for information to be

9    exchanged, I've never once had this issue arise.

10    We've certainly done -- had other cases in this district

11    and elsewhere where there's formal settlement agreements where,

12    in exchange for release, information is exchanged.  Certainly

13    there's dismissals in exchange for information.  That happens.

14    This information is valuable to this case, to our

15    client's claims, and to the class's claims.

16    So when we have an agreement like that in place, it's

17    confirmed by email, we have counsel's representations that

18    they're working on getting the information, you know, it's

19    difficult for me to assume that they're not going to follow

20    through on that.

21    Now, I guess we could have checked in earlier with them,

22    but --

23    **THE COURT:**  At some point you made that decision because

24    you issued a subpoena, rather than relying upon representations

25    of counsel.

1      MR. RICHMAN:  Right.  And when that occurred was when I

2  personally checked in with now former counsel for Twilio.  I

3  was told that we should speak directly to corporate counsel.

4  So I emailed corporate counsel that day, they asked for the

5  specific 10 requests.

6      That was my first red flag, was why are they now asking

7  for these requests if they've been working on this for several

8  months?

9      The next day I get an email back saying, "We never agreed

10  to give you any of this information; all we agreed to do was

11  respond in good faith to formal discovery requests."

12      Now, that's completely contrary to the agreement we had

13  in place, and it also doesn't make much sense because they

14  would be required to respond in good faith to formal discovery

15  requests no matter what.  So why we would have agreed to that

16  in exchange for a dismissal doesn't make a whole lot of sense.

17      THE COURT:  Where do you stand now?  You've issued the

18  Subpoena and you've received objections; correct?

19      MR. RICHMAN:  Exactly.

20      THE COURT:  Have the objections been resolved?  Have you

21  met and conferred over them?

22      MR. RICHMAN:  We have not.  And I think now it's -- as I

23  said, Your Honor, we considered whether we should just oppose

24  the motion and move forward.  And in light of *Sterk* and the

25  ruling we had then -- now that's up on appeal -- we thought

1   that was likely at the time.

2        And as I think has been made clear by Twilio and GroupMe

3   in the papers, they have no interest in producing any of this,

4   this information.

5        I understand that the error is that we've been less than

6   diligent in this case, but that couldn't be further from the

7   truth, Your Honor.  I think it's clear that they ran out the

8   clock on us -- purposely, it looks like, required us to serve a

9   formal Subpoena, which we did, and then said, "You know what?

10  We're not going to respond to that anyway, so thanks for

11  trying."

12       And as far as diligence otherwise, we've gotten new

13  discovery from GroupMe.  We filed our motion for class

14  certification -- albeit two days late, but -- because I had the

15  second death in two months in my family and counsel was kind

16  enough to give us a short extension for that and the Court

17  granted it.

18       But otherwise, we're moving forward with this case,

19  Judge.  It's not like we've been sitting on our hands, we're

20  not interested in pushing it forward.  It's not fully briefed,

21  but we've briefed the motion for class certification.

22       **THE COURT**:  Why is the information that you're seeking

23  from Twilio necessary for you to oppose this motion?

24       **MR. RICHMAN**:  Certainly.  So information like the types

25  of servers and software that Twilio was using, for example, if

we just had the make and model of the servers that were used
where GroupMe passed the text messages and phone numbers to be
dialed along to Twilio, what service those hit and then were
sent on to the wireless carriers, it would tell us what
capabilities those systems had, for example, which could speak
to whether they would fall under the definition of an ATDS.

I guess ultimately the question is whether the Court
thinks any of this information is relevant to responding to
that, but we certainly do --

THE COURT: Well, no motion to compel has been presented
to me, so I have yet to form an opinion as to whether or not
what you're seeking is necessary or not. And in your papers
you didn't really do a terribly good job of explaining why each
of the items that you're seeking is necessary for you to oppose
the motion.

I understand the big picture, that you don't believe
you've gotten the discovery from Twilio, which is now a third
party. I understand that. But you have not done what is
necessary to obtain the individual items -- as yet -- without
any meet and confer or motion to compel.

I don't know exactly where you stand today with regard to
that request or what it is exactly you're asking from the
Court. Some open-ended extension, so that you can do what --
what would be your next step, if I were to grant your request?

