1  Mark S. Eisen (SBN 289009)
   meisen@edelson.com
2  EDELSON PC
   555 West Fifth Street, 31st Floor
3  Los Angeles, California 92688
   Tel: 213.533.4100
4  Fax: 213.947.4251

5  Jay Edelson (Admitted *Pro Hac Vice*)
   jedelson@edelson.com
6  Rafey S. Balabanian (Admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
7  Benjamin H. Richman (Admitted *Pro Hac Vice*)
   brichman@edelson.com
8  Christopher L. Dore (Admitted *Pro Hac Vice*)
   cdore@edelson.com
9  EDELSON PC
   350 North LaSalle Street, Suite 1300
10 Chicago, Illinois 60654
   Tel: 312.589.6370
11 Fax: 312.589.6378

12
13 *Attorneys for Plaintiff and the putative class*

14            **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

16                    **OAKLAND DIVISION**

17 | BRIAN GLAUSER, individually and on behalf of all others similarly situated, | Case No. 4:11-cv-02584-PJH
18 |                                                                              | **PLAINTIFF GLAUSER'S OPPOSITION**
19 |                                       *Plaintiff*,                          | **TO GROUPME'S MOTION FOR**
                                                                                   **SUMMARY JUDGMENT ON**
20 | *v*.                                                                        | **PLAINTIFF'S INDIVIDUAL CLAIMS**

21 | GROUPME, INC., a Delaware corporation,

22 |                                       *Defendant*.

23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ..............................................................................................................2

I.      GroupMe's Text Messaging Service .................................................................2

II.     GroupMe's Software Automatically Dials Numbers Stored on Lists Without
        Human Intervention ...........................................................................................3

III.    Plaintiff Glauser's Experience ..........................................................................4

IV.     The Telephone Consumer Protection Act ..........................................................5

ARGUMENT ....................................................................................................................6

I.      Legal Standard ...................................................................................................6

II.     GroupMe's Equipment Constitutes an ATDS Under the TCPA .......................6

        A.      *The FCC Has Repeatedly Held that Dialing Equipment Constitutes an ATDS
                if it Automatically Dials Numbers From a Stored List* .............................7

        B.      *This Court is Bound by FCC Rulings* ........................................................8

        C.      *Case Law Supports the FCC's Interpretation of ATDS* ...........................10

        D.      *The Text of the Statute and Congressional Intent Behind the TCPA Also
                Support the FCC's Interpretation of ATDS* ............................................12

        E.      *GroupMe's Reliance on Gragg v. Orange Cab Co., Inc. is Misplaced* ...............14

III.    Dialing Equipment Must Only Have the Capacity—not *Present* Capacity—to
        Store and/or Generate Telephone Numbers ....................................................16

IV.     Finally, GroupMe's Conduct Violated the TCPA Even if no ATDS was Used to
        Send the Pre-Generated GroupMe Mobile App Texts .......................................18

CONCLUSION ..............................................................................................................19

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................................6

*Duncan v. Walker*, 533 U.S. 167 (2001) ...........................................................................................13

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012)..............................................................5, 13

**United States Circuit Court of Appeals Cases:**

*CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443 (7th Cir. 2010)...................................9, 10

*Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901 (9th Cir. 2013).............................................6

*Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013) ............................................................................6

*Grant v. Capital Mgmt. Services, L.P.,* 449 F. App'x 598 (9th Cir. 2011).........................................6

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) .................................5, 16

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ...................................... *passim*

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007)......................................................6

**United States District Court Cases:**

*Bates v. Dollar Loan Ctr., LLC*,
     No. 13-cv-1731, 2014 WL 3516260 (D. Nev. July 15, 2014) .........................................11

*Davis v. Diversified Consultants, Inc.*,
     --- F. Supp. 2d ----, 2014 WL 2944864 (D. Mass. June 27, 2014) ..................................11

*Fields v. Mobile Messengers Am., Inc.*,
     No. 12-cv-05160, 2013 WL 6774076 (N.D. Cal. Dec. 23, 2013).................10, 12 n.10, 15

*Frausto v. IC Sys., Inc.*,
     No. 10-cv-1363, 2011 WL 3704249 (N.D. Ill. Aug. 22, 2011) ........................................9

*Gragg v. Orange Cab Co., Inc.,* 995 F. Supp. 2d 1189 (W.D. Wash. 2012)......................... 14-16

*Griffith v. Consumer Portfolio Serv. Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011)..............................9, 11

*Hernandez v. Collection Bureau of Am., Ltd.*,
     No. 13-cv-01626 (C.D. Cal. Apr. 16, 2014) .............................................................9, 10

*Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125 (W.D. Wash. 2012) ..............................................11

*In re Jiffy Lube Int'l Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012).............13, 17

*Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013) ..................................................9

*Leckler v. Cashcall, Inc.*,
    No. 07-cv-04002, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) ..................................9

*Nelson v. Santander Consumer USA, Inc.* 931 F. Supp. 2d 919 (W.D. Wisc. 2013)..........................10

*Olney v. Job.com, Inc.*,
    No. 12-cv-01724, 2014 WL 1747674 (E.D. Cal. May 1, 2014) ..................................9

*Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129 (S.D. Cal. Feb. 3, 2014) ............................. *passim*

**Rules and Statutes:**

28 U.S.C. § 2342 ..............................................................................................................9

47 U.S.C. § 227 ...................................................................................................... *passim*

**Miscellaneous Authority:**

Dictionary.com, ("voice"), http://dictionary.reference.com/browse/voice
    (last visited Sept. 29, 2014)...........................................................................18

