BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
J. JONATHAN HAWK (SBN 254350)
jhawk@whitecase.com
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA 90071-2007
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

BIJAL V. VAKIL (SBN 192878)
bvakil@whitecase.com
WHITE & CASE LLP
5 Palo Alto Square, 9th Floor
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for Defendant
GROUPME, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BRIAN GLAUSER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TWILIO, INC., a Delaware corporation; and GROUPME, INC., a Delaware corporation,<br><br>Defendants. | No. 4:11-cv-02584-PJH<br><br>DEFENDANT GROUPME, INC.'S:<br><br>(1) REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT;<br><br>(2) SUPPLEMENTAL DECLARATION OF JOHN PIGNATA; AND<br><br>(3) DECLARATION OF J. JONATHAN HAWK<br><br>Date: November 5, 2014<br>Time: 9:00 a.m.<br>Courtroom: 3 |

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 3

III. ARGUMENT ................................................................................................................... 5

    A. GroupMe Has Not Used an Autodialer ............................................................... 5

        1. Equipment Must Have the Present Capacity at the Time of Use to Generate Random or Sequential Phone Numbers to be an Autodialer ....... 6

        2. GroupMe Has Not Used a Predictive Dialer ............................................... 8

            a. All Autodialers Must Be Able to Generate Phone Numbers .......... 8

            b. Predictive Dialer Regulations Do Not Apply to Text Messages... 10

    B. Human Intervention Is Required to Route Plaintiff Text Messages ..................... 12

        1. Plaintiff Does Not Plead GroupMe Used a Predictive Dialer .................... 12

        2. GroupMe/Twilio Require Human Intervention to Route Messages ......... 12

    C. GroupMe Did Not Use an Artificial or Prerecorded Voice to Contact Plaintiff... 14

IV. CONCLUSION .............................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Am. Int'l. Grp., Inc. v. Bank of Am.*,
712 F.3d 775 (2d Cir. 2013) .................................................................................. 10, 11

*Asociacion de Trabajadores v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010) ................................................................................ 12, 15

*Bates v. Dollar Loan Ctr., LLC*,
2014 WL 3516260 (D. Nev. July 15, 2014) .................................................................. 10

*Buslepp v. Miami Improv, Inc.*,
2012 WL 4932692 (S.D. Fla. Oct. 16, 2012) .................................................................. 5

*Davis v. Diversified Consultants, Inc.*,
2014 WL 2944864 (D. Mass. June 27, 2014) ................................................................ 10

*De Los Santos v. Millward Brown, Inc.*,
2014 WL 2938605 (S.D. Fla. June 30, 2014) ......................................................... 6, 7, 8

*Dominguez v. Yahoo!, Inc.*,
2014 WL 1096051 (E.D. Pa. Mar. 20, 2014) ........................................................ passim

*Fields v. Mobile Msgrs. of Am., Inc.*,
2013 WL 6774076 (N.D. Cal. Dec. 23, 2013) ......................................................... 10, 12

*Gragg v. Orange Cab Co.*,
995 F. Supp. 2d 1189 (W.D. Wash. 2014) ............................................................. passim

*Griffith v. Consumer Portfolio Srvcs., Inc.*,
838 F. Supp. 2d 723 (N.D. Ill. 2011) ............................................................................ 10

*Hernandez v. Collection Bureau of Am., Ltd.*,
2014 U.S. Dist. LEXIS 140661 (C.D. Cal. Apr. 16, 2014) ........................................... 10

*Hickey v. VoxerNet, LLC*,
887 F. Supp. 2d 1125 (W.D. Wash. 2012) .............................................................. 10, 12

*Hunt v. 21st Mort. Corp.*,
2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) ..................................................... 5, 6, 7, 8

*Ibey v. Taco Bell Corp.*,
2012 U.S. Dist. LEXIS 91030 (S.D. Cal. June 18, 2012) ............................................... 7

*Iniguez v. The CBE Grp.*,
No. 2:13-cv-00843, Order, Dkt. No. 30 (E.D. Cal. Sept. 5, 2013) ............................... 15

*Lee v. LoanDepot.com, LLC*,
No. 6:14-cv-1084, Order, Dkt. No. 14 (D. Kan. Aug. 20, 2014) ..................................... 7

*Leyse v. Clear Channel Broad., Inc.*,
  545 Fed. Appx. 444 (6th Cir. 2013) .................................................................. 11

*Meyer v. Portfolio Recovery Assoc., LLC*,
  707 F.3d 1036 (9th Cir. 2012) ................................................................ 5, 7, 10

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ................................................................. 7, 10, 12

*Sherman v. Yahoo!, Inc.*,
  997 F. Supp. 2d 1129 (S.D. Cal. 2014) ............................................................. 7, 9

*Sterk v. Path, Inc.*,
  2014 WL 2443785 (N.D. Ill. May 30, 2014) ....................................................... 9

*Sterk v. Path, Inc.*,
  No. 1:13-cv-02330, Order, Dkt. No. 143 (N.D. Ill. Aug. 8, 2014) ......................... 9

## FEDERAL STATUTE

47 U.S.C. § 227(a)(1) ......................................................................................... 5, 8, 10

## FEDERAL RULES

Fed. R. Civ. Proc. 36(b) ................................................................................................ 15

Fed. R. Civ. Proc. 56 ........................................................................................................ 5

