UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN GLAUSER, individually and on behalf of all other similarly situated,

    Plaintiff,

    v.

GROUPME, INC.,

    Defendant.

_____/

No. C 11-2584 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on November 5, 2014. Plaintiff Brian Glauser ("plaintiff") appeared through his counsel, Rafey Balabanian. Defendant GroupMe, Inc. ("defendant" or "GroupMe") appeared through its counsel, Bryan Merryman. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion as follows.

## BACKGROUND

This putative class action arises under the Telephone Consumer Protection Act ("TCPA"), which prohibits the making of any call (including text messages) without the prior express consent of the called party, using an automatic telephone dialing system, to any telephone number assigned to a cellular telephone service. In the operative first amended complaint ("FAC"), plaintiff describes GroupMe's product as a "group messaging" application, which allows users to create a "group" and to transmit text messages to all members of the group at the same time.

On or about April 23, 2011, plaintiff received two text messages sent through the

GroupMe application. The messages read as follows:

> Hi Brian Glauser, it's Mike L. Welcome to GroupMe! I just added you to "Poker" w/ Richard L. Text back to join the conversation.
>
> GroupMe is a group texting service. Standard SMS rates may apply. Get the app at http://groupme.com/a to chat for free. Reply #exit to quit or #help for more.

Dkt. 54, ¶¶ 33, 35.[1]

These two messages will be referred to collectively as the "Welcome Texts[2]." After receiving the Welcome Texts, plaintiff received a number of messages from the "Poker" group's members. Plaintiff did not respond to these messages, so GroupMe sent a text saying "Hey, are you there? GroupMe is more fun when you participate! We'll remove you soon unless you reply to the group or text #stay. Reply #exit to leave." Dkt. 54, ¶ 38.

Plaintiff then received more messages sent by group members, discussing their plans for scheduling a poker game. Plaintiff still did not respond, so he received another message from GroupMe: "We haven't heard from you, so we removed you from this group to be on the safe side. Don't worry, though. You can always get back in by replying to this text." Dkt. 54, ¶ 39. Plaintiff then responded "In," which added him back to the group, and he continued to receive messages from other group members.

Plaintiff filed this action on May 27, 2011, asserting a single claim against GroupMe[3]

---

[1] In the FAC, plaintiff redacts the entire name of the group creator, and refers to him only as "group creator" (in brackets). However, defendant's publicly-filed motion refers to the group creator as "Mike L.", and as discussed below (in connection with the motions to seal), the court finds that disclosure of the group members' first names and last initials does not implicate their privacy interests.

[2] Defendant claims that the Welcome Texts actually constitute a single text message, broken into two parts due to character limits placed on text messages. In his opposition brief, plaintiff sometimes refers to the second part of the message as the "GroupMe Mobile App Text" (in the singular) and sometimes refers to the "GroupMe Mobile App Texts" (in the plural, presumably referring to both parts of the message). Because plaintiff received the messages separately, the court will treat them as two messages, and will refer to them collectively as the "Welcome Texts."

[3] Plaintiff also named an additional defendant – Twilio, Inc. ("Twilio") – in the original complaint and the FAC. Twilio provides the application program interface used to send the text messages through GroupMe's service. Plaintiff has since dismissed Twilio from the suit.

2

under the TCPA. The operative FAC was filed on September 15, 2011. Although the FAC references all of the above messages, its opposition brief references only the Welcome Texts (which plaintiff refers to as the "GroupMe Mobile App Text(s)"), and at the hearing, plaintiff's counsel confirmed that plaintiff was relying on only the Welcome Texts to oppose summary judgment, though he made clear that "both parts" were challenged.[4]

On January 27, 2012, the case was stayed pending FCC decisions on three issues: (1) the definition of an "automatic telephone dialing system" under the TCPA, (2) whether prior express consent could be received through an intermediary, and (3) the scope of the TCPA's "common carrier" exemption.