MR. RICHMAN: Certainly. My next step, Your Honor, I

would recommend that the parties meet and confer, either after

the hearing, later -- or tomorrow, Friday, in the next couple

of days, determine what information is available, and setting

aside this idea that the subpoena was untimely, despite that

the clock was run out on us, figure out what information is

available and decide how quickly Twilio can produce it or if

they're going to produce it at all.  And then I would say that

within two weeks of getting that information we'd have a formal

Opposition on file, Your Honor.

I'm not looking for a ton of time, but I'm looking for

the information that Twilio agreed to provide us and then

suddenly changed its mind about at the 11th hour.

**THE COURT:**  Okay.

You have a response?

**MR. MERRYMAN:**  Yes, Your Honor.

First of all, Your Honor, the Court's first question was

why no meet and confer, why no motion to compel.  It's exactly

the right question the Court should be asking because in

*Cartronix* the failure to move to compel was, by itself, a lack

of diligence in pursuit of a 56(d) motion.

And plaintiff recognizes that.  That's why, in their

56(d) motion, on page 3 and footnote 2, the plaintiff said:  In

conjunction with the instant motion, Glauser intends to serve a

written request for Twilio and Bandwith [sic] to supplement

their subpoena responses no later than Tuesday, August 5.  In

the event they refuse, Glauser intends to file a motion seeking an order compelling them to do so no later than August 12.

That's almost a month ago and there has been no contact, no effort, nothing whatsoever.

So here we are in September in a situation where the Court staggered briefing on the motion for summary judgment on the auto dialer issue so that we could brief that in full prior to filing the motion for class certification, and the Court, if it chose, would set a hearing date and hear it first.

And so there is substantial prejudice to the defendant if the plaintiff is allowed to delay that through his own lack of diligence.

Here, given recent rulings around the country on the auto dialer issue, this case is ripe for an auto dialer summary judgment motion.

The other issue that the Court asked about is also directly on point because the Court's right, the Declaration submitted by Mr. Richman in support of the motion is very vague in what it is they are looking for, what they -- and it can't be what they hope to find; they have to give some evidence to the Court that what they're looking for exists and then how they would get it.

In paragraphs 14 on in the Richmond Declaration, which is Document 112-1, Mr. Richman simply says that the subpoenaes bear directly on whether the hardware and software utilized to

send the text messages at issue constitutes an ATDS -- or auto
dialer, and then says, in paragraph 15:  By way of example,
information related to Twilio's and Bandwidth's source code
would establish whether their systems reacted to an automated
process, et cetera.

     That's not the kind of specific facts that the moving
party needs to come forward with on a Rule 56(d) motion in
order to have it granted.  And, in fact, if the Court looks at
the Hazzard Declaration -- Mike Hazzard is the attorney that's
been referred to here that purportedly made the agreement with
counsel for plaintiff regarding the dismissal.

     And first of all, let me say, in response to counsel's
comment that the purpose of the dismissal was to get the
information, no, the purpose of the dismissal was to dismiss a
party that never should have been sued, and plaintiff realized,
given evolving case law, certainly there was no case against
Twilio whatsoever here.  That's why Twilio was dismissed.  And
if the Court reads the email correspondence, that's abundantly
clear from the emails going back and forth.

     The Hazzard Declaration, Your Honor, is on point on the
issue of whether there's anything that Twilio has that would be
helpful in this case.

     And first, as plaintiff's counsel acknowledged in the
*Sterk v. Path* case, where the same plaintiff's firm in a
similar type of lawsuit served a Subpoena on Twilio, Twilio did

1   not produce documents on the basis that they weren't relevant

2   to that case, and the plaintiff didn't -- ended up obtaining no

3   documents.

4        And paragraph 3 of the Hazzard Declaration is on point

5   and explains why Twilio produced no documents in the Northern

6   District of Illinois case and would not be producing anything

7   here.

8        Mr. Hazzard says that during their April 18th call --

9   which is one of the calls where they were -- Twilio was asking

10  to be dismissed from the case, he says:  Regarding the first

11  category -- this is when he says in his Declaration he tried to

12  discuss the 10 categories of documents with counsel for

13  plaintiff, but counsel for plaintiff, after the first category

14  discussion, wasn't interested.

15       Mr. Hazzard says, "Regarding the first category, I told

16  Mr. Richman and Mr. Balabanian the information sought in their

17  April 18 email was irrelevant to the issues presented in this

18  case" -- that's the GroupMe case -- "because any equipment that

19  Twilio may utilize simply facilitates a transmission path but

20  plays no part in generating, storing or influencing the

21  telephone numbers called through any application or program

22  that incorporates Twilio's application programming interface.