*GroupMe, Inc.'s Petition for Expedited Declaratory Ruling and Clarification*,
    CG Docket No. CG 02-278 (Mar. 1, 2012)
    *available at* http://apps.fcc.gov/ecfs/document/view?id=7021871907 ..................3

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    18 F.C.C. Rcd. 14014 (July 3, 2003) ................................................5, 7, 15, 18

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    23 F.C.C. Rcd. 559 (Jan. 4, 2008)......................................................................8

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    27 F.C.C. Rcd. 15391, 15392 n.5 (Nov. 29, 2012)..........................................8, 13

*June 20, 2011 Terms of Service*, GroupMe,
    https://web.archive.org/web/20110620071334/http://groupme.com/terms
    (last visited Sept. 29, 2014)...........................................................................3

Merriam-Webster, ("generator"), http://www.merriam-webster.com/dictionary/generator
    (last visited Sept. 29, 2014)...........................................................................12

S. Rep. 102-178 (Oct. 8, 1991) ........................................................................13

*Terms*, GroupMe, https://groupme.com/terms (last visited Sept. 29, 2014)..........................3 n.1

## INTRODUCTION

Each time an individual was added to one of Defendant GroupMe, Inc.'s ("GroupMe") texting groups, GroupMe sent them a text message welcoming them to its service and promoting its mobile application. The process by which those messages were sent was automated and it went as follows: The group creators provide GroupMe with the cell phone numbers of the other individuals who are to be in a group, GroupMe's proprietary software then automatically parses that information and loads it into its database, queries its database to obtain the cell phone of the group member to be texted, selects the pre-generated content for the text message, and transmits that information to its business partner, Twilio, Inc. ("Twilio"). After that, Twilio's application programming interface ( "API") automatically transmitted the text message "downstream" to each group member's cell phone via their wireless carrier at a rate of up to one message per second.

The only issue now before the Court is whether the equipment used by GroupMe to send the text message to Plaintiff Glauser was an automatic telephone dialing system ("ATDS") as contemplated by the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(a)(1). Attempting to deny the obvious, GroupMe argues that it did not use an ATDS to send the text message because its autodialer did not have the capacity to generate random or sequential numbers at the time the message was sent. But GroupMe's assertion that equipment must have the ability to generate numbers randomly or sequentially in order to be considered an ATDS relies on an interpretation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") that has been repeatedly rejected by the Federal Communications Commission ("FCC") and courts throughout the Ninth Circuit.

The TCPA defines an ATDS as equipment that has the capacity "to store *or* produce" numbers to be dialed, 47 U.S.C. § 227(a)(1) (emphasis added), and the FCC has thus repeatedly held that equipment that automatically dials numbers from a stored list—rather than randomly or sequentially generated numbers—constitutes an ATDS. That is exactly what GroupMe's

autodialer did here: it sent the GroupMe Mobile App Text to Glauser, each member of his texting group, and each member of the putative class, to phone numbers on lists stored on its system at a rate of up to one message per second, rather than to randomly or sequentially generated numbers. This Court is bound by the FCC's determination that such equipment constitutes an ATDS, and must consequently deny GroupMe's motion for summary judgment.

In any event, even if this Court were not bound by the FCC's repeated rulings, the text of, the legislative intent behind, and the case law addressing the TCPA all support the FCC's interpretation that equipment need not randomly or sequentially generate numbers to constitute an ATDS. Finally, even if GroupMe's autodialer did not fall within the statutory definition of an ATDS, summary judgment in GroupMe's favor would still be unwarranted because GroupMe's conduct violated the TCPA even if no ATDS was used.

## BACKGROUND

### I.    GroupMe's Text Messaging Service.

In 2010, GroupMe was founded as a group text-messaging platform that allows users to transmit text messages to dozens of other individuals simultaneously. (Dkt. 107-2 ¶ 2.) While marketed as a "group texting" tool allowing consumers to communicate with large groups of people at once, the GroupMe application serves the additional purpose of sending unsolicited text messages to newly added group members to promote its texting service and related mobile application. (*See* Dkt. 107-2 ¶ 17; Dkt. 120-1, Exhibit ("Ex.") C at GM_0000088 (

).)

During the relevant time period (i.e., August 25, 2010 through June 20, 2011), so-called "group creators" could use the GroupMe website or mobile application to create a "texting group" of up to twenty-five or fifty individuals by merely inputting the names and cellular

telephone numbers of each proposed group member into the GroupMe system. (*See* Dkt. 107-2 ¶¶ 12-14; Dkt. 120, Ex. E at GM_0000117-0000123.) Immediately thereafter, each newly added group member automatically received the GroupMe Mobile App Text promoting GroupMe's mobile application and providing a link that could be used to download the mobile application, (Dkt. 107-2 ¶¶ 28-29), which was the same or substantially similar to the following:

> GroupMe is a group texting service.
> Standard SMS rates may apply.
> Get the app at http://groupme.com/a to chat for free.
> Reply #exit to quit or #help for more.

*GroupMe, Inc.'s Petition for Expedited Declaratory Ruling and Clarification*, CG Docket No. CG 02-278, at 7 (Mar. 1, 2012) *available at* http://apps.fcc.gov/ecfs/document/view?id= 7021871907; (*see also* Dkt. 107-2 ¶ 17; *see also* Dkt. 120-1, Ex. F at GM_0000398; Dkt. 120-1, Ex. C at GM_0000088.)