Fed. R. Civ. Proc. 56(d) .............................................................................................. 9, 11

## FEDERAL REGULATIONS

47 C.F.R. § 64.1200(a)(7) ............................................................................................ 11

47 C.F.R. § 64.1200(f)(2) ............................................................................................ 5, 8

## REGULATORY PROCEEDINGS

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 23 FCC Rcd 559 (Jan. 4, 2008) ......................................... 9

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 27 FCC Rcd 15391 (Nov. 29, 2012) ................................. 8

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, FCC 14-33 (Mar. 27, 2014) .............................................. 3

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, 17 FCC Rcd 17459 (Sept. 18, 2002).......................... 11

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014 (July 3, 2003) ....................................................... 8

## I. INTRODUCTION

Defendant GroupMe, Inc. ("GroupMe") provides a free social messaging service Brian Glauser ("Plaintiff") used on April 23, 2011, to communicate among friends and arrange times to play poker. Plaintiff never asked to be removed from that "Poker" group and even registered with GroupMe on June 23, 2011, to create and send his own messages using its service. Yet, on May 27, 2011, he sued GroupMe alleging it violated the Telephone Consumer Protection Act ("TCPA") by sending him a text message welcoming him to the "Poker" group.

GroupMe's summary judgment motion ("MSJ") and its uncontroverted evidence negate an essential element of Plaintiff's claim. They show GroupMe, using its technology and technology from non-party Twilio, Inc. ("Twilio"),[1] never sent Plaintiff text messages using an "automatic telephone dialing system" ("autodialer"). Their respective technologies lacked functionalities the TCPA and the Federal Communications Commission ("FCC") find necessary for equipment to constitute an autodialer. Specifically, the TCPA and the FCC define "autodialer" as "equipment which has the capacity to -- (A) store or produce telephone numbers to be called, <u>using a random or sequential number generator</u>." (Emphasis added.)

GroupMe's uncontroverted evidence shows it and Twilio: (1) have never been able to generate random or sequential phone numbers; and (2) have never been able to route text messages without a group member first taking a specified action -- adding a new member to a group or sending a social message. Group members provide GroupMe with the numbers to which messages are routed, and members necessarily trigger the routing of all messages within a group.

Plaintiff spends most of his opposition to the MSJ arguing for an overbroad definition of "autodialer" that is against the weight of the most recent case law and FCC authority. Plaintiff also fails to carry his burden under Federal Rule of Civil Procedure ("Rule") 56 to produce evidence creating a genuine issue of material fact under any definition of the term "autodialer."

First, Plaintiff argues GroupMe and Twilio's technologies are autodialers because,

---

[1] Plaintiff has apparently narrowed his claim to text messages received on or before June 20, 2011. Opp. at 2. During that time period, GroupMe used only its and Twilio's technology to route text messages to Plaintiff. *See* Pignata Decl., ¶ 5.

1

hypothetically, they could be reprogrammed to generate phone numbers, *i.e.*, they have "potential" capacity to autodial. Within the past thirteen months, four district courts from the Ninth, Third, and Eleventh Circuits have considered and rejected this definition of "capacity" as overbroad and inconsistent with the language of the TCPA. Only one district court cited by Plaintiff ruled favorably regarding his argument, but that court misread the same Ninth Circuit opinions also considered by the four district courts that rejected Plaintiff's argument.

Second, Plaintiff argues GroupMe and Twilio's technologies are "predictive dialers" and constitute autodialers even without the ability to generate phone numbers. Plaintiff, however, has never pleaded GroupMe used a predictive dialer and cannot now take that position. Moreover, the most recent district court opinion to consider Plaintiff's interpretation of a "predictive dialer" noted, less than three months ago, Plaintiff's argument rests on an "incomplete" reading of a key FCC ruling from November 2012, and GroupMe's interpretation, requiring all autodialers be able to generate random or sequential numbers, is consistent with that ruling. Only one of Plaintiff's authorities even considered the 2012 FCC ruling, but that district court did not rely on it and provides no support for Plaintiff. Finally, the FCC's rulings on predictive dialers make clear they apply only to voice calls and should not be extended to the text messaging technology here.

Third, Plaintiff argues GroupMe's process of routing text messages to Plaintiff was entirely automated. Yet, Plaintiff and his "expert," an employee of Plaintiff's counsel, admittedly disregard all evidence showing GroupMe and Twilio can only route text messages in direct response to a GroupMe user's actions. Plaintiff's "expert" never reviewed GroupMe's MSJ or declarations, and, instead, focused entirely on how GroupMe and Twilio deliver and receive messages <u>after</u> a group user initiates sending a text message. This is not the proper focus because it purposely ignores the human intervention that causes the text message to be sent.

Finally, Plaintiff argues text messages he received from GroupMe constitute an "artificial or prerecorded voice." However, Plaintiff admitted in response to a request for admission that GroupMe never used an artificial or prerecorded voice to contact him, and he never pleaded such a claim. Hawk Decl., ¶¶ 2-3, Ex. D; Am. Compl., Dkt. No. 34 at ¶ 55 (Sept. 15, 2011). Plaintiff's interpretation of "voice" to include "written words" also has no support in fact or law.

GroupMe's uncontroverted evidence shows it does not use, and never has used, an autodialer. For the reasons shown in the MSJ and herein, GroupMe respectfully requests the Court grant the MSJ because it did not use an autodialer.