The court lifted the stay on March 27, 2014, after receiving no indication that any FCC action was forthcoming. The court also granted GroupMe permission to file an early motion for summary judgment on the issue of whether it used an "automatic telephone dialing system" (referred to as an "ATDS" or "autodialer"), as required to establish TCPA liability. The court directed the parties to conduct discovery on the "autodialer" issue, and GroupMe now moves for summary judgment on that issue.

**DISCUSSION**

A.  Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery

---

[4] Based on counsel's representation, the court will limit its analysis to whether the Welcome Texts raise a triable issue of fact regarding any alleged TCPA violation, and will not consider any other texts sent by GroupMe. The court is limited to addressing arguments actually raised by plaintiff, not those that could have been raised. See Kennan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (it is not the court's duty "to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

3

responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.   Legal Analysis

The relevant portion of the TCPA provides as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.

47 U.S.C. § 227(b).

The term "automatic telephone dialing system" is defined in the statute as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). GroupMe's central argument on this motion is that it did not use an "automatic telephone dialing system," as defined by the statute, because its equipment did not have the capacity to store or produce numbers randomly or sequentially.

The first issue raised by GroupMe's motion is whether TCPA liability depends on the present capacity (or "actual capacity") of a defendant's equipment to function as an autodialer, or the potential capacity of that equipment to function as an autodialer. GroupMe argues that TCPA liability must turn on a device's actual capacity, because a "potential capacity" test would create liability for any call made with a smartphone, or any other device capable of being programmed to store telephone numbers and to call them automatically. GroupMe points to the language of the statute, which refers to "equipment which has the capacity" to perform the relevant functions, and also cites the FCC's regulations, which similarly discusses "capacity" in the present tense. 47 U.S.C. § 227(a)(1); 27 F.C.C.R. 15391, 15392 n.5 ("The Commission has emphasized that this definition [of 'autodialer'] covers any equipment that has the specified capacity to generate numbers and dial them without human intervention.") (emphasis added). Finally, GroupMe cites to two district court cases holding that the relevant inquiry under the TCPA is the equipment's present capacity, rather than its potential capacity. See Hunt v. 21st Mortgage Corp., 2013 WL 5230061 (N.D. Ala. 2013); Gragg v. Orange Cab Co., 995 F.Supp.2d

1189, 1192-93 (W.D. Wash. 2014). Because Gragg involved a motion for summary judgment, whereas Hunt involved a Rule 34 motion to compel inspection, the court finds Gragg to be more relevant to its analysis.

While the facts of Gragg are distinguishable from the present case, that court addressed the same issue raised by GroupMe's motion – whether TCPA liability should turn on a system's present capacity, or potential capacity, to perform autodialing functions. The court found that a "potential capacity" rule would "capture many of contemporary society's most common technological devices within the statutory definition," noting the Hunt court's observation that all iPhone owners could be subject to TCPA liability, as "software could potentially be developed to allow their device to automatically transmit messages to groups of stored telephone numbers." 995 F.Supp.2d at 1193 (internal citation omitted).

In support of the "potential capacity" argument, plaintiff starts by citing the two relevant Ninth Circuit cases on the topic. The first such case, Satterfield v. Simon & Schuster, did not actually address the question of "present vs. potential capacity," and instead decided only whether courts should focus on "capacity" or "actual use." 569 F.3d 946, 951 (9th Cir. 2009) ("When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.") (emphasis in original). Satterfield's holding is entirely consistent with a "present capacity" interpretation of the statute, and indeed, the court notes Satterfield's use of the present tense when discussing equipment's capacity.

Three years after Satterfield, the Ninth Circuit again addressed the "capacity" issue in Meyer v. Portfolio Recovery Associates. 707 F.3d 1036 (9th Cir. 2012). The Meyer court initially acknowledged the defendant's argument that "its dialers do not have the present capacity to store or produce numbers using a random or sequential number

6

generator." Id. at 1043.  However, the court later clarified its understanding of the defendant's dialers, explaining that the defendant "does not dispute that its predictive dialers have the capacity described in the TCPA." Id. (emphasis added).  Thus, the court found that the defendant's dialers did indeed have the present capacity to perform autodialing functions, which was "sufficient to determine that [defendant] used an automatic telephone dialing system." Id.  Like Satterfield, the Meyer court did not reach the "present vs. potential capacity" argument, because it was undisputed that the defendant's dialers "have the capacity described in the TCPA." Id. at 1043 (emphasis added).  Thus, both Satterfield and Meyer are limited to the issue of "capacity vs. actual use," and neither address the issue of "present capacity vs. potential capacity."