23  Thus, Twilio acts as an intermediate conduit between the person

24  or entity sending a message and the downstream

25  telecommunications carriers that ultimately deliver the message

to the sender's intended recipient."

There's nothing Twilio has that's relevant to this case. It's just an inter- -- or relevant to the auto dialer issue. It's an intermediary. And that's not -- its role in the transmission isn't relevant to the auto dialer question, which is, I'm sure, why plaintiffs in the *Sterk v. Path* case never filed a Motion to Compel and sought documents and why they haven't done it here either.

**THE COURT:** Okay. All right. All right. There are a couple of competing interests here. If I'm going to decide a summary judgment motion on the auto dialer issue, which would be dispositive of the case, I want as full a record as possible.

Your 56(d) showing is inadequate. Nonetheless, given that you received no discovery from Twilio, I would be -- notwithstanding the fact that your showing is inadequate, I would be inclined to extend some additional time for you to get the information that is pertinent.

I can't tell, from the papers that are before me, whether or not that list of 10 reflects items that are necessary for the opposition of this motion.

So what I will require at this time is that you meet and confer --

As I understand it, Twilio is now represented by your firm, Mr. Merryman?

1        MR. MERRYMAN:  Yes, Your Honor.

2        THE COURT:  Okay.  So what I'll require is a meet and

3    confer on that list of 10 items.  You may not expand it at this

4    time -- that's what you're going to be held to, and you-all

5    determine what is pertinent to the auto dialer issue.  That's

6    the only issue that I'm looking at in this early summary

7    judgment motion.

8        After you've met and conferred, if you cannot resolve the

9    question then you're going to have to file a Motion to

10   Compel --

11       MR. RICHMAN:  Yes, Your Honor.

12       THE COURT:  -- and specify exactly what is relevant to

13   the limited issue that's before the Court.

14       With regard to the matters you're seeking from Bandwidth,

15   those all go to class certification.  If, indeed, this case

16   survives this motion, we'll take it up later.

17       So I'm limiting it -- your further pursuit of discovery,

18   solely to those items that are listed on that list of 10, and

19   solely with respect to Twilio.

20       You can file a Motion to Compel.  I'd like you to

21   complete this all within a week.  And you can do -- what I'd

22   prefer is some sort of abbreviated motion.  I just want a short

23   motion; no more than 10 pages.  And you can file that, after

24   you've met and conferred and gone over these items, within a

25   week of today.

1    You have a week to respond, and then I'll decide, on the

2    papers, no further hearing, which items you get.

3    I'll order them produced within a reasonable period of

4    time, somewhere between two and four weeks, and then you'll

5    have two weeks thereafter to submit your Opposition.

6    So the motion is granted in part, denied in part.

7    Now, with regard to the second consideration, that is,

8    the timing of this motion and class certification, counsel is

9    correct.  I wanted to hear the auto dialer question because it

10   is potentially case-dispositive before class certification.

11   So as I understand it, you have filed your Motion for

12   Class Certification.

13   Your Opposition is not due yet.

14   **MR. RICHMAN:**  60 days, I believe, Your Honor.

15   **THE COURT:**  60 days, okay.  Well, we'll readjust the

16   schedule to account for this additional discovery.

17   I will still hear the summary judgment motion first

18   before the class cert motion.  You-all submit a stipulation as

19   to the filing as soon as we figure out, next week, what items

20   are going to be contested in a discovery motion and which items

21   are not going to be contested; then you can figure out how much

22   time to add on to the opposition -- to the schedule for

23   completing the briefing on the class cert motion.

24   All right?

25   **MR. MERRYMAN:**  Yes, Your Honor.

1          MR. RICHMAN:  Yes, Your Honor.  Thank you.

2     THE COURT:  Okay.

3     MR. MERRYMAN:  Thank you, Your Honor.

4     THE COURT:  You're welcome.

5     (Proceedings adjourned.)

## CERTIFICATE OF CONTRACT REPORTER

I, Kelly Lee Polvi, CSR, RMR, FCRR, certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 4th day of September, 2014.

_____
Kelly Lee Polvi
CA CSR No. 6389
Registered Merit Reporter
Federal Certified Realtime Reporter