GroupMe never sought consent from the group creators or group members before sending the text messages either. (*See, e.g.,* Dkt. 120-2 ¶ 4, attached as Exhibit 2.) In fact, although GroupMe now requires group creators, as part of their acceptance of its terms and conditions, to represent that they have obtained the consent of all individual group members to be contacted through its service,[1] GroupMe had *no polices in place* when Glauser received the GroupMe Mobile App Text. (Dkt. 107-2 ¶ 13); *see also June 20, 2011 Terms of Service*, GroupMe, https://web.archive.org/web/20110620071334/http://groupme.com/terms ("June 20, 2011 Terms") (last visited Sept. 29, 2014) (neither the word nor concept of "consent" appears a single time in the terms).

## II.     GroupMe's Software Automatically Dials Numbers Stored on Lists Without Human Intervention.

When Glauser received the GroupMe Mobile App Text, GroupMe exclusively used third-party Twilio, Inc. ("Twilio") to transmit each text message to its group members. (Dkt. 107-2 ¶¶ 15, 17; *see also* Dkt. 107-3 ¶ 5; Dkt. 120-1, Ex. G at GM_0000092-0000095; Dkt. 120-1, Ex. H

---

[1]     *See Terms*, GroupMe, https://groupme.com/terms (last visited Sept. 29, 2014).

at GM_0000176-0000188.) [2] Together, GroupMe's and Twilio's hardware and software equipment dialed numbers from a stored list without human intervention through a straightforward process:

1. GroupMe collected and stored all group member information (e.g., group member names and telephone numbers) provided by the group creators in databases maintained on its servers, (*see, e.g.,* Declaration of Shawn Davis ¶¶ 3-8, attached as Exhibit 1; Dkt. 107-3 ¶ 7; Dkt. 120-1, Ex. I at GM_000134; Dkt. 120-1, Ex. J at GM_0000230; Dkt. 120-1, Ex. K at GM_0000365);

2. Upon storing that information, GroupMe's software automatically checked to see if the user was already a member, and if not, automatically generated the pre-programmed GroupMe Mobile App Text (*see, e.g.,* Davis Decl. ¶ 13; Dkt. 107-2 ¶ 17; Dkt. 107-3 ¶ 3; Dkt. 120-1, Ex. E at GM_0000117-0000123; Dkt. 120-1. Ex. F at GM_0000398; Dkt. 120-1. Ex. C at GM_0000088
and

3. GroupMe sent the pre-programmed text messages along with the telephone numbers to Twilio's API, which transmitted the text messages to the group members. (*See* Davis Decl. ¶¶ 19-30; Dkt. 107-2 ¶ 19; Dkt. 107-3 ¶ 5; Dkt. 120-1, Ex. L at GM_00000228; Dkt. 120-1, Ex. J at GM_0000230; Dkt. 120-1, Ex. M at GM_0000356-0000357; Dkt. 120-1, Ex. N at GM_0000366).

Group creators never asked GroupMe to send the GroupMe Mobile App Texts, did not send the messages themselves, and were never informed that the messages would be sent. Thus, once GroupMe obtained the telephone numbers of the newly added group members (like Glauser), the entire process was automated. (*See* Davis Decl. ¶¶ 4-33.) No human intervention was needed or involved. (*Id.*)

### III. Plaintiff Glauser's Experience.

On April 23, 2011, Plaintiff Glauser was added to the GroupMe texting group named "Poker." (*See* Dkt. 107-2 ¶¶ 30-31; Dkt. 120-1, Ex. B at GM_0000099.) Immediately after being added to the group by Mike L., he was inundated with text messages, including the GroupMe Mobile App Text. (Dkt. 120-2 ¶ 3.) Glauser never consented to receive the GroupMe Mobile App Text, never provided GroupMe or Twilio his telephone number, never gave GroupMe or

---

[2] That is, during the period from August 25, 2010 through June 20, 2011, Twilio provided the only application programming interface (i.e., API) used by GroupMe to transmit the GroupMe Mobile App Texts "downstream" to wireless carriers and then onto group members.

Twilio permission to send him text messages utilizing an ATDS, and never gave the "Poker" group leader consent to receive text messages from or on behalf of GroupMe. (*See id.* ¶ 4.)

## IV. The Telephone Consumer Protection Act.

Congress enacted the TCPA to protect consumers from intrusive telemarketing calls it deemed "invasive of privacy." *See Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012);[3] *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). The TCPA prohibits calls[4] made with equipment termed an automatic telephone dialing system—i.e., "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Despite the fact that unwanted telemarketing calls are heavily litigated, companies try to skirt liability by designing dialing equipment that can only *either* store or produce telephone numbers—not both. Fortunately, the FCC—the agency responsible for interpreting and promulgating the rules enforcing the TCPA to keep up with ever-evolving technology—has repeatedly sought to prevent telemarketers from circumventing liability in this way. Indeed, the FCC has recognized that "the basic function of [an ATDS]" has always been the same: "the *capacity* to dial numbers without human intervention." *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) *cert. denied* 133 S. Ct. 2361 (2013) (citing *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (July 3, 2003) ( "2003 Order")). As a result, it has held that dialing equipment constitutes an ATDS if it can dial from a list of telephone numbers, even if it cannot randomly or sequentially generate them. *Id.*

When telemarketers use such technology to call individuals without their prior express consent, they are liable for $500 in damages per call or text message, which can be trebled if the

---

[3]    In *Mims*, the Supreme Court discussed some of Congress's findings when it enacted the TCPA, including that "unrestricted marketing can be an intrusive invasion of privacy," that "many consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes" and that "automated or prerecorded telephone calls made to private residences [] were rightly regarded by recipients as an invasion of privacy." 123 S. Ct. at 745 (internal quotations and citations omitted).
[4]    The term "call" applies with equal force to both voice calls and text message calls. *Satterfield*, 569 F.3d at 954.

violation is found to be willful. *See* 47 U.S.C. § 227(b)(3)(B). The TCPA also provides for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A). To escape such liability, a defendant may assert the affirmative defense that individuals provided "prior express consent" to be contacted. *Grant v. Capital Mgmt. Services, L.P.,* 449 F. App'x 598, 600 n.1 (9th Cir. 2011). But, the defendant bears the burden of establishing consent, *id.*, which must be "clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955.