## II. FACTUAL BACKGROUND

GroupMe is a free social messaging service used by a wide range of real-life networks to communicate, including cancer support groups, neighborhood watch groups, families, and emergency medical services. MSJ at 3-4 (citing Martocci Decl., ¶¶ 3-8). The most common group names on the service have been "Mom" and "Dad." *Id.*

GroupMe is not, as Plaintiff mischaracterizes it, a "telemarketer," and GroupMe does not, as Plaintiff incorrectly implies, make "intrusive telemarketing calls." Opp. at 5, 7. In fact, earlier this year, the FCC considered GroupMe's service and stated GroupMe is a "text-based social network," and its administrative, non-telemarketing text messages are "expected and desired" by consenting users. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, FCC 14-33 ¶¶ 4, 7, 8 (Mar. 27, 2014). Plaintiff's attempt to portray GroupMe as a telemarketer is a ruse.

On April 18, 2011, Mike L. created a group using GroupMe's service. MSJ at 7-8 (citing Martocci Decl., ¶¶ 17, 20-22, 30-31; Pignata Decl. ¶¶ 3-7). On April 23, 2011, Mike L. provided GroupMe with Plaintiff's name and phone number, and instructed GroupMe to add Plaintiff to the "Poker" group, then consisting of eight people. *Id.* By adding Plaintiff to the group, Mike L. triggered GroupMe's software to send Plaintiff a customized message welcoming him to the group and notifying him about how to avoid potential data charges by downloading the GroupMe smartphone app, exit the group, and avoid future group messages. *Id.* The "welcome" message exceeded the 160-character limit imposed by SMS, so it was broken into two messages:

> Hi Brian Glauser, it's Mike [L]. Welcome to GroupMe! I just added you to "Poker" w/ Richard [L]. Text back to join the conversation.
>
> GroupMe is a group texting service. Standard SMS rates may apply. Get the app at http://groupme.com/a to chat for free. Reply #exit to quit or #help for more.

Martocci Decl., ¶ 31, Dkt. No. 107-2 (Apr. 29, 2014).

Plaintiff then received social messages from other group members and Plaintiff responded

3

"In" to the group on April 23, 2011. MSJ at 8 (citing Martocci Decl., ¶ 31; Pignata Decl. ¶¶ 3-7). After he filed this action on May 27, 2011, Plaintiff registered with GroupMe to use its service on June 23, 2011, and, today, he remains a "Poker" group member. *Id.*

GroupMe's evidence shows GroupMe and Twilio routed text messages to Plaintiff as part of the "Poker" group. MSJ at 4-8. However, GroupMe and Twilio's software applications have only been capable of routing messages immediately after and in direct response to actions by group members, specifically, adding new members to a group or initiating their own text messages. *Id.* (citing Martocci Decl., ¶¶ 9-29; Pignata Decl., ¶¶ 3-7; Badri Decl., ¶¶ 5-9). GroupMe and Twilio have never been able to generate or dial random or sequential numbers. *Id.* They have never been able to engage in random messaging. *Id.* In fact, the customized "welcome" message is sent to one person at a time as a group creator adds members to a group. Because GroupMe limited the size of groups to 25 members during the proposed class period, there were no "blast" messages as messages can only be sent to the 25 or fewer members within a particular group. *Id.*

Plaintiff's evidence does not address any of these facts. Rather, it consists of a declaration from Shawn C. Davis, a full-time employee of Plaintiff's counsel, whose job is to analyze technologies for Plaintiff's counsel looking for data breaches and privacy violations, often before they file a lawsuit. Davis Decl., Dkt. No. 131-1 at ¶ 1; Hawk Decl., ¶ 4.a-c, Ex. E. Until this case, Mr. Davis had no experience with GroupMe's programming language (Ruby) or web programming framework (Ruby on Rails) about which he purports to offer an "expert" opinion. Davis Decl., ¶¶ 7, 13, 16, 21, 23, 25, 28, 32; Hawk Decl., ¶ 4.d, Ex. E.

Mr. Davis failed to review GroupMe's MSJ or supporting declarations. Hawk Decl., ¶ 4.e-h, Ex. E. He testified he cannot dispute evidence showing GroupMe and Twilio have only been able to route text messages in direct response to user action. *Id.* Rather, Mr. Davis formed his opinions based solely on how GroupMe and Twilio deliver and receive messages <u>after</u> a group user adds a new member or initiates his or her own text message to other group members. *Id.*

GroupMe's uncontroverted evidence shows GroupMe and Twilio have never been able to generate phone numbers. That evidence shows GroupMe and Twilio have only been capable of routing text messages immediately after and in direct response to a group member's action.

## III. ARGUMENT

The three elements of Plaintiff's TCPA claim are: (1) a defendant called a cell phone; (2) using an autodialer; (3) without "prior express consent" from the called party. *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d, 1189, 1192 (W.D. Wash. 2014) (citing *Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)). Plaintiff has the burden of persuasion at trial on each of these elements, including that GroupMe sent him text messages using an autodialer. *Id.*; *Buslepp v. Miami Improv, Inc.*, 2012 WL 4932692, at *2 (S.D. Fla. Oct. 16, 2012).

In support of its MSJ, GroupMe produced evidence showing it did <u>not</u> use an autodialer to send Plaintiff text messages. MSJ at 4-8. To survive summary judgment under Rule 56, Plaintiff had, but failed to carry, the burden to produce evidence supporting the autodialer element of his TCPA claim. *Buslepp*, 2012 WL 4932692, at *2. Summary judgment is appropriate.