For more definitive support regarding his "potential capacity" argument, plaintiff cites a district court case, Sherman v. Yahoo! Inc., 997 F.Supp.2d 1129 (S.D. Cal. 2014).  The Sherman court rejected the reasoning of Gragg, Hunt, and other "present capacity" cases, and instead found that the Ninth Circuit "specifically considered and rejected a defendant's argument that its dialers did not fall within the statutory definition of ATDS because its dialers did not 'have the present capacity to store or produce numbers using a random or sequential number generator.'" Id. at 1142 (quoting Meyer at 1043).

For the reasons explained above, the court disagrees with the Sherman court's conclusion that Meyer specifically rejected the "present capacity" argument.  That said, the court agrees with the Sherman court's very next statement that, in deciding Meyer, the Ninth Circuit "reaffirmed its previous holding in Satterfield that the TCPA focuses on the equipment's capacity rather than present use." 997 F.Supp.2d at 1142 (emphasis added).

As explained above, the court's view is that the Ninth Circuit has clearly rejected a focus on "actual use" rather than "capacity," but has not yet spoken on the issue of "present capacity" versus "potential capacity."  And on that latter issue, the court finds significant the use of the present tense by the statute, by the FCC, and by the Ninth Circuit.  The court further finds the reasoning of the Gragg and Hunt courts to be persuasive, that a "potential capacity" rule would "capture many of contemporary society's most common technological

7

devices within the statutory definition." Gragg, 995 F.Supp.2d at 1193 (internal citation omitted). Therefore, the court finds that the relevant inquiry under the TCPA is whether a defendant's equipment has the present capacity to perform autodialing functions, even if those functions were not actually used.

If the court had adopted plaintiff's "potential capacity" view, there would be no dispute that defendant's equipment was indeed an "autodialer," and defendant's motion would need to be denied. However, because the court has adopted the "present capacity" view, it must address the next issue raised by the parties – whether the TCPA's definition of "autodialer" includes predictive dialers.

As mentioned above, the TCPA defines an "autodialer" as having "the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Defendant argues that its equipment does not have the present capacity to dial numbers randomly or sequentially, and thus, its equipment cannot be an "autodialer."

While the TCPA's language does appear to support defendant's argument, in the years since the statute's passage in 1991, the FCC has issued regulations that expand the statutory definition, and under the Hobbs Act, the court is bound by those FCC rulings. See 28 U.S.C. § 2342(1).

In 2003, the FCC noted that, "[i]n the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily" (i.e., randomly), but that "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." 18 F.C.C.R. 14014, 14092 (2003). The FCC found it "clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies." Id. The FCC ultimately concluded that "predictive dialers" – which dial numbers from customer calling lists, rather than dialing numbers randomly or sequentially (i.e., in increasing the phone number by one digit for each call) – "fall[] within the meaning and the statutory definition of 'automatic telephone dialing equipment' and the intent of

8

Congress." Id. at 14093.

In 2008, the FCC "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," and in 2012, the FCC again confirmed that the statute covered systems with the "capacity to store or produce and dial those numbers at random, in sequential order, or from a database of numbers." 23 F.C.C.R 559, 566 (2008); 27 F.C.C.R. at 15392 n.5 (2012) (emphasis added). Thus, even though the statute defines "ATDS" narrowly, as having the capacity to use "a random or sequential number generator," the FCC made clear that the definition now includes "predictive dialers," which may dial numbers from preprogrammed lists, and which need not necessarily generate numbers randomly or sequentially. As a result, the court rejects defendant's argument that "[t]he plain text of the TCPA and the FCC's implementing regulations have always defined an autodialer as a 'random or sequential number generator.'" Dkt. 138 at 13. While the statute did indeed define an autodialer as such, the FCC's implementing regulations have expanded that definition, based on changes in technology, to include predictive dialers.[5]