**ARGUMENT**

**I.  Legal Standard.**

Summary judgment is a high legal standard and is appropriate *only* "when, viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 907 (9th Cir. 2013). In determining whether summary judgment is proper, courts "do[] not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In order to defeat summary judgment, "the plaintiff must present affirmative evidence" regarding a genuine material dispute "from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 257. In other words, summary judgment is inappropriate if "as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).

**II.  GroupMe's Equipment Constitutes an ATDS Under the TCPA.**

GroupMe's request for summary judgment hinges almost entirely on the mistaken premise that equipment must have the capacity[5] to randomly or sequentially generate telephone numbers to qualify as an ATDS. (Def. Mot. at 10-16.) That argument falls wide of its mark for a

---

[5]    GroupMe argues further that the term "capacity" means *present* capacity. As discussed further in Section III, *infra*, GroupMe is wrong.

number of reasons: (i) the FCC has repeatedly held that equipment need only dial numbers from a stored list—as GroupMe's does—to constitute an ATDS (not *both* store and produce numbers); (ii) this Court is required to follow those rulings under the Administrative Orders Review Act, 28 U.S.C. § 2342 (the "Hobbs Act"); and (iii) applicable case law, the text of the TCPA, and Congress's intent in enacting the TCPA all support the same result. With this single, faulty premise as its basis,[6] GroupMe's motion for summary judgment must fail.

A. *The FCC Has Repeatedly Held that Dialing Equipment Constitutes an ATDS if it Automatically Dials Telephone Numbers from a Stored List.*

When addressing arguments similar to GroupMe's, the FCC has repeatedly held that autodialing equipment need only store *or* produce telephone numbers to qualify as an ATDS. The FCC first rejected GroupMe's argument in 2003, when it held that "the statutory definition [of ATDS] contemplates autodialing equipment that *either* stores *or* produces numbers." 2003 Order at 14091-92 (emphasis added). Its reason for not requiring both capabilities is simple: when the TCPA was enacted, telemarketers used dialing equipment to dial random numbers arbitrarily, but now "using lists of numbers is far more cost effective." *Id.* at 14092. To keep up with evolving technology,[7] the FCC had to ensure that telemarketers—like GroupMe—could not escape liability for intrusive calls made to individuals when "the basic function of [the] equipment [used]...has not changed—the *capacity* to dial numbers without human intervention." *See id.* (finding that "to exclude [certain equipment] from the definition of [ATDS] simply because it relies on a given set of numbers would lead to an unintended result.").

---

[6] GroupMe also argues that its equipment does not constitute a predictive dialer because the GroupMe Mobile App Texts could only be sent as a result of human intervention and that in any event, Glauser can't argue that it does, because he didn't allege in his complaint that GroupMe used a predictive dialer. Both of these arguments fail as well. As explained above (and further below), GroupMe's text messaging platform does not require human intervention (*see* Section II.C, *infra*)*,* and a predictive dialer is just another form of ATDS—the two are not mutually exclusive. (*See* Section II.E, *infra*); *see also* 2003 Order at 14093 (emphasis added) ("2003 Order") ("Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress.").

[7] Aside from merely interpreting the TCPA, the FCC was also given "the flexibility to consider what rules should apply to future technologies as well as existing technologies." *See also id.* at 14092 n.436 (quoting 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings)).

The FCC reiterated this holding in 2008, when it rejected the argument "that [equipment] meets the definition of autodialer *only* when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 566-67 (Jan. 4, 2008) ("2008 Order") (emphasis added). GroupMe makes this same failing argument in its motion—i.e., that "[t]o be an autodialer, equipment must be capable at the time of use of autonomously generating 'random sequences of [ten] digit[]' phone numbers or autonomously generating sequential sets of ten-digit phone numbers…." (Dkt. 107-1 at 11) (citations omitted).

Finally, in 2012, the FCC confirmed again that the definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention *regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.*" *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd. 15391, 15392 n.5 (Nov. 29, 2012) (emphasis modified) ("2012 Order"). In doing so, the FCC relied on its 2003 Order and "concluded that the scope of [the ATDS] definition encompasses hardware that . . . has the capacity to *store or produce* numbers and dial those numbers at random, in sequential order, *or from a database of numbers.*" 2012 Order at 15392 n.5 (internal quotations omitted).