### A. GroupMe Has Not Used an Autodialer

The TCPA and FCC's implementing regulations define "autodialer" as "equipment which has the capacity -- (A) to store or produce numbers to be called, <u>using a random or sequential number generator</u>. . . ." MSJ at 10-13 (citing 47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2) (emphasis added)). Citing three opinions issued within the last thirteen months from district courts in the Ninth, Third and Eleventh Circuits, GroupMe's MSJ shows, to constitute a "random or sequential number generator" under the TCPA, equipment must be able to autonomously generate "random sequences of [ten] digit" phone numbers or autonomously generate sequential sets of ten-digit phone numbers, *e.g.*, "(111) 111-1111, (111) 111-1112, and so on." MSJ at 11 (citing *Gragg*, 995 F. Supp. 2d at 1193; *Dominguez v. Yahoo!, Inc.*, 2014 WL 1096051, at *5-6 (E.D. Pa. Mar. 20, 2014); *Hunt v. 21st Mort. Corp.*, 2013 WL 5230061, at *3-4 (N.D. Ala. Sept. 17, 2013)).

GroupMe's evidence in support of its MSJ negated any possibility of its or Twilio's technologies ever being able to perform these functions. That evidence shows the technologies used to route messages to Plaintiff never have been able to generate random or sequential phone numbers. MSJ at 6-8 (citing Martocci Decl., ¶¶ 24-29; Pignata Decl., ¶ 3; Badri Decl., ¶ 8). Group members provide GroupMe with phone numbers, just as Mike L., the "Poker" group creator, provided GroupMe with Plaintiff's number when he added Plaintiff to the "Poker" group. *Id.*

5

Plaintiff does not dispute these facts. Rather, Plaintiff seeks to avoid summary judgment by arguing for an overbroad interpretation of "autodialer." Opp. at 6-16. Plaintiff argues GroupMe and Twilio's technologies are autodialers because they: (1) are software applications that could hypothetically be reprogrammed to generate phone numbers, *i.e.*, they have "potential" capacity; and (2) are "predictive dialers" that route text messages without human intervention, which, according to Plaintiff, constitute autodialers even without the ability to generate phone numbers. *Id.* Plaintiff's legal interpretation of "autodialer" is incorrect.

### 1. Equipment Must Have the Present Capacity at the Time of Use to Generate Random or Sequential Phone Numbers to be an Autodialer

GroupMe's MSJ, citing *Gragg*, *Dominguez*, and *Hunt*, shows the majority of courts to consider this issue have held equipment is an autodialer only if, <u>at the time of use</u>, it can generate phone numbers -- the equipment has "present" capacity. MSJ at 11-13 (citing *Gragg*, 995 F. Supp. 2d at 1193; *Dominguez*, 2014 WL 1096051, at *5-6; *Hunt*, 2013 WL 5230061, at *3-4). Congress wrote the TCPA in the "present tense," defining an autodialer as equipment which "<u>has</u> the capacity" to perform specified functions. *Id.*

The *Gragg* and *Hunt* courts rejected the same misinterpretation of "capacity" Plaintiff advocates here -- equipment is an autodialer if it could be reprogrammed to generate phone numbers. MSJ at 13 n.4 (citing *Gragg*, 995 F. Supp. 2d at 1196, and *Hunt*, 2013 WL 5230061, at *4). The *Gragg* and *Hunt* courts reasoned that focusing on technology's "<u>potential</u> capacity to store or produce and call telephone numbers using a random or sequential number generator" would unacceptably "capture many of contemporary society's most common technological devices within the statutory definition [of an autodialer]." *Id.* (emphasis in original).

Less than four months ago, after GroupMe filed its MSJ, yet another district court in the Eleventh Circuit reached the same conclusion. *De Los Santos v. Millward Brown, Inc.*, 2014 WL 2938605, at *6 (S.D. Fla. June 30, 2014). The *De Los Santos* court, agreeing with *Gragg*, *Hunt*, and *Dominguez*, reasoned that focusing on equipment's potential capacity to be reprogrammed, would provide "no 'outer limit'" on the term "autodialer" because "virtually every telephone in existence given a team of sophisticated engineers working doggedly to modify it, could possibly

store or produce numbers using a random or sequential number generator," and could also subject the TCPA to a First Amendment challenge on the ground it is unconstitutionally overbroad. *Id.*

Plaintiff disregards these opinions and asks the Court to determine equipment is an autodialer if it has the theoretical or "potential" capacity to be modified to generate random or sequential phone numbers, arguing incorrectly that two Ninth Circuit opinions -- *Satterfield* and *Meyer* -- support his position. Opp. at 16-17. Plaintiff misreads them, as neither opinion ruled on this issue. *Satterfield* considered evidence regarding a piece of equipment's actual capacity at the time of use. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). In *Meyer*, defendant made GroupMe's "present" capacity argument, but the court never ruled on it because there was no dispute the equipment "ha[d] the capacity described in the TCPA." 707 F.3d at 1043.