In its 2008 ruling, the FCC has made clear that the defining characteristic of an "autodialer" is not the ability to make calls randomly or sequentially – instead, the "basic function" of an autodialer is "the capacity to dial numbers without human intervention." 23 F.C.C.R. at 566. The FCC further discussed the "autodialer" definition in 2012, explaining

---

[5] Defendant separately argues that, even if the statutory definition of "autodialer" includes predictive dialers, plaintiff did not plead the use of a predictive dialer in the FAC. Indeed, the FAC alleges that the relevant text messages were sent using equipment that "had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." FAC, ¶ 55. While this language does not specifically reference a predictive dialer, it does track the TCPA's definition of "automatic telephone dialing system," which has been expanded by the FCC to include predictive dialers. In other words, the FCC held that the words "using a random or sequential number generator" included the use of a calling list. So, by pleading according to the statutory language, plaintiff has already accounted for the FCC's expansion to include calling lists within the scope of the TCPA.

The court also rejects defendant's argument that the FCC regulations regarding predictive dialers do not apply to text messages. The FCC and the Ninth Circuit have made clear that a text message is a "call" for purposes of the TCPA, and defendant provides no justification for drawing any relevant distinction between the two.

9

that it "covers any equipment that has the specified capacity to generate numbers and dial them <u>without human intervention</u> regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 27 F.C.C.R. at 15392, n.5 (emphasis added). Thus, while the capacity for random/sequential dialing is not required for TCPA liability, the capacity to dial numbers without human intervention is required.

If the court had accepted defendant's argument that random/sequential dialing were indeed required, then this issue alone would warrant the granting of summary judgment, because plaintiff appears to concede that defendant's dialers do not have the capacity to dial randomly or sequentially. However, because the court has not accepted defendant's argument, it must now address the final issue raised by the present motion – whether its equipment had the capacity to send text messages without human intervention. Defendant argues that its system sent text messages only in response to user requests (i.e., in response to human intervention), and thus, does not constitute an "autodialer."

Specifically, defendant points to the text messages described in the FAC, and argues that they were either sent by group members themselves, and merely routed through defendant's application, or in the case of the Welcome Texts, triggered by the group creator's addition of plaintiff to the group. In other words, defendant claims that its application "reacted entirely to actions by group members," and never sent messages without human intervention.

In response, plaintiff argues that defendant's system did indeed dial numbers "from a stored list without human intervention through a straightforward process" of collecting and storing all group member information, automatically generating the pre-programmed Welcome Texts, and sending the Welcome Texts to group members. Plaintiff emphasizes that "[g]roup creators never asked GroupMe to send the [Welcome Texts], did not send the messages themselves, and were never informed that the messages would be sent." According to plaintiff, "once GroupMe obtained the telephone numbers of the newly added group members," the "entire process was automated," and "[n]o human intervention was needed or involved."

Even if the court were to accept plaintiff's description of the process by which the Welcome Texts were sent, it finds no basis for plaintiff's argument that the Welcome Texts were sent without human intervention. Plaintiff admits that the Welcome Texts were triggered when "GroupMe obtained the telephone numbers of the newly added group members" (including himself), and ignores the fact that GroupMe obtained those numbers through the actions of the group's creator. Thus, the Welcome Texts were sent to plaintiff as a direct response to the intervention of Mike L., the "Poker" group creator.

Plaintiff makes one additional argument, for the first time on this motion, that defendant's conduct violated the TCPA even if it did not use an autodialer. The statute makes it unlawful to use "any automatic telephone dialing system <u>or</u> an artificial or prerecorded voice" to place calls to a cellular phone, and plaintiff argues that the Welcome Texts were "artificial, prewritten text messages," and thus constitute an "artificial or prerecorded voice." This argument fails for three reasons. First, plaintiff did not plead the use of an "artificial or prerecorded voice" in his complaint. Second, plaintiff admitted in response to a request for admission that defendant "never contacted [him] using an artificial or prerecorded voice." Dkt. 138-2, Ex. D. Finally, while plaintiff argues that the TCPA's definition of "voice" is "not limited to verbal communications," he presents no authority for the argument that a text message can have a "voice" – artificial, prerecorded, or otherwise.