Put simply, the FCC has expressly and repeatedly rejected GroupMe's argument that an autodialer must generate random or sequential numbers to fall within the statutory definition of an ATDS. Instead, equipment that automatically dials numbers from a stored list—such as the list on which Glauser's telephone number was stored—also constitutes an ATDS.[8]

---

[8] As explained above, the undisputed facts here establish that: (i) GroupMe's servers stored the lists of numbers provided by group creators (Davis Decl. ¶¶ 4-8), (ii) GroupMe's source code selected preset, generic content to appear in the body of each GroupMe Mobile App Text (*id.* ¶¶ 9-14), (iii) GroupMe's servers automatically sent both the phone numbers from the group contact list and the message content to Twilio's API (*id.* ¶¶ 25-29), and (iv) Twilio's API automatically dialed the telephone numbers, sending out text messages at a rate of up to one message per second. (*Id.* ¶¶ 30-33.) Given the automatic nature of GroupMe's dialing equipment, any argument that it does not constitute an ATDS is precisely the type of attempt to circumvent the TCPA that the FCC's 2003, 2008 and 2012 Orders are meant to prevent. *See* 2012 Order at 15392 n.5 (quoting 2003 Order at 14091-93) (granting the FCC the duty "to ensure that the

*B.* *This Court is Bound by FCC Rulings.*

The Court is bound to follow the FCC's rulings. Indeed, the Administrative Orders Review Act, also known as the Hobbs Act, grants federal *appellate* courts exclusive jurisdiction to determine the validity of final FCC orders, *see* 28 U.S.C. § 2342(1), meaning they are binding on all district courts. *See, e.g., Olney v. Job.com, Inc.*, No. 12-cv-01724, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014) ("The FCC's interpretations of the TCPA are controlling unless invalidated by a court of appeals."); *Leckler v. Cashcall, Inc.*, No. 07-cv-04002, 2008 WL 5000528, at *2 (N.D. Cal. Nov. 21, 2008) (vacating its own order because "it did not have jurisdiction to review the FCC's declaratory ruling."); *Hernandez v. Collection Bureau of Am., Ltd.*, No. 13-cv-01626, Dkt. 20 at 5 (C.D. Cal. Apr. 16, 2014) ("Indeed, for the Court to agree, or even disagree, with [defendant's argument that the FCC's holdings on what constitutes an ATDS is not entitled to deference] would be to violate the Hobbs Act…Rather, the Court is simply bound to apply the FCC's rulings."); *see also CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010) (recognizing that "the Hobbs Act prevents the district court from reviewing the validity of FCC regulations…."); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 97 (N.D. Ill. 2013); *Griffith v. Consumer Portfolio Serv. Inc.*, 838 F. Supp. 2d 723, 726-27 (N.D. Ill. 2011); *Frausto v. IC Sys., Inc.*, No. 10-cv-1363, 2011 WL 3704249, at *2 (N.D. Ill. Aug. 22, 2011).

GroupMe's cursory treatment of the FCC rulings ignores the binding nature accorded them by the Hobbs Act. In fact—and quite incredibly—GroupMe ignores the 2003, 2008 and 2012 FCC Orders altogether in making its argument that the TCPA does not apply to calls made by equipment that dials numbers from a stored list.[9] (*See* Dkt. 107-1 at 10-16.) And while it doesn't expressly argue that the FCC rulings are not binding, its failure to mention them or the Hobbs Act is at its own peril. *See, e.g., CE Designs*, 606 F.3d at 450 (characterizing the argument that the court should not adhere to Hobbs

---

prohibition on autodialed calls not be circumvented). This Court should not—and as explained below, cannot—allow GroupMe such unwarranted protection by ignoring the FCC's clear orders defining an ATDS.

[9] To be fair, GroupMe does make mention of the 2003 and 2008 Orders in its argument that it has not used a predictive dialer to send the text messages. (*See* Dkt. 107-1 at 16-18.) But again, this argument fails. *See* Section II.E, *infra*.

Act and follow FCC rulings "pure bluster"); *Nelson v. Santander Consumer USA, Inc.* 931 F. Supp. 2d

919, 928-29 (W.D. Wisc. 2013) *vacated by stipulation of the parties*, No. 11-cv-307, 2013 WL

5377280 (W.D. Wis. June, 2013) (describing litigant's failure to acknowledge the Hobbs Act as

"sloppy research" at best, and noting that arguing that the district court can disregard the FCC's

interpretations comes "perilously close to violating Fed. R. Civ. P. 11").

      In the end, the FCC has been more than clear that equipment need only be able to dial numbers

from a stored list *or* randomly or sequentially generate telephone numbers to constitute an ATDS—not

both. These orders are binding on this Court under the Hobbs Act, and GroupMe's motion for

summary judgment fails as a matter of law and should thus be denied.

      C.    *Case Law Supports the FCC's Interpretation of ATDS.*

      Given the FCC's clear orders and their binding nature, it's not surprising that courts

throughout the country—including in the Ninth Circuit—have also repeatedly held that

equipment need not generate numbers randomly or sequentially to fall within the statutory

definition of an ATDS. *See, e.g., Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1135 (S.D. Cal.

Feb. 3, 2014), *reconsideration denied* (July 3, 2014); *Fields v. Mobile Messengers Am., Inc.*, No.

12-cv-05160, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (relying on the FCC's 2003

Order and holding that there was a genuine issue of material fact as to whether equipment could

store *or* produce numbers and thus, denying motion for summary judgment.); *Hernandez*, No.

13-cv-01626, Dkt. 20, at 1, 5 (denying defendant's motion for summary judgment when its

equipment did not "allow[] it to generate either random or sequential telephone numbers, nor

[did] it have the capacity to store or produce and call numbers from a generator" because it did

have the ability to dial numbers without human intervention"); *Bates v. Dollar Loan Ctr., LLC*,

No. 13-cv-1731, 2014 WL 3516260, at *2 (D. Nev. July 15, 2014) ("All Defendants must do to

*actually* autodial is dump the relevant telephone numbers into the 'pool.'"); *Davis v. Diversified

Consultants, Inc.*, --- F. Supp. 2d ----, 2014 WL 2944864, at *6 (D. Mass. June 27, 2014)

(granting plaintiff's motion for summary judgment because "even viewing the facts in the light

most favorable to defendant, the evidence demonstrates that defendant used an ATDS to call plaintiff" when the equipment merely had the capacity to store telephone numbers to be called); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2012) (finding facts sufficient to support the use of an ATDS when plaintiff pled that the defendant automatically sent text messages); *Griffith*, 838 F. Supp. 2d at 727 ("Even assuming that [defendant's] equipment can only [automatically dial numbers stored in a file[], and cannot generate and dial random or sequential numbers, it is still an 'automatic telephone dialing system.'"); *see also Davis*, 2014 WL 2944864, at *4 (collecting cases relying on the FCC's orders).