Further, *Gragg*, *Dominguez*, and *Hunt* all cited *Satterfield* and/or *Meyer* on the "capacity" issue, and still rejected Plaintiff's "potential" capacity argument. *Gragg*, 995 F. Supp. 2d at 1195 (*Satterfield* "does not justify the later judicial gloss on which plaintiff relies"); *Dominguez*, 2014 WL 1096051, at *5 n.6 (citing *Satterfield*); *Hunt*, 2013 WL 5230061, at *3 (citing *Satterfield* and *Meyer*).[2] *Satterfield* and *Meyer* provide no support for Plaintiff.

Plaintiff's only other authority on this is an outlier opinion from the Southern District of California. Opp. at 17 (citing *Sherman v. Yahoo!, Inc.*, 997 F. Supp. 2d 1129 (S.D. Cal. 2014)). *Dominguez* considered the same service offered by the same defendant (Yahoo!) as *Sherman*, and ruled the other way. *Dominguez*, 2014 WL 1096051, at *5-6. *Gragg*, on a motion for reconsideration, also directly addressed and rejected the reasoning applied in *Sherman*. *Gragg*, 995 F. Supp. 2d at 1195-96. *Sherman* is a minority of one, even within its own district. *See, e.g., Ibey v. Taco Bell Corp.*, 2012 U.S. Dist. LEXIS 91030, at *9 (S.D. Cal. June 18, 2012) (autodialer must "use a random or sequential number generator to text the numbers").

The weight of authority holds, to constitute an autodialer, equipment must have the present capacity at the time of use to generate random or sequential phone numbers. This is the better reasoned position. It comports with the language of the TCPA and provides a constitutional

---

[2] At least one other court ruled *Satterfield* did not resolve Plaintiff's "potential" capacity argument. *Lee v. LoanDepot.com, LLC*, No. 6:14-cv-1084, Order, Dkt. No. 14 at 3 (D. Kan. Aug. 20, 2014).

limit on what constitutes an autodialer in light of today's technology. Here, the Court should adopt the "present" capacity definition from *Gragg, Dominguez, Hunt,* and *De Los Santos*.

### 2. GroupMe Has Not Used a Predictive Dialer

Separate from his "potential" capacity argument, Plaintiff argues the FCC has ruled "predictive dialers" constitute "autodialers," even if predictive dialers cannot generate random or sequential phone numbers. Opp. at 6-16. Plaintiff argues he can establish his autodialer theory by showing GroupMe and Twilio merely "dial[] from a list of [stored] numbers without human intervention." Opp. at 14. Plaintiff misreads the FCC's regulations, and his authorities ignore a key FCC ruling from 2012 that clarifies all autodialers must be able to generate phone numbers.

#### a. All Autodialers Must Be Able to Generate Phone Numbers

The plain text of the TCPA and the FCC's implementing regulations have always defined an autodialer as a "random or sequential number generator." 47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2). These authorities have never defined autodialer relying solely on a piece of equipment's ability to dial phone numbers from a list without human intervention. *Id.*

The FCC confirmed this on November 29, 2012, stating:

> [u]nder the TCPA, the term 'automatic telephone dialing system' or 'autodialer' is defined as 'equipment which has the capacity to –
> (A) store or produce telephone numbers to be called, using a random or sequential number generator. . . . The Commission has emphasized that this definition covers any equipment that <u>has</u> the specified <u>capacity to generate</u> and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists. . . .

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 27 FCC Rcd 15391, 15391 ¶ 2 n.5 (Nov. 29, 2012) ("2012 FCC Ruling") (emphasis added). The 2012 FCC Ruling, in no uncertain terms, supports GroupMe's position. An autodialer must have "the specified <u>capacity to generate numbers</u> and dial . . . regardless of whether the numbers . . . come from calling lists. . . ." *Id.* (emphasis added).

Plaintiff's argument to the contrary stems from misreading the plain language of the 2012 FCC Ruling and FCC rulings from 2003 and 2008. Opp. at 8 (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd

14014 (July 3, 2003) ("2003 Report and Order"), and *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Decl. Ruling, 23 FCC Rcd 559 (Jan. 4, 2008)). The FCC's 2003 and 2008 rulings did not eliminate the requirement that an autodialer "us[e] a random or sequential number generator;" they merely clarified certain equipment could be an autodialer if it had the capacity (used or unused) to generate phone numbers it dialed. *Id.*

The district court that most recently considered Plaintiff's "predictive dialer" argument in light of the 2012 FCC Ruling agreed with GroupMe's interpretation of FCC authority. In *Sterk v. Path, Inc.*, 2014 WL 2443785, at *2-4 (N.D. Ill. May 30, 2014),[3] Plaintiff's attorneys, Edelson PC, made the same argument they make here -- predictive dialers do not need to be able to generate random or sequential numbers to constitute autodialers. The *Sterk* court initially agreed. *Id.* Upon reassignment, however, a new judge certified the issue for interlocutory appeal to the Seventh Circuit. *Sterk v. Path, Inc.*, No. 1:13-cv-02330, Order, Dkt. No. 143 at 3 (N.D. Ill. Aug. 8, 2014). The new judge reviewed the same interpretation of "predictive dialer" Plaintiff requests here and noted such a reading of the 2012 FCC Ruling "is incomplete:"

> [i]n Sterk's view, the FCC's language -- dialing stored numbers without human intervention -- is all that is required for a system to fall under the TCPA. . . . But plaintiff's argument about the FCC's decision is incomplete. In describing the dialing-without-human-intervention concept, the FCC has 'emphasized that [the statutory] definition covers any equipment that has the specified <u>capacity to generate numbers and</u> dial them without human intervention. . . ."