In sum, as to the allegedly-offending Welcome Texts, plaintiff has failed to raise a triable issue of fact as to whether defendant's texting equipment had the capacity to dial numbers without human intervention, as required to be considered an "autodialer" for TCPA purposes. For that reason, defendant's motion for summary judgment is GRANTED.

C.  Motions to seal

Both parties have filed motions to seal various documents and portions of documents submitted in connection with defendant's motion for summary judgment. First, along with its opening motion, defendant filed a motion to seal (Dkt. 106) portions of the declarations of Steve Martocci (Dkt. 106-3) and John Pignata (Dkt. 106-5). Specifically,

11

defendant sought to seal portions of the declarations that "set forth the content of text messages sent and received by plaintiff" and by other group members, and that "provide the first and last names of the non-party group members." The court agrees that the non-party group members have a privacy interest in avoiding disclosure of their full names, but disagrees with the scope of the proposed redactions. In the Martocci declaration, the content of the messages sent by defendant itself are redacted, even though those messages provide the basis for this entire case, and are included in the FAC. Also, defendant's own motion mentions the group creator by first name and last initial (Mike L.). Thus, while the court agrees that the content of messages sent by group members (i.e., not sent by defendant) may be redacted, and that the members' full last names (other than the initial) may be redacted, the court will not permit any further redactions from the Martocci and Pignata declarations. Defendant's motion is GRANTED in part and DENIED in part, and defendant is directed to re-file these two documents, unredacting the first name and last initial of all group members, as well as the content of messages sent by GroupMe.

Second, along with his opposition brief, plaintiff filed a motion to seal (Dkt. 129) portions of his opposition brief (Dkt. 131), as well as the entire declaration of Shawn C. Davis (Dkt. 130-1) and four exhibits attached to the Davis declaration. Plaintiff argued that the redactions were made to protect the confidentiality of defendant's documents produced through discovery. Pursuant to Civil Local Rule 79-5(e), defendant filed a declaration in support of plaintiff's motion. However, the supporting declaration addressed only the Davis declaration and attached exhibits, and not the redacted portions of plaintiff's opposition brief. For that reason, plaintiff's motion is DENIED to the extent that it seeks the sealing of portions of his opposition brief. Plaintiff is directed to file an unredacted version of his opposition brief on the public docket.

As to the Davis declaration and exhibits, defendant argues that the exhibits contain excerpts of its proprietary source code as well as descriptions of its database structure, and that the Davis declaration discusses that confidential information. The court finds that defendant's supporting declaration provides good cause for the requested sealing, and thus

12

GRANTS plaintiff's motion to the extent that it seeks the sealing of the Davis declaration and associated exhibits.

Third, in connection with its reply brief, defendant filed a motion to seal (Dkt. 137) portions of the Supplemental Declaration of John Pignata (Dkt. 137-3). Defendant argues that two paragraphs of the supplemental Pignata declaration contain excerpts of defendant's source code. The court finds that defendant has demonstrated good cause for the requested redactions, and thus GRANTS defendant's motion to seal portions of the supplemental Pignata declaration.

After the summary judgment hearing, defendant filed a "supplemental motion to file under seal" (Dkt. 144), which sought the sealing of the same documents referenced in defendant's previous two motions to seal. While, at the hearing, the court did direct defendant to re-submit highlighted, unredacted versions of the documents for which sealing was sought, defendant did not need to file a new motion to seal. Thus, having ruled on the originally-filed motions to seal, the court DENIES defendant's "supplemental motion to file under seal" as moot.

Finally, as stated at the hearing, the argument included along with plaintiff's statement of recent decision (Dkt. 139) is stricken, as it violates Civil Local Rule 7-3(d)(2).

The Clerk shall close the file. Plaintiff's motion for class certification is now rendered moot, and the hearing date is vacated.

**IT IS SO ORDERED.**

Dated: February 4, 2015

PHYLLIS J. HAMILTON
United States District Judge

13