The *Sherman* matter is particularly instructive. Under nearly identical facts to this case, the plaintiff there brought a TCPA claim against Yahoo! related to a notification text message he received when a friend provided his telephone number to Yahoo!'s mobile messaging service. *Sherman*, 997 F. Supp. 2d at 1135. Yahoo! moved for summary judgment, arguing that its dialing equipment did not constitute an ATDS because it could not randomly or sequentially generate telephone numbers, although it did have the capacity to store lists of numbers and dial them. *Id*. Relying on the FCC's 2003 Order, the *Sherman* court held that there was a genuine issue of material fact as to whether the equipment could store *or* produce numbers and thus denied Yahoo!'s motion for summary judgment. *Id*.

The result should be no different here. GroupMe's text messaging platform stored the telephone numbers to be called (Davis Decl. ¶¶ 4-8), automatically generated pre-programmed content for the GroupMe Mobile App Texts (*id.* ¶¶ 9-14), and automatically transferred the telephone numbers and text message content to Twilio, which then transmitted the messages to Glauser and all of the other group members through their wireless carriers. (*Id.* ¶¶ 25-33.) In short, there is no question that the dialing equipment used to transmit the text messages at issue had the capacity to dial numbers stored on a list without human intervention and that it actually did so. (*See, e.g., id.* ¶¶ 3-33.) Nothing more is needed to establish the use of an ATDS, and

GroupMe's motion for summary judgment should therefore be denied.[10]

        D.     *The Text of the Statute and Congressional Intent Behind the TCPA Also Support the FCC's Interpretation of ATDS.*

If the FCC rulings and case law weren't enough to establish that equipment need not randomly and sequentially generate telephone numbers to constitute an ATDS (they are), the text of the TCPA and Congress's intent behind it are. First, the TCPA defines an ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and…to dial such numbers." 47 U.S.C. § 227(a)(1). Because the statutory definition uses the disjunctive "or" in "to store *or* produce telephone numbers to be called," *see id.* (emphasis added), equipment need not "produce" numbers to be dialed if it can "store" a list of numbers to be dialed. Further, the statutory phrase "using a random or sequential number generator" modifies only the term "produce" and not the term "store." This is because it makes no sense to talk about storing numbers using a number generator, as a "generator" is "something that produces something," Merriam-Webster, http://www.merriam-webster.com/dictionary/generator (last visited Sept. 29, 2014), meaning that a "random or sequential number generator" is something that produces random or sequential numbers—not something that stores them. Thus, while equipment can use a random or sequential number generator to "produce" numbers, it is nonsensical to talk about using a number generator to "store" them.

Aside from being nonsensical, reading "using a random or sequential number generator" to modify "store," would also render the term "store" superfluous, which Congress did not intend. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute…We are thus reluctan[t] to treat statutory terms as surplusage….") (internal quotations and citations omitted"). Any equipment using a number

---

[10]    GroupMe also incorrectly argues that, "the FCC's rulings on predictive dialers do not apply to technologies used to send text messages." (Def. Mot. at 16.) For example, in *Fields*, the court recognized that a dialing system used to transmit text messages could constitute a predictive dialer. *Fields*, 2013 WL 6770475, at *3.

generator to store numbers would fall within the "produce" prong of the statutory definition, because a random or sequential number generator must "generate" (i.e., "produce") the number before storing it. Consequently, the text of the TCPA supports the FCC's rulings that equipment is an ATDS when it automatically dials numbers "regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 2012 Order at 15392 n.5.

Further still, Congress's intent behind the TCPA likewise supports the FCC's rulings. In enacting the TCPA, "the government sought to generally protect consumers' privacy and reduce the volume of telephone solicitations." *See In re Jiffy Lube Int'l Inc., Text Spam Litig.,* 847 F. Supp. 2d 1253, 1261 (S.D. Cal. 2012); *see also Mims,* 132 S. Ct. at 744 (noting that in enacting the TCPA, Congress determined that "[u]nrestricted telemarketing" can be "an intrusive invasion of privacy"). Indeed, Congress noted that autodialers at the time could dial as many as 1,000 telephone numbers each day, allowing telemarketers to call more than *seven million Americans every day.* S. Rep. 102-178, at 2 (Oct. 8, 1991). Congress's main concern and the problem they sought to alleviate in enacting the TCPA was the sheer volume of calls triggered by the growth of autodialers, which could dial multiple numbers in a short period of time without human intervention.

To solve this problem, Congress did not intend to draw an arbitrary line based on the inner workings of autodialers; it simply wanted to slow down the onslaught of calls plaguing Americans. And given that Congress enacted the TCPA in response to autodialers that could make 1,000 calls per day, it seems clear that they would be appalled by the equipment at issue here, which dialed numbers at a rate of one per second. (*See* Davis Decl. ¶ 31; *see also* Dkt. 107-2 ¶¶ 12-14.) At that rate, such equipment could dial well over the 1,000 call-per-day machines that originally motivated Congress to act. Thus, it is hard to believe that Congress intended *not* to include the equipment at issue here within the prohibitions of the TCPA.