*Id.* (emphasis in original). The court went on to note GroupMe's position -- all autodialers must be able to generate numbers -- "is consistent with the FCC's 2012 [Ruling]." *Id.*

Plaintiff also argues incorrectly that case law supports his argument. Opp. at 9-11. Yet, as Plaintiff admits, FCC authority binds district courts, *id.*, and only one of Plaintiff's authorities considered the 2012 FCC Ruling. That case is inapposite. *Sherman* cited the 2012 FCC Ruling (believing incorrectly it was from 2003), but "did not rest its holding on" whether Yahoo! used a predictive dialer. The *Sherman* court denied Yahoo!'s summary judgment motion based on its adoption of the "potential" capacity theory discussed above. *Sherman*, 997 F. Supp. 2d at 1141.

---

[3] Plaintiff appears to have abandoned his previous reliance on the *Sterk* court's order granting summary judgment. *See* Dkt. No. 112 at 8, 9, 10 n.9. Regardless, GroupMe distinguished that ruling in its opposition to Plaintiff's Rule 56(d) motion. *See* Dkt. No. 113 at 23-25.

None of Plaintiff's remaining authorities considered the 2012 FCC Ruling. *Satterfield* and *Meyer* did not consider it. *Satterfield*, 569 F.3d at 948 (decided in 2009); *Meyer*, 707 F.3d at 1040 (initially decided in October 2012, and amended on an unrelated issue in December 2012). The rest of Plaintiff's district court authorities likewise did not consider the 2012 FCC Ruling and, instead, relied on the FCC's 2003 and 2008 rulings, *Satterfield*, and/or *Meyer*.[4] Consideration of the 2012 FCC Ruling in those cases would have resulted in a different outcome.

Finally, Plaintiff's statutory interpretation argument must fail. Plaintiff argues the term ". . . , using a random or sequential number generator" "modifies only the term 'produce'" that immediately precedes it. Opp. at 12. Yet, basic rules of statutory interpretation dictate the term ". . ., using a random or sequential number generator" modifies the "entire series" of items preceding the comma -- "to store or produce telephone numbers to be called." 47 U.S.C. § 227(a)(1); *see generally Am. Int'l. Grp., Inc. v. Bank of Am.*, 712 F.3d 775, 781-82 (2d Cir. 2013).

This Court should follow the FCC rulings. Reading all of the authorities together shows GroupMe is entitled to summary judgment, as GroupMe and Twilio's technologies cannot, and never have been able to, generate random or sequential numbers.

### b. Predictive Dialer Regulations Do Not Apply to Text Messages

Even assuming *arguendo* a predictive dialer without the ability to generate phone numbers can be an autodialer (which it cannot), GroupMe's MSJ shows the FCC's predictive dialer rulings apply only to voice calls. MSJ at 16-17 (citations omitted). A predictive dialer is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." 2003 Report and Order, ¶ 131.

Consistent with the FCC's definition of predictive dialer, the FCC's rulings on this issue focus solely on equipment used in connection with "sales agents" making voice calls to consumers using equipment with "a timing function" to "predict" when a consumer will answer the phone so

---

[4] *Fields v. Mobile Msgrs. of Am., Inc.*, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013); *Hernandez v. Collection Bureau of Am., Ltd.*, 2014 U.S. Dist. LEXIS 140661, at *2-9 (C.D. Cal. Apr. 16, 2014); *Bates v. Dollar Loan Ctr., LLC*, 2014 WL 3516260, at *2 (D. Nev. July 15, 2014); *Davis v. Diversified Consultants, Inc.*, 2014 WL 2944864, at *6 (D. Mass. June 27, 2014); *see also Griffith v. Consumer Portfolio Srvcs., Inc.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011); *Hickey v. VoxerNet, LLC*, 887 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2012).

a "telemarketer will be available to take the call." *Id.* These rulings do not mention text messages. *Id.* The factual scenarios in these rulings are inapplicable to text messaging technologies because, like GroupMe and Twilio, they do <u>not</u> involve sales agents making voice calls at varying intervals determined by an algorithmic timing function designed to ensure a live person is available to speak to a called party. The FCC's predictive dialer rulings do not cover text messaging technologies and do not bind the Court here. *See Leyse v. Clear Channel Broad., Inc.*, 545 Fed. Appx. 444, 448-51 (6th Cir. 2013) (courts can determine scope of FCC ruling without violating Hobbs Act).

FCC rulings on predictive dialers should also <u>not</u> apply here by extension. The policy concerns underlying FCC regulation of predictive dialers are not present with text messages. The FCC regulated predictive dialers because consumers complained predictive dialers made calls while sales agents were busy speaking with other customers and unavailable, thereby resulting in consumers answering phones and hearing "dead air" while they waited for a salesperson or disconnection. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, 17 FCC Rcd 17459, 17465, -69, -75 at ¶¶ 7, 15, 26 n.37 (Sept. 18, 2002) ("2002 NPRM"). These "abandoned calls" left consumers "feel[ing] harassed or aggravated." 2003 Report and Order, ¶ 147.