Accordingly, the language of the statute and Congress's intent in enacting it further debunk GroupMe's argument and its motion for summary judgment should be denied.

E. *GroupMe's Reliance on Gragg v. Orange Cab Co., Inc. is Misplaced.*

To get past the FCC's clear rulings, their binding nature on the Court, and well-established case law, GroupMe relies heavily on *Gragg v. Orange Cab Co., Inc.,* 995 F. Supp. 2d 1189 (W.D. Wash. 2012)[11] to supports its argument that dialing equipment must have the capacity to randomly or sequentially generate telephone numbers to be called to constitute an ATDS. (Dkt. 107-1 at 13.) GroupMe's reliance on *Gragg* is misplaced.

In *Gragg*, the plaintiff brought an action against a taxi company for sending text messages to consumers after they requested cab service. *Gragg*, 995 F. Supp. 2d at 1191. The dialing system worked like this: upon receiving a call, (i) the dispatcher manually inputted information (like the caller's name, phone number, pickup location and dropoff location) into its system, (ii) "the dispatcher presse[d] 'enter'" to relay the information to the texting service and the taxi driver closest to the pickup location, and (iii) if—but only if—the taxi driver accepted, he/she pressed "accept" to inform the service of their acceptance of the fare and to send a text message to the individual who requested service. *Id.* The defendant moved for summary judgment arguing that its system did not constitute an ATDS because it could not produce telephone numbers and because text messages could only be sent as a result of human involvement. *Id.* at 1192-94. The court agreed and granted summary judgment for the defendant. *Id.* at 1192-94.

The *Gragg* holding, however, misapplies the relevant FCC Orders and case law. That is, by holding that the equipment must be *either* an ATDS *or* a predictive dialer, the court created a distinction where one does not exist. An ATDS and predictive dialer are not two mutually exclusive pieces of equipment—a predictive dialer is merely one type of equipment that

---

[11] Like GroupMe, the defendant in *Sherman* relied heavily on the *Gragg* order in support of its motion to reconsider, arguing that dialing equipment must have the current capacity to both store and produce numbers to be called. *Sherman*, 997 F. Supp. 2d at 1141. The *Sherman* court, however, correctly declined to follow the *Gragg* order because it misapplied the law. *Id.* ("having considered the *Gragg* court's reasoned disagreement with this Court's holding, the Court finds itself nonetheless bound by Ninth Circuit precedent to the contrary…").

constitutes an ATDS.[12] 2003 Order at 14093 (finding "that a predictive dialer falls *within* the meaning and statutory definition of 'automatic telephone dialing equipment'") (emphasis added). Because a predictive dialer is defined as equipment that dials from a list of numbers without human intervention, *see id.*, that's all a plaintiff needs to show, and the court was incorrect in holding that the equipment did not constitute an ATDS simply because it did not have the capacity to produce telephone numbers. *See Gragg*, 995 F. Supp. 2d at 1192-93.

The court was also incorrect in holding that the equipment had to have the "present, not potential, capacity to store, produce, or call randomly or sequentially generated telephone numbers…." *Id.* at 1193 (citations omitted). Foremost, and as described in Section III, *infra,* it is well-established that equipment need only have the potential capacity to store and/or produce telephone numbers to constitute an ATDS. *See Satterfield*, 569 F.3d at 951; *Fields,* 2013 WL 6774076, at *3; *Sherman*, 997 F. Supp. 2d at 1136. Moreover, equipment will only constitute an ATDS if it both has the capacity to store or produce telephone numbers *and it actually transmits text messages to those numbers without obtaining prior express consent.* Thus, any person who owns an ATDS and uses it properly cannot be held liable under the TCPA as the *Gragg* court seemed to suggest. *See Gragg*, 995 F. Supp. 2d at 1193 (holding that adopting an interpretation that equipment need only have *potential* capacity would be "absurd" and "would capture many of contemporary society's most common technological devices within the statutory definition.").

Legal arguments aside, the *Gragg* case is also factually distinguishable from the instant matter. In *Gragg*, the only way that individuals could receive text messages from the taxi service was if they (i) requested service, (ii) a taxi driver was available to provide the requested service, and (iii) the taxi driver "accepted" the request for service. *Id.* at 1191. The text messages were only sent to the individual who requested the service and only after the taxi driver chose to send the individual a text message. *Id.* Here, however, GroupMe automatically sent text messages to

---

[12]     Contrary to GroupMe's argument, because a predictive dialer is an ATDS, Glauser did not need to separately identify its dialing equipment as such in his pleadings. (*See* Def. Mot. at 16.) His allegations that GroupMe used an ATDS to transmit the GroupMe Mobile App Texts is enough. *See* 2003 Order at 14093 (holding that a predictive dialer is an ATDS).

every individual who was added to a texting group (up to fifty (50) text messages per group at once)—and therefore, to individuals who never requested service from GroupMe and who had no knowledge that they were being added to a texting group, let alone consented to receive the messages. Thus, unlike in *Gragg*, no human activity was actually involved (or necessary) to send the text messages at issue—indeed, group creators themselves had no knowledge about the GroupMe Mobile App Text and therefore made no choice (and took no action) to send them.

Accordingly, the court's holding in *Gragg* was legally incorrect and in any event, inapplicable to the facts of this case.

### III. Dialing Equipment Must Only Have the Capacity—not *Present* Capacity—to Store and/or Generate Telephone Numbers.