Since 2002, within its TCPA regulations, the FCC has created a complex regulatory scheme for predictive dialers, designed to protect consumers from "abandoned" and "dead air" calls, and these regulations, by their terms, can be applied only to voice calls. 2002 NPRM, ¶¶ 15, 26; 2003 Report and Order, ¶¶ 131-133, 146-158; 47 C.F.R. § 64.1200(a)(7). The FCC's predictive dialer rules regulate the frequency with which predictive dialers can acceptably "abandon calls," determine a call is "abandoned" if a salesperson does not engage the consumer within two seconds of the consumer answering his/her phone, and require callers avoid "dead air" by playing a prerecorded voice message for consumers if a salesperson is unavailable to take the call. *Id.*

Text messages do not involve "abandoned" calls, hang-ups, or dead air. The Court should not extend the FCC's predictive dialer rulings beyond their policy and factual underpinnings. GroupMe made this argument in opposition to Plaintiff's Rule 56(d) motion. *See* Dkt. No. 113 at 22-23. Plaintiff did not address it then, and the authorities he now cites are inapposite. Only

11

*Satterfield*, *Fields* and *Hickey* address text messages allegedly sent by a "predictive dialer." Yet, none of those cases addresses and rules on the 2012 FCC Ruling or arguments above regarding the scope of the FCC's predictive dialer rulings. Moreover, *Hickey* is a ruling on a motion to dismiss, *Hickey*, 887 F. Supp. 2d at 1129-30, and *Fields* relied on the holding in *Meyer*, 2013 WL 6774076, at *3, which did not involve text messages and did not consider the arguments made here. The FCC's predictive dialer rulings have no application here and should not be extended.

### B. Human Intervention Is Required to Route Plaintiff Text Messages

Assuming *arguendo* Plaintiff's expansive definition of "predictive dialer" applies (which it does not), Plaintiff has the burden to show GroupMe's technology: (1) stores phone numbers; and (2) calls those numbers "automatically and without human intervention." *See Gragg*, 995 F. Supp. 2d at 1193-95; Opp. at 15. Plaintiff, again, fails to carry his burden.

#### 1. Plaintiff Does Not Plead GroupMe Used a Predictive Dialer

Plaintiff argues throughout his opposition that GroupMe sent him text messages using a "predictive dialer," which, according to Plaintiff, does not need to have the capacity to generate random or sequential phone numbers to constitute an autodialer. Opp. at 8-13. Yet, Plaintiff does not plead GroupMe used such a variety of "autodialer." Plaintiff pleads only, in accordance with the TCPA definition, GroupMe sent text messages "using a random or sequential number generator." Am. Compl., ¶ 55; *see also Dominguez*, 2014 WL 1096051, at *5 n.6.

In order to argue he properly pleads his predictive dialer theory, Plaintiff makes an argument entirely inconsistent with much of his opposition -- predictive dialers "fall within the statutory definition of" autodialer. Opp. at 7 n.6, 10, 15 n.12. Plaintiff cannot have it both ways. Either all autodialers have the capacity to generate numbers as the statutory definition requires, or Plaintiff fails to plead the theory he now attempts to pursue. *See Asociacion de Trabajadores v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (cannot oppose summary judgment by raising an unpleaded theory). GroupMe is entitled to summary judgment under either scenario.

#### 2. GroupMe/Twilio Require Human Intervention to Route Messages

GroupMe's evidence shows every text message sent across its service, without exception, is sent immediately and in direct response to a GroupMe user instructing GroupMe to do

12

something. MSJ at 5, 17-18 (Martocci Decl., ¶¶ 9-29; Pignata Decl., ¶ 3; Badri Decl., ¶¶ 5-9); Supp. Pignata Decl., ¶ 4. Without user action, messages never have been and cannot be routed. *Id.*

This same level of human intervention was sufficient to defeat an autodialer allegation in *Gragg*, where the court noted "[t]he system is able to dial and transmit the [text message] only after the driver has physically pressed 'accept,"' and deemed human intervention "essential." *Gragg*, 995 F. Supp. 2d at 1194. The same cause-and-effect is present here. GroupMe and Twilio route text messages only immediately after, and in direct response to, a user adding a group member or initiating a text message. This manner of human intervention is consistent with the legislative history of the TCPA. H.R. Rep. 101-633, Dkt. No. 25-3 at 3 (1990 WL 259268, at *2 (July 27, 1990)), judicially noticed at Order, Dkt. No. 73 at 5. Congress expressed concern that automated equipment would "seize" a recipient's phone line and, without a live person to take the call, not disconnect when the called party hung up. *Id.* Phone lines are not "seized" here.

Plaintiff produced absolutely no evidence challenging GroupMe's showings, and cited no authority applying a different interpretation of human intervention. Still, Plaintiff argues incorrectly and summarily GroupMe's "entire process was automated" and "no human activity was actually involved (or necessary) to send the text messages at-issue." Opp. at 4, 16. Plaintiff bases these arguments solely on Mr. Davis's opinions, which ignore key evidence and are wrong.

Mr. Davis ignored all evidence describing how a GroupMe user's actions cause GroupMe and Twilio to route a text message. Hawk Decl., ¶ 4.e-g, Ex. E. Mr. Davis never reviewed GroupMe's evidence in support of its MSJ, and admitted he has no basis to dispute that evidence:

> Q: Sure. If somebody in this case has taken the opinion that these messages you've referred to as [']preprogrammed['] text messages cannot be sent unless a user takes some action, do you have any basis to dispute that?
> 
> \* \* \*
> 
> A: No. I don't think I could definitively dispute that, no.