In addition to ignoring the FCC's orders and relevant case law, GroupMe also argues that its dialing equipment doesn't constitute an ATDS because to do so, it must have had the *present* (rather than potential) capacity to store or produce telephone numbers using a random or sequential number generator. (Def. Mot. at 10-12.) GroupMe is also wrong on this point.

The Ninth Circuit has repeatedly held that "[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Satterfield*, 569 F.3d at 951 (reversing district court's grant of summary judgment for the defendant when there was no dispute that the equipment did not store or produce numbers because the correct focus should have been on what the equipment was capable of doing); *see also Meyer,* 707 F.3d at 1043. This is true even when defendants— like GroupMe—argue that it would require "significant time and resources…to modify [their] dialers." *See Sherman*, 997 F. Supp. 2d at 1142 (citing *Meyer v. Portfolio Recovery Associates, LLC*, No. 11-56600, Dkt. No. 6-1 (appellant's opening brief)). Given this "clear mandate from the Ninth Circuit," equipment need only have the potential—not present—capacity to store and/or produce telephone numbers to qualify as an ATDS. *Sherman*, 997 F. Supp. 2d at 1142-43; *see also Fields*, 2013 WL 6774076, at *3; *In re Jiffy Lube Intern., Inc. Text Spam Litig.*, 847 F.

Supp. 2d at 1261.

The *Sherman v. Yahoo! Inc.* matter is instructive in this regard as well. In *Sherman*, the Court denied the defendant's motion for summary judgment based on, *inter alia*, the argument that the equipment used to transmit the text messages could not (and did not) store and/or produce telephone numbers using a random or sequential number generator. *Id.* at 1136, 1138. The defendant moved the court to reconsider relying heavily on the *Gragg* case, but the court refused, finding that "the clear mandate from the Ninth Circuit [in *Satterfield* and *Meyer*] requires a defendant challenging a plaintiff's ATDS showing on a motion for summary judgment to demonstrate that no genuine issues of material fact exist as to whether the equipment at issue has the requisite current *and future* capacity to act as an ATDS in order to warrant summary judgment." *Id.* at 1142-43 (emphasis added).

Here, like the defendant in *Sherman*, GroupMe is trying to distract the Court's focus. The focus is on whether the equipment used to send the GroupMe Mobile App Texts could potentially have the capacity to store and/or produce telephone numbers, not that it actually does perform those functions in transmitting the text messages. *See Sherman*, 997 F. Supp. 2d at 1129; *Satterfield*, 569 F.3d at 951. It does not matter whether modification of the equipment and/or software GroupMe uses to transmit the text messages would require substantial time or resources to make it randomly or sequentially generate telephone numbers, it just matters that it could be done. *Sherman*, 997 F. Supp. 2d at 1138 (citing *Meyer*, No. 11-56600, Dkt. No. 6-1). As a result, there is a genuine issue of material fact as to whether GroupMe's equipment has the capacity to randomly or sequentially generate telephone numbers, and its motion for summary judgment should be denied.

## IV. Finally, GroupMe's Conduct Violated the TCPA Even if no ATDS was Used to Send the Pre-Generated GroupMe Mobile App Texts.

Finally, because the autodialer used by GroupMe dialed a list of telephone numbers—the numbers it stored upon a group creator's addition of numbers to a texting group—it was an

ATDS, and GroupMe's motion for summary judgment should be denied. Yet even if the autodialer used by GroupMe did not fall within the statutory definition of an ATDS, GroupMe's conduct would still have violated the TCPA, precluding summary judgment in its favor.

The TCPA makes it unlawful to make any call to a cell phone "using any [ATDS] or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A) (emphasis added). While the TCPA refers to an artificial or prerecorded "voice," voice is not limited to verbal communications. *See, e.g.*, Dictionary.com, http://dictionary.reference.com/browse/voice (last visited Sept. 29, 2014) (defining "voice" as, among other things, "expression in spoken or written words, or by other means"). Indeed, in an order clarifying that the TCPA applies to text messages, the FCC treated the words "voice" and "message" as interchangeable. 2003 Order at 14115 ("[U]nder the TCPA, it is unlawful to make any call using an [ATDS] or an artificial or prerecorded message to any wireless telephone number.") (emphasis added). Here, it is undisputed that GroupMe designed the template GroupMe Mobile App Texts to send to its group contact lists, which it stored on its servers. (Davis Decl. ¶¶ 4-14.) One of these messages was selected by GroupMe's servers and sent to Glauser. (*Id.* ¶ 12.) That message read: "GroupMe is a group texting service. Standard SMS rates may apply. Get the app at http://groupme.com/a to chat for free. Reply #exit to quit or #help for more." (Dkt. 120-1, Ex. B at GM_0000099.) Thus, regardless of whether the equipment used by GroupMe to send the Mobile App Texts constitutes an ATDS under the TCPA, GroupMe's sending of these artificial, prewritten text messages to Glauser violates the TCPA's proscription against making a call to a cell phone "using . . . an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). Consequently, GroupMe's conduct violated the TCPA even if no ATDS was used, and, for that reason alone, summary judgment in GroupMe's favor should not be granted.

## CONCLUSION

For the foregoing reasons, Plaintiff Brian Glauser respectfully requests that the Court enter an Order denying GroupMe's motion for summary judgment in its entirety and awarding

such other and further relief as this Court deems reasonable and just.

Respectfully Submitted,

**BRIAN GLAUSER**, individually and on behalf of all others similarly situated,

Dated:  September 29, 2014

By:_____
One of Plaintiff's Attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Mark S. Eisen (SBN 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 92688
Tel: 213.533.4100
Fax: 213.947.4251