*Id.* Mr. Davis bases his opinions only on how GroupMe and Twilio deliver and receive messages <u>after</u> a GroupMe user adds a group member or initiates a message. *Id.* at ¶ 4.h. For example, as to the "welcome" message, Mr. Davis admits it can be sent only if another user adds a new member:

> Q: [']Without human intervention['] to you means that the user had to do absolutely nothing in order for that message to be sent out?

13

> A: Well, I mean as you said, there's always going to be a start, where a user has to do something. <u>I mean, the user would have to add the person to the group</u> . . . but once everything is set up, then, yes, certain aspects of this are fully automated and don't require any human intervention.

Hawk Decl., ¶ 4.f (emphasis added); Supp. Pignata Decl., ¶¶ 3-4. Mr. Davis also admits the welcome message Plaintiff received was <u>not</u> entirely "pre-programmed." Hawk Decl., ¶ 4.g.v.

Mr. Davis testified he believes GroupMe and Twilio "automatically dial[] phone numbers" only because his analysis disregards the user action required to initiate the entire process. Hawk Decl., ¶ 4.h. His analysis is akin to assessing the defendant's system in *Orange Cab* based only on what happened after the taxi driver pressed "accept," and would, applied to more common behaviors, mean all individual text messages sent using smartphones (not even using GroupMe) are sent "without human intervention."[5] His analysis is wrong.

Plaintiff also fails to distinguish *Gragg* factually.[6] Plaintiff argues *Gragg* is inapposite because, there, the text message was sent to the person who requested the taxi. Opp. at 15-16. That argument goes, at most, to whether there was "prior express consent," which is a complete defense to a TCPA claim, but is irrelevant to determining whether an autodialer was used.

GroupMe and Twilio cannot, and have never been able to, route text messages without human intervention. GroupMe is entitled to summary judgment.

### C. <u>GroupMe Did Not Use an Artificial or Prerecorded Voice to Contact Plaintiff</u>

Plaintiff argues incorrectly, for the first time and without supporting authority, that text messages he received as part of the "Poker" group constitute "artificial or prerecorded voice[s]" under the TCPA. Opp. at 17-18. This argument fails for three reasons.

First, Plaintiff admitted, in response to a request for admission, GroupMe did <u>not</u> use an artificial or prerecorded voice to contact him:

> **REQUEST FOR ADMISSION NO. 5:** Admit GroupMe, Inc. never contacted you using an artificial or prerecorded voice.

---

[5] Mr. Davis also testified he believes sending an SMS message from a smartphone without using GroupMe is an "automated" process, performed "without human intervention," as long as he focuses solely on what happens after a user presses "send." Hawk Decl., ¶ 4.i, Ex. E.

[6] Plaintiff argues *Gragg* held incorrectly equipment must be "either an [autodialer] or a predictive dialer." Opp. at 14. This, addressed above, does not impact the "human intervention" analysis.

**ANSWER:** Plaintiff admits this Request.

Hawk Decl., ¶¶ 2-3, Ex. D. This is "conclusively established." *See* Fed. R. Civ. P. 36(b).

Second, Plaintiff does not plead GroupMe used an artificial or prerecorded voice to contact him. The autodialer and "artificial or prerecorded voice" provisions create separate TCPA violations. Plaintiff pleads only one of them -- GroupMe used a "random or sequential number generator." Am. Compl., ¶ 55; *Iniguez v. The CBE Grp.*, No. 2:13-cv-00843, Order, Dkt. No. 30 at 9 (E.D. Cal. Sept. 5, 2013). Plaintiff cannot pursue an unpleaded theory to avoid summary judgment. *See Asociacion de Trabajadores*, 624 F.3d at 1089.

Third, Plaintiff argues the definition of "artificial or prerecorded <u>voice</u>" includes "written words," and, thus, SMS. Opp. at 18 (emphasis added). Plaintiff's proposed definition disregards common definitions of "voice" and legislative history,[7] and, instead, relies on an inapposite dictionary definition that applies only to idioms. *See* http://dictionary.reference.com/browse/voice (providing example of "giv[ing] voice to one's disapproval by a letter") (Oct. 14, 2014); Opp. at 18. The FCC has not adopted Plaintiff's misinterpretation of "voice," and, contrary to Plaintiff's assertion, there is nothing to be gleaned from a statement in the 2003 Report and Order on an unrelated issue. Opp. at 18. The FCC's 2012 Report and Order states the TCPA applies to "telephone calls using an [autodialer] or a prerecorded <u>voice</u>." 2012 Report and Order, ¶ 20. Plaintiff cannot avoid summary judgment by arguing GroupMe used an artificial or prerecorded voice to contact him (because it did not).

## IV. CONCLUSION

For the reasons above and in GroupMe's MSJ, GroupMe respectfully requests the Court grant its MSJ and enter judgment in its favor.

Dated: October 20, 2014

                                                     WHITE & CASE LLP

                                                     By:   /s/ *Bryan A. Merryman*
                                                                Bryan A. Merryman

                                                   Attorneys for Defendant
                                                   GROUPME, INC.

---

[7] Congr. Rec. – Sen., Dkt. No. 25-2 at 3 (1991 WL 250460 (Nov. 26, 1991) (Congressional concern with "tape-recorded voice[s]"), judicially noticed at Order, Dkt. No. 73 at